DAVID A. STEINBERG (SBN 130593)
das@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, California 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

CHRISTINE LEPERA (*pro hac vice application forthcoming*)
ctl@msk.com
JEFFREY M. MOVIT (*pro hac vice application forthcoming*)
jmm@msk.com
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendants*
*Austin Richard Post p/k/a Post Malone*
*Adam King Feeney p/k/a Frank Dukes*
*Republic Records, a division of UMG Recordings, Inc. (incorrectly sued as Universal Music Group, Inc.)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER ARMES,<br><br>                    Plaintiff,<br><br>          v.<br><br>AUSTIN RICHARD POST, publicly known as POST MALONE, an individual; ADAM KING FEENEY publicly known as FRANK DUKES, an individual; UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No. 2:20-cv-03212-ODW-PJW<br><br>Hon. Otis D. Wright II<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Date:  July 6, 2020<br>Time:  1:30 p.m.<br>Ctrm:  5D |

Mitchell
Silberberg &
Knupp LLP

12172343

CASE NO. 2:20-CV-03212-ODW-PJW
**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 6, 2020, or as soon thereafter as the motion may be heard, in the courtroom of the Honorable Otis D. Wright II, located at Courtroom 5D, 5th Floor, First Street Courthouse, 350 West 1st Street, Los Angles, California 90012, Defendants Austin Richard Post p/k/a Post Malone ("Post"), Adam King Feeney p/k/a Frank Dukes ("Dukes" and, together with Post, the "Individual Defendants"), and Republic Records (a division of UMG Recordings, Inc. which was incorrectly sued as Universal Music Group, Inc.) ("Republic Records" and, together with the Individual Defendants, "Defendants"), by and through their undersigned counsel, will and hereby do move this Court, pursuant to Rules 12(b)(5), (6), and (7) of the Federal Rules of Civil Procedure, to dismiss all claims asserted against them by Plaintiff Tyler Armes ("Armes") in the Amended Complaint dated May 13, 2020 (Dkt. No. 24).  This motion is based upon the following independent and cumulative grounds:

*First*, pursuant to Fed. R. Civ. P. 12(b)(7), Armes' claim for a declaration that he is a joint author and owner of the musical composition entitled "Circles" (the "Composition" and "Composition Claim," respectively) should be dismissed for failure to join necessary and indispensable parties in accordance with Fed. R. Civ. P. 19.  As co-writers and co-owners of the copyright in the Composition, the declaration sought by Armes' Composition Claim would necessarily affect Louis Bell, Kaan Gunesberk, and Billy Walsh's respective interests in the Composition.   Mr. Gunesberk cannot feasibly be joined in this action for jurisdictional reasons and this action should not, in equity and good conscience, be allowed to proceed in his absence, especially given the ready availability of an alternative forum for adjudicating Armes' purported copyright ownership interest in the Composition.

*Second*, pursuant to U.S.C. § 1404(a), the Court should decline to exercise jurisdiction and transfer this action—including Armes' Composition Claim and his

Mitchell
Silberberg &
Knupp LLP

12172343

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

inextricably intertwined claim concerning the "Circles" sound recording (the "Recording" and "Recording Claim," respectively)—to the Southern District of New York, the forum where Post commenced a parallel declaratory judgment action on the same day as Armes filed his Complaint.  This action could have been brought initially in the Southern District of New York and the convenience of the witnesses and interests of justice would be served by a transfer to that forum, which is the only forum (as between the two) that can afford complete relief to the interested parties.

*Third*, pursuant to Fed. R. Civ. P. 12(b)(6), Armes' claim for a declaration that he is a joint author and owner of the "Circles" sound recording (the "Recording" and "Recording Claim," respectively) should be dismissed for failure to state a claim.  The Amended Complaint contains *no facts* from which it could be reasonably inferred that:  (1) Armes exercised "control" over either the Recording as a whole; (2) there existed a "shared intent" to be co-authors of the Recording; and (3) the "audience appeal" of the Recording is attributable to Armes' purported contributions thereto.  Moreover, Armes does not allege any facts sufficient to show that he made any "independently copyrightable contribution" to the Recording.  Armes' remaining claims for an accounting and constructive trust are dependent on his failing co-authorship claims and thus must also be dismissed.

*Finally*, pursuant to Fed. R. Civ. P. 12(b)(5), the Amended Complaint should be dismissed as against the Individual Defendants because Armes has failed to effectuate service of process in accordance with Fed. R. Civ. P. 4.  Armes' attempt to serve Post by certified mail is ineffective because the receipt was not signed by Post or anyone authorized to sign on his behalf.  Armes' attempted "substitute service" on Dukes is likewise ineffective because leaving process at Dukes' recording studio, rather than his residence, with an individual who does not reside there either is not proper under Fed. R. Civ. P. 4(e)(2)(B), and Armes did not exercise the prerequisite "reasonable diligence" for "substitute service" under California law.

3   CASE NO. 2:20-CV-03212-ODW-JPW
**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

1         This motion is based on this Notice of Motion, the accompanying

2    Memorandum and Point of Authorities, the Affidavit of David A. Steinberg dated

3    June 3, 2020 and accompanying Exhibits 1-8, the Declaration of Austin Richard Post

4    p/k/a Post Malone dated May 27, 2020, the Declaration of Adam King Feeney p/k/a

5    Frank Dukes dated May 27, 2020, the Declaration of Cody Sampson dated May 29,

6    2020, the pleadings and papers filed in this action, all other matters of which the Court

7    may take judicial notice, and any further argument or evidence that may be received

8    by the Court at the requested hearing.

9         This motion is made following the conference of counsel pursuant to L.R. 7-3,

10   which took place on April 29, 2020 and May 20, 2020.

11

12     Dated:  June 3, 2020                    MITCHELL SILBERBERG & KNUPP LLP

13

14                                               By:  ___/s/ David A. Steinberg_____

15                                                    DAVID A. STEINBERG
                                                     Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................7

II.     INTRODUCTION ................................................................1

III.    THE "CIRCLES" COMPOSITION AND RECORDING.............................3

IV.     ARMES' COMPOSITION CLAIM SHOULD BE DISMISSED..................4

    A.   Armes Has Not Joined and Cannot Join an "Indispensable"
       Party .................................................................................4

        1.   Standard for Dismissal Under Fed. R. Civ. P. 12(b)(7)..................4

        2.   The Non-Party Songwriters Are Necessary and
           Indispensable to Armes' Composition Claim. ...................5

        3.   Mr. Gunesberk Cannot Feasibly Be Joined in California
           and Armes' Composition Claim Cannot Proceed In His
           Absence..........................................................6

    B.   This Court Should Decline to Exercise Jurisdiction and
       Transfer This Action So That It May Be Fully Adjudicated
       in New York. .........................................................8

        1.   Standard Applicable to a Transfer Under 28 U.S.C. §
           1404(a) .........................................................8

        2.   This Action Unquestionably Could Have Been Brought in
           the Southern District of New York. ...............................8

        3.   The Private and Public Interest Factors Favor Dismissal. ..............9

V.      ARMES' RECORDING CLAIM SHOULD BE DISMISSED...................11

    A.   Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6)............................11

    B.   Armes Can Plead No Set of Facts To Grant Him Rights In
       the Recording.........................................................12

        1.   Armes Fails to Sufficiently Allege He Is An "Author" of
           the Recording. ................................................14

Mitchell
Silberberg &
Knupp LLP

12172343

5                     CASE NO. 2:20-CV-03212-ODW-PJW

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**
(continued)

**Page**

2. Armes Fails to Plausibly Allege He Made an "Independently Copyrightable Contribution" to the Recording. ............................................................... 19

C. Armes' Accounting and Constructive Claims Necessarily Also Fail................................................................20

VI. THIS ACTION SHOULD BE DISMISSED AS AGAINST THE INDIVIDUAL DEFENDANTS DUE TO INEFFECTIVE SERVICE ........21

A. Standard for Dismissal Under Fed. R. Civ. P. 12(b)(5)............................21

B. Armes' Attempt to Serve Post by Certified Mail is Ineffective................................................................21

C. Armes' Attempt at "Substitute Service" on Dukes is Ineffective................................................................22

