1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ALLISON S. HART (BAR NO. 190409)**
*ahart@lavelysinger.com*
**KELSEY J. LEEKER (BAR NO. 313437)**
*kleeker@lavelysinger.com*
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone:  (310) 556-3501
Facsimile:   (310) 556-3615

Attorneys for Plaintiff TYLER ARMES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER ARMES,<br><br>            Plaintiff,<br><br>      v.<br><br>AUSTIN RICHARD POST, publicly known as POST MALONE, an individual; ADAM KING FEENEY, publicly known as FRANK DUKES, an individual; UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; DOES 1 through 10, inclusive,<br><br>            Defendants. | CASE NO. 2:20-cv-03212-ODW(PJWx)<br><br>[Hon. Otis D. Wright, II – Crtrm 5D]<br><br>**PLAINTIFF TYLER ARMES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Date:      July 6, 2020<br>Time:     1:30 P.M.<br>Crtrm:    5D |

OPP TO MTD AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ........................................................ 1

II.  PLAINTIFF HAS COMPLIED WITH FEDERAL RULE OF CIVIL
     PROCEDURE 12(b)(7) ............................................... 3

     A.   Standard Under Federal Rule of Civil Procedure 12(b)(7) ........ 3

     B.   The Non-Party Songwriters are Not Necessary or Indispensable
          Parties. .................................................... 4

          1.   The Non-Party Songwriters Are Not Necessary Parties
               Where Armes Merely Seeks Declaration That He is Also
               Co-Author and Co-Owner. ............................... 4

          2.   If Necessary, It is Feasible To Join All Necessary Parties ...... 7

          3.   Non-Party Songwriters Are Not Indispensable Parties. .......... 10

III. DEFENDANTS' REQUEST TO TRANSFER THIS ACTION TO
     THE SOUTHERN DISTRICT OF NEW YORK IS
     DISINGENUOUS, IN BAD FAITH, AND SHOULD BE DENIED. .......... 11

     A.   Legal Standard Under 28 U.S.C. § 1404(a). ...................... 11

     B.   The First To File Rule Mandates That Plaintiff's Claims Be
          Adjudicated By This Court. ................................... 12

     C.   Defendants Have Failed To Make a Strong Showing of
          Inconvenience Such that Transfer Would Be Permitted. ............ 13

     D.   If the Court Finds A Factual Dispute Exists, Plaintiff Should Be
          Permitted Limited Jurisdictional Discovery. .................... 16

IV.  PLAINTIFF HAS SUFFICIENTLY PLED AUTHORSHIP OF
     RECORDING. ....................................................... 17

     A.   Legal Standard Under Fed. R. Civ. Proc. 12(b)(6). ............... 17

     B.   Plaintiff Has Pled Sufficient Facts to Support His Claim to
          Copyright Ownership of the Recording. ........................ 18

i

1     1.  Armes Has Sufficiently Alleged That He Created and

2       Gave Effect to Circles, Therefore Exercising Control. ............. 19

3     2.  Armes Alleges An Objective Manifestation of a Shared

4       Intent to be Co-Authors. ............................................................ 20

5     3.  Armes Alleges Facts to Support Audience Appeal for His

6       Contributions. .......................................................................... 20

7     4.  If the Court is Inclined to Grant Defendants Rule

8       12(b)(6) Motion, Plaintiff Should be Given Leave to

9       Amend. ..................................................................................... 21

10 V.  POST AND DUKES WERE EACH PROPERLY SERVED WITH

11    PROCESS IN THIS ACTION. ................................................................ 22

12   A.  Post Was Properly Served Under Civ. Proc. Code § 415.40. .............. 22

13   B.  Dukes Was Properly Served Under Civ. Proc. Code §

14     415.20(a). ........................................................................................ 23

15 VI.  CONCLUSION ............................................................................................ 24

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*America West Airlines, Inc. v. GPA Group, Ltd.*,
   877 F.2d 793 (9th Cir.1989) ................................................................ 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................. 17, 18

*Bein v. Brechtel-Jochim Grp., Inc.*,
   6 Cal. App. 4th 1387 (1992) ................................................................ 23

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir.1986) ................................................................ 16

*Cable Vision, Inc. v. KUTV Inc.*,
   335 F.2d 348 (9th Cir. 1964) ................................................................. 5

*Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*,
   No. 15-CV-02106-RS, 2015 WL 4463790 (N.D. Cal. July 21, 2015) .............. 11

*Coppola v. Smith*
   (ED CA 2013) 935 F.Supp.2d 993 ......................................................... 4

*Creative Dream Prods., LLC v. Houston*,
   No. 14-cv-7714, 2015 WL 12731915 (C.D. Cal. Apr. 2, 2015) .................. 19, 22

*E.E.O.C. v. Peabody W. Coal Co.*,
   400 F.3d 774 (9th Cir. 2005) ................................................. 3, 4, 7, 10

*Eagle Rock Entm't Inc. v. Coming Home Prods., Inc.*,
   No. CV 3–571 FMC, 2004 WL 5642002 *13 (C. D. Cal. Sept. 1, 2004)..... 19, 20

*F.I. duPont, Glore Forgan & Co. v. Chen*,
   41 N.Y.2d 794 (1977) ........................................................................ 23

*First Fin. Mktg. Servs. Grp., Inc. v. Field Promotions, Inc.*,
   286 F. Supp. 295 (S.D.N.Y. 1968) ......................................................... 6

*Followay Prods., Inc. v. Maurer*,
   603 F.2d 72 (9th Cir. 1979) .................................................................. 6

iii

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ........................................................................ 8

*Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*,
    820 F. Supp. 503 (C. D. Cal. 1992) ......................................... 11, 12, 16

*Hearn v. Howard*,
    177 Cal. App. 4th 1193 (2009) ...................................................... 23

*In Fahmy v. Jay-Z (Aka Shawn Carter)*,
    No. CV07-5715 CAS (EX), 2008 WL 11284593 (C.D. Cal. Mar.
    19, 2008) ............................................................................................ 9

*Inglis v. InfrAegis, Inc.*,
    No. 10-CV-1914 ............................................................................... 15

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ........................................................................ 14

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ........................................................ 12

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) .......................................................................... 8

*Laub v. U.S. Dep't of Interior*,
    342 F.3d 1080 (9th Cir. 2003) ...................................................... 16

*Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*,
    507 U.S. 163 (1993) ........................................................................ 17

*Medforms, Inc. v. Healthcare Management Solutions, Inc.*,
    290 F.3d 98 (2d Cir. 2002) ............................................................ 19

*Hood ex rel. Mississippi v. City of Memphis, Tenn.*
    (5th Cir. 2009) 570 F.3d 625 .......................................................... 3

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir. 1990) ...................................................... 21

