O

# United States District Court
# Central District of California

TYLER ARMES, an individual,

        Plaintiff,

    v.

AUSTIN RICHARD POST p/k/a POST MALONE, an individual; ADAM KING FEENEY p/k/a FRANK DUKES, an individual; UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; DOES 1 through 10, inclusive,

        Defendants.

Case № 2:20-cv-03212-ODW (PJWx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## I.   INTRODUCTION

Defendant Austin Richard Post, professionally known as Post Malone ("Post"), is a well-known musical artist. (*See generally* First Am. Compl. ("FAC") ¶ 1, ECF No. 24.) Plaintiff Tyler Armes claims he co-authored both the composition and sound recording of Post's popular song *Circles* ("Composition" and "Recording," respectively) and deserves credit therefor and a share of the profits from *Circle*'s success. (*Id.*) Now before the Court is a Motion to Dismiss the FAC ("Motion") by Defendants Post, Adam King Feeney, professionally known as Frank Dukes ("Dukes"), and Republic Records, erroneously sued as Universal Music Group, Inc. (collectively, "Defendants"). (Mot. to Dismiss ("Mot."), ECF No. 28.) The matter is

fully briefed.  (*See* Mot.; Opp'n to Mot. ("Opp'n"), ECF No. 29; Reply ISO Mot. ("Reply"), ECF No. 31.)  For the following reasons, the Court **GRANTS in part** and **DENIES in part** the Motion.[1]

## II.    BACKGROUND

### A.    Relevant Facts

Armes, also a professional musician, is the bandleader, writer, and producer for the bands "Down With Webster" and "Honors."  (FAC ¶ 2.)  Armes alleges that Post's manager, Dre London, has encouraged Armes to collaborate with Post numerous times.  (*Id.* ¶ 12.)  Armes alleges that in early August 2018, he accepted London's invitation to attend Post's private concert in Toronto, Canada.  (*Id.* ¶ 13.)  The following evening, "Dre again invited Armes to go to Duke's Toronto studio with Post and Dukes to write music together."  (*Id.* ¶¶ 13–14.)  Armes claims that on August 8, 2018, he, Post, and Dukes "worked together in the studio, with Armes on bass, Post on drums and Dukes playing guitar and keyboards," from 2:00 a.m. to 9:00 a.m.  (*Id.* ¶ 15.)  Specifically, Armes alleges that he and Dukes "co-wrote the chords for [*Circles*] on the keyboard" and that he "co-wrote and had significant input in the bassline."  (*Id.* ¶ 16.)  Armes also alleges that he "had input on the guitar parts in [*Circles*], including co-writing the guitar melody which is played in the introduction to the Song and which repeats throughout the Song."  (*Id.*)

Further, Armes claims he made recommendations "[i]n his capacity as a producer" to: (1) slow down the tempo, (2) strip the song down to "just bass, guitar and drums, without the keyboard," (3) play the bass with a pick as opposed to fingers, and (4) apply a reverb effect on the vocals and guitar tracks.  (*Id.* ¶ 17.)  Armes alleges his "contributions to the organization, instrumentation, arrangement and overall unique sound of the Song are all reflected in the final sound recording of [*Circles*] that was ultimately released."  (*Id.*)  He also alleges that "the style and sound of [*Circles*]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

is more similar to music created by Armes for his bands Down With Webster and Honors than it is to any of Post's prior music."  (*Id.* ¶ 20.)

