DAVID A. STEINBERG (SBN 130593)
    das@msk.com
GABRIELLA N. ISMAJ (SBN 301594)
    gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

CHRISTINE LEPERA (*pro hac vice*)
    ctl@msk.com
JEFFREY M. MOVIT (*pro hac vice*)
    jmm@msk.com
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendants*
*Austin Richard Post p/k/a Post Malone*
*Adam King Feeney p/k/a Frank Dukes*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TYLER ARMES,<br><br>                        Plaintiff,<br><br>         v.<br><br>AUSTIN RICHARD POST, publicly known as POST MALONE, an individual; ADAM KING FEENEY publicly known as FRANK DUKES, an individual; UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; DOES 1 through 10, inclusive,<br><br>                        Defendants. | Case No. 2:20-cv-03212-ODW-SK<br>*Consolidated with 2:20-cv-10205*<br><br>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        April 4, 2022<br>Time:       1:30 p.m.<br>Ctrm:       5D (First Street Courthouse)<br><br>Filed:        April 7, 2020<br>Trial:        May 17, 2022 |

Mitchell Silberberg & Knupp LLP

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT .......................................................................1

II.   SUMMARY OF UNDISPUTED FACTS ......................................................4

    A.    The Parties And Non-Party Songwriters ..............................................4

    B.    Armes Attends A Recording Session Controlled By Dukes At
Which Nothing Offered By Armes Is Recorded Or Otherwise
Fixed..........................................................................................................4

    C.    Armes Secretly Tapes On His iPhone A Playback By Dukes Of A
Recorded Performance By Post And Dukes .........................................5

    D.    Armes's Admissions Establish His Alleged Contributions To
"Circles" Are Not Protectible ...............................................................6

    E.    Armes Admittedly Has No Agreement For An Authorship Interest
In The Circles Composition ...................................................................7

    F.    Armes Admittedly Had No Participation In, Or Control Over, The
Subsequent Writing Sessions For The Circles Composition...............8

    G.    Circles Is Commercially Released, And Its Credits Properly Do
*Not* List Armes As A Co-Author ..........................................................8

III.   PROCEDURAL HISTORY .............................................................................9

    A.    The Parties File Two Actions, Which Are Later Consolidated
Before This Court....................................................................................9

    B.    This Court Dismisses Armes's Claim Of Joint Authorship In The
Circles Recording, Pursuant To Rule 12(b)(6) ...................................9

IV.   SUMMARY JUDGMENT STANDARD.......................................................10

V.    ARMES CANNOT DEMONSTRATE THAT HE IS A JOINT
AUTHOR OF THE CIRCLES COMPOSITION ........................................11

    A.    Armes Cannot Prove That He Made An "Independently
Copyrightable Contribution" To The Circles Composition...............12

Mitchell
Silberberg &
Knupp LLP

**TABLE OF CONTENTS**
(continued)

<u>**Page**</u>

1. Armes's Purported Contributions Do Not Satisfy The "Fixation" Requirement Under The Copyright Act. ...............12

2. Armes's Purported Contributions Are Not "Sufficiently Original" To Warrant Copyright Protection............................15

   a. Armes Cannot Prevail Without Establishing That He Made An *Original* Contribution To The Circles Composition ...................................................................15

   b. Armes's Admissions Preclude Him From Making The Requisite Showing Of Originality .........................16

3. Armes Has No Expert Testimony That Disputes Any Of The Foregoing............................................................................17

B. Armes Cannot Demonstrate That He Is A Joint Author.....................18

  1. Armes Admits He Had No Control Over The Whole Work. ...18

  2. Armes Cannot Demonstrate That There Was A "Shared Intent" To Be Co-Authors. .......................................20

  3. While The Court Need Not Reach The Issue, Armes Cannot Set Forth Any Facts Showing That The "Audience Appeal" Of The Circles Composition Turned On His Alleged Contribution. ...........................................................21

VI. THE ACCOUNTING AND CONSTRUCTIVE TRUST CLAIMS FAIL...22

VII. CONCLUSION .........................................................................23

Mitchell Silberberg & Knupp LLP

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*Aalmuhammed v. Lee*,
5     202 F.3d 1227 (9th Cir. 2000) ...................................................................*passim*

6

*Andrien v. Southern Ocean Cnty. Chamber of Commerce*,
7     927 F.2d 132 (3d Cir. 1991) .................................................................... 14

8

*Armes v. Post*,
    2020 WL 6135068 (C.D. Cal. Oct. 19, 2020) ........................................*passim*
9

*Ashton-Tate Corp. v. Ross*,
10     916 F.2d 516 (9th Cir. 1990) ................................................................... 16

11

*Brown v. Flowers*,
12     297 F. Supp. 2d 846 (M.D.N.C. 2003) .................................................. 15

13

*BTE v. Bonnecaze*,
14     43 F. Supp. 2d 619 (E.D. La. 1999) .......................................... 13, 14, 15

15

*Celotex Corp. v. Catrett*,
16     477 U.S. 317 (1986) ............................................................................... 10

17

*Cmty. for Creative Non-Violence v. Reid*,
18     490 U.S. 730 (1989) ......................................................................... 13, 15

19

*Erickson v. Trinity Theater, Inc.*,
    13 F.3d 1061 (7th Cir. 1994) .................................................................. 19
20

21

*Ets-Hokin v. Skyy Spirits, Inc.*,
    225 F.3d 1068 (9th Cir. 2000) ................................................................ 15
22

*Ford v. Ray*,
23     130 F. Supp. 3d 1358 (W.D. Wash. 2015) ............................................ 19

24

*Heger v. Kiki Tree Pictures, Inc.*,
25     2017 WL 5714517 (C.D. Cal. July 24, 2017) ....................................... 19

26

*Jefferson v. Raisen*,
27     2021 WL 4732592 (C.D. Cal. Apr. 27, 2021)................................ 18, 19, 20, 21

28

Mitchell
Silberberg &
Knupp LLP

iii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Johannsongs-Publ'g Ltd. v. Lovland*,
   2020 WL 2315805 (C.D. Cal. Apr. 3, 2020)...................................................16, 17

*Jordan v. Star Trak Entm't, Inc.*,
   2010 WL 454374 (C.D. Cal. Feb. 8, 2010) .........................................................22

*Malcomson v. The Topps Co.*,
   2010 WL 383359 (D. Ariz. Jan. 29, 2010) .........................................................19

*McCoy v. Scantlin*,
   2004 WL 5502111 (C.D. Cal. June 1, 2004) ......................................................22

*Newton v. Diamond*,
   204 F. Supp. 2d 1244 (C.D. Cal. 2002) ...............................................................1