VII. CONCLUSION ............................................................24

12172343

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*16 Casa Duse, LLC v. Merkin*,
   791 F.3d 247 (2d Cir. 2015) ...................................................................... 13

*A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*,
   503 F.2d 384 (9th Cir. 1974) ..................................................................... 11

*Aalmuhammed v. Lee*,
   202 F.3d 1227 (9th Cir. 2000) ............................................................*passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 12

*Avago Techs. Gen. IP Pre Ltd. v. Elan Microelectronics Corp.*,
   2007 WL 1140450 (N.D. Cal. April 17, 2007) ........................................... 10

*Balkin v. Wilson*,
   863 F. Supp. 523 (W.D. Mich. 1994) ......................................................... 19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................. 11, 12

*Bonita Packing Co. v. O'Sullivan*,
   165 F.R.D. 610 (C.D. Cal. 1995) ............................................................... 23

*Brown v. Flowers*,
   297 F. Supp. 2d 846 (M.D.N.C. 2003),
   *aff'd*, 196 F. App'x 178 (4th Cir. 2006) .................................................... 20

*Cable Vision, Inc. v. KUTV Inc.*,
   335 F.2d 348 (9th Cir. 1964) ....................................................................... 5

*Callaway Golf Co. v. Corp. Trade, Inc.*,
   2010 WL 743829 (S.D. Cal. Mar. 1, 2010) ................................................ 11

*Community for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) ................................................................................... 14

*Daimler AG v. Bauman*,
   134 S.Ct. 746 (2014) ..................................................................................... 9

Mitchell
Silberberg &
Knupp LLP

12172343

CASE NO. 2:20-CV-03212-ODW-PJW

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Dawavendewa v. Salt River Project Agric. Imp. & Power Dist.*,
  276 F.3d 1150 (9th Cir. 2002) ................................................................. 5

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986) ................................................................ 10

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
  375 F.3d 861 (9th Cir. 2004) .................................................................. 4

*Duran v. Macias-Price*,
  2007 WL 4554390 (E.D. Cal. Dec. 20, 2007) ...................................... 22

*E.E.O.C. v. Peabody W. Coal Co.*,
  400 F.3d 774 (9th Cir. 2005) ............................................................. 6, 7

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ............................................................................ 19

*First Fin. Mktg. Servs. Grp., Inc. v. Field Promotions, Inc.*,
  286 F. Supp. 295 (S.D.N.Y. 1968) ........................................................ 5

*Ford v. Ray*,
  130 F. Supp. 3d 1358 (W.D. Wash. 2015) ...................................... 15, 17

*Gaines v. Fusari*,
  2012 WL 3018293 (D.N.J. July 24, 2012) ............................................. 6

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) (e*n banc*) .............................................. 13

*Gaylord v. U.S.*,
  595 F.3d 1364 (Fed. Cir. 2010) ........................................................... 16

*Grillo v. Nat'l Geographic Soc.*,
  24 F.3d 246 (9th Cir. 1994) ................................................................. 21

*Gulf Oil Co. v. Gilbert*,
  330 U.S. 501 (1947) ............................................................................ 10

*Hard Drive Prods. v. Doe*,
  2012 WL 3945501 (N.D. Cal. Sept. 10, 2012) .................................... 23

8

CASE NO. 2:20-CV-03212-ODW-JPW

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Heger v. Kiki Tree Pictures, Inc.*,
  2017 WL 5714517 (C.D. Cal. July 24, 2017) .........................................13, 15, 17

*In re Gilead Sciences Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) .............................................................................12

*In re Toyota Motor Corp.*,
  785 F. Supp. 2d 883 (C.D. Cal. 2011) ..................................................................7

*In re W. States Wholesale Natural Gas Antitrust Litig.*,
  715 F.3d 716 (9th Cir. 2013) .................................................................................7

*Jeon v. Anderson*,
  2019 WL 2949033 (C.D. Cal. June 14, 2019) .....................................................17

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ......................................................................8, 9, 10

*Makah Indian Tribe v. Verity*,
  910 F.2d 555 (9th Cir. 1990) .................................................................................5

*Marya v. Warner/Chappell Music, Inc.*,
  131 F. Supp. 3d 975 (C.D. Cal. 2015) .................................................................17

*McShan v. Sherrill*,
  283 F.2d 462 (9th Cir. 1960) .................................................................................5

*Metz v. U.S. Life Ins. Co. in the City of N.Y.*,
  674 F. Supp. 2d 1141 (C.D. Cal. 2009) .................................................................9

*Newton v. Diamond*,
  204 F. Supp. 2d 1244 (C.D. Cal. 2002),
  *aff'd*, 349 F.3d 591 (9th Cir. 2003) ......................................................................3

*North Am. Thought Combine, Inc. v. Kelly*,
  2003 WL 355237 (S.D.N.Y. Feb. 18, 2003) .......................................................19

*Nutrition Distrib. LLC v. Lecheek Nutrition, Inc.*,
  2015 WL 12659907 (C.D. Cal. June 5, 2015).......................................................8

12172343

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
  531 F.3d 962 (9th Cir. 2008) .................................................................. 14, 15, 18

*S.O.S., Inc. v. Payday, Inc.*,
  886 F.2d 1081 (9th Cir. 1989) ............................................................................ 19

*SFPP, L.P. v. Union Pac. R.R. Co.*,
  2006 WL 8448721 (C.D. Cal. Mar. 20, 2006) .................................................... 12

*Shaw v. Sears*,
  2009 WL 10697975 (C.D. Cal. Aug. 3, 2009) .................................................... 23

*Sloan v. 1st Am. Auto. Sales Training*,
  2017 WL 10345469 (C.D. Cal. Jan. 27, 2017) ................................................... 23

*Stafford Trading, Inc. v. Lovely*,
  2007 WL 1512417 (N.D. Ill. May 21, 2007) ........................................................ 6

*StreamCast Networks, Inc. v. Skype Techs., S.A.*,
  2006 WL 5441237 (C.D. Cal. Sept. 14, 2006) .................................................... 20

*Sumarlin v. Asset Recovery Tr.*,
  2008 WL 4922436 (D. Utah Nov. 14, 2008) ....................................................... 22

*Swirsky v. Carey*,
  376 F.3d 841 (9th Cir. 2004) ................................................................................ 3

*Taylor v. Universal Music Corp., Inc.*,
  2014 WL 12607685 (C.D. Cal. Mar. 10, 2014) ................................... 6, 13, 15, 18

*Tradewinds Escrow, Inc. v. Truck Ins. Exch.*,
  97 Cal. App. 4th 704 (2002) ............................................................................... 20

*Trentman v. Salazar*,
  2010 WL 964426 (D. Utah Mar. 15, 2010) ......................................................... 22

*UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*,
  446 F. Supp. 2d 1164 (E.D. Cal. 2006) .............................................................. 13

*Verrecchia v. Aviss*,
  2017 WL 9486151 (C.D. Cal. Nov. 8, 2017) ...................................................... 21

10

CASE NO. 2:20-CV-03212-ODW-JPW

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

12172343

1

## TABLE OF AUTHORITIES
### (continued)

2

3

<u>Page(s)</u>

*Virginia Sur. Co. v. Northrop Grumman Corp.*,

4

    144 F.3d 1243 (9th Cir. 1998) ................................................................. 8

5

*Wilbur v. Locke*,

6

    423 F.3d 1101 (9th Cir. 2005) ............................................................... 6

7

*Wise v. Wells Fargo Bank, N.A.*,

8

    850 F. Supp. 2d 1047 (C.D. Cal. 2012) ................................................ 20

9

*Wolfe v. United Artists Corp.*,

10

    583 F. Supp. 52 (E.D. Pa. 1983) .......................................................... 13

11

*Zenix Indus. USA, Inc. v. King Hwa Indus. Co.*,

12

    920 F.2d 937 (9th Cir. 1990) ............................................................... 17

13

*Zeta-Jones v. Spice House*,

    372 F. Supp. 2d 568 (C.D. Cal. 2005) .................................................. 9

14

## RULES & STATUTES

15

17 U.S.C. § 101 ........................................................................................... 13

16

17 U.S.C. § 201(a) ..................................................................................... 13

17

17 U.S.C. § 411(b) ..................................................................................... 17

18

28 U.S.C. § 1331 .......................................................................................... 9

19

28 U.S.C. § 1338(a) ..................................................................................... 9

20

28 U.S.C. § 1391(a) ..................................................................................... 9

21

28 U.S.C. § 1404 .................................................................................. 8, 10

22

Cal. Code Civ. Proc. § 415.20(b) .............................................................. 23