*NCR Corp. v. First Fin. Computer Serv., Inc.*,
    492 F.Supp.2d 864 (S.D.Ohio 2007) ............................................ 12

*Pareto v. F.D.I.C.*,
    139 F.3d 696 (9th Cir. 1998) ........................................................ 17

iv

*Reinsdorf v. Skechers U.S.*
    *A.*, 922 F. Supp. 2d 866 (C.D. Cal. 2013)...........................................18, 19, 20, 21

*Robertson v. Burdon*,
    No. EDCV1800397JAKSHKX, 2019 WL 2141971 (C.D. Cal. Apr.
    3, 2019)................................................................................................18, 19

*S.O.S., Inc. v. Payday, Inc.*,
    886 F.2d 1081 (9th Cir. 1989)...........................................................................19

*SASCO v. Byers*,
    No. C 08-5641 JF (RS), 2009 WL 1010513 (N.D. Cal. Apr. 14, 2009)...............6

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986)...........................................................................21

*Smith v. Pacific Prop. & Dev. Corp.*,
    358 F.3d 1097 (9th Cir. 2004)...........................................................................17

*Stewart Org. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ............................................................................................11

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) ..........................................................................................17

*Taylor v. Universal Music Corporation, Inc.*
    (C.D. Cal., Mar. 10, 2014, No. CV1306412RGKAJWX) 2014 WL
    12607685 ..............................................................................................................5

*Tech. Credit Corp. v. N.J. Christian Acad., Inc.*,
    307 F. Supp. 3d 993 (N.D. Cal. 2018)...........................................................11, 15

*Tinoco v. San Diego Gas & Elec. Co.*,
    327 F.R.D. 651 (S.D. Cal. 2018) .........................................................................6

*Unicorn Glob., Inc. v. Hillo Am., Inc.*,
    No. LACV1903028JAKAFMX, 2020 WL 2062256 (C.D. Cal. Apr.
    29, 2020)...............................................................................................................8

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..........................................................................................14

*Warren v. Fox Family Worldwide, Inc.*,
    171 F. Supp. 2d 1057 (C.D. Cal. 2001)............................................................19

v

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
   556 F.2d 406 (9th Cir.1977) ................................................................ 16

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*,
   16 F. App'x 433 (6th Cir.2001) .......................................................... 12

*Zimmer Enters, Inc. v. Atlandia Imports, Inc.*,
   478 F.Supp.2d 893 (S.D.Ohio 2007) .................................................. 12

**Statutes**

17 U.S.C. § 101 .................................................................................... 18

17 U.S.C. § 201(a) ................................................................................. 7

28 U.S.C. § 1391(b) .............................................................................. 14

28 U.S.C. § 1404(a) ................................................................ 1, 11, 15, 16

28 U.S.C. § 1746 .................................................................................... 7

Cal. Code Civ. Proc. § 415.20(a) ..................................................... 23, 24

Cal. Code Civ. Proc. § 415.30 .............................................................. 22

Cal. Code Civ. Proc. § 415.40 .............................................................. 22

Cal. Code Civ. Proc. § 2015.5 ............................................................... 7

**Other Authorities**

Copyrights, Patents, and Trademarks, 7 Fed. Prac. & Proc. Civ. § 1614 (3d ed.) ..... 6

Fed. R. Civ. P. 4(e)(1) .......................................................................... 22

Fed. R. Civ. P. 12(b)(5) ..................................................................... 1, 3

Fed. R. Civ. P. 12(b)(6) ............................................................... 1, 17, 21

Fed. R. Civ. P. 12(b)(7) ..................................................................... 1, 3

Fed. R. Civ. P. 19 ..................................................................... 3, 4, 5, 7, 10

OPP TO MTD AMENDED COMPLAINT

1     **I.**      <u>**INTRODUCTION**</u>

2          Plaintiff Tyler Armes ("Plaintiff" or "Armes") hereby opposes the Motion to

3 Dismiss by Defendants Austin Richard Post p/k/a Post Malone ("Post"), Adam

4 King Feeney p/k/a Frank Dukes ("Dukes") and Universal Music Group, Inc.

5 ("UMG") (collectively "Defendants"). Defendants move to dismiss Plaintiff's First

6 Amended Complaint ("FAC") on grounds that (a) Plaintiff has allegedly failed to

7 join necessary and indispensable parties [Fed. R. Civ. P., Rules 12(b)(7) and 19];

8 (b) based on the alleged convenience of the parties, this action should be transferred

9 to the Southern District of New York [28 U.S.C. § 1404(a)]; (c) Plaintiff has

10 allegedly failed to allege facts sufficient to state a claim with respect to the sound

11 recording of the song entitled "Circles" (the "Sound Recording") [Fed. R. Civ. P.

12 12(b)(6)], and; (d) Plaintiff has allegedly failed to properly serve Defendants Post

13 and Dukes with service of process [Fed. R. Civ. P. 12(b)(5)]. As discussed herein,

14 none of the foregoing defenses to the FAC has any merit whatsoever, therefore, the

15 Motion should be denied in its entirety.

16          This action arises from a dispute between Plaintiff and Defendants

17 concerning the authorship of the composition of the song entitled "Circles" (the

18 "Composition") and the Sound Recording of "Circles", one of the most

19 commercially and critically successful songs released by Post[1] to date. Armes is an

20 award winning professional songwriter, musician and record producer. FAC, ¶ 2.

21 In August 2018, ***Armes was invited to join Post and Dukes at Dukes' studio in***

22 ***Toronto, Canada for the specific purpose of collaborating with Post and co-***

23 ***writing music together***. FAC, ¶¶ 3 and 13-15. The direct result of that collaboration

24 is the song "Circles," for which Armes co-wrote Composition, including the

25 bassline, guitar melody and chords. FAC, ¶ 16. Armes also directed the tempo,

26 instrumentation, arrangement and unique "reverb" sound which are embodied in the

27 Sound Recording. FAC, ¶¶ 17-18. Notwithstanding the foregoing, and despite

28

---

[1] Post is a well-known singer, songwriter, rapper and record producer.

Post's admission that Armes co-wrote "Circles" (FAC, ¶¶ 22-23), Defendants have refused to credit Armes as a co-author of the Composition or the Sound Recording and have refused to account to Armes for the profits generated from the exploitation of the Composition and Sound Recording.

Defendants' assertion that this action represents an "age-old" story in the music business (Motion at 1:8) is only partially correct.  However, contrary to Defendant's thoroughly fictional account of events, this is not a story of an individual falsely claiming credit for a hit song and demanding an unearned "windfall".  This is the story of an immensely talented, but lesser known and less commercially successful artist who made substantial contributions as a joint author of Post's hit song "Circles" – at the direct invitation of Post's manager – but was squeezed out and denied the credit and profits he is due in favor of Defendants, and Post's and Dukes' frequent collaborators and cronies, Louis Bell ("Bell"), Billy Walsh ("Walsh") and Kaan Gunesberk ("Gunesberk") (collectively the Non-Party Songwriters")[2] – none of whom were present when virtually every element other than the lyrics of the song was composed. FAC, ¶ 24.