After Post premiered *Circles*, Armes "immediately reached out" to London to ask him to speak with Post about giving Armes co-writer credit and publishing royalties for his role in creating *Circles*.  (*Id.* ¶ 22.)  London allegedly responded by saying, "Just showed Posty the message [¶] He said he remembers [¶] U played a tune on the bass then he played more of it after."  (*Id.* ¶ 23 (alterations in original).)  Armes claims Post offered a five-percent share of the publishing royalties for *Circles*, but Armes unsuccessfully tried to negotiate for a larger percentage.  (*Id.* ¶ 25.)  To date, Defendants have refused to credit Armes as a co-writer or producer of *Circles* and have refused to pay him any publishing royalties for his role in the creation of the song.  (*Id.* ¶ 23.)  The credited writers of *Circles* are non-parties Billy Walsh, Louis Bell, and Kaan Gunesberk (together, the "Non-Party Writers"), as well as Post and Dukes.  (*Id.* ¶ 24.)

Based on the above allegations, Armes brings four causes of action for: (1) Declaratory Judgment that Armes is: (a) a joint author of the Composition, (b) a joint author of the Recording, (c) entitled to co-writer and co-producer credits for both copyrights, and (d) entitled to prospective and retroactive royalties with respect to his interests in those copyrights, in a percentage to be proven at trial; (2) Accounting of all revenues derived from Defendants' exploitation of the Composition and Recording; and (3) Constructive Trust over the proceeds from the exploitation of the Composition and Recording pending the final disposition of this action.  (FAC ¶¶ 29–44, Prayer for Relief.)

Armes filed this case on the morning of April 7, 2020.  (Decl. of Allison S. Hart ("Hart Decl.") ¶ 2, ECF No. 29-1; *see also* Compl., ECF No. 1.)  Later that day, Post commenced a parallel action—seeking declaratory judgment that Armes is *not* a co-author of the Composition or the Recording—in the U.S. District Court for the

Southern District of New York (the "SDNY Action").  (Mot. 2; Opp'n 3; *see also Post v. Armes*, No. 1:20-CV-02877-ALC (S.D.N.Y.).)[2]

## III. DISCUSSION

Defendants bring their Motion on four grounds.  First, they move to dismiss Armes's claims to the extent they relate to the Composition, under Federal Rule of Civil Procedure ("Rule") 12(b)(7) for failure to join the Non-Party Writers as defendants under Rule 19.  (Mot. 4–8.)  Second, as an alternative to dismissal, Defendants move to transfer the case to the Southern District of New York.  (*Id.* at 8–11.)  Third, Defendants move to dismiss Armes's claims to the extent they relate to the Recording, under Rule 12(b)(6) for failure to state a claim.  (*Id.* at 11–20.)  And fourth, Defendants move to dismiss all claims against Post and Dukes under Rule 12(b)(5), for insufficient service of process.  (*Id.* at 21–23.)  The Court addresses Defendants' requests in turn.

### A. Failure to Join Necessary Parties Under Rule 12(b)(7)

First, the Court considers Defendants' request to dismiss Armes's Composition claims under Rule 12(b)(7).

#### 1. *Legal Standard*

A party may seek dismissal of a complaint for failure to join an indispensable party under Rule 19.  Fed. R. Civ. P. 12(b)(7).  Rule 19 requires joinder of a person

---

[2] Both sides refer to various documents filed in the SDNY Action, including declarations re-submitted as exhibits here.  (*See, e.g.*, Decl. of David A. Steinberg Exs. 1–4, ECF No. 28-1.)  A court may take judicial notice of court filings and other matters of public record.  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record"); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings); *see also United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (noting judicial notice of proceedings in other courts is proper "if those proceedings have a direct relation to matters at issue.").  Here, although neither party submitted a request for the Court to take judicial notice of these documents, the Court "may take judicial notice on its own."  Fed. R. Evid. 201(c)(1).  Thus, to the extent the Court relies on any filings in the SDNY Action that fall within the aforementioned categories, the Court hereby takes judicial notice of those documents.  The Court does not, however, take judicial notice of reasonably disputed facts in the judicially noticed documents.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