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
   531 F.3d 962 (9th Cir. 2008) ..............................................................18, 20, 22

*Rosa v. Taser Int'l, Inc.*,
   684 F.3d 941 (9th Cir. 2012) ..............................................................................10

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir. 1989) ......................................................................13, 15

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ..............................................................................15

*Skidmore v. Zeppelin*,
   952 F. 3d 1051 (9th Cir. 2020) ...........................................................................16

*StreamCast Networks, Inc. v. Skype Techs., S.A.*,
   2006 WL 5441237 (C.D. Cal. Sept. 14, 2006) ...................................................22

*Thomson v. Larson*,
   147 F.3d 195 (2d Cir. 1998) ....................................................................12, 19, 21

*Tradewinds Escrow, Inc. v. Truck Ins. Exch.*,
   97 Cal. App. 4th 704 (2002) ...............................................................................22

*Weissmann v. Freeman*,
   868 F.2d 1313 (2d Cir. 1989) .............................................................................20

Mitchell
Silberberg &
Knupp LLP

iv

# TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

*Wise v. Wells Fargo Bank, N.A.*,
   850 F. Supp. 2d 1047 (C.D. Cal. 2012).................................................................22

### STATUTES AND OTHER AUTHORITIES

17 U.S.C.
   § 101 ....................................................................................................12, 14
   § 102 ........................................................................................................12

Federal Rules of Civil Procedure,
   Rule 12(b)(6) .....................................................................................1, 9, 10
   Rule 56(a) .................................................................................................10

Mitchell
Silberberg &
Knupp LLP

Austin Richard Post, professionally known as Post Malone ("Post") and Adam King Feeney, professionally known as Frank Dukes ("Dukes") (together, "Defendants") respectfully seek the entry of summary judgment in their favor in this consolidated action.  Specifically, Defendants seek: (1) the entry of the declaratory judgment requested in their Consolidated Complaint: namely, that Plaintiff Tyler Armes ("Armes") is not a joint author and concomitant copyright co-owner of the musical composition "Circles" (hereafter, the "Circles Composition"); and (2) the dismissal with prejudice of Armes's First Amended Complaint, which seeks a declaratory judgment that Armes *is* a joint author of the Circles Composition, as well as an accounting and constructive trust over profits earned by that composition.

## I.    PRELIMINARY STATEMENT

This motion seeking an adjudication that Armes is not a joint author of the Circles Composition is based on his fatal testimonial admissions and the absence of any other evidence that could raise a disputed issue of material fact under the governing criteria for determining joint authorship—which this Court has already applied in this case.

Previously, this Court dismissed Armes's claim of joint authorship of the sound recording of the Circles Composition (the "Circles Recording") pursuant to Rule 12(b)(6).[1]  *See Armes v. Post*, 2020 WL 6135068 (C.D. Cal. Oct. 19, 2020) (the "Prior Decision").  This Court ruled in its Prior Decision that ***Armes's allegations of having supplied "direction and ideas," while others actually fixed***

---

[1] "Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights . . . A musical composition consists of rhythm, harmony, and melody," can be notated in sheet music, and can be performed by any musical performer with sufficient skill.  *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-1249 (C.D. Cal. 2002) (citations omitted), *aff'd* 349 F.3d 591 (9th Cir. 2003), *amended and superseded on denial of reh*, 388 F.3d 1189 (9th Cir. 2004), and *aff'd*, 388 F.3d 1189 (9th Cir. 2004).  A sound recording captures "the sound produced by . . . [a particular] performer's rendition of" a musical composition.  *Id.* at 1249-50.

Mitchell
Silberberg &
Knupp LLP

1

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1  ***the work into a tangible medium of expression, does not constitute an***

2  ***"independently copyrightable contribution[.]"***  *Id.*, at *7 (emphasis added).  This

3  Court also found that Armes had not pled allegations sufficient to demonstrate that

4  he had ***control*** over the Circles Recording.[2]  Now, discovery has confirmed that

5  these same judicial conclusions apply with equal dispositive force to Armes's

6  claim of authorship of the Circles Composition.  His claim fails for three

7  independent reasons, each one alone being sufficient to warrant adjudication

8  adverse to Armes.

9         First, just like with the Circles Recording, ***Armes did not fix any musical***

10 ***material into a tangible medium of expression***.  As this Court has already

11 recognized, ***fixation*** is the *sine qua non* of copyright: "'[t]o be an author, one must

12 supply more than mere direction or ideas: one must 'translate an idea into a fixed,

13 tangible expression entitled to copyright protection.'"  2020 WL 6135068, at *7

14 (quoting *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989)).  Armes

15 admittedly did not do so, and this is singularly dispositive of the claim.  Armes

16 conceded that: (1) he has no recordings or any other documentary materials

17 evidencing that he made any creative contributions to the Circles Composition; and

18 (2) no instrumental or vocal performances of Armes (which he claims he did) is

19 fixed in a tangible medium of expression, and none appears in the Circles

20 Recording.

21        Second, Armes admitted that his contributions did not even rise to the level

22 of originality, which is also required in addition to the fixation requirement.  He

23 either conceded that his ideas were commonplace musical devices, or failed to

24 meet his burden to demonstrate any originality otherwise.  Armes thus cannot even

25 establish the threshold requirement that he made a copyrightable contribution.

26

27 [2] The Court afforded Armes the opportunity to amend his complaint to try to substantiate with
facts his claim of authorship of the Circles Recording; he never attempted to do so.  Defendants

28 submit that it would have been fatal in all events.

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Armes's alleged creative contributions to the Circles Composition were, at most
(1) an admittedly extremely commonplace guitar chord progression known as "I-
IV-V"—with a bass guitar pattern doing the same; and (2) a fragment of a guitar
melody that Armes claims he sung to Post; with no evidence that this fragment is
protectible expression.[3]

Third, even if he could satisfy the threshold fixation and originality
requirements, and he cannot, as this Court also recognized in its Prior Decision,
"**[m]erely making a *copyrightable contribution*" is a necessary requirement,
but "not enough [by itself] to establish joint authorship."** *Armes v. Post*, 2020
WL 6135068, *6 (emphasis added). This Court held in its Prior Decision that a
plaintiff cannot be a joint author without *control* over the work at issue: "'Control
in many cases will be the most important factor.'" 2020 WL 6135068, at *6
(quoting *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000)). Armes
admitted he had no control over whether any of his creative suggestions would be
incorporated by Post and Dukes into the Circles Composition, just like he had no
control of the Recording in which the Circles Composition was embodied. He has
no evidence that any author of the Circles Composition intended him to be a co-
author. Indeed, during the course of the next *year*, three other writers joined with
Post and Dukes to finish the Composition, and Armes had no involvement or
control. Armes did not even know about—let alone contribute to or control—any
of the subsequent songwriting sessions for the Circles Composition, at which the
lyrics were written, and other additions to the song were made by Defendants and
three non-party songwriters.