23

Cal. Code Civ. Proc. § 415.30 ................................................................... 22

24

Fed. R. Civ. P. 4 ...................................................................... 3, 21, 22

25

Fed. R. Civ. P. 12 ............................................................................. *passim*

26

Fed. R. Civ. P. 19 ............................................................................ 2, 4, 5, 6

27

Utah R. Civ. P. 4(d)(2)(A) ......................................................................... 22

28

12172343

1

### TABLE OF AUTHORITIES
(continued)

2

Page(s)

3

### OTHER AUTHORITIES

4

4A Charles A. Wright, Arthur R. Miller & Adam N. Steinman, Federal

5

Practice & Procedure § 1096 (4th ed. 2020) ........................................................23

6

7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal

7

Practice & Procedure § 1614 (3d ed. 2020) .............................................................6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO. 2:20-CV-03212-ODW-JPW

12172343

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

## I.   **INTRODUCTION**

Defendant Austin Richard Post, professionally known as Post Malone ("Post"), is an internationally-acclaimed songwriter, recording artist, and performer who has released multiple number one songs and albums to date.  Post's song "Circles," which is the subject of this action, has achieved massive commercial success, debuting on August 30, 2019 at No. 7 on the Billboard Hot 100 Chart and quickly shooting to the No. 1 song.

It is an age-old story in the music business that when a song earns the type of commercial and critical success that "Circles" has garnered, an individual will come forward seeking to take advantage of the proper rights holders, falsely claiming credit for its creation, and demanding an unwarranted windfall.  Plaintiff Tyler Armes ("Armes") is such an individual, and his Amended Complaint fits that storied profile. Fully contrary to his contentions, Armes had no authorship of any part of the "Circles" musical composition or sound recording (the "Composition" and "Recording," respectively).  Instead, Armes' has sought to manipulate and elevate his presence as a guest at *one* of the studio sessions for "Circles," held in Toronto, Canada in August 2018, into copyright ownership, without any basis in law or fact.

The "Circles" Composition was jointly written over the course of multiple studio sessions by Post, the prominent producer Defendant Adam King Feeney, professionally known as Frank Dukes ("Dukes"), and three other well-established non-party songwriters,[1] each of whom properly owns a share of the copyright in the Composition attributable to his authorship contribution.    The copyright in the "Circles" Recording is solely owned by Defendant Republic Records, a division of UMG Recordings, Inc. (incorrectly sued as Universal Music Group, Inc.) ("Republic Records"), which is the record label on which the "Circles" Recording was released.

While there are no true facts that can ever support Armes' fiction, this dispute is properly adjudicated in New York.  Prior to this action, Armes had been making

---

[1] The "Non-Party Songwriters" are Louis Bell, Kaan Gunesberk, and Billy Walsh.

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

efforts in New York to obtain rights in the "Circles" Composition for some time.  Post was preparing to commence a declaratory judgment action against Armes in New York when, on April 7, 2020, Armes filed his Complaint in this action.  The very same day, Post commenced an action before the United States District Court for the Southern District of New York, entitled *Post v. Armes*, Case No. 1:20-CV-02877-ALC (the "New York Action"), seeking a declaration that Armes is neither an author nor a copyright owner of the "Circles" Composition.  The New York Action is currently pending.

As discussed below, despite taking the opportunity to replead his claims, Armes' Amended Complaint is procedurally and substantively deficient on several grounds, including, critically, on the ground that Armes has failed to join the Non-Party Songwriters as parties to this action in violation of Fed. R. Civ. P. 19.  All of the Non-Party Songwriters are necessary parties, but at least one of them cannot feasibly be joined because, as a Canadian resident with no applicable connection to California, he is beyond the reach of this Court's jurisdiction.  Thus, complete relief cannot be afforded to the necessary parties in this action.  On the other hand, the Southern District of New York—the forum in which Post contemporaneously filed the New York Action based on the same nucleus of operative facts as Armes alleged here— can afford such relief.  Indeed, New York is the proper forum for adjudication of the parties' dispute, as the Canadian songwriter has agreed to be bound by the decision rendered in the New York Action, it is notably closer to the facts underlying Armes' claims of authorship of the Composition and Recording, and as it is the preferred venue of other interested parties, who have agreed to cooperate in that forum.

There are myriad other bases for this Court to dismiss this action, including because Armes has failed to satisfy pleading requirements on his substantive claim as to the Recording, thus failing to state claims upon which relief can be granted, and

12172343

also based on the predicate jurisdictional failure of Armes[2] to effectuate service of process on either of the individual Defendants Post and Dukes (together, the "Individual Defendants") in accordance with Fed. R. Civ. P. 4.[3]  In all instances, and at minimum, this Court should transfer this dispute to be fully and finally resolved in the Southern District of New York, together with the parallel New York Action.

## II.  THE "CIRCLES" COMPOSITION AND RECORDING

The "Circles" Composition and Recording are "separate works with their own distinct copyrights."  *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-49 (C.D. Cal. 2002) (citation omitted), *aff'd*, 349 F.3d 591 (9th Cir. 2003).  Generally, a "musical composition captures an artist's music in written form."  *Id.* at 1249.  It "consists of [elements such as] rhythm, harmony, and melody," can be notated in sheet music, and can be performed by any musical performer with sufficient skill.  *Id.*; *see also Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) (discussing elements of musical compositions, including lyrics, chord progressions, tempo, and instrumentation) (collecting cases).  A sound recording captures "the sound produced by [a particular] performer's rendition of" a musical composition.  *Newton*, 204 F. Supp. 2d at 1249-50.  "When a copyrighted song is recorded on a phonorecord, there are two separate copyrights:  one in the musical composition and the other in the sound recording."  *Id.* at 1249 (quoting *T.B. Harms Co. v. Jem Records, Inc.*, 655 F. Supp. 1575, 1576 n.1 (D.N.J. 1987)).  "The rights of a copyright in a sound recording do not extend to the [musical composition] itself, and *vice versa*."  *Newton*, 204 F. Supp. 2d at 1249 (internal quotation marks and citation omitted).

While the legal ownership rights are distinct, the facts regarding how the Composition and Recording were actually created are intertwined here and involve

---

[2] Armes, on the other hand, has been served in the New York Action and is not contesting same.

[3] Notably, Armes' original Complaint suffered from the same defects.  During the meet-and-confer process, Defendants' counsel explained the bases for their anticipated motion to dismiss the original Complaint.  *See* Declaration of David A. Steinberg dated June 3, 2020 ("Steinberg Decl."), ¶¶ 2-3.  Despite having had the opportunity to address these issues, Armes failed to do so in his Amended Complaint.

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

12172343

the same persons.  Armes alleges, for example, that portions of the Composition and Recording were created during the same August 2018 studio session and that Post, Dukes, and Louis Bell (a Non-Party Songwriter) had a hand in both works.  *See, e.g.*, Am. Compl. ¶¶ 18, 19, 24.

Armes has no appreciation for the legal ownership rights distinction.  Despite having been afforded an opportunity to amend his initial Complaint, Armes continues to confusingly collapse the two distinct copyrights into one term:  "Song," which he uses to refer to both the Composition and the Recording (Am. Compl. ¶ 15), individually and collectively.  Worse, Armes improperly asserts one declaratory judgment claim as to these two separate copyrights.  *See id.* ¶¶ 30-34.  For this reason alone, this Court should dismiss the declaratory judgment claim as improperly pled.  Solely for purpose of this motion, Defendants have broken out the two aspects of the improperly commingled claim as the "Composition Claim" and "Recording Claim," to demonstrate that even if they were separately pled they would still be subject to dismissal for the distinct reasons stated below.