As discussed herein, Defendants have failed to meet their burden of establishing that the Non-Party Songwriters are necessary and indispensable parties in this action.  To the contrary, complete relief may be awarded to Plaintiff in their absence, and if Plaintiff prevails, the Non-Party Songwriters' rights will not be adversely impacted.  Therefore, they are neither necessary nor indispensable.

---

[2]  Indeed, Post, Dukes, Bell and Walsh are all managed by Electric Feel Management and its founder, Austin Rosen.  Hart Decl., ¶ 4, Ex. C – December 26, 2019 *Variety* Article entitled, "In 2019, Producer Management Was a Booming Music Business"["The indie management label's founder and CEO Austin Rosen has curated an envious roster of A-list producers, including Louis Bell (pictured), named *Variety*'s Hitmakers producer of the year earlier this month for his work with Post Malone and the Jonas Brothers, Frank Dukes (Camila Cabello's "Havana") and Billy Walsh, not to mention Post himself, among Electric Feel's artist management clients. The magic happens at the Electric Feel studio on Sunset Blvd., where some of the biggest pop hits this decade were made."].

1    Defendants' request that this action be transferred to the Southern District of
2    New York can best be described as thoroughly disingenuous and completely
3    without merit.  All of the parties to this action are in California, and two of the three
4    Non-Party Songwriters are in California.  Although Post has separately filed a
5    parallel action in the Southern District of New York seeking a declaration that
6    Armes is not the co-owner of the copyright to the Composition (the "New York
7    Action"), he did so only *after* this action was first filed by Armes. This case has
8    virtually no connection to New York and the convenience of the parties and the
9    witnesses weighs heavily in favor of adjudication of this action in the Central
10   District of California.

11       The remaining grounds for Defendants' Motion are also lacking in merit.
12   Accepting Plaintiff's allegations in the FAC as true and applying the liberal
13   pleading notice pleading standards, Plaintiff has alleged more than sufficient facts
14   to support his claim to copyright ownership in the Sound Recording.

15       Likewise, the evidence in this case shows that both Post and Dukes have
16   properly been served with the Summons and Complaint in this action in accordance
17   with California law.  Therefore, Defendants' specious motion to dismiss this action
18   pursuant to Fed. R. Civ. P. 12(b)(5) should be rejected.

19       For all of the foregoing reasons and as discussed herein, Plaintiff respectfully
20   requests that Defendants' Motion be denied in its entirety.

21   **II.    PLAINTIFF HAS COMPLIED WITH FEDERAL RULE OF CIVIL**
22   **PROCEDURE 12(b)(7)**

23       **A.    Standard Under Federal Rule of Civil Procedure 12(b)(7)**

24       A three-step analysis is used to determine if a party is required to be joined
25   under Federal Rule of Civil Procedure 19 ("Rule 19"). *E.E.O.C. v. Peabody W.*
26   *Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). First, a court must determine whether
27   a nonparty is necessary under Rule 19(a). *Id*. As the moving party, Defendants have
28   the initial burden of demonstrating that the missing party is "necessary." *Hood ex*

1   *rel. Mississippi v. City of Memphis, Tenn.,* 570 F.3d 625, 628 (5th Cir.
2   2009); *Coppola v. Smith,* 935 F. Supp. 2d 993, 1036(ED CA 2013).

3          If the absentee parties are found to be necessary, the court must then
4   determine whether it is feasible for the absentee party to be joined such that subject
5   matter and personal jurisdiction exist and venue is proper. *Peabody*, 400 F.3d at
6   779 (citing Fed. R. Civ. P. 19(a)).

7          In the event it is not feasible to join the absent party, the court must decide
8   "whether the case can proceed without the absentee, or whether the absentee is an
9   'indispensable party' such that the action must be dismissed." *Id.*; Fed. R. Civ. P.
10  19(b). An indispensable party is one which "not only [has] an interest in the
11  controversy, but an interest of such a nature that a final decree cannot be made
12  without either affecting that interest, or leaving the controversy in such a condition
13  that its final termination may be wholly inconsistent with equity and good
14  conscience." *Id.* at 780 (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1855)); *see*
15  *also* Fed. R. Civ. P. 19(b).

16   **B.     The Non-Party Songwriters are Not Necessary or Indispensable**
17   **Parties.**

18         **1.     The Non-Party Songwriters Are Not Necessary Parties**
19                **Where Armes Merely Seeks Declaration That He is Also Co-**
20                **Author and Co-Owner.**

21          Defendants wrongly argue that it is "settled law" that all "copyright
22  owners are 'necessary' and 'indispensable' to any copyright action that could affect
23  their copyright interests, including actions, such as this one, seeking a declaration as
24  to ownership of the copyrighted work." Motion at 5. Not true. Indeed, none of the
25  authorities cited by Defendants in the Motion support this proposition. Instead,
26  Defendants have taken self-serving statements from a variety of copyright
27  infringement cases that are inapposite to the facts in the instant case in a misguided
28  attempt to cobble together an argument that the Non-Party Songwriters must be

4

necessary and indispensable parties solely because they are credited as co-authors of the Composition.

"A person is "necessary" if either (1) the court could not grant complete relief in his absence, or (2) disposing of the action in his absence would impair his ability to protect his interest in the subject matter of the action, or might expose an existing party to multiple or inconsistent obligations. Fed. R. Civ. P. 19(a); *Taylor v. Universal Music Corporation, Inc.,* No. CV1306412RGKAJWX) 2014 WL 12607685, at *2 (C.D. Cal., Mar. 10, 2014).  Based on the foregoing, the Non-Party Songwriters are not necessary to this action.

Plaintiff has no personal knowledge of the Non-Party Songwriters' respective contributions to the Composition and/or Sound Recording, if any, other than the fact that, besides the lyrics, everything reflected in the Composition and Sound Recording was conceived of during the songwriting session between Armes, Post and Dukes at Dukes' studio on August 8, 2018.  FAC, ¶ 19.  That said, Plaintiff is not challenging the Non-Party Songwriters' copyright ownership claim to the Composition or in any way impair the Non-Party Songwriters' ability to protect their interest in the copyright. Plaintiff is only seeking a declaration that he is a joint author of the Composition and the Sound Recording. As such, the court may grant complete relief in this action in the absence of the Non-Party Songwriters, and their ability to protect their own copyright interests will in no way be impaired if they are not joined.