whose absence would preclude complete relief among existing parties.  Fed. R. Civ. P. 19(a)(1)(A).  Alternatively, joinder is required of any person who claims an interest in the action and is so situated that disposing of the action in the person's absence may (1) impair or impede the person's ability to protect the interest, or (2) leave an existing party subject to a substantial risk of incurring inconsistent obligations because of the interest.  Fed. R. Civ. P. 19(a)(1)(B).  "Th[e] standard is met when failure to join will lead to separate and redundant actions."  *IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011–12 (N.D. Cal. 2000).  It is *not* met when "defendants are only tangentially related to the cause of action or would not prevent complete relief."  *Id.* at 1012.  "Complete relief is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action."  *Nash-Perry v. JTH Tax, Inc.*, No. CV 19-5843-GW-FFMx, 2019 WL 5902103, at *3 (C.D. Cal. Nov. 8, 2019) (quoting *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013)).

If an absentee is necessary under Rule 19, the court must "determine whether it is feasible to order that the absentee be joined."  *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  The three scenarios in which joinder is *not* feasible are: "when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction."  *Id.* (citing Fed. R. Civ. P. 19(a)).  "Finally, if joinder is not feasible, the court must determine . . . whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed."  *Id.*  In other words, the court must dismiss the action where the absentees "not only have an interest in the controversy, but [have] an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."  *Id.* (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1854)).

### 2. *Joinder of the Non-Party Writers*

Defendants argue the Non-Party Writers are necessary and indispensable simply because they claim co-ownership interests in the Composition copyright. (Mot. 5–6.) Defendants also insist joinder is not feasible because the Court lacks personal jurisdiction over Gunesberk—a Canadian citizen and resident—and that the case cannot proceed in his absence. (*Id.* at 6–8.)

Armes argues the Non-Party Writers are not necessary and indispensable because (1) he "is not challenging the Non-Party [W]riters' copyright ownership claim to the Composition," and (2) he "is not seeking to interfere with any contract between Defendants and the Non-Party [W]riters or otherwise take away from their share of the profits derived from the exploitation of the Composition." (Opp'n 5, 10.) Instead, Armes contends that his share of the profits "should come from that of Post and Dukes." (*Id.* at 5, 10.) Additionally, Armes claims the Court does have personal jurisdiction over Non-Party Writers Walsh and Bell because they are California citizens, and he asks the Court to "stay this action to permit [Armes] to engage in jurisdictional discovery to determine whether there are facts supporting this Court's assertion of personal jurisdiction over Gunesberk." (*Id.* at 7–9.)

Defendants offer no practical explanation for why the Court could not "accord complete relief among existing parties," considering that Armes expressly disclaims any attempt to reach the Non-Party Individuals' shares of the profits. *See* Fed. R. Civ. P. 19(a)(1)(A). Armes alleges he wrote a significant portion of *Circles* with Post and Dukes on August 8, 2018, but he admits he does not know who else subsequently worked on the song. (*See* Opp'n 10.) Thus, he acknowledges he has no basis to contest the Non-Party Writers' claims as co-writers or their shares of the profits, whatever those shares may be. (*Id.*) And although the FAC seeks an accounting of all revenues and a constructive trust over all proceeds derived from the exploitation of the song, Armes now expressly disclaims any challenge to the Non-Party Writers' status as co-writers or their shares of the profits. (Opp'n 6, 10.) Given Armes's admissions,

there is no risk that failure to join the Non-Party Writers "will lead to separate and redundant actions." *IBC Aviation*, 125 F. Supp. 2d at 1012; *see also* Fed. R. Civ. P. 19(a)(1)(B). Thus, Defendants fail to explain why Rule 19 requires joinder of the Non-Party Writers.