At bottom, Armes's contention that because he was present for one early
session while Dukes and Post were creating the Circles Composition and

---

[3] As set forth in the accompanying Statement of Uncontroverted Facts ("SUF"), certain of the
facts set forth herein are accepted as uncontroverted by Defendants *solely* for purposes of the
adjudication of Defendants' motion for summary judgment.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Mitchell
Silberberg &
Knupp LLP

Recording, and because he played some instruments there and offered some verbal musical suggestions, he is entitled to joint authorship, is simply incorrect under governing law. Under the correct legal standards already applied by the Court, and given Armes's dispositive admissions at his deposition, there is zero evidence upon which a fact-finder could decide in Armes's favor at trial, which would be held as a bench trial before this Court in all events on the declaratory judgment claims at issue.

## II.   SUMMARY OF UNDISPUTED FACTS

### A.   <u>The Parties And Non-Party Songwriters</u>

Post is a recording artist, songwriter and musician. SUF ¶ 1. Dukes is a songwriter, record producer and musician. SUF ¶ 2. Armes is a musician. SUF ¶ 3. Along with Post and Dukes, the credited writers of the Circles Composition are Kaan Gunesberk, Louis Bell, and Billy Walsh. SUF ¶ 52.

### B.   <u>Armes Attends A Recording Session Controlled By Dukes At Which Nothing Offered By Armes Is Recorded Or Otherwise Fixed</u>

On the evening of August 7, 2018, Post, Dukes and Armes were each present at a concert by a third-party rock band in Toronto, Canada. SUF ¶ 4. After the concert, Armes was invited by Post's manager to join Post, Dukes, and others, at Dukes's Toronto music studio ("Dukes's Studio"). SUF ¶ 5. Although the other guests left Dukes's Studio earlier in the night, Armes, Post, and Dukes remained in Dukes's Studio from 2:00 a.m. to 9:00 a.m. on August 8, 2018. SUF ¶ 6. During that time period in Dukes' Studio, there was some "jamming," and also the process of Dukes recording Dukes's and Post's performances. SUF ¶ 7. (This time period is hereafter called the "August 8 Session.") Prior to the beginning of the August 8 Session, Post stated: "Let's write a tune!" SUF ¶ 8.[4]

---

[4] As noted above, these allegations are accepted as uncontroverted solely for purposes of this motion.

During the August 8 Session, Armes played a bass guitar and a keyboard; Armes did not play a guitar or any other instrument.  SUF ¶ 9.  Post played guitar and drums at the August 8 Session, and Dukes played both guitar and bass guitar. SUF ¶ 10.

Musical performances were recorded by Dukes during the August 8 Session. SUF ¶ 11.  ***None of Armes's performances were recorded or fixed in any tangible medium of expression.***  SUF ¶¶ 16, 17.

Dukes solely controlled the laptop that recorded those musical performances.  SUF ¶ 12.  Duke's laptop also functioned as the "mixing board" which combined various recorded performances (none of Armes's) into a single recording.  SUF ¶ 13.  Armes admitted he never touched Dukes's laptop; in Armes's words, "***Frank was controlling the laptop.  It was his laptop, his session***."  SUF ¶ 14 (emphasis added).  Although a third-party sound engineer was present at times during portions of the August 8 Session, the engineer was at Dukes's "beck and call" and only came in and out of the room when Dukes asked him to.  SUF ¶ 15.

***Thus, critically, Armes does not have, and is not aware of, any recording of Armes engaging in any musical performance (whether instrumental or vocal) at the August 8 Session.***  SUF ¶ 16.  Nor is Armes aware of any recording or notes reflecting that Armes provided any creative contributions during the August 8 Session.  SUF ¶ 17.  There is no performance of Armes in the Circles Recording. SUF ¶ 18.

### C.    <u>Armes Secretly Tapes On His iPhone A Playback By Dukes Of A Recorded Performance By Post And Dukes</u>

At the end of the August 8 Session, Dukes played back in the studio a recording—one that had already been fixed on his laptop—of certain of the performances of Dukes and Post that Dukes had previously recorded from that same night (the "Rough Mix").  SUF ¶ 19.  Certain musical compositional

Mitchell
Silberberg &
Knupp LLP

5

elements in the Rough Mix were later incorporated into the final Circles Composition completed a year later.  SUF ¶ 20.  On the Rough Mix, Post is singing a vocal melody (largely without lyrics) and playing the guitar melody, and Dukes is playing both the bass guitar, and the chord progression on the rhythm guitar. SUF ¶ 21.  ***Armes, on the other hand, is not playing any instruments, singing or otherwise engaging in any performance whatsoever on the Rough Mix.***  SUF ¶ 22.

Armes taped on his iPhone a portion of Dukes's playback of the Rough Mix. SUF ¶ 23.  Armes did not obtain Dukes's and Post's permission to do so. SUF ¶ 24.  Indeed, Armes did not even inform Dukes and Post that he was taping. SUF ¶ 25.  (Armes's surreptitious taping is hereafter called the "iPhone Recording").  This iPhone Recording provides no evidence of any contributions by Armes to the Circles Composition.  SUF ¶¶ 19, 21, 22.

### D.   <u>Armes's Admissions Establish His Alleged Contributions To "Circles" Are Not Protectible</u>

Armes admits that he did not come up with the title "Circles"; nor did Armes write any of the lyrics for the Circles Composition.  SUF ¶¶ 26-27.  Indeed, Armes merely asserts that he made three (3) contributions to the Circles Composition. SUF ¶¶ 28-35.  Armes's admissions, and the evidentiary record, establish the commonplace (and therefore unprotectible) nature of these alleged contributions:

1.   Armes claims to have co-written, with Dukes, the ***chord progression*** for the Circles Composition.  SUF ¶ 28.

   o   Armes claims to have "sang," rather than played, his alleged contribution to this chord progression.  SUF ¶ 29.

   o   This chord progression is I-IV-V (or C-F-G), which Armes admits is an *"**extremely**" **common*** chord progression, and "***one of the most common progressions in the history of music***."  SUF ¶ 30 (emphasis added).