## III.   ARMES' COMPOSITION CLAIM SHOULD BE DISMISSED

### A.   Armes Has Not Joined and Cannot Join an "Indispensable" Party.

#### 1.   Standard for Dismissal Under Fed. R. Civ. P. 12(b)(7).

Armes' Composition Claim should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(7), for failure to join "necessary" and "indispensable" parties under Fed. R. Civ. P. 19,[4] at least one of whom cannot feasibly be joined in this action due to a lack of personal jurisdiction.  When considering the compulsory joinder of parties, courts undertake a two-step inquiry.  First, a court must determine whether the absentee is a "required" party under Fed. R. Civ. P. 19(a).  Second, if the absentee is "required" but cannot feasibly be joined in the action, a court must determine whether such party is

---

[4] The terms "necessary" and "indispensable" no longer appear in Fed. R. Civ. P. 19, but they have become "terms of art" in joinder jurisprudence.  *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n.5 (9th Cir. 2004).  "'Necessary' refers to a party who should be 'joined if feasible'" and "'indispensable' refers to a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed.'" *Id.*

1  so indispensable that in "equity and good conscience" the action must be dismissed

2  under Fed. R. Civ. P. 19(b).  *See Dawavendewa v. Salt River Project Agric. Imp. &*

3  *Power Dist.*, 276 F.3d 1150, 1155-56 (9th Cir. 2002).

4  **2.     The Non-Party Songwriters Are Necessary and Indispensable**

5  **to Armes' Composition Claim.**

6  Armes acknowledges that the Non-Party Songwriters, namely, Louis Bell,

7  Kaan Gunesberk, and Billy Walsh, are "credited writers" of the Composition (Am.

8  Compl. ¶ 24) yet fails to name them as parties.  However, the Non-Party Songwriters

9  are "necessary" and "indispensable" and, thus, *must* be joined as parties to this action

10  insofar as it relates to the Composition.  *See* Fed. R. Civ. P. 19(a)(1)(B) (party "must

11  be joined" if he "claims an interest relating to the subject of the action and is so

12  situated that disposing of the action in [his] absence may . . . as a practical matter

13  impair or impede [his] ability to protect [that] interest"); *accord Makah Indian Tribe*

14  *v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).

15  As set forth in the accompanying declarations, the Non-Party Songwriters not

16  only co-wrote the Composition, but each of them claims and rightfully has a copyright

17  ownership interest in the Composition.  *See* Steinberg Decl. Ex. 1 (cited as "Louis

18  Decl.") ¶¶ 2-3; Steinberg Decl. Ex. 2 (cited as "Gunesberk Decl.") ¶¶ 2-3; Steinberg

19  Decl. Ex. 3 (cited as "Walsh Decl.") ¶¶ 2-3.[5]  It is settled law that copyright owners

20  are "necessary" and "indispensable" to any action that could affect their copyright

21  interests, including actions, such as this one, seeking a declaration as to ownership of

22  the copyrighted work.  *See Cable Vision, Inc. v. KUTV Inc.*, 335 F.2d 348, 353-54

23  (9th Cir. 1964) ("It is settled law that the copyright owner is an indispensable party to

24  enforcement of a copyright claim."); *First Fin. Mktg. Servs. Grp., Inc. v. Field*

25  *Promotions, Inc.*, 286 F. Supp. 295, 298 (S.D.N.Y. 1968) ("It is familiar law that the

26  copyright owner is an indispensable party to a suit where the validity of his copyright

27  ───────────────

[5] The court may consider evidence outside the pleadings, including declarations, in determining

28  issues of joinder on a Fed. R. Civ. P. 12(b)(7) motion.  *See McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

is in issue.") (collecting cases); 7 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1614 (3d ed. 2020) ("when the patent or copyright is jointly owned the joinder of all the proprietors has been required") (collecting cases).

Because the declaration sought by Armes—particularly, that he co-wrote and co-owns the copyright in the Composition (Am. Compl. ¶¶ 29-34)—necessarily would affect the Non-Party Songwriters' copyright ownership interests, their joinder is required.  *See, e.g., Taylor v. Universal Music Corp., Inc.*, 2014 WL 12607685, at *4 (C.D. Cal. Mar. 10, 2014) (alleged co-author and co-owner of copyrighted song "must be joined" as a party to a declaratory judgment action regarding authorship and ownership of such song because "[r]esolution of [the] lawsuit could adversely affect [the absentee's] ownership rights") (citation omitted); *Stafford Trading, Inc. v. Lovely*, 2007 WL 1512417, at *12 (N.D. Ill. May 21, 2007) (same, because a declaration as to "the rightful owners of [the] copyrights" in the works at issue "would obviously affect [the absentee copyright owners'] interests"); *Gaines v. Fusari*, 2012 WL 3018293, at *5 (D.N.J. July 24, 2012) (same).

### 3. Mr. Gunesberk Cannot Feasibly Be Joined in California and Armes' Composition Claim Cannot Proceed In His Absence.

Having demonstrated that the Non-Party Songwriters are "necessary" and "indispensable" parties to this action under Fed. R. Civ. P. 19(a), the next inquiry is whether it is feasible to order that they be joined as parties.  *See* Fed. R. Civ. P. 19(b); *Wilbur v. Locke*, 423 F.3d 1101, 1112 (9th Cir. 2005).  If an absent party is "indispensable" but cannot feasibly be joined for practical or jurisdictional reasons, dismissal is required.  *See id.*; *see also E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) ("joinder is not feasible . . . when the absentee is not subject to personal jurisdiction").

At least one of the Non-Party Songwriters—namely, Mr. Gunesberk—cannot feasibly joined in this action because he is beyond the reach of this Court's personal

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

jurisdiction. Absent traditional bases for personal jurisdiction (*i.e.*, domicile or consent), a nonresident cannot properly be haled into this Court unless he has "'minimum contacts' with [California] such that the assertion of jurisdiction '[would] not offend traditional notions of fair play and substantial justice.'" *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Here, Mr. Gunesberk is a Canadian citizen who lives and works in Toronto. Gunesberk Decl. ¶ 5. He does not consent to personal jurisdiction in California (*id.* ¶ 6) and plainly lacks the requisite contacts with California for the constitutional exercise of jurisdiction. Indeed, Mr. Gunesberk does not own property or maintain a residence or office in California. *Id.* ¶¶ 6-7. He also had no contact with Armes and performed all of his work on the Composition in Toronto. *Id.* ¶ 8. Accordingly, though required, joinder of Mr. Gunesberk is not feasible in California. *See E.E.O.C.*, 400 F.3d at 779; *see also, e.g.*, *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 907 (C.D. Cal. 2011) ("joinder is not feasible" where absentee "lack[ed] contacts with the United States").

Armes' Composition Claim cannot, in equity and good conscience, proceed in Mr. Gunesberk's absence, especially given the potential for prejudice to his copyright ownership interest and the ready availability of an alternative forum that is notably closer to Toronto (where the operative facts occurred) [6] in which all interested parties—Mr. Gunesberk included—have agreed to cooperate. *See* Steinberg Decl. Ex. 4 ¶¶ 7-8; Bell Decl. ¶¶ 7-8; Gunesberk Dec. ¶¶ 11-12; Walsh Decl. ¶ 8. As an owner of the copyright in the Composition, Mr. Gunesberk "not only [has] an interest in the controversy, but an interest of such a nature that a final decree cannot be made without [] affecting that interest." *In re Toyota*, 785 F. Supp. 2d at 907 (citations omitted). In contrast, Armes will not be prejudiced or deprived of an adequate remedy

---

[6] The operative facts regarding the creation of the Recording occurred there as well, and the facts are intertwined with the creation of the Composition. While there is no legal basis to allow Armes' Recording Claim to proceed, as discussed below, any such claim in all events also could be maintained in New York as Republic Records is located in that jurisdiction as well.

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

by a dismissal for nonjoinder because, as will be discussed below, Armes' Composition Claim can (and will) be adjudicated in the pending New York Action. *See* Steinberg Decl. ¶ 8, Ex. 5 (cited as "New York Compl."); *see also Virginia Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1248-49 (9th Cir. 1998). Dismissal of this declaratory judgment action is therefore warranted.

### B. This Court Should Decline to Exercise Jurisdiction and Transfer This Action So That It May Be Fully Adjudicated in New York.