The authorities relied on by Defendants for the proposition that all copyright owners must be joined as indispensable parties in any action involving a copyright are easily distinguishable on the facts.  Those cases each involve a situation in which a plaintiff (such as an exclusive licensee) brings an action for copyright infringement where the copyright owner is not joined as a plaintiff. *See Cable Vision, Inc. v. KUTV Inc.*, 335 F.2d 348, 353-54 (9th Cir. 1964) (an exclusive licensee may not alone maintain a copyright infringement action without the

5

OPP TO MTD AMENDED COMPLAINT

copyright owner joining as plaintiff); *First Fin. Mktg. Servs. Grp., Inc. v. Field Promotions, Inc.*, 286 F. Supp. 295, 298 (S.D.N.Y. 1968) (discussing copyright infringement where no copyright owner was joined); Copyrights, Patents, and Trademarks, 7 Fed. Prac. & Proc. Civ. § 1614 (3d ed.) ("Actions concerning patents, copyrights, and trademarks commonly are suits for infringement or declaratory-judgment actions seeking to establish noninfringement or invalidity. In either case the rules for determining who must be joined are the same. In infringement suits, the owner of the right traditionally has been treated as a party who must be joined. Moreover, when the patent or copyright is jointly owned the joinder of all the proprietors has been required.").

This argument stems from the rule that "the owner of a copyright is an indispensable party to an infringement action by a licensee against a stranger. The source of this concept is the ancient rule that the exclusive licensee of a patent or a copyright must bring an infringement action in the name of the owner of the patent or copyright." *Followay Prods., Inc. v. Maurer*, 603 F.2d 72, 74 (9th Cir. 1979). As such, it is not applicable here, where Armes is not seeking redress for copyright infringement, but a determination that he is a co-author and co-owner of the copyright itself.

Armes does not contend that the Non-Party Songwriters are not also co-writers and co-owners of *Circles*. Armes simply seeks a determination that he is as well. The inquiry into whether the non-parties are "necessary" involves "whether the Court can accord complete relief among the existing parties in the [non-parties'] absence." *Tinoco v. San Diego Gas & Elec. Co.*, 327 F.R.D. 651, 658 (S.D. Cal. 2018). "[A] defendant's possible right of reimbursement, indemnity, or contribution against an absent party is not sufficient to make the absent party indispensable to the litigation." *SASCO v. Byers*, No. C 08-5641 JF (RS), 2009 WL 1010513, at *2 (N.D. Cal. Apr. 14, 2009).  Thus, the fact that the joint copyright owners may owe a duty to account to Armes for any profits derived from the exploitation of the

OPP TO MTD AMENDED COMPLAINT

Composition [17 U.S.C. § 201(a)] is not a basis for the court to find them to be necessary or indispensable parties.

Because complete relief can be awarded as between the current parties, the Non-Party Songwriters are not "necessary" under Rule 19.

### 2.     If Necessary, It is Feasible To Join All Necessary Parties.

If the Court finds that the Non-Party Songwriters are necessary parties – which they are not – in order for dismissal to be proper, Defendants must still show that joinder of all necessary parties is not "feasible." "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *Peabody,* 400 F.3d at 779.

The evidence submitted by Defendants in support of their argument that it is not feasible to join the Non-Party Songwriters is misleading and disingenuous. Defendants' counsel has attached as exhibits to his Declaration in support of the Motion Declarations of the Non-Party Songwriters, each of which contains the self-serving statement that he is a co-author of the Composition, he does not consent to be named as a party to this action, he will not cooperate with discovery in this action, or to be bound by a judgment issued by this court. Conveniently, however, they will agree to consent to the jurisdiction of the Southern District of New York, cooperate in discovery in the New York Action and be bound by a judgment in New York.  Steinberg Decl., Ex. 1 – Bell Decl., ¶¶ 2-3 and 6-8; Ex. 2 – Gunesberk Decl., ¶¶ 2-3 and 10-12; Ex. 3 – Walsh Decl., ¶¶ 2-3 and 6-8.[3]

Although Bell and Walsh purportedly will not consent to the court's jurisdiction in this action or cooperate with discovery, glaringly absent from their

---

[3]  Plaintiff objects to the admission of each of the Non-Party Declarations as inadmissible hearsay.  In addition, the Declarations of Bell and Gunesberk are inadmissible on grounds that the Declarations are not properly subscribed and sworn under California law, since those Declarations were not signed by the declarants, but instead contain an electronic "DocuSign" signature.  Cal. Code Civ. Proc. § 2015.5.  Gunesberk's Declaration is further inadmissible because in addition to being unsigned, it is also undated.  28 U.S.C. § 1746.

7

Declarations and Defendants' Motion is the fact that both Bell and Walsh reside in Los Angeles, California.  Armes Decl., ¶ 4; Hart Decl., ¶ 5, Ex. D.  Thus, Bell's and Walsh's purported agreement to consent to jurisdiction in New York but not California is both disingenuous and suspect, considering their close ties to Post and Dukes and the fact that Post, Dukes, Bell and Walsh share the same management. Hart Decl., ¶ 4, Ex. C.

Indeed, Defendants do not contend that Bell and Walsh are not subject to personal jurisdiction in California, or that the joinder of any Non-Party Songwriter would destroy subject matter jurisdiction. Defendants' only argument in support of dismissal for non-joinder of indispensable parties is that it is not feasible to join Gunesberk, who claims to be a Canadian citizen and resident, because Defendants claim without any evidentiary support that the this court lacks personal jurisdiction over Gunesberk.  Defendants have utterly failed to meet their burden on this issue. *See Unicorn Glob., Inc. v. Hillo Am., Inc*., No. LACV1903028JAKAFMX, 2020 WL 2062256, at *2 (C.D. Cal. Apr. 29, 2020) ("The moving party bears the burden of persuasion on this issue").

Although Gunesberk claims to be a citizen and resident of Canada, there is no evidence before the Court establishing that the Court would not have either general or specific jurisdiction over Gunesberk in this action. The inquiry into whether a forum state may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 775 (1984). "Specific" or "case-linked" jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

The only statement in Gunesberk's declaration related to his affiliations with California in connection with this controversy is his statement that, "All of my

8

1  work on the Circles Composition was done in a recording studio in Toronto,

2  Canada." Steinberg Decl., Ex. 2 – Gunesberk Decl., ¶ 8. Gunesberk's physical

3  presence in Toronto, Canada is not dispositive of the issue of whether he was linked

4  to this forum for the purposes of the underlying facts.  For example, Dukes

5  admittedly owns and operates a recording studio in Los Angeles, California (Dukes

6  CA Decl., ¶ 3), and Defendants do not contest that both Dukes and Post are

7  residents of California, as are the other Non-Party Songwriters, Bell and Walsh.  As

8  such, jurisdictional discovery could easily reveal that Gunesberk has had extensive

9  contact with the state of California while working on "Circles", including

10  contracting, telephoning, emailing, speaking with, texting, and otherwise

11  collaborating with Defendants and the other Non-Party Songwriters in Los Angeles.