Even assuming, for the sake of argument, that the Non-Party Writers are necessary under Rule 19 and that the Court lacks personal jurisdiction over Gunesberk, the Court finds several additional reasons why the Non-Party Witnesses are not indispensable. As a starting point, Defendants present no authority to support their bold proposition that co-owners of a copyright must always be considered indispensable. As set forth in Armes's Opposition, the authorities cited by Defendants merely stand for the inapposite proposition that a copyright licensee must join the copyright owner as a plaintiff if the licensee wishes to sue for copyright infringement. (*See* Mot. 5–6 (citing *Cable Vision, Inc. v. KUTV Inc.*, 335 F.2d 348, 353–54 (9th Cir. 1964); *First Fin. Mktg. Servs. Grp., Inc. v. Field Promotions, Inc.*, 286 F. Supp. 295, 298 (S.D.N.Y. 1968); Wright & Miller, Federal Practice & Procedure § 1614 (3d ed.)); Opp'n 5–6 (distinguishing cases).)

Furthermore, "[t]o say that a court 'must' dismiss in the absence of an indispensable party and that it 'cannot proceed' without him puts the matter the wrong way around: a court does not know whether a particular person is 'indispensable' until it ha[s] examined the situation to determine whether it can proceed without him." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119 (1968). For instance, the Supreme Court has explained that Rule 19(b) "directs a district court to consider the possibility of shaping relief . . . and the Rule now makes it explicit that a court should consider modification of a judgment as an alternative to dismissal." *Id.* at 111–12; *see, e.g.*, *Windsurfing Int'l, Inc. v. Ostermann*, 100 F.R.D. 82, 84 (S.D.N.Y 1983) (holding that a co-owner of a patent was *not* indispensable, partly because "whatever possibilities of prejudice to [the non-party co-owner] and to [the defendant] exist c[ould] be avoided through the shaping of relief"). Given the circumstances

here, the Court finds the possible prejudice to the Non-Party Writers' interests would be easily avoided by shaping relief as Armes suggests—by denying Armes any claim to the Non-Party Writers' shares of the profits.

Lastly, as Armes notes: "Despite Defendants' argument in this case that all copyright owners are necessary and indispensable . . . neither Dukes nor any of the Non-Party [W]riters is a named party to the [SD]NY Action, nor is UMG (who Defendants claim is the sole owner of the copyright to the Sound Recording) a party." (Opp'n 13.)   Indeed, Post's failure to join the alleged co-owners as parties in the SDNY Action seriously undermines Defendants' argument here.

For these reasons, the Court concludes that the Non-Party Writers are neither necessary nor indispensable to this action.   Defendants' Motion is **DENIED** to the extent it relies on Rule 12(b)(7).

## B.   Transfer to the Southern District of New York

Second, the Court considers Defendants' request to transfer the action to the Southern District of New York.

### 1.   Legal Standard

A district court may transfer an action to any district or division where (1) the transferee court is one where the action might have been brought, and (2) the parties' and witnesses' convenience, as well as the interests of justice, favor transfer. 28 U.S.C. § 1404(a); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985); *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009).   As to the first step, the transferee court is one where the action might have been brought if "subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the district to which transfer is sought." *Metz*, 674 F. Supp. 2d at 1145 (quoting *Catch Curve, Inc. v. Venali, Inc.*, No. CV 05-04820 DDP (AJWx), 2006 WL 4568799, at *1 (C.D. Cal. Feb. 27, 2006)).   As to the second step, the movant must present "strong" grounds for transferring the action; otherwise, the plaintiff's choice of venue will not be disturbed.   *Decker Coal Co. v. Commonwealth*

*Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Additionally, the Ninth Circuit has noted that a court deciding whether to transfer may consider factors such as:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  The Court has "broad discretion to transfer a case to another district where venue is also proper." *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1108 (C.D. Cal. 2007); *see also Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