Mitchell Silberberg & Knupp LLP

2.    Armes claims to have had "significant input" into the writing of the ***bass guitar line*** in the Circles Composition.  SUF ¶ 31.

       o    Armes's claimed contribution to the bass guitar line is the exact same ***admittedly commonplace*** I-IV-V (or C-F-G) sequence as the chord progression.  SUF ¶ 32.

3.    Armes claims to have contributed to the writing of the ***guitar melody*** in the Circles Composition.  SUF ¶ 33.

       o    Armes admits that Post wrote the "initial melody" for the guitar. SUF ¶ 34.

       o    Armes claims that he then "sang" additional notes which Post added to the guitar melody.  SUF ¶ 35.

       o    Armes has ***no evidence*** that the additional notes which he claims to have contributed to the guitar melody are copyrightable material.

**E.**    <u>**Armes Admittedly Has No Agreement For An Authorship Interest In The Circles Composition**</u>

During the August 8 Session, Post and Dukes never agreed that Armes would be a co-author of the Circles Composition.  SUF ¶ 37.  Indeed, the subject of authorship/ownership was not even discussed with Armes prior to the release of the Circles Recording.  SUF ¶ 38.  And when Armes left the August 8 Session, neither Post nor Dukes asked Armes for his contact information or otherwise indicated that they would be in touch about the song.  SUF ¶ 39.  By Armes's own admission, Armes had no involvement whatsoever in the creation of the Circles Composition following the August 8 Session.  SUF ¶ 40.  Moreover, after the August 8 Session, Armes had no communications with any of the writers about the Circles Composition prior to the commercial release of the Circles Recording over a year later on August 30, 2019.  SUF ¶¶ 39-41, 48-49.

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**F.** **Armes Admittedly Had No Participation In, Or Control Over, The Subsequent Writing Sessions For The Circles Composition**

It is undisputed that the writing of the Circles Composition was *not* completed at the August 8 Session.  SUF ¶ 42.  Quite the contrary.  Post and Dukes—along with their co-authors Kaan Gunesberk, Louis Bell, and Billy Walsh (the "Non-Party Songwriters")—continued to work on writing the Circles Composition at subsequent writing sessions.  SUF ¶ 43.  Among other creative work, the lyrics to the Circles Composition were written at these subsequent writing sessions.  SUF ¶ 44.  Critically, Armes was not present for *any* of these subsequent writing sessions—and he did not even know that they were occurring.  SUF ¶ 45.  Therefore Armes admits, as he must, that he had no input into, let alone control over, any of those sessions.  SUF ¶ 46.

Indeed, at his deposition, Armes repeatedly conceded that he had no control whatsoever over what was ultimately contained in the Circles Composition.  SUF ¶ 47 ("… [Y]our client cut me out of the process in how things were arranged. . . a lot of things were done [to Circles] that I wasn't privy to . . . .").

The Non-Party Songwriters had no dealings whatsoever with Armes in connection with the creation of the Circles Composition, and in fact had no knowledge of any alleged contributions by Armes to the Circles Composition.  SUF ¶ 48.  Just like Post and Dukes, the Non-Party Songwriters did not agree to merge their contributions with anything by Armes, and never had any intention for Armes to be a co-author or co-writer of the Circles Composition.  SUF ¶ 49.

**G.** **Circles Is Commercially Released, And Its Credits Properly Do *Not* List Armes As A Co-Author**

Armes did not hear the final Circles Composition until the Circles Recording was shared on social media on August 5, 2019 (*i.e.*, nearly one year after the August 8 Session).  SUF ¶ 50.  The Circles Recording was commercially released on August 30, 2019 as a track on Post's album "*Hollywood's Bleeding*."  SUF

¶ 51.  The credits for "Circles" (the "Liner Notes"), available at postmalone.com/credits, identify the writers of the Circles Composition as Post, Dukes, Bell, Walsh, and Gunesberk.  SUF ¶ 52.  Armes is ***not*** identified in the Liner Notes as a co-writer of the Circles Composition.  SUF ¶ 53.

### III.    PROCEDURAL HISTORY

#### A.    <u>The Parties File Two Actions, Which Are Later Consolidated Before This Court</u>

On April 7, 2020, Armes filed his Complaint in this Court.  (His action is hereinafter referred to the "California Action").  *See* Complaint (the "Complaint"; ECF No. 1).  His Complaint sought a declaratory judgment that Armes was an author and copyright owner of the Circles Recording and the Circles Composition. It further sought an accounting and constructive trust of profits earned by the Circles Recording and the Circles Composition.  *Id.*

The very same day, Post commenced an action in the United States District Court for the Southern District of New York, entitled *Post v. Armes*, Case No. 1:20-CV-02877-ALC (the "New York Action").  *See* Consolidated Complaint; ECF. No. 28-1, Ex. 5, pp. 19-25.  In the New York Action, Post sought a declaration that Armes is neither an author nor a copyright owner of the Circles Composition.  *Id.*  Armes filed a First Amended Complaint on May 13, 2020.  *See* First Amended Complaint ("FAC"; ECF No. 24).  Ultimately, the New York Action was transferred to this Court, and the two Actions were consolidated on December 15, 2020.  ECF No. 45.  Armes's and Defendants' operative pleadings are the FAC and the Consolidated Complaint, respectively.

#### B.    <u>This Court Dismisses Armes's Claim Of Joint Authorship In The Circles Recording, Pursuant To Rule 12(b)(6)</u>

On June 3, 2020, before the Actions were consolidated, Defendants moved pursuant to Rule 12(b)(6) to dismiss Armes's FAC in the California Action on multiple grounds.  ECF No. 28.  With respect to Armes's claim for a declaration

that he was a joint author and co-owner of the Circles Recording, Defendants explained, *inter alia*, that, even assuming the allegations in the FAC to be true, Armes could not prevail under the test set forth in *Aalmuhammed*, 202 F.3d at 1231. *Id.* Defendants further sought the concomitant dismissal of Armes's claim for an accounting and constructive trust over profits earned by the Circles Recording. *Id.*

The Court thereafter granted dismissal of Armes's Recording Claim pursuant to Rule 12(b)(6), in the Prior Decision. *Armes v. Post*, 2020 WL 6135068, at *5-8. The Court further held that, because Armes failed to state a viable claim for ownership of the Circles Recording, he was not entitled to an accounting or constructive trust of profits earned by the Circles Recording. *Id.* at *7, n.4.

As explained *infra*, the Court's legal analysis in its Prior Decision, when applied to Armes's dispositive admissions regarding the creation of the Circles Composition, mandates that the Court find that Armes is ***not*** a joint author of the Circles Composition, and accordingly, that he is not entitled to an accounting or constructive trust of profits earned by the Circles Composition.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may meet this burden initially by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The burden then shifts to the nonmoving party to produce ***affirmative, admissible evidence*** of facts sufficient to defeat summary judgment. *Rosa v. Taser Int'l, Inc.*, 684 F.3d 941, 948 (9th Cir. 2012).