#### 1. Standard Applicable to a Transfer Under 28 U.S.C. § 1404(a).

Alternatively, the Court should decline to exercise jurisdiction over this action so that the parties' dispute may be fully adjudicated in a more convenient forum, particularly, the Southern District of New York, where the related New York Action between Post and Armes is already pending.  A district court has discretion to decline to exercise jurisdiction and transfer the action to "any other district court where it might have been brought" for the "convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  Accordingly, all that is required for dismissal is:  (1) that the action might have been brought in the proposed alternative forum; and (2) that the balance of private and public interest factors favors transfer. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  These conditions plainly allow the Court to exercise its discretion to decline jurisdiction here, especially in light of the pending New York Action.

#### 2. This Action Unquestionably Could Have Been Brought in the Southern District of New York.

As underscored by the parallel New York Action commenced by Post, this action unquestionably could have been brought initially in the Southern District of New York.  "The threshold question under Section 1404(a) requires the court to determine whether the case could have been brought in the forum to which the transfer is sought." *Nutrition Distrib. LLC v. Lecheek Nutrition, Inc.*, 2015 WL 12659907, *4 (C.D. Cal. June 5, 2015).  Generally, an action "might have been brought" in any

1  forum where "subject matter jurisdiction, personal jurisdiction, and venue would have
2  been proper if the plaintiff had originally filed the action" there. *Metz v. U.S. Life Ins.*
3  *Co. in the City of N.Y.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).

4      Considering the New York Action already seeks a declaration as to Armes'
5  purported authorship and ownership of the "Circles" Composition (New York Compl.
6  ¶¶ 18-25), there can be no legitimate dispute that Armes' Composition Claim and
7  inextricably intertwined Recording Claim (which, in any event, should be dismissed
8  for the reasons discussed below) could have been brought in New York.  Indeed,
9  subject matter jurisdiction exists in the Southern District of New York because
10 Armes' claims arise under the U.S. Copyright Act.  *See* 28 U.S.C. § 1331 ("The
11 district courts shall have original jurisdiction of all civil actions arising under the
12 Constitution, laws, or treaties of the United States"); 28 U.S.C. § 1338(a) ("district
13 courts shall have original jurisdiction of any civil action arising under any act of
14 Congress relating to . . . copyrights").  Moreover, Defendants are subject to personal
15 jurisdiction in New York.  Not only is Republic Records headquartered there, but Post
16 selected that forum, and Dukes has expressly agreed to be bound in that forum (Dukes
17 Decl. ¶¶ 7-8).  *See Daimler AG v. Bauman*, 134 S.Ct. 746, 760-62 (2014).  For the
18 same reasons, venue is also proper.  *See* 28 U.S.C. § 1391(a); *see, e.g.*, *Zeta-Jones v.*
19 *Spice House*, 372 F. Supp. 2d 568, 575 (C.D. Cal. 2005).

20          **3.      The Private and Public Interest Factors Favor Dismissal.**

21      The balance of private interest factors, which go to the convenience of the
22 parties and witnesses, and public interest factors, which go to the interest of justice,
23 favor transfer of this action to the Southern District of New York.  The Ninth Circuit
24 considers a number of public and private interest factors guiding this analysis.  *See*
25 *Jones*, 211 F.3d at 498 (motion to transfer "requires the court to weigh multiple
26 factors").  The private interest factors include the forum's convenience to the litigants;
27 whether unwilling witnesses can be compelled to testify; the enforceability of the
28 judgment; and all other practical problems that make trial of a case easy, expeditious,

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

12172343

and inexpensive.  *See Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508 (1947)[7] .  In addition, the public interest factors include the local interest in having localized controversies decided at home; the court's familiarity with governing law; burden on local courts and juries; court congestion; and the costs of resolving a dispute unrelated to this forum.  *Id.*  A court may look at any or all of the factors which are relevant to the specific matter and, considering them together, arrive at a balanced conclusion.  *See id.* at 1145-46; *accord Jones*, 211 F.3d at 498 (court must "adjudicate the motion for transfer according to an 'individualized, case-by-case consideration of convenience and fairness'").

The private interest factors favor resolving the parties' dispute in New York.  New York is a more convenient and appropriate forum, as is underscored by the fact that Post selected that forum himself.  Republic Records is headquartered in New York and Mr. Gunesberk lives in Toronto, which is significantly closer to New York than it is California, and is also the location of the August 2018 studio session at the core of Armes' claims.  *See, e.g.*, Am. Compl. ¶¶ 13-14.  To compel these parties to travel across the country on claims that first arose in Toronto and are effectively equivalent to the claim already pending in the New York Action would be needlessly burdensome and, in Mr. Gunesberk's case, legally impossible.  Indeed, as a Canadian resident with no "minimum contacts" with California (Gunesberk Decl. ¶¶ 5-8), Mr. Gunesberk cannot be compelled to testify or cooperate in California.  *See Avago Techs. Gen. IP Pre Ltd. v. Elan Microelectronics Corp.*, 2007 WL 1140450, at *2 (N.D. Cal. April 17, 2007) (foreign third-parties are beyond the subpoena power of federal courts).

Further, as between the two fora, New York is uniquely capable of rendering a judgment that is enforceable against the interested parties.  Mr. Gunesberk has agreed

---

[7] Although *Gulf Oil* addresses *forum non conveniens*, the factors set forth therein are instructive for assessing motions to transfer under Section 1404(a).  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (noting "*forum non conveniens* considerations are helpful in deciding a § 1404 transfer motion.") (internal citations omitted).

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

to cooperate in discovery and be bound by any judgment rendered in the New York Action related to the Composition.  *See* Gunesberk Decl. ¶¶ 5-8, 11; *see also* Dukes Decl. ¶¶ 7-8; Bell Decl. ¶¶ 7-8; Walsh Decl. ¶ 8.  In contrast, as will be discussed below (*see supra*, § VI), Armes has not even satisfied the jurisdictional predicate of effecting service of process on the Individual Defendants.  To avoid prejudice to an indispensable party who cannot be joined in this action (*see infra,* § IV.A), and the substantial risk of duplicative efforts and inconsistent decisions arising from piecemeal litigation, this action should be transferred to the Southern District of New York.  *See A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 386–87 (9th Cir. 1974); *Callaway Golf Co. v. Corp. Trade, Inc.*, 2010 WL 743829, at *7 (S.D. Cal. Mar. 1, 2010) ("An important consideration in determining whether the interests of justice dictate a transfer of venue is the pendency of a related case in the transferee forum.") (internal quotations omitted).

The other public interest factors—which evaluate the forums' respective interests to ensure neither is saddled with the burden and expense of resolving a dispute with which its citizens have little interest—will rarely defeat a transfer motion and do not do so here.  The operative facts occurred in Toronto (Amend Compl. ¶¶ 13-15); California has no greater "local interest" in hearing this controversy than does New York.  There is also no basis to conclude that New York courts any more or less congested than those in California nor that either forum is unfamiliar with the governing law, particularly, the U.S. Copyright Act.  These factors are neutral and, thus, do not disturb the conclusion that New York is the proper forum where this matter should be heard.

## IV.   ARMES' RECORDING CLAIM SHOULD BE DISMISSED

### A.   Standard for Dismissal Under Fed. R. Civ. P. 12(b)(6).

To survive a Fed. R. Civ. P. 12(b)(6) motion, Armes may not rely on "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, Armes

must allege sufficient facts to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.* at 550, 570; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While all factual allegations in the Amended Complaint must be accepted as true and construed in the light most favorable to Armes for purposes of the Fed. R. Civ. P. 12(b)(6) portion of this motion, the Court is free to ignore "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). Important here, even "where the elements for declaratory relief are stated, courts may grant [Fed. R. Civ. P.] 12(b)(6) motions for failure to state a claim upon which relief may be granted when the claim for declaratory relief fails as a matter of substantive law." *SFPP, L.P. v. Union Pac. R.R. Co.*, 2006 WL 8448721, at *2 (C.D. Cal. Mar. 20, 2006) (collecting cases).