12  In addition to his contacts with Defendants and the other Non-Party Songwriters, it

13  is possible that Gunesberk has otherwise purposefully availed himself of the forum

14  state, including by having an agent, manager, attorney and/or other representatives

15  in the music industry, in Los Angeles. Gunesberk's self-serving statements that all

16  of his work on the Composition was allegedly physically performed in Toronto, and

17  that he does not consent to this Court's jurisdiction do not, by themselves, take

18  Gunesberk beyond the reach of this Court's jurisdiction.

19      While Plaintiff disagrees that the Non-Party Songwriters are necessary

20  parties to begin with, should the court find otherwise, the Court should stay this

21  action to permit Plaintiff to engage in jurisdictional discovery to determine whether

22  there are facts supporting this Court's assertion of personal jurisdiction over

23  Gunesberk.  *In Fahmy v. Jay-Z (Aka Shawn Carter),* No. CV07-5715 CAS (EX),

24  2008 WL 11284593, at *1 (C.D. Cal. Mar. 19, 2008) ("After hearing the parties'

25  arguments, the Court continued the hearing on defendants' motion to dismiss, and

26  granted the parties forty-five (45) days within which to conduct limited

27  discovery.").

28

6820-2\OPP TO MTD 061020                                    OPP TO MTD AMENDED COMPLAINT

### 3.    Non-Party Songwriters Are Not Indispensable Parties.

"Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." *Peabody*, 400 F.3d at 779. Rule 19 lists factors the Court must consider when determining whether a party is "indispensable," or in other words, if "in his absence it would be preferable to dismiss the action, rather than to retain it." *Id*.

Here, it cannot be said that the Non-Party Songwriters are indispensable because Plaintiff only seeks a determination that he was a co-author and co-owner of the copyright to Composition.  Plaintiff is not challenging the Non-Party Songwriters' co-ownership of the copyright to the Composition or in any way adversely affect the Non-Party Songwriters' rights. Plaintiff is informed that the percentage of profits the Non-Party Songwriters are entitled to receive from the exploitation of the Composition has been contractually agreed to between the Non-Party Songwriters, Post and Dukes.  Plaintiff is not seeking to interfere with any contract between Defendants and the Non-Party Songwriters or otherwise take away from their share of the profits derived from the exploitation of the Composition.  Rather, since virtually the entirety of the Composition other than the lyrics was written during the writing session between Armes, Post and Dukes on August 8, 2018, should Armes prevail in this action, his share of the profits from the exploitation of the Composition should come from that of Post and Dukes.

Based on the foregoing, Defendants' motion to dismiss under Rule12(b)(7) should be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

6820-2\OPP TO MTD 061020                                    OPP TO MTD AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.   DEFENDANTS' REQUEST TO TRANSFER THIS ACTION TO THE SOUTHERN DISTRICT OF NEW YORK IS DISINGENUOUS, IN BAD FAITH, AND SHOULD BE DENIED.

### A.   Legal Standard Under 28 U.S.C. § 1404(a).

Under 28 U.S.C. § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). However, generally, "a court treats a plaintiff's choice of forum with significant deference." *Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc.*, No. 15-CV-02106-RS, 2015 WL 4463790, at *3 (N. D. Cal. July 21, 2015) (citing *Decker Coal Co v. Commonwealth Edison Co*., 805 F.2d 834, 843 (9th Cir.1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.")). "The moving party bears the burden of making a strong showing that transfer is warranted." *Tech. Credit Corp. v. N.J. Christian Acad., Inc*., 307 F. Supp. 3d 993, 1003 (N. D. Cal. 2018).

To support their motion for transfer, the burden is on the defendants to demonstrate: "(1) that the venue is improper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice." *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp*., 820 F. Supp. 503, 506 (C. D. Cal. 1992).

If venue is proper in either district, a district court evaluates several further (private and public) factors:

> (1) plaintiff's initial choice of forum; (2) the convenience of the witnesses—the ability to mandate attendance of unwilling witnesses and the cost of obtaining willing witnesses; (3) where the events took place, and the relative ease of access to sources of proof; (4) convenience of the parties; and (5) all other practical considerations that make the trial of a case easy, expeditious and inexpensive.

11

1   *Goodyear Tire*, 820 F. Supp. at 507 (citing *Decker Coal Co. v. Commonwealth*

2   *Edison Co.*, 805 F.2d 834, 842–43 (9th Cir.1986)); *see also Jones v. GNC*

3   *Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) (holding that trial court did

4   not abuse its discretion in denying motion to transfer venue where extent of parties

5   contacts favored California and more of the relevant witnesses and proof were

6   located in California, among other reasons).  In this case, each of the foregoing

7   factors weighs heavily in favor of denial of Defendants' request to transfer this

8   action to the Southern District of New York.

9          **B.      The First To File Rule Mandates That Plaintiff's Claims Be**

10                   **Adjudicated By This Court.**

11         The first-to-file doctrine "provides [that] when actions involving nearly

12   identical parties and issues have been filed in two different district courts, 'the court

13   in which the first suit was filed should generally proceed to judgment.'" *Zide Sport*

14   *Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.,* 16 F. App'x 433, 437 (6th

15   Cir.2001) (quoting *In re Burley,* 738 F.2d 981, 988 (9th Cir. 1984)). "This rule is a

16   well-established doctrine that encourages comity among federal courts of equal

17   rank." *Zimmer Enters, Inc. v. Atlandia Imports, Inc.,* 478 F. Supp .2d 893, 988 (S.

18   D. Ohio 2007). District courts use three factors to determine whether the first-to-file

19   doctrine warrants the invocation of their discretion to transfer or otherwise dispose

20   of a case: "(1) the chronology of the actions; (2) the similarity of the parties

21   involved; and (3) the similarity of the issues at stake." *NCR Corp. v. First Fin.*

22   *Computer Serv., Inc.,* 492 F. Supp. 2d 864, 866 (S. D. Ohio 2007) (citation

23   omitted).

24         Here, the Complaint in this action was filed by 8:53 a.m. Pacific Time on

25   April 7, 2020.  Hart Decl., ¶ 2, Ex. A.  The tabloid news website TMZ.com reported

26   on Armes' lawsuit against Defendants at 9:12 a.m. Pacific Time, and stated that

27   Post's representatives did not respond to a request for comment. Hart Decl., ¶ 3, Ex.

28   B.  It was not until over three hours later that Plaintiff learned that Post had filed a

12

separate lawsuit against Armes directly mirroring the Complaint in this action, but seeking a judicial declaration that Armes is not the co-owner of the Composition. *Id*. There is no question that Armes' Complaint in this action was filed before Post's Complaint in the Southern District of New York, nor do Defendants dispute this fact.