### 2.     Transfer is Inappropriate

Assuming for the sake of this Motion that Armes could have brought this action in the Southern District of New York, Defendants fail to "make a strong showing of inconvenience to warrant upsetting [Armes]'s choice of forum."   *See Decker*, 805 F.2d at 843.  Defendants' main argument for transferring the case is that "New York is uniquely capable of rendering a judgment that is enforceable against the interested parties," as Gunesberk has apparently agreed to submit only to the jurisdiction of the Southern District of New York.   (Mot. 10–11.)   Of course, the problem with Defendants' argument is that it presupposes Gunesberk is a necessary and indispensable party to the action, which he is not.   (*See* Part III(A)(2), *supra*.) Stripping away the issue of personal jurisdiction over Gunesberk, the Court sees no compelling reason why it should transfer the case to New York.  None of the relevant facts occurred in New York; the governing federal law is not specific to New York; Armes chose to bring this action in California; and it appears most of the parties and

potential witnesses in this case reside in California.[3]  (Opp'n 15.)  For these reasons, the Court concludes that neither the convenience factors nor the interests of justice favor transfer.  Defendants' request to transfer the case to the Southern District of New York is **DENIED**.

## C.   Failure to State a Claim Under Rule 12(b)(6)

Third, the Court addresses Defendants' request to dismiss Armes's Recording claims under Rule 12(b)(6).

### 1.   *Legal Standard*

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of Los Angeles*,

---

[3] Armes claims that he, Post, Dukes, and two of the Non-Party Writers all reside in California, and UMG's principal place of business is in Los Angeles.  (Opp'n 14–15.)  Defendants respond that Post primarily resides in Utah and that Republic—the actual owner of the Recording copyright—is headquartered in New York.  (*See* Reply 11.)  Both sides provide scant evidence to support their assertions, but even accepting Defendants' statements as true, it is not apparent why New York—or any other state, for that matter—would be the more convenient forum when it appears most of the interested individuals reside in California, and the alleged events took place in Canada.

250 F.3d 668, 679 (9th Cir. 2001).  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Leave to amend may be denied when "the court determines that the allegation of other facts *consistent* with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986 (emphasis added)).  Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

### 2.    *Armes's Recording Claims*

Defendants advance multiple arguments for why the Court should dismiss Armes's Recording claims.  First, Defendants argue that the Recording claims fail because Armes does not allege (1) that he exercised control over the work, (2) that all co-authors intended he be a co-author, or (3) that the audience appeal of the Recording turns on his contributions. (Mot. 14–18.)  Second, Defendants contend Armes fails to allege that he made an independently copyrightable contribution to the Recording. (Mot. 19–20.)

The Copyright Act defines a "joint work" as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101.  In the Ninth Circuit, a joint work "'requires each author to make an independently copyrightable contribution' to the disputed work." *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000) (quoting *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir. 1990)).  Significantly, joint authorship "requires more than a minimal creative or original contribution to the work," *Aalmuhammed*, 202 F.3d at 1233, and,

furthermore, "[m]erely making a copyrightable contribution is not enough to establish joint authorship." *Morrill v. Smashing Pumpkins*, 157 F. Supp. 2d 1120, 1123 (C.D. Cal. 2001).  The Ninth Circuit has instructed courts to look for three criteria of joint authorship:  (1) whether an alleged co-author exercised control over creation of the work, (2) whether all co-authors made "objective manifestations of a shared intent to be coauthors," and (3) whether "the audience appeal of the work turns on [each co-author's] contributions and the share of each in its success cannot be appraised." *Aalmuhammed*, 202 F.3d at 1234 (internal quotation marks omitted).  "Control in many cases will be the most important factor." *Id.*; *accord Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008).

In this case, the Court first notes that Armes appears to have sufficiently pleaded a shared intent to be co-authors and that the audience appeal of the Recording turns on his contributions thereto.  Indeed, taking the statements in the FAC as true, Armes alleges he was invited to write music together with Post and Dukes, and that both the Composition and Recording were created on August 8, 2018, as a result of their collaboration.  (FAC ¶¶ 12–15.)  Further, Armes plausibly alleges that the Recording appeals to audiences particularly because *Circles* marked a departure from Post's prior musical style and possessed characteristics consistent with Armes's musical style.  (*Id.* ¶¶ 17, 20.)