Post and Dukes have far exceeded the initial showing at the summary judgment stage which would be necessary to shift the burden to Armes. Not only

Mitchell
Silberberg &
Knupp LLP

10

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

have Defendants demonstrated the complete absence of any evidence in the record that supports Armes's joint authorship claim, but moreover they have provided the Court with the ***dispositive admissions of Armes*** which defeat his claim as a matter of law.  Given these admissions, Armes cannot possibly meet his own burden to demonstrate the existence of any material fact precluding summary judgment.

## V.    ARMES CANNOT DEMONSTRATE THAT HE IS A JOINT AUTHOR OF THE CIRCLES COMPOSITION

As the Court previously explained in the Prior Decision:

> In the Ninth Circuit, a joint work "'requires each author to make an independently copyrightable contribution' to the disputed work." *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000) (quoting *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir. 1990)). Significantly, joint authorship "requires more than a minimal creative or original contribution to the work," *Aalmuhammed*, 202 F.3d at 1233, and, furthermore, "[m]erely making a copyrightable contribution is not enough to establish joint authorship." *Morrill v. Smashing Pumpkins*, 157 F. Supp. 2d 1120, 1123 (C.D. Cal. 2001).  The Ninth Circuit has instructed courts to look for three criteria of joint authorship: (1) whether an alleged co-author exercised control over creation of the work, (2) whether all co-authors made "objective manifestations of a shared intent to be coauthors," and (3) whether "the audience appeal of the work turns on [each co-author's] contributions and the share of each in its success cannot be appraised." *Aalmuhammed*, 202 F.3d at 1234 (internal quotation marks omitted).  "Control in many cases will be the most

Mitchell Silberberg & Knupp LLP

1      important factor." *Id.*; *accord Richlin v. Metro-Goldwyn-*

2      *Mayer Pictures, Inc*., 531 F.3d 962, 968 (9th Cir. 2008).

3 *Armes v. Post*, 2020 WL 6135068 at *6.

4      The purpose of these requirements, as exemplified in this case, is to

5 "ensur[e] that true collaborators in the creative process are accorded the perquisites

6 of co-authorship[.]" *Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998).  As

7 explained below, Armes cannot satisfy his burden as to any element.

8      A.    **<u>Armes Cannot Prove That He Made An "Independently</u>**

9         **<u>Copyrightable Contribution" To The Circles Composition.</u>**

10      As a threshold matter, a plaintiff cannot claim joint authorship in a

11 copyrighted work unless the plaintiff made "an ***independently copyrightable***

12 ***contribution***" to the disputed work.  *Aalmuhammed*, 202 F.3d at 1231 (emphasis

13 added).  *See also Thomson*, 147 F.3d at 200 ("[C]ollaboration alone is not

14 sufficient to establish joint authorship.  Rather, the contribution of each joint

15 author must be independently copyrightable.").  Armes cannot satisfy his burden of

16 proof as to this essential requirement because: (1) Armes admittedly did not fix any

17 of his alleged authorship contributions in a tangible medium of expression; and

18 (2) Armes's admissions establish that his alleged contributions to the Circles

19 Composition lack sufficient originality to be copyrightable.

20      1.    **Armes's Purported Contributions Do Not Satisfy The**

21         **"Fixation" Requirement Under The Copyright Act.**

22      In order to be copyrightable, a work must be an "original work[ ] of

23 authorship ***fixed in any tangible medium of expression*****.**" 17 U.S.C. § 102(a)

24 (emphasis added).  A work is "fixed" in a tangible medium of expression, in turn,

25 when "its embodiment in a copy . . . ***by or under the authority of the author***, is

26 sufficiently permanent . . . to permit it to be . . . reproduced." 17 U.S.C. § 101

27 (emphasis added).

Mitchell
Silberberg &
Knupp LLP

28

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

According to the Supreme Court, "the author is the party who actually creates the work, that is, the person who translates an idea into a ***fixed, tangible expression*** entitled to copyright protection." *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 737 (1989) (emphasis added); *see also S.O.S.*, 886 F.2d at 1087 ("To be an author, one must supply more than mere direction or ideas: one must 'translate an idea into a ***fixed, tangible expression***'") (emphasis added) (quoting *Cmty. for Creative Non-Violence*, 490 U.S. at 737).

Here, Armes's admissions establish that Armes never fixed his purported contributions to the Circles Composition in any tangible medium of expression. *See*, *e.g.*, SUF ¶¶ 16, 18, 19-22.  At best, Armes claims to have made contributions in the form of ***non-recorded*** directions, ideas, and suggestions to Post and Dukes (for which there is no independent evidence), which Post and Dukes then, in turn, had the discretion to accept or reject.  SUF ¶¶ 9-18, 22.  This is utterly insufficient to constitute an independently copyrightable contribution.[5]

***Again, this Court has already recognized, in its Prior Decision, that Armes's allegations of having supplied "direction and ideas," while others actually fixed the work into a tangible medium of expression, does not constitute an "independently copyrightable contribution."***  *Armes v. Post*, 2020 WL 6135068, at *7 (emphasis added).  The identical analysis once again applies, this time with respect to the Circles Composition.  *See also BTE v. Bonnecaze*, 43 F. Supp. 2d 619, 628 (E.D. La. 1999) (the contribution of "ideas and helpful insights[,]" with no evidence that a purported co-author has himself "fixed those

---

[5] To the extent Armes contends that his contributions were "fixed" by virtue of his surreptitiously-obtained iPhone Recording, he is mistaken.  Because the iPhone Recording does not contain any recording of Armes playing or singing any music, and only copies a playback of a recording of Dukes's and Post's performances, it in no way satisfies the fixation test for Armes. SUF ¶¶ 19-22.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Mitchell Silberberg & Knupp LLP

1    contributions into a tangible form of expression" is insufficient to stave off

2    summary dismissal of a claim for co-authorship in a musical composition).[6]

3         In *Bonnecaze*, the plaintiff was a former drummer for the rock band "Better

4    Than Ezra," who claimed copyright ownership in certain compositions for songs

5    created by the band. *See* 43 F. Supp. 2d at 621. The plaintiff claimed that he

6    "presented valuable contributions" to the band in "working up" songs initially

7    proposed by the lead singer, that eventually were fixed in a tangible form of

8    expression when the band (*including the plaintiff*) recorded the songs. *Id.* at 627.