## B.   Armes Can Plead No Set of Facts To Grant Him Rights In the Recording.

While Armes mushes the Composition and Recording authorship claims together, they must be analyzed separately as they are separate copyrighted works and the determination of joint authorship therein is a distinctly separate process.

As discussed above, the music embodied on a recording is the "composition," comprised of primarily melody, harmony, rhythm, structure, and lyrics.[8] On the other hand, the sound recording of any composition is created by a recording and production process that captures the performances or sounds of those musical compositions.

With respect to Armes' claim that he is a "joint author "and "co-owner of the copyright" in the "Circles" Recording (*see* Am. Compl. ¶¶ 29-34),[9] no set of facts are

---

[8] As discussed above, the authorship of the "Circles" Composition is pending in the New York Action seeking a declaration that Armes in not an author of any of those compositions. Notably, when Armes made his claim of co-authorship that gave rise to the New York Action, neither he nor his prior counsel ever made any claim of rights in the Recording; that arose solely when he obtained new counsel and filed this action.

[9] Armes also seeks a declaration that he is "entitled to a co-writer and co-producer *credit*" (Am. Compl. ¶ 34) (emphasis added), however, it is well-established that attribution is not protected under

pled (nor could there be) to support his authorship.  To state a claim for co-authorship (and thus, co-ownership) of a joint work,[10] a plaintiff must allege sufficient facts to be deemed an "author" of the work and to show he made an "independently copyrightable contribution" thereto.  *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000).  Though the inquiry is fact-specific, it is well-settled that the questions of co-authorship may be resolved on a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  *See, e.g.*, *Taylor*, 2014 WL 12607685, at *4 (no co-authorship of sound recording on a motion to dismiss); *Heger v. Kiki Tree Pictures, Inc.*, 2017 WL 5714517, at *5 (C.D. Cal. July 24, 2017) (finding no co-authorship of film on a motion to dismiss).

As discussed below, even drawing all plausible inferences in Armes' favor, the Amended Complaint alleges *no facts* that permit the Court to infer that Armes is an "author" of the Recording or that he made any "independently copyrightable contribution" thereto.  To deem Armes a joint author based on his attendance and *at most* limited contribution to the Recording (and there was none) at a single studio session would create the very "logistical and financial nightmare" that the Ninth Circuit cautioned against in *Garcia v. Google, Inc.*, 786 F.3d 733, 743 (9th Cir. 2015) (e*n banc*).  *Id.* at 743 ("Treating every acting performance as an independent work would not only be a logistical and financial nightmare, it would turn cast of thousands into a new mantra: copyright of thousands"); *accord 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 256-59 (2d Cir. 2015) ("inseparable contributions integrated into a

---

the Copyright Act.  *See UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*, 446 F. Supp. 2d 1164, 1178 (E.D. Cal. 2006); *Wolfe v. United Artists Corp.*, 583 F. Supp. 52, 56 (E.D. Pa. 1983) ("failure to give [a] plaintiff proper authorship credit in [a copyrighted work is] not [a cognizable] Copyright Act claim[]") (internal quotations and citations omitted).  Attribution, or credit, is a creature of contract and Armes has alleged none.

[10] The authors of a "joint work"—*i.e.*, "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole"—are co-owners of copyright in the work.  17 U.S.C. §§ 101, 201(a).  The terms "joint author" and "co-author" may be used interchangeably.

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

single work cannot separately obtain [copyright] protection.").  Armes' Recording Claim is meritless and should be dismissed.[11]

### 1.    Armes Fails to Sufficiently Allege He Is An "Author" of the Recording.

An "author" for copyright purposes is "the party who actually creates the work" by translating an idea into tangible expression.  *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).  The Ninth Circuit has articulated three factors to consider in determining co-authorship: (1) whether the putative author "superintend[ed]" the "whole work" by "exercising control;" (2) whether the putative authors made "objective manifestations of a shared intent to be coauthors" of the work; and (3) whether "the audience appeal of the work turns on both contributions and the share of each in its success cannot be appraised."  *Aalmuhammed*, 202 F.3d at 1234 (internal quotation marks and citations omitted).  While Armes parrots phrases from this standard, he alleges no facts to support a plausible inference he is an "author" of the Recording.

### a.    Armes Has Not Sufficiently Alleged "Control" Over the Recording.

The "most important factor" in determining joint authorship is "control." *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008); *accord Aalmuhammed*, 202 F.3d at 1235 (the "absence of control is strong evidence of the absence of co-authorship").  On the face of the Amended Complaint, Armes' involvement in the "Circles" Recording—which was limited to being present at *one* studio session—was a far cry from that of a "master mind" with "creative control" over the whole Recording.  *Id.* at 1234.

---

[11] Armes also fails to allege any facts that could demonstrate his joint authorship or co-ownership of the Composition.  However, Post has sought a declaratory judgment action on this issue in the New York Action. *See* Steinberg Decl. ¶ 8.  Thus, while not conceding that Armes has alleged, or can assert, any copyrightable contribution to the Composition, that issue will be adjudicated in the New York Action and Defendants do not raise it here.  Instead, Defendants seek dismissal of Armes' Composition Claim in this action on the grounds addressed *supra*, at § IV.

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

The only allegation of "control" in the Amended Complaint—particularly, that Armes had "independent creative control over [his] respective contributions" to the Recording (Am. Compl. ¶ 31)—is conclusory and legally irrelevant.  The Ninth Circuit has made clear that a putative author's control over his own contributions is *not* tantamount to "control" for authorship purposes, which must extend to the "*whole work*."  *See Aalmuhammed*, 202 F.3d at 1234 (emphasis added).  Absent sufficient allegations that Armes had "supervisory powers" over the Recording *as a whole*, the Court cannot plausibly infer authorship.  *See, e.g.*, *Richlin*, 531 F.3d at 970 (no "control" for authorship purposes where plaintiff wrote the screenplay and "may have had control over [it] as originally written, [but] had no control over how [it was] incorporated into [the film]"); *Heger*, 2017 WL 5714517, at *5 (no "control" where plaintiff alleged "creative control over separate and indispensable elements of the completed [film]" but no "supervisory powers over the [whole film]"); *Ford v. Ray*, 130 F. Supp. 3d 1358, 1363 (W.D. Wash. 2015) (no "control" where plaintiff had "control over his contribution to [the song]," but the "decision as to how or whether to incorporate [his] creations was left to defendant").[12]

***Nowhere in the Amended Complaint does Armes even allege that he had ultimate control or decision-making authority over the Recording.***  While Armes purportedly made certain "recommend[ations]" and "suggest[ions]" at the August 2018 studio session (Am. Compl. ¶ 17), there is no indication that anyone had to accept them.  Moreover, Armes concedes that the Recording was not completed during the August 2018 session (*see, e.g.*, Am. Compl. ¶ 19) yet does not claim to have had *any involvement whatsoever* beyond that one session.  Armes does not allege that he attended (or was even invited to) subsequent studio sessions.  Nor does he

---

[12] As noted above, Armes improperly conflates his purported involvement in the Composition and the Recording, which are separate works with their own distinct copyrights (*see supra*, § II).  Any control that Armes allegedly had over the Composition (and it will be shown he had none either) has no bearing on his purported "control" over the Recording.  *See, e.g.*, *Richlin*, 531 F.3d at 970; *Taylor*, 2014 WL 12607685, at *4 (finding plaintiff adequately alleged "control" over the composition but not the recording).

allege that anyone solicited his opinion or contacted him for any purpose regarding the Recording.  In fact, Armes does not even allege control over if—let alone how—his own purported contributions would be incorporated into the Recording.  To the contrary, Armes concedes that he had no part in selecting the person who recorded the vocal track on the Recording (Amend Compl. ¶ 24) and suggests that he *never even heard* the final Recording until it was shared on social media on August 5, 2019 (*i.e.*, nearly one year after the August 2018 studio session and just a few weeks before the Recording was publicly released).  *Id.* ¶¶ 20-21.  This is not the "control" of an author.

> b.   Armes Has Not Sufficiently Alleged "Shared Intent" to Be Co-Authors of the Recording.