There is direct overlap among the parties to this action and the NY Action in that Post is the sole Plaintiff and Armes is the sole Defendant. Despite Defendants' argument in this case that all copyright owners are necessary and indispensable parties to a copyright action, neither Dukes nor any of the Non-Party Songwriters is a named party to the NY Action, nor is UMG (who Defendants claim is the sole owner of the copyright to the Sound Recording) a party.

The issues at stake in this action and the NY Action are virtually identical – namely, whether Armes is a co-author of the Composition and joint owner of the copyright thereto.

Based on the foregoing, the Court should exercise its discretion in this case to refuse to transfer this action to the Southern District of New York.

### C.   <u>Defendants Have Failed To Make a Strong Showing of Inconvenience Such that Transfer Would Be Permitted.</u>

Defendants argue that "this action unquestionably could have been brought initially in the Southern District of New York," largely because in a blatant example of forum shopping, Post filed a parallel action in New York after learning that Armes had filed this action. Motion at 8. This argument misses the mark for multiple reasons.

To start, venue is not proper in the Southern District of New York. A civil action such as this may be brought in: (1) a district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a district wherein a substantial part of the events or omissions giving rise to the action occurred; or (3) if and only if there is no district in which the action could otherwise

13

be brought, then any district in which any defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b). Here, all of the parties to this action are California residents.  Defendants do not deny that Armes, Post, and Dukes are each residents of California, and UMG has its principal place of business in Los Angeles, California. FAC ¶¶ 7-10; Armes Decl., ¶ 2. As such, the first prong of the test to determine proper venue cannot be satisfied.

Additionally, the events giving rise to this action have no connection to New York.  Armes collaboration with Post and Dukes that resulted in the joint authorship of the song "Circles" occurred in Toronto, Canada. FAC ¶¶ 14-18. As for the third prong, the action can be, and has been, brought in this district. As such, venue is not proper in the Southern District of New York.

Moreover, the Southern District of New York lacks personal jurisdiction over Armes, because he lacks the requisite "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotations omitted). Specifically, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Armes has resided and worked in Los Angeles, California since 2014.  Armes Decl., ¶ 2.  Armes does not own property or conduct business in the State of New York.  Armes Decl., ¶ 3. In short, there is almost no connection between Armes' conduct and the State of New York.  As such, Armes will seek dismissal of the New York action in favor of litigating this dispute in California, where all of the individual defendants reside, where UMG has its principal place of business and where two of the three Non-Party Songwriters reside. FAC ¶¶ 8-10; Armes Decl., ¶¶ 2-4; Hart Decl. ¶ 5, Ex. D.

Despite Defendants' contentions to the contrary, the private and public factors weigh heavily in favor of litigating this matter in the Central District of California:

14

*Plaintiff's Choice of Forum*. Plaintiff Armes chose the Central District of California in which to bring this action and "[i]n order to transfer a case under § 1404(a), the 'defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum.'" *Inglis v. InfrAegis, Inc.*, No. 10-CV-1914 H (JMA), 2010 WL 11684821, at *5 (S.D. Cal. Dec. 20, 2010); *see also Tech. Credit Corp.*, 307 F. Supp. 3d at 1009 ("As the plaintiff in this action, TCC's choice of forum is given deference . . . . defendants have not made a sufficiently strong showing of inconvenience to overcome TCC's choice."). Defendants have not come close to meeting this burden of a strong showing of inconvenience.

*Convenience of Witnesses*. It appears that Defendants argument that the convenience of the witnesses favors transferring this action to New York solely because Gunesberk is a citizen of Canada is absurd and thoroughly disingenuous. Motion at 10. Glaringly absent from the Motion is the fact that Plaintiff, Post and Dukes all reside in California, and two of the Non-Party Songwriters reside in California.  The fact that a single witness resides in Canada in no way supports transferring this action to New York when all of the parties and all but one of the principal witnesses is in California.

*Where the Events Took Place*. As conceded by Defendants, the "operative facts occurred in Toronto," and therefore that factor is neutral. Motion at 11.

*Convenience of the Parties*. This factor weighs strongly in favor of California where Armes, Post, and Dukes reside in Los Angeles, California – which is uncontradicted by the declarations filed by Post and Dukes in support of the Motion – and where UMG has its principle place of business.

*All Other Considerations*. On the morning of April 7, 2020, Armes filed the Complaint in this action in the Central District of California, which was immediately picked up by the celebrity news website, TMZ.com. Just a few hours after TMZ.com published a story about the filing of the Complaint, Post filed the NY Complaint, seeking the mirror opposite relief as Armes sought in the CA

15

1   Complaint. This blatant forum shipping designed to make litigation more costly and

2   burdensome for Armes, who is a California resident, should not be permitted or

3   encouraged. *See Goodyear Tire*, 820 F. Supp. at 508 (forum shopping supports

4   denial of motion to transfer).

5          Because venue is not proper in the Southern District of New York and

6   because virtually all of the public and private factors weigh in favor of this action

7   being litigated in this district, the Court should deny Defendants' request to transfer

8   under 28 U.S.C. § 1404(a).

9          **D.      If the Court Finds A Factual Dispute Exists, Plaintiff Should Be**

10               **Permitted Limited Jurisdictional Discovery.**

11          In California, "the question of whether to allow discovery is generally within

12   the discretion of the trial judge. However, where pertinent facts bearing on the

13   question of jurisdiction are in dispute, discovery should be allowed." *America West*

14   *Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir.1989); *see also Wells*

15   *Fargo & Co. v. Wells Fargo Express Co*., 556 F.2d 406 (9th Cir.1977) (finding that

16   "[d]iscovery ... 'should be granted where pertinent facts bearing on the question of

17   jurisdiction are controverted ... or where a more satisfactory showing of the facts is

18   necessary.'"); *Butcher's Union Local No. 498 v. SDC Inv., Inc*., 788 F.2d 535, 540

19   (9th Cir.1986) (citation omitted) ("discovery should ordinarily be granted where

20   pertinent facts bearing on the question of jurisdiction are controverted or where a

21   more satisfactory showing of the facts is necessary."); *Laub v. U.S. Dep't of*

22   *Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("Because additional discovery would

23   be useful to establish federal subject matter jurisdiction, and because [certain facts

24   are] contested, we reverse the district court's decision not to permit discovery.").

25   Jurisdictional discovery should also be permitted simply where "more facts are

26   needed." *Laub*, 342 F.3d at 1093.