Nevertheless, the Court finds that Armes fails to allege his co-authorship of the Recording because he does not plead facts showing "the most important factor": that he superintended control over its creation.  *See Aalmuhammed*, 202 F.3d at 1234.  Specifically, Armes alleges that he made several creative recommendations while *Dukes* created a recording of Dukes and Post performing the co-written musical composition.  (FAC ¶¶ 17–19.)  These allegations do not establish that Armes exercised control over the creation of the Recording.  *See Aalmuhammed*, 202 F.3d at 1235 ("[Plaintiff] . . . could make extremely helpful recommendations, but [defendant] was not bound to accept any of them, and the work would not benefit in

the slightest unless [defendant] chose to accept them.  [Plaintiff] lacked control over the work . . . ."); *Taylor v. Universal Music Corp., Inc.*, No. CV 13-06412 RGK (AJWx), 2014 WL 12607685, at *4 (C.D. Cal. Mar. 10, 2014) ("Plaintiffs have not pleaded allegations consistent with control over the [r]ecording.  Rather, they allege that they 'participated in' the recording session.").

Armes similarly fails to allege that he made an independently copyrightable contribution to the Recording.  *See Aalmuhammed*, 202 F.3d at 1231.  A work is copyrightable if it is an "original work[] of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a).  And "[t]o be an author, one must supply more than mere direction or ideas: one must 'translate an idea into a fixed, tangible expression entitled to copyright protection.'"  *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989) (brackets omitted) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989)).  In other words, "[t]he author is *the party who actually creates the work*."  *Del Rio v. Virgin Am., Inc.*, No. CV 18-1063-GW(SKx), 2018 WL 5099720, at *4 (C.D. Cal. June 28, 2018) (emphasis added).  Here, as explained above, Armes only alleges that he supplied direction and ideas, while Dukes (and perhaps a recording engineer) actually recorded Dukes and Post performing the musical composition that Armes allegedly co-wrote.  (FAC ¶¶ 17–19.)  Such allegations do not show that Armes made an independently copyrightable contribution to the Recording.

In short, Armes fails to plead that he superintended any control over the creation of the Recording or that he made an independently copyrightable contribution thereto.  Thus, the Court **GRANTS in part**[4] the Motion under Rule 12(b)(6) and

---

[4] Defendants also move to dismiss Armes's Accounting and Constructive Trust causes of action under Rule 12(b)(6) simply because they are dependent upon the Declaratory Judgment cause of action.  (*Id.* at 20.)  Insofar as those claims encompass Armes's Recording claims, they are dismissed for the reasons explained herein.  However, because the Court does not dismiss Armes's Composition claims, the request to dismiss the Accounting and Constructive Trust causes of action under Rule 12(b)(6) is also **DENIED in part**.

1  **DISMISSES** all claims to the extent they relate to the Recording.  But because it is
2  not clear that amendment would be futile, the Court affords Armes **leave to amend**.

3  **D.     Insufficient Service of Process Under Rule 12(b)(5)**

4          Finally, the Court addresses Defendants' request to dismiss the claims against
5  Post and Dukes for insufficient service of process.

6          *1.     Legal Standard*

7          A party may seek dismissal of a complaint for insufficient service of process.
8  Fed. R. Civ. P. 12(b)(5).  "Once service is challenged, [the] plaintiff[] bear[s] the
9  burden of establishing that service was valid under Rule 4."  *Brockmeyer v. May*, 383
10  F.3d 798, 801 (9th Cir. 2004).  Under Rule 4(e)(1), an individual may be served in a
11  judicial district by "following state law for serving a summons in an action brought in
12  courts of general jurisdiction in the state where the district court is located or where
13  service is made."   Fed R. Civ. P. 4(e)(1).   Alternatively, under Rule 4(e)(2), an
14  individual may be served by (A) delivering process "to the individual personally,"
15  (B) leaving process "at the individual's dwelling or usual place of abode with
16  someone of suitable age and discretion who resides there," or (C) delivering process to
17  an authorized agent.  Fed. R. Civ. P. 4(e)(2).