9    The court rejected the plaintiff's claims:

10        While Bonnecaze claims that he contributed ***ideas and***

11        ***helpful insights*** in "working up" the songs introduced to

12        the band by Kevin Griffin, ***Bonnecaze has failed to***

13        ***supply the court with any evidence (after ample time for***

14        ***discovery) which could lead a rational trier of fact to***

15        ***find that Bonnecaze had ever fixed those contributions***

16        ***into a tangible form of expression. The sound***

17        ***recordings of the [final versions of the] songs cannot***

18        ***serve as the tangible form required for Bonnecaze to***

19

20

21    _____

      [6] In opposition to this motion, Armes may incorrectly argue that his alleged contributions to the
22    Circles Composition were fixed in the Circles Composition "under his authority" pursuant to 17
      U.S.C. § 101. This argument is unavailing, as courts have narrowly interpreted the statutory
23    phrase, "by or under the authority of the author," recognizing that "[w]hen one authorizes
      embodiment, that process must be ***rote or mechanical transcription that does not require***
24    ***intellectual modification or highly technical enhancement***." *Andrien v. Southern Ocean Cnty.*
      *Chamber of Commerce*, 927 F.2d 132, 135 (3d Cir. 1991) (emphasis added). Even assuming the
25    truth of his testimony, Armes cannot meet this test. Armes claims to have given verbal
      suggestions of certain chords or notes to Post or Dukes, who then performed independently their
26    instruments without any authority over them as to what they played exercised by Armes. By his
      testimony that the "three of us [were] collaborating," SUF ¶ 35, he has admitted he had no
27    authority over Dukes or Post. This is not the situation of a "mechanical transcription that does
      not require intellectual modification." *Andrien*, 927 F.2d at 135.
28

Mitchell
Silberberg &
Knupp LLP

14

1    *meet the independently copyrightable test required for*

2    *proving joint authorship*.

3    *Id.* at 628 (emphases added).  Like Bonnecaze, Armes admitted in his deposition

4    that his most significant purported contribution "had ***my ideas*** in it, but not me

5    playing."  SUF ¶¶ 16-18, 22, 31, 36 (emphasis added).  Under *Bonnecaze* and its

6    antecedents, the contribution of such "ideas" is legally insufficient to constitute an

7    "independently copyrightable contribution."  Furthermore, here, unlike in

8    *Bonnecaze*, Armes did not even perform in the Circles Recording or any earlier

9    mix, including the Rough Mix.  Accordingly, this case analysis applies with even

10   greater force here.

### 2.    Armes's Purported Contributions Are Not "Sufficiently Original" To Warrant Copyright Protection.

#### a.    Armes Cannot Prevail Without Establishing That He Made An *Original* Contribution To The Circles Composition

16   In addition to the fixation requirement, another threshold prerequisite for

17   copyright protection is that a work be sufficiently original.  *See Cmty. for Creative*

18   *Non-Violence*, 490 U.S. 730 (to be an author, one must supply more than mere

19   direction or ideas: one must "translate [ ] an idea into a fixed, tangible expression

20   ***entitled to copyright protection***") (emphasis added).

21   Therefore, in order to be entitled to joint authorship status, a putative author

22   must "make some ***original*** contribution" to the work at issue.  *Brown v. Flowers*,

23   297 F. Supp. 2d 846, 852 (M.D.N.C. 2003), *aff'd*, 196 F. App'x 178 (4th Cir.

24   2006) (emphasis added); *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("Any

25   copyrighted expression must be 'original.'") (citing *Feist Publ'ns, Inc. v. Rural*

26   *Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)); *see also Ets-Hokin v. Skyy Spirits, Inc.*,

27   225 F.3d 1068, 1073 (9th Cir. 2000) ("The essence of copyrightability is

28   originality of artistic, creative expression."); *S.O.S.*, 886 F.2d at 1086-87

Mitchell
Silberberg &
Knupp LLP

15

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1  (contribution insufficiently original to raise a material issue of fact about whether

2  such a contributor was a joint author); *Ashton-Tate Corp. v. Ross*, 916 F.2d 516,

3  521 (9th Cir. 1990) ("A collaborator's contribution will not produce a joint work,

4  and a contributor will not obtain a co-ownership interest, unless the contribution

5  represents *original expression* that could stand on its own as the subject matter of

6  copyright.") (citing P. Goldstein, Copyright: Principles, Law and Practice, § 4.2.1

7  p. 379 (1989)).

8        **b.    Armes's Admissions Preclude Him From Making The**

9              **Requisite Showing Of Originality**

10       Armes cannot satisfy his burden to establish that he made any original

11  contributions to the Circles Composition.  As discussed above, Armes only claims

12  to have contributed to three aspects of the Circles Composition: (1) the chord

13  sequence I-IV-V on the guitar; (2) the same I-IV-V sequence as a bass pattern; and

14  (3) a series of pitches which Armes claims to have sang to Post for use in the guitar

15  melody.  These all fail as a matter of law.

16       With respect to the I-IV-V sequence on the guitar and bass, Armes himself

17  admits that it is "extremely" common.  SUF ¶¶ 30, 32.  The Ninth Circuit has

18  explained that copyright protection does not "extend to 'common or trite' musical

19  elements … or 'commonplace elements that are firmly rooted in the genre's

20  tradition,' ... These building blocks belong in the public domain and cannot be

21  exclusively appropriated by any particular author."  *Skidmore v. Zeppelin*, 952 F.

22  3d 1051, 1069 (9th Cir. 2020) (citations omitted).

23       Similarly, Armes does not have a shred of affirmative evidence with which

24  to meet his burden of proof that his alleged contribution to the guitar melody is

25  original.  Thus he cannot meet that burden.  *See, e.g.*, *Johannsongs-Publ'g Ltd. v.*

26  *Lovland*, 2020 WL 2315805, at *7 (C.D. Cal. Apr. 3, 2020), *aff'd*, 2021 WL

27  5564626 (9th Cir. Nov. 29, 2021) (in copyright case, plaintiff could not meet its

28  burden to establish its ownership in protectible expression, when plaintiff had no

Mitchell
Silberberg &
Knupp LLP

16

affirmative evidence that the expression was original as opposed to trite and commonplace).