The second factor considers whether the putative co-authors made "objective manifestations of a shared intent to be coauthors" of the work.  *Aalmuhammed*, 202 F.3d at 1234.  Absent "a contract saying the parties intended to be or not to be co-authors," which is not alleged here, "the inquiry must of necessity focus on the facts."  *Id.* at 1235.

The Amended Complaint does not even identify any author of the Recording, much less allege that such author manifested an intent to be co-authors of the Recording with Armes.  As shown in the copyright registration, Republic Records is the "author" of the Recording pursuant to an "employer for hire" arrangement; not even Post is an author of the Recording for copyright purposes.  *See* Steinberg Decl. Ex. 5.  "It would be illogical to conclude that [Republic Records], while not wanting [Post] to own the copyright, intended to share ownership with [an] individual[] like [Armes]."  *Aalmuhammed*, 202 F.3d at 1235; s*ee also Gaylord v. U.S.*, 595 F.3d 1364, 1377 (Fed. Cir. 2010) ("*each of the putative co-authors . . .* [must have] fully intended to be co-authors") (emphasis added and citation omitted).

The Amended Complaint recites applicable legal buzzwords—particularly, that "[Armes] and [the Individual Defendants] each manifested an intent to be co-*writers*

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

12172343

of the Song" (Am. Compl. ¶ 32 (emphasis added))—but this allegation concerns the Composition, not the Recording, and is utterly lacking in necessary factual detail. At most, Armes states that "Post . . . was excited to jam with Armes[]" and invited him to the August 2018 session (*id.* ¶ 14), but the law requires a manifestation of a "shared intent to be coauthors" of a specific work "at the time [the] contribution [was] composed." *Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975, 993-94 (C.D. Cal. 2015); *see also Zenix Indus. USA, Inc. v. King Hwa Indus. Co.*, 920 F.2d 937, at *4 (9th Cir. 1990) ("an author who intends to create a joint work must clearly demonstrate his or her intent in that regard") (citation omitted).

In any event, the fact that Armes' name is not listed in Republic Records' copyright registration nor in the credits for the Recording negates any suggestion that the parties mutually intended to be co-authors of the Recording. *See* Steinberg Decl. Ex. 6 (copyright registration for the Recording, not listing Armes as "author" or "claimant"); Am. Compl. ¶¶ 4, 22, 24, 26-27 (alleging Defendants "have refused to credit Armes"); *see also, e.g.*, *Heger*, 2017 WL 5714517, at *6 ("the fact that [plaintiff's] name is not listed in the copyright registration for the film . . . nor the film credits . . . negat[es] any suggestion that [defendant] intended to share authorship credits with plaintiff") (internal quotation marks and citation omitted); *Ford*, 130 F. Supp. 3d at 1363-64 (no mutual intent where defendant did not list plaintiff as an author on the copyright registration for the work).[13]

c. Armes Has Not Alleged the "Audience Appeal" of the Recording "Turns On" His Purported Contributions.

To satisfy the third factor, the putative co-author must allege facts sufficient to demonstrate that "the audience appeal of the work turns on both contributions and

---

[13] That Armes incorrectly listed himself as an "author" on the copyright application that *he filed* (Am. Compl. ¶ 26, Ex. A) says nothing of Defendants' intent. In fact, Armes' copyright registration should be invalidated. *See* 17 U.S.C. § 411(b)(1); *Jeon v. Anderson*, 2019 WL 2949033, at *6 (C.D. Cal. June 14, 2019) (finding registration invalid where plaintiff "knowingly included inaccurate information in his application, and [the] registration would have been refused . . . had the Register of Copyrights known of the inaccurate information").

'the share of each in its success cannot be appraised.'" *Aalmuhammed*, 202 F.3d at 1234. Armes does not and cannot plausibly allege that his limited, behind-the-scenes purported role in the Recording (there was none) is responsible for its "audience appeal." The Amended Complaint references *Billboard* articles describing the song's "bouncy melancholy" melody, "sunny acoustic guitars," and "swirling percussion" (Am. Compl. ¶ 21), but even if this "critical praise" can be linked to Armes' alleged contributions, it would be *illogical* to conclude that the "audience appeal" of the Recording "turns on" them. As is clear from the very articles Armes quotes from, the "audience appeal" of "Circles" is performer Post Malone. *See* Steinberg Decl. ¶¶ 6-7, Exs. 3-4 (*Billboard* articles entitled, "Post Malone Announces 'Circles' Single Release Date" and "Post Malone Debuts New Song 'Circles,' Shares New Album Details at Intimate Bud Light Concert"). Indeed, both articles comment on Post's *performance* of the Composition and were published before the Recording was even released. *See id.*

Notably, however, even assuming *arguendo* that Armes alleged facts sufficient to show that the "audience appeal" of the "Circles" turns on his purported contributions (and he decidedly does not and it does not), Armes' Recording Claim still would not be able to survive this motion to dismiss. Courts routinely dismiss co-authorship claims without regard to "audience appeal" where, as here, the putative co-author's allegations of "control" and "shared intent" are insufficient. *See, e.g.,* *Aalmuhammed*, 202 F.3d at 1234-35 (finding no co-authorship without considering "audience appeal" factor); *Richlin*, 531 F.3d at 970 (finding no co-authorship based on first two factors); *Taylor*, 2014 WL 12607685, at *4 (finding no co-authorship of sound recording even though plaintiff allegedly "performed all the instrumental tracks," which "could support a plausible inference that the [r]ecording's appeal 'turns on' [plaintiff's] contributions").

## 2. Armes Fails to Plausibly Allege He Made an "Independently Copyrightable Contribution" to the Recording.

Another fatal defect to Armes' implausible Recording Claim, is his failure to allege any facts that show he made any independently copyrightable contribution to the Recording. *See Aalmuhammad*, 202 F.3d at 1231 ("each author [must] make an independently copyrightable contribution to the disputed work") (citation omitted); *see also North Am. Thought Combine, Inc. v. Kelly*, 2003 WL 355237, at *2 (S.D.N.Y. Feb. 18, 2003) (a plaintiff seeking a declaration of co-authorship must allege facts describing "the specific contributions of the relative parties"). To be "independently copyrightable," the contribution must be "original to the author"—that is, "independently created by the author" and "possess[ing] at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).

Armes alleges that he contributed in "his capacity as a producer" to the "organization, instrumentation, arrangement and overall unique sound" of the Recording, including by (i) giving direction to "slow down the tempo," (ii) stating his opinion that "the song sounded better stripped down to just bass, guitar and drums, without the keyboard," (iii) "recommend[ing] that the bass should be played using a pick as opposed to fingers," and (iv) "suggest[ing] that both the vocals and guitar have a large amount of reverb on them." Am. Compl. ¶ 17; *see also id.* ¶¶ 3, 18-19, 22 (alleging Armes "contribut[ed] to ideas from start to finish"). To be an "author," however, "one must supply more than mere direction or ideas: one must 'translate [ ] an idea into a fixed, tangible expression entitled to copyright protection.'" *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989) (citation omitted); *see also, e.g., Aalmuhammed*, 202 F.3d at 1234 (denying co-authorship where film consultant gave direction to actors and oversaw the religious authenticity of the film); *Balkin v. Wilson*, 863 F. Supp. 523, 524-28 (W.D. Mich. 1994) (same, where putative author gave "precise technical specifications for how songs . . . were to be written" and "sat with [the credited writer] at the piano while [he] turned [the putative author's] ideas

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

12172343

into songs"); *Brown v. Flowers*, 297 F. Supp. 2d 846, 852 (M.D.N.C. 2003) (same, where putative author "worked as a recording engineer and producer of the tracks"), *aff'd*, 196 F. App'x 178, 181 (4th Cir. 2006).

Armes does not allege that he independently created *any* tangible expression in the Recording.  To the contrary, Armes alleges he "contribut[ed] to *ideas* from start to finish" and "work[ed] alongside" Post and Dukes while *they* recorded certain "bass parts" and "guitar parts" in the Recording.  Am. Compl. ¶¶ 18, 22; *see also, e.g.*, *id.* ¶ 18 ("*Dukes recorded* the music," with "*Dukes playing* the bass parts" and "*Post playing* the guitar parts") (emphasis added); *id.* ¶ 17 ("*Post played* the drums" and "*Dukes was playing* keyboards") (emphasis added).  Armes' claim of copyright ownership in the Recording in these circumstances is abjectly nonsensical; even Post and Dukes have no such ownership interest.  *See* Post Decl. ¶ 7; Dukes Decl. ¶ 6; *accord* Steinberg Decl. Ex. 5.