27

28

6820-2\OPP TO MTD 061020                                  OPP TO MTD AMENDED COMPLAINT

1    As such, if this Court determines that there are contested facts, Plaintiff

2    should be permitted to conduct limited jurisdictional discovery to resolve those

3    issues.

4    **IV.   PLAINTIFF HAS SUFFICIENTLY PLED AUTHORSHIP OF**

5    **RECORDING.**

6        **A.    Legal Standard Under Fed. R. Civ. Proc. 12(b)(6).**

7        "The Federal Rules of Civil Procedure do not require a claimant to set out in

8    detail the facts upon which he bases his claims. To the contrary, all the rules require

9    is a 'short and plain statement of the claim' that will give the defendant fair notice

10   of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v.*

11   *Sorema N.A.*, 534 U.S. 506, 507 (2002) (quoting Fed. R. Civ. Proc. 8(a)(2)). Thus,

12   in order for Plaintiff's claims to survive a 12(b)(6) motion, the claims need only

13   state a simple claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556

14   U.S. 662, 663-64 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556

15   (2007)).

16       In evaluating a Rule 12(b)(6) motion, the court accepts as true all non-

17   conclusory, factual allegations made in the complaint. *See id.*; *see also Pareto v.*

18   *F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *see also Leatherman v. Tarrant Cnty.*

19   *Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993). Based

20   upon these allegations, the court then draws all reasonable inferences in favor of the

21   plaintiff. *See Iqbal*, 556 U.S. 662, 679; *see also Barker v. Riverside County Office*

22   *of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009). Moreover, the Court must assume that

23   general allegations embrace the necessary, specific facts to support the claim. *Smith*

24   *v. Pacific Prop. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004).

25       Second, after accepting as true all non-conclusory allegations and drawing all

26   reasonable inferences in favor of the plaintiff, the court then determines whether the

27   complaint alleges a plausible claim for relief. *See Iqbal,* 556 U.S. 662, 678-679. "A

28   claim has facial plausibility when the plaintiff pleads factual content that allows the

6820-2\OPP TO MTD 061020                                          OPP TO MTD AMENDED COMPLAINT

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## B.   Plaintiff Has Pled Sufficient Facts to Support His Claim to Copyright Ownership of the Recording.

A joint work is defined by the Copyright Act as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "The Ninth Circuit has explained that under these principles, 'for a work to be a 'joint work' there must be (1) a copyrightable work, (2) two or more 'authors,' and (3) the authors must intend their contributions be merged into inseparable or interdependent parts of a unitary whole.'" *Robertson v. Burdon*, No. EDCV1800397JAKSHKX, 2019 WL 2141971, at *7 (C. D. Cal. Apr. 3, 2019) (citing *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000) (decided on summary judgment)); *see also Reinsdorf v. Skechers U.S.*A., 922 F. Supp. 2d 866, 871 (C. D. Cal. 2013). "If sufficiently alleged, this theory can support a claim for a declaratory judgment as to joint ownership, and an accounting for profits attributable to the songs in which Robertson claims joint ownership." *Robertson*, 2019 WL 2141971, at *7.

Defendants contend that Armes "alleges no facts to support a plausible inference he is an 'author' of the [Sound] Recording." Motion at 14. Such is not the case, where, as here, the criteria for joint authorship have been alleged, which include "1) an alleged author exercises control over a work, serves as 'the inventive or master mind,' or creates or gives effect to an idea; 2) there exists an 'objective manifestation of a shared intent to be co-authors; and 3) 'the audience appeal turns on both contributions and the share of each in its success cannot be appraised.'" *Skechers,* 922 F. Supp. 2d at 872.

Not only has Armes sufficiently pleaded facts sufficient to establish joint authorship and ownership of the Sound Recording, but it is also well settled that whether Armes' contributions to the Circles recording ultimately support his claim

18

for joint authorship under this three prong test "is an issue of fact, ***which cannot be decided on a motion to dismiss***." *See Robertson*, 2019 WL 2141971, at *8 (emphasis added); *see also Creative Dream Prods., LLC v. Houston*, No. 14-cv-7714, 2015 WL 12731915, at *6 (C.D. Cal. Apr. 2, 2015) ("In keeping with the fact-intensive nature of most inquiries where joint authorship is disputed, the majority of cases address the issue in the context of motions for summary judgment, which may properly rely on evidence outside the pleadings, and not on motions to dismiss.") (collecting cases); *S.O.S.*, *Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086 (9th Cir. 1989) ("Authorship is a question of fact."); *Warren v. Fox Family Worldwide, Inc*., 171 F. Supp. 2d 1057 (C. D. Cal. 2001) ("Resolving these [joint authorship] issues would [require] that the court decide disputed factual issues going to the merits of the dispute .... [which] cannot be done in the context of a motion to dismiss ...."); *Medforms, Inc. v. Healthcare Management Solutions, Inc.*, 290 F.3d 98, 110 (2d Cir. 2002) ("Authorship is generally a question of fact for the jury.").

Armes sufficiently alleges control over the work, an intent to be co-authors, and audience appeal for Armes' contributions, as explained in detail below.

## 1. Armes Has Sufficiently Alleged That He Created and Gave Effect to *Circles*, Therefore Exercising Control.

"Courts in this district have found the joint control criterion satisfied where 'both parties had creative control over separate and indispensable elements of the completed product.'" *Skechers*, 922 F. Supp. 2d at 872; *see also Eagle Rock Entm't Inc. v. Coming Home Prods., Inc*., No. CV 3–571 FMC, 2004 WL 5642002 *13 (C. D. Cal. Sept. 1, 2004). The court in *Skechers*, in which a photographer whose photographs for Skechers' advertising campaigns had allegedly been enhanced sued for copyright infringement, found that the "control" factor weighed in favor of joint authorship even where "Skechers controlled the latter half of the creative process," but "had minimal involvement in [the photographer's] authorship of his

photographs." 922 F. Supp. 2d at 872. Similarly, the court found that "parties exercised creative control over separate and indispensable elements" of a pay-per-view program depicting a live performance by a music artist where the joint authors were the musical performer and the company that recorded and produced the program. *Eagle Rock Entm't*, 2004 WL 5642002, at *13.

An analogy to both *Skechers* and *Eagle Rock Entertainment* can be drawn here, where Armes alleges that in addition to co-writing the Composition, Armes' directions concerning the tempo, instrumentation, arrangement and unique "reverb" sound are all embodied in the final Sound Recording.  FAC, ¶¶ 13-17, 19. As such, Armes alleged facts sufficient to satisfy the "control" prong of the joint authorship inquiry as to the *Circles* sound recording.