18          "Where service of process is insufficient, the court has broad discretion to
19  dismiss the action or retain the case and quash the service that has been made on the
20  defendant."  *Telebrands Corp. v. GMC Ware, Inc.*, No. CV 15-03121 SJO (JCx), 2016
21  WL 6237914, at *2 (C.D. Cal. Apr. 5, 2016) (internal quotation marks and citation
22  omitted); *see also Stevens v. Sec. Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir.
23  1976) ("The choice between dismissal and quashing service of process is in the
24  district court's discretion.").   "Typically, if a reasonable prospect exists that the
25  plaintiff may ultimately be able to serve the defendant properly, the court will quash
26  the service."  *Telebrands*, 2016 WL 6237914, at *2 (quoting *Smallwood v. Allied
27  Pickfords, LLC*, No. CV 08-02196 BTM (RBB), 2009 WL 3247180, at *14 (S.D. Cal.
28  Sept. 29, 2009)).

### 2.      Service upon Post Malone

Armes contends he properly served Post by filing a Proof of Service stating that process was delivered to Post's Utah residence via first-class certified mail, return receipt requested, and that Armes received a return receipt bearing a signature by "C. Sampson."  (Opp'n 22; Proof of Service upon Post, ECF No. 18.)  Armes also asserts that in California, "[a] summons may be served on a person outside this state . . . by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage prepaid, requiring a return receipt."  (Opp'n 22 (citing Cal. Civ. Proc. Code § 415.40).)

Defendants argue that service was nevertheless insufficient because the return receipt was signed by someone other than Post, and that service under section 415.40 requires evidence of actual delivery to the person to be served.  (Reply 12 (quoting *Livingston v. Morgan*, No. C-06-2389 MMC, 2007 WL 1150922, at *3 (N.D. Cal. Apr. 18, 2007).)  Defendants, however, misinterpret *Livingston*.  There, the court noted that there was "*no signed receipt or other evidence* that [the defendant] had received the . . . mailing," and the defendant there attested to never having received the documents in the mail.  *Livingston*, 2007 WL 1150922, at *3 (emphasis added).  Here, Defendants do not claim that Post never received the mailed service documents—they merely argue that service was ineffective because Post did not sign the return receipt himself.[5]  (Reply 12.)  But Defendants fail to provide any support for their position.  Based on the Proof of Service filed by Armes, the Court finds Armes has established that service upon Post was valid under California Code of Civil

---

[5] The Court notes that Post's security guard, Cody Sampson, claims he did not see, review, or sign the return receipt.  (Decl. of Cody Sampson ("Sampson Decl.") ¶ 4, ECF No. 28-4.)  Sampson explains, however, that messengers sometimes write his name on return receipts rather than having him sign them directly and that such an interaction may have occurred in this instance.  (*Id.*)  Sampson maintains that he would not have accepted the delivery of service documents if he had known what they were or if the delivery messenger had identified himself as a process server.  (*Id.* ¶¶ 5–6.)  But that is irrelevant, as the service documents here were sent via the U.S. Postal Service.  (*See* Proof of Service upon Post.)

Procedure section 415.40 and, consequently, Rule 4(e)(1). Defendants' request to dismiss the claims against Post under Rule 12(b)(5) is **DENIED**.

### 3. *Service upon Dukes*

Armes contends he properly served Dukes by filing a Proof of Service stating that "Substitute Service" was completed by leaving service documents with "'Jane Doe,' Occupant" at 1991 North Alexandria Avenue in Los Angeles, California (the "Alexandria Location"), and by mailing process thereafter. (*See* Proof of Service upon Dukes, ECF No. 17.) Defendants challenge service under Rule 4(e)(2)(B), as neither Dukes nor the person with whom process was left *resides* at the Alexandria Location; Dukes admits to owning the property but claims he only uses it as a recording studio. (Mot. 22–23; *see* Decl. of Adam King Feeney ("Dukes Decl.") ¶¶ 2–4.) Defendants further assert that service documents were left with a male named Simon Hessman who permanently resides in Sweden and was merely visiting the Alexandria Location. (Dukes Decl. ¶ 4.)