### 3.     Armes Has No Expert Testimony That Disputes Any Of The Foregoing.

Defendants rely on no expert testimony in connection with this Motion.  In opposition to this Motion, Defendants anticipate that Armes may try to muddy the waters, albeit without merit, by raising an argument about expert evidence.  The only expert report that he offered in this case, however, was a rebuttal by musicologist Judith Finell (the "Finell Rebuttal Report") to a report by Dr. Lawrence Ferrara offered by Defendants[7] that has now become moot on the issue addressed by the Finell Rebuttal Report.  Initially, Dr. Ferrara was provided an assumption that there were two recordings of bass parts performed by Armes from the August 8 Session and asked to assess whether those recordings contain any significant expression that is also contained in the Circles Composition.  Both his report on this issue and Ms. Finell's rebuttal thereon became moot as Armes testified that his bass performances were ***not*** embodied in those recordings, making them irrelevant.

There is nothing in the Finell Rebuttal Report that addresses any of Armes's alleged contributions to the Circles Composition—no less whether they are original.  Finell in fact conceded that she did not know and could not know the source of individual musical features in the Circles Composition.[8]  Should Armes try, he should be precluded from offering any untimely affirmative report as Armes chose not to avail himself of the opportunity.[9]

---

[7] Armes did not serve any "affirmative" expert report.  The only expert report which Armes served is the Finell Rebuttal Report, which purports to respond to the affirmative expert report of Defendants' musicologist, Dr. Lawrence Ferrara.

[8] While Finell claimed that there were similarities between the Rough Mix described above that was captured in the iPhone Recording and the final Circles Composition, this opinion is irrelevant as she does not know who created what in the Circles Composition.

[9] Finnell's opinions were excluded by the court as unreliable in *Johannsongs-Publ'g Ltd., supra.*

Mitchell
Silberberg &
Knupp LLP

17

B.    **Armes Cannot Demonstrate That He Is A Joint Author.**

As discussed above, Armes cannot establish that he made a copyrightable contribution to the Circles Composition—which is fatal to his claim.  However, even "contribution of independently copyrightable material to a work…will not suffice to establish authorship of a joint work."  *Aalmuhammed*, 202 F.3d at 1233; *see also Jefferson v. Raisen*, 2021 WL 4732592, at \*4 (C.D. Cal. Apr. 27, 2021) ("an individual can make a 'copyrightable contribution' and yet not become a joint author of the whole work.").  Rather, for a plaintiff to establish joint authorship, the plaintiff *also* must satisfy a three-part test: "(1) whether the putative author superintended the work by exercising *control*; (2) whether the putative coauthors made objective manifestations of a *shared intent to be coauthors*; and (3) whether *the audience appeal of the work turns on both contributions* and the share of each in its success cannot be appraised."  *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) (citing *Aalmuhammed*, 202 F.3d at 1234) (emphasis added).  Armes's admissions establish that he cannot satisfy *any* prong of this test.

1.    **Armes Admits He Had No Control Over The Whole Work.**

The "most important factor" in determining joint authorship is "control." *Richlin*, 531 F.3d at 968; *accord Aalmuhammed*, 202 F.3d at 1235 (the "absence of control is strong evidence of the absence of co-authorship").  An alleged author exercises control when he or she is "the inventive or master mind who creates or gives effect to the idea."  *Aalmuhammed*, 202 F.3d at 1234 (quoting *Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884)).

The Ninth Circuit has made clear that a putative author's control over his own contributions is *not* tantamount to "control" for authorship purposes, which must extend to the "*whole work*."  *Aalmuhammed*, 202 F.3d at 1234 (emphasis added).  Absent proof that a putative author had "supervisory powers" over the work *as a whole*, a court cannot plausibly infer authorship.  *See, e.g., Richlin*, 531

Mitchell
Silberberg &
Knupp LLP

18

1   F.3d at 970 (no "control" for authorship purposes where plaintiff wrote the
2   screenplay and "may have had control over [it] as originally written, [but] had no
3   control over how [it was] incorporated into [the film]"); *Heger v. Kiki Tree*
4   *Pictures, Inc.*, 2017 WL 5714517, at *5 (C.D. Cal. July 24, 2017) (no "control"
5   over film where plaintiff alleged "creative control over separate and indispensable
6   elements of the completed [film]" but no "supervisory powers over the [whole
7   film]"); *Ford v. Ray*, 130 F. Supp. 3d 1358, 1363 (W.D. Wash. 2015) (no "control"
8   over a song where plaintiff had "control over his contribution to [the song]," but
9   the "decision as to how or whether to incorporate [his] creations was left to
10  defendant").

11      Armes's admissions establish that Dukes had all decision-making authority
12  during the August 8 Session, and that Dukes controlled the session. *See*, *e.g.*,
13  SUF ¶¶ 12-15. This is fatal to his argument that he had any "control" over the
14  Circles Composition, because "[a]n important indicator of authorship is a
15  contributor's decision-making authority over what changes are made and what is
16  included in a work." *Thomson*, 147 F.3d at 202-03; *see also Erickson v. Trinity*
17  *Theater, Inc.*, 13 F.3d 1061, 1071-72 (7th Cir. 1994) (an actor's suggestion of text
18  does not support a claim of co-authorship where the sole author determined
19  whether and where such contributions were included in the work); *Malcomson v.*
20  *The Topps Co.*, 2010 WL 383359, at *5 (D. Ariz. Jan. 29, 2010) (no control where
21  party had "unrestricted right to reject" putative co-author's work, and "unilateral
22  right to reject" whatever putative co-author submitted); *Jefferson*, 2021 WL
23  4732592, at *3 (alleged contribution of elements of a musical composition
24  insufficient to establish "control" where the putative author cannot establish the
25  exercise of "control over the creation of [the work] independent from their
26  contributions[.]'").

27      And, just as critically, Armes admits he had nothing whatsoever to do with
28  the creation of the Circles Composition *after* the August 8 Session. SUF ¶¶ 26-27,

39-53.  Armes had no awareness of, was not invited to, and was not present for the multiple subsequent sessions where the Circles Composition was composed.  *Id.* ***All of the lyrics to the Circles Composition were written after the August 8 Session, and Armes admittedly had no control over any of them.***  SUF ¶¶ 27, 44-47.  Thus, Armes indisputably did not have control over the "whole work," as is necessary to demonstrate control.  *See Jefferson*, 2021 WL 4732592, at *3 (dismissing counterclaim for declaratory judgment as to joint authorship of a song when the counterclaim plaintiffs seeking authorship credit "appear not to have even known of the existence of [the final version of the song at issue] until after it was released …").