## C.   Armes' Accounting and Constructive Claims Necessarily Also Fail.

Because Armes' declaratory judgment claim with respect to both the Composition and the Recording must be dismissed, for the distinct  reasons set forth above, his accounting and constructive trust claims also must be dismissed.  *See* Am. Compl. ¶¶ 35-44.[14]  "Accounting 'is not an independent cause of action but merely a type of remedy and an equitable remedy at that.'" *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1055 (C.D. Cal. 2012) (citation omitted); *see also Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal. App. 4th 704, 714 n.7 (2002) (request for accounting must be predicated on an underlying claim).  Likewise, "[a] constructive trust is not a substantive device but merely a remedy." *StreamCast Networks, Inc. v. Skype Techs., S.A.*, 2006 WL 5441237, at *11 (C.D. Cal. Sept. 14, 2006) (citations omitted).

---

[14] In the New York Action, should Armes prevail as an author of the Composition (and he will not), any such remedial claims can be interposed therein.

CASE NO. 2:20-CV-03212-ODW-JPW

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

## V. **THIS ACTION SHOULD BE DISMISSED AS AGAINST THE INDIVIDUAL DEFENDANTS DUE TO INEFFECTIVE SERVICE**

### A. **Standard for Dismissal Under Fed. R. Civ. P. 12(b)(5).**

If the Court retains this action notwithstanding the above grounds for dismissal, it should still dismiss the action as against the Individual Defendants, pursuant to Fed. R. Civ. P. 12(b)(5), because they have not been properly served.[15] An individual may be served with process (1) by following the law of the "state where the district court is located or where service [was] made," or (2) by either delivering the summons and complaint to the individual personally, leaving them at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or delivering them to the individual's authorized agent. Fed. R. Civ. P. 4(e). Absent "substantial compliance" with one of these methods, "[n]either actual notice, nor simply naming the [individual] in the [] complaint, will [provide] personal jurisdiction[]." *Grillo v. Nat'l Geographic Soc.*, 24 F.3d 246 (9th Cir. 1994) (citation omitted).

### B. **Armes' Attempt to Serve Post by Certified Mail is Ineffective.**

According to the Proof of Service on Post (Dkt. No. 18), Armes attempted to serve Post by sending the Summons, Complaint, and certain other case-related documents to Post's Utah residence via certified mail, return receipt requested. *Id.*, p. 3.[16] This does not comport with any acceptable method of service. Service by certified mail is not authorized under Fed. R. Civ. P. 4(e)(2) and Armes cannot show substantial compliance with the laws of either California (*i.e.*, where this Court is located) or Utah (*i.e.*, where service was attempted). *See* Fed. R. Civ. P. 4(e)(1).

---

[15] The ineffective service attempts discussed herein pertain to the original Complaint (Dkt. No. 1). Armes has made no attempt to serve the Amended Complaint.

[16] Courts may consider evidence beyond the pleadings on a Fed. R. Civ. P. 12(b)(5) motion, including any proof of service and declarations. *See Verrecchia v. Aviss*, 2017 WL 9486151, at *4 (C.D. Cal. Nov. 8, 2017).

Service by certified mail is not effective under Utah law unless "*the defendant signs a document indicating receipt*."  Utah R. Civ. P. 4(d)(2)(A) (emphasis added).  Here, the messenger signed the certified mail receipt on behalf of "C Sampson" (Dkt. No. 18, p. 4), Post's on-site security guard, despite having no authority to do so.  Declaration of Cody Sampson dated May 29, 2020 ("Sampson Decl.") Decl. ¶¶ 3-4.  Because Post himself did not sign the mail receipt or any other document indicating receipt (Post Decl. ¶¶ 3-4), or even authorize same, he has not been properly served under Utah law.  *See, e.g.*, *Trentman v. Salazar*, 2010 WL 964426, at *2 (D. Utah Mar. 15, 2010) (service ineffective where no "documents signed by the individual defendants" were filed).[17]

Service by certified mail also is not effective under California law, Cal. Code Civ. Proc. § 415.30, because the required acknowledgment form was not even mailed to Post, much less signed and returned.  *See* Dkt. No. 18, p. 3 (listing documents); *see, e.g.*, *Duran v. Macias-Price*, 2007 WL 4554390, at *2 (E.D. Cal. Dec. 20, 2007) (service ineffective where mailing excluded acknowledgement form).

**C.      Armes' Attempt at "Substitute Service" on Dukes is Ineffective.**

According to the Proof of Service on Dukes (Dkt. No. 17), Armes purportedly effected "substitute service" by "[leaving] the documents with 'Jane Doe'" at 1991 N. Alexandria Ave. in Los Angeles, California (the "Alexandria Location").  *Id.*, p. 3.  This does not substantially comply with any method permitted under Fed. R. Civ. P. 4(e)(2) or California law.  Fed. R. Civ. P. 4(e)(1).

This appears to be an attempt to serve under Fed. R. Civ. P. 4(e)(2)(B), which permits a plaintiff to "leav[e] [process] at the individual's dwelling or usual place of

---

[17] The fact that the "agent" box is checked on the certified mail receipt is irrelevant.  Even if Utah R. Civ. P. 4(d)(2)(A) permitted signature by an agent (it does not), Mr. Sampson's "signature" would not qualify because he did not sign or check the "agent" box himself and had no actual authority to accept service for Post.  *See* Sampson Decl. ¶¶ 4-6; Post Decl. ¶ 5; *see also Sumarlin v. Asset Recovery Tr.*, 2008 WL 4922436, at *1 (D. Utah Nov. 14, 2008) ("agent who accepts service must be shown to have been authorized to bind his principal by the acceptance of process").

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

abode with someone of suitable age and discretion who resides there."  But neither Dukes nor the person with whom Armes' process server "left the documents," namely, Simon Hessman, reside at the Alexandria Location.  *See* Declaration of Frank Dukes dated May 27, 2020, ¶¶ 3-4;[18] *see also* 4A Charles A. Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice & Procedure § 1096 (4th ed. 2020) (someone "who resides there" "has long been held to mean that the recipient must be actually living" there); *Sloan v. 1st Am. Auto. Sales Training*, 2017 WL 10345469, at *5 (C.D. Cal. Jan. 27, 2017) (service invalid where defendant never lived at the address on the proof of service); *Hard Drive Prods. v. Doe*, 2012 WL 3945501, at *2 (N.D. Cal. Sept. 10, 2012) (service on defendant's "father and co-occupant" invalid where "father reside[d] in Illinois, and was visiting").

Armes' attempt to serve Dukes fares no better under California law, Cal. Code Civ. Proc. § 415.20(b), which only permits "substitute service" if the defendant cannot be personally served with "reasonable diligence."  *Bonita Packing Co. v. O'Sullivan*, 165 F.R.D. 610, 613 (C.D. Cal. 1995).  Armes has shown no measure of diligence here; the Proof of Service does not state that Armes (or his process server) made even one attempt to personally serve Dukes, much less the requisite "two or three attempts."  *Id.*; *see, e.g.*, *Shaw v. Sears*, 2009 WL 10697975, at *3 (C.D. Cal. Aug. 3, 2009) (service invalid where proof of service did "not contain any representation of due diligence by the process server, and omit[ted] a declaration that the process server 'made at least three (3) attempts to serve the defendant'").

//

//

//

---

[18] The Proof of Service incorrectly refers to the recipient as a "Caucasian female" and "Jane Doe" (Dkt. No. 17, p. 3), when in fact it was received by Mr. Hessman.

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

12172343

## VI.   <u>CONCLUSION</u>

For all the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss Armes' Amended Complaint with prejudice and without leave to replead.

Dated:  June 3, 2020                MITCHELL SILBERBERG & KNUPP LLP


By:   /s/ David A. Steinberg
DAVID A. STEINBERG
Attorneys for Defendants

24                CASE NO. 2:20-CV-03212-ODW-JPW

**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**