### 2. Armes Alleges An Objective Manifestation of a Shared Intent to be Co-Authors.

"With respect to manifestations of intent, in the absence of a contract, the inquiry here must focus on the facts." *Skechers*, 922 F. Supp. 2d at 873. As such, Armes' allegation that "Plaintiff and Defendants Post and Dukes each manifested an intent to be co-writers of the Song, and worked together jointly to create the Song," is sufficient to withstand a motion to dismiss. FAC ¶¶ 13-17, 19, 32. To hold otherwise, would require that, without any discovery whatsoever, Armes would have to read Defendants' minds as to their intentions regarding the authorship of the sound recording. Such an absurd result cannot be required here.

### 3. Armes Alleges Facts to Support Audience Appeal for His Contributions.

The third prong under the joint-authorship inquiry is met where "the audience appeal turns on both contributions and the share of each in its success cannot be appraised." *Skechers,* 922 F. Supp. 2d at 872. As Defendants concede, Armes does allege facts to support that the audience appeal turns on his contributions, most notably, that "[t]he Song is . . . dramatically different from

20

other music previously released by Post." FAC ¶ 20. And this sentiment was shared by the "audience," as evidenced by the "article for Slate entitled, 'Post Malone Might Finally Be Getting His Wish to Escape Hip Hop,'" in which the author observed that unlike Post's prior music, "the melody is sparkling, with prominent guitar arpeggios and a wistful sign of a chorus that, dare I say it, soars. Post Malone has never been about the soar." *Id.* Armes goes on to allege that "the style and sound of the Song is more similar to music created by Armes for his bands Down With Webster and Honors than it is to any of Post's prior music." *Id.*

Billboard named "Circles" the seventh (7th) best song of 2019, described "it as consisting of a 'bouncy, melancholy' melody alongside a 'gentle acoustic groove,' and as being 'backed by sunny acoustic guitars, swirling percussion and infectious melodies' with a 'funky feel.'" *Id.* ¶ 21. These "audience" perceptions of the guitar sounds are especially telling, given Armes' authorship of the guitar melody, which is played in the introduction of *Circles* and which repeats throughout.

Having sufficiently alleged facts under all three prongs required to state his authorship of the sound recording, Defendants motion to dismiss under Fed. R. Civ. Proc. 12(b)(6) must be denied.

## 4.   **If the Court is Inclined to Grant Defendants Rule 12(b)(6) Motion, Plaintiff Should be Given Leave to Amend.**

It is well-established that, even "[i]f a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (emphasis added). The Ninth Circuit requires that this policy favoring amendment be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (citing Fed. R. Civ. Proc. 15(a)). "Accordingly, even where a plaintiff is ultimately unable to prove

6820-2\OPP TO MTD 061020                                              OPP TO MTD AMENDED COMPLAINT

authorship (or another party's lack thereof), the plaintiff is entitled to gather evidence on the issue following a minimal assertion of relevant facts." *Creative Dream Prods., LLC v. Houston*, No. CV 14-7714 SS, 2015 WL 12731915, at *6 (C. D. Cal. Apr. 2, 2015).

## V.   POST AND DUKES WERE EACH PROPERLY SERVED WITH PROCESS IN THIS ACTION.

### A.   Post Was Properly Served Under Civ. Proc. Code § 415.40.

Pursuant to the Federal Rules, an individual may be served with process "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located *or* where service is made." Fed. R. Civ. P. 4(e)(1). Under California law, "[a] summons may be served on a person outside this state . . . by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt. Service of a summons by this form of mail is deemed complete on the 10th day after such mailing." Civ. Proc. Code § 415.40. As clearly demonstrated in the Proof of Service of Complaint on Defendant Austin Richard Post, filed with the Court on April 23, 2020, Docket No. 18, Post was served via Certified Mail and a return receipt was received by Plaintiff.

Furthermore, Defendants' argument that service on Post is allegedly ineffective because Plaintiff did not send a "Notice and Acknowledgment" form to Post and that his security guard allegedly was not authorized to accept service is entirely misplaced. Defendants are improperly analyzing service of the Summons and Complaint on Post under California Code of Civil Procedure § 415.30. However, Plaintiff is not claiming that Post was served pursuant to that statute. Post was served pursuant to California Code of Civil Procedure § 415.40, and no Notice and Acknowledgment is required for service thereunder.

OPP TO MTD AMENDED COMPLAINT

**B.**    **Dukes Was Properly Served Under Civ. Proc. Code § 415.20(a).**

Under Civ. Proc. Code § 415.20(a), an individual may be served "by leaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Here, Dukes admits that a copy of Summons and Complaint were left at his place of business with the persona apparently in charge.  Dukes Decl., ¶ 3.  The process server left a copy of the summons, Complaint and other documents at 1991 N. Alexandria Ave., Los Angeles, CA 90027, which Duke admits that he owns and uses as a recording studio. *See* Dukes Decl. ¶¶ 2-3. The process server left the documents with "Jane Doe," who appeared to be an "Occupant," of the residence. Dkt. No. 17, pg. 3. Thereafter, Plaintiff mailed a copy of the summons and complaint to the same address. *Id.,* pg. 4.

In regards to "Jane Doe," Defendants contend that her name is Simon Hessman and that she does not reside at this address. FAC at 23. That is not the inquiry; she must only have appeared to be in charge. Courts construe this statute liberally "to effectuate service and uphold jurisdiction if actual notice has been received by the defendant, 'and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint....'" *Bein v. Brechtel-Jochim Grp., Inc*., 6 Cal. App. 4th 1387, 1392 (1992). Hessman did not need to be an administrative assistant or CEO of a business in order to "appear in charge." *See Id.* ("a residential gate guard is a person apparently in charge of the corporate office"); *F.I. duPont, Glore Forgan & Co. v. Chen*, 41 N.Y.2d 794, (1977) (substitute service on an apartment building doorman was statutorily sufficient); *Hearn v. Howard*, 177 Cal. App. 4th 1193, 1203 (2009) ("The purpose

23

OPP TO MTD AMENDED COMPLAINT

of section 415.20 was achieved by service on the clerk at the post office box store where appellant rented a post office box.").

Here, it is evident that Hessman appeared to be in charge because she opened the door and accepted delivery of the Summons and Complaint on behalf of Dukes. As such, Dukes was properly served under Civ. Proc. Code § 415.20(a).

## VI.    **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that Defendants' Motion be denied in its entirety. Alternatively, should this Court not be inclined to deny the Motion, Plaintiff respectfully requests leave to amend its Complaint and for jurisdictional discovery.


DATE:  June 15, 2020                 ALLISON S. HART
                                     KELSEY J. LEEKER
                                     LAVELY & SINGER
                                     PROFESSIONAL CORPORATION



                                     By:    /s/ Allison S. Hart
                                            Attorneys for Plaintiff TYLER
                                            ARMES