In opposition, Armes only argues that service was proper under California Code of Civil Procedure section 415.20(a). (Opp'n 23–24.) Section 415.20(a) permits service "by leaving [process] during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a [P.O.] box, with the person who is apparently in charge thereof, and by thereafter mailing [process] by first-class mail." (Opp'n 23–24 (quoting Cal. Civ. Proc. Code § 415.20(a)).) But as Defendants correctly point out (*see* Reply 12), section 415.20(a) only applies to corporations and other entities, not individuals. *Ross v. White*, No. 2:17-cv-04149-ODW (JC), 2018 WL 3583033, at *3 (C.D. Cal. July 24, 2018) (citing *Telebrands*, 2016 WL 6237914, at *3 n.2).

Substituted service on an individual, on the other hand, is permitted under section 415.20(b), but it requires a showing that personal service was first attempted with "reasonable diligence." *Bd. of Trustees of Leland Stanford Junior Univ. v. Ham*, 216 Cal. App. 4th 330, 337 (2013) ("[T]wo or three attempts to personally serve a

defendant at a proper place ordinarily qualifies as 'reasonable diligence.'").  Here, notwithstanding his reliance on an inapplicable provision of section 415.20, Armes provides no evidence that he attempted personal service before resorting to substituted service.  Thus, Armes fails to show that service of process upon Dukes was valid.

Accordingly, the Court must decide whether to dismiss the action or quash service.  *See Stevens*, 538 F.2d at 1389; *Telebrands*, 2016 WL 6237914, at *2.  Notably, Defendants' Motion "does not address why dismissal is an appropriate sanction . . . or why quashing service would not adequately remedy the problems that have been raised."  *Chan Siu Tan John v. Guez*, No. CV 09-01650 MMM (Ex), 2009 WL 10673053, at *3 (C.D. Cal. Aug. 3, 2009) (quashing service of process rather than dismissing where the process server "appear[ed] genuinely to have believed that her service efforts were sufficient").  Indeed, perhaps the process server did not know the Alexandria Location, which appears to be a residential building, is used only as a recording studio or that the individual appearing to reside there permanently lives in Sweden.  (*See* Dukes Decl. ¶ 4.)  In any event, as it appears from the filed Proof of Service that Armes genuinely believed service of process was valid, the Court finds "a reasonable prospect exists that [Armes] may ultimately be able to serve [Dukes] properly."  *See Telebrands*, 2016 WL 6237914, at *2.

Thus, the Court **QUASHES** service upon Dukes and **ORDERS** Armes to effectuate valid service of process upon Dukes within **twenty-one (21) days** of the issuance of this Order.  If Armes fails to file proof of such service within that time, the Court will dismiss Armes's claims as to Dukes without further warning, pursuant to Rule 4(m).  In the meantime, Defendants' request to dismiss the claims against Dukes under Rule 12(b)(5) is **DENIED**.

## IV.  CONCLUSION

In summary, the Court **GRANTS in part** the Motion under Rule 12(b)(6) and **DISMISSES** Armes's Recording claims **with leave to amend**.  Armes may file a Second Amended Complaint curing the deficiencies identified above within **fourteen**

**(14) days** of the issuance of this Order.  If Armes does not file a Second Amended Complaint, Defendants shall file their Answer to the FAC within **twenty-one (21) days** of this Order. The remainder of the Motion is **DENIED**, except that the Court **QUASHES** service upon Dukes and **ORDERS** proper service of process as stated above.


**IT IS SO ORDERED.**


October 19, 2020

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**