### 2.  Armes Cannot Demonstrate That There Was A "Shared Intent" To Be Co-Authors.

The second factor considers whether the putative co-authors made "objective manifestations of a shared intent to be coauthors" of the work.  *Aalmuhammed*, 202 F.3d at 1234.  ***Each*** and every putative author "must intend to contribute to a joint work at the time his or her alleged contribution is made."  *Weissmann v. Freeman*, 868 F.2d 1313, 1318 (2d Cir. 1989); *see also Richlin*, 2006 WL 8448673, at *3 ("this must be the intent ***of all the putative co-authors***, not just the person claiming co-authorship") (emphasis added).  Armes's entire claim of "shared intent" hinges on his self-serving—and uncorroborated—allegation that Post casually said "Let's write a tune" after Post's manager introduced him to Armes following a concert that the two attended.  SUF ¶ 8.  Even assuming, solely for the purposes of this motion, that those words were said in any context, it does not remotely carry Armes's burden to show a "shared intent."

Here, by Armes's own admission, none of the Defendants or Non-Party Songwriters have made any acknowledgement whatsoever that they intended for Armes to be a co-author.  SUF ¶¶ 37-41, 48-49.  Indeed, the actual songwriters of Circles had no intention to be co-authors with Armes.  SUF ¶¶ 37-38, 48.

Moreover, during the August 8 Session, Post and Dukes never indicated—let alone agreed—that Armes would be a co-author of the Circles Composition.  SUF ¶ 37.  Indeed, the subject of authorship/ownership was not even discussed prior to the release of the Circles Recording.  SUF ¶ 38.  And after the August 8 Session, Armes had no communications with any of the writers about the Circles Composition prior to its commercial release.  SUF ¶¶ 39-41, 48-49.

Moreover, in the Liner Notes for Post's *Hollywood's Bleeding*" album on which the Circles Recording is contained, Defendants and the Non-Party Songwriters are the only individuals credited as the songwriters of the Circles Composition.  Armes has no credit whatsoever in the Liner Notes.  SUF ¶¶ 52-53.  It is well-recognized that "the manner in which [Defendants] listed credits on the [work]" is "strongly" indicative of how they regard themselves vis-à-vis authorship.  *Thomson*, 147 F.3d at 203; *see also Aalmuhammed*, 202 F.3d at 1234 ("putative coauthors make objective manifestations of a shared intent to be coauthors, as by denoting the authorship of The Pirates of Penzance as 'Gilbert and Sullivan.'"); *Jefferson*, 2021 WL 4732592, at *5 ("[the counterclaim defendant's] choice to credit some co-authors, but not the [counterclaim plaintiffs], at the time of releasing [the work at issue] is relevant.").  Here the liner notes provide objective evidence that Armes, Post and the Non-Party Writers had zero intent for Armes to be a joint author with them.

> **3.     While The Court Need Not Reach The Issue, Armes Cannot Set Forth Any Facts Showing That The "Audience Appeal" Of The Circles Composition Turned On His Alleged Contribution.**

Armes has no evidence with which he could establish the audience appeal of Circles turns on his alleged contribution.  Nonetheless, when as here, the plaintiff's showing of "control" and "shared intent" are insufficient to meet his burden, the courts routinely dismiss joint authorship claims without even considering the

Mitchell Silberberg & Knupp LLP

21

1   "audience appeal" factor. *Aalmuhammed*, 202 F.3d at 1234-35 (finding no joint

2   authorship without considering "audience appeal" factor); *see also Armes v. Post*,

3   2020 WL 6135068, at *7 (dismissing Armes's claim for joint authorship of the

4   Circles Recording after construing "audience appeal" allegations in Armes's favor,

5   given that Armes's allegations of "control" were insufficient to state a viable

6   claim); *Richlin*, 531 F.3d at 970 (9th Cir. 2008) (dismissing co-authorship claim

7   where the "two primary *Aalmuhammed* factors weigh[ed] most heavily in favor of"

8   the moving party). This Court can and should do the same here.

9   **VI.    THE ACCOUNTING AND CONSTRUCTIVE TRUST CLAIMS FAIL**

10          Because summary judgment should be granted in Defendants' favor with

11  respect to Armes's declaratory judgment claim, his accounting and constructive

12  trust claims also should be dismissed. "Accounting 'is not an independent cause of

13  action but merely a type of remedy and an equitable remedy at that.'" *Wise v.

14  Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1055 (C.D. Cal. 2012) (citation

15  omitted); *see also Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 97 Cal. App. 4th

16  704, 714 n.7 (2002) (request for accounting must be predicated on an underlying

17  claim); *Jordan v. Star Trak Entm't, Inc.*, 2010 WL 454374, at *2 (C.D. Cal. Feb. 8,

18  2010) ("An accounting is an equitable remedy, not an independent cause of

19  action."). Likewise, "[a] constructive trust is not a substantive device but merely a

20  remedy." *StreamCast Networks, Inc. v. Skype Techs., S.A.*, 2006 WL 5441237, at

21  *11 (C.D. Cal. Sept. 14, 2006) (citations omitted); *McCoy v. Scantlin*, 2004 WL

22  5502111, at *4 (C.D. Cal. June 1, 2004) (constructive trust is an equitable remedy).

23          In its Prior Decision, the Court followed this reasoning, and dismissed

24  Armes's accounting and constructive trust claims "[i]nsofar as those claims

25  encompass Armes's" dismissed claim for authorship of the Recording. *Armes*,

26  2020 WL 6135068, at *7. Given that Armes's claim of authorship in the Circles

27  Composition also must be dismissed, the identical analysis now compels the

Mitchell
Silberberg &
Knupp LLP

28

22

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1   dismissal of Armes's accounting and constructive trust claims for the Circles
2   Composition.
3        At minimum, even in the event summary judgment is not granted on the
4   joint authorship claims, and it should be in Defendants' favor, Armes's accounting
5   and constructive trust claims should be dismissed as premature.[10]  There can be no
6   trial on these issues prior to a determination of the declaratory relief.[11]

7   **VII.  CONCLUSION**

8        For the foregoing reasons, Defendants respectfully request that the Court
9   grant their motion for summary judgment in its entirety.

10

11  Dated: February 28, 2022          MITCHELL SILBERBERG & KNUPP LLP
12                                    DAVID A. STEINBERG
                                      CHRISTINE LEPERA
13                                    JEFFREY M. MOVIT
14                                    GABRIELLA N. ISMAJ

15

16                                    By:   /s/ David A. Steinberg
17                                          David A. Steinberg (SBN 130593)
                                            *Attorneys for Defendants*
18

19

20

21

22

23

24

25

26  ---
    [10] Defendants could also seek to bifurcate these as well should it become necessary.

27  [11] Notably Plaintiff failed to seek any discovery related to these claims even in the belated
    discovery he did serve, which this Court ruled could not be pursued under the Scheduling and
28  Case Management Order (ECF No. 49).

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**