ALLISON S. HART (BAR NO. 190409)
*ahart@lavelysinger.com*
KELSEY J. LEEKER (BAR NO. 313437)
*kleeker@lavelysinger.com*
LAVELY & SINGER
PROFESSIONAL CORPORATION
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone:   (310) 556-3501
Facsimile:   (310) 556-3615

Attorneys for Plaintiff/Consolidated
Defendant TYLER ARMES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| TYLER ARMES,<br><br>            Plaintiff,<br><br>      v.<br><br>AUSTIN RICHARD POST, publicly known as POST MALONE, an individual; ADAM KING FEENEY, publicly known as FRANK DUKES, an individual; UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; DOES 1 through inclusive,<br><br>            Defendants. | CASE NO. 2:20-cv-03212-ODW(SKx)<br>*Consolidated with 2:20-cv-10205*<br><br>[Hon. Otis D. Wright, II – Crtrm 5D]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      April 4, 2022<br>Time:      1:30 p.m.<br>Ctrm:      5D (First Street Courthouse)<br><br>Filed:      April 7, 2020<br>Trial:      May 17, 2022 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION .......................................................................... 6

II.  FACTUAL AND PROCEDURAL BACKGROUND ................................... 7

    A.   Armes Is A Highly Respected Award-Winning Professional
        Songwriter, Musician and Producer ........................................ 7

    B.   Armes Is Invited to Co-Write A Song With Defendants. .................... 8

    C.   Armes and Defendants Jointly Wrote the "Circles"
        Composition. ................................................................ 10

        1.   Armes Made Independently Copyrightable Contributions
            to the Composition of "Circles". ............................... 10

        2.   Armes's Contributions To the Composition of "Circles"
            Were Fixed In a Tangible Medium of Expression. .................. 11

    D.   Post Acknowledges that Armes Co-Wrote "Circles", But
        Defendants Refuse to Give Credit Or Compensation to Armes
        as a Joint Author "Circles". ................................................ 13

    E.   The Audience Appeal of "Circles" Clearly Turned On Armes'
        Contributions ................................................................ 14

    F.   Procedural History ......................................................... 15

III. STANDARD ON SUMMARY JUDGMENT ............................................ 16

IV.  THE OVERWHELMING EVIDENCE ESTABLISHES THAT
    ARMES IS THE JOINT AUTHOR OF "CIRCLES" ................................. 17

    A.   Armes Made Multiple Independently Copyrightable
        Contributions to the Composition of "Circles". ............................ 19

        1.   Armes Has Presented Evidence Establishing that His
            Contributions to the Composition of "Circles" Were
            Fixed in a Tangible Medium of Expression. ........................ 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.    Armes's Contributions to the Composition of "Circles" Were Original. ...........................................................22

3.    Armes Has Presented Expert Testimony Establishing that the Composition of "Circles" Embodied in the August 8, 2018 Voice Recording Is Virtually Identical to the Commercially Released Version of "Circles". ..........................24

B.    Armes Has Demonstrated That He Is a Joint Author of the "Circles" Composition. ...................................................................25

1.    The Evidence Establishes that Armes and Defendants Exercised Joint Control Over the Creation of "Circles". .........25

2.    The Parties Expressed An Objective Manifestation of a Shared Intent to be Co-Authors of "Circles". ..........................27

3.    Audience Appeal for "Circles" Turns on Armes' Contributions. ..........................................................................28

V.    CONCLUSION ...........................................................................29

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

2

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

**Cases**

4

5

*Aalmuhammed v. Lee*,
  202 F.3d 1227 (9th Cir. 2000) ........................................................ 7, 17, 18, 25

6

7

*Adickes v. S.H. Kress & Co.*
  (1970) 398 US 144, 90 S.Ct. 1598 (1970)...................................................... 28

8

9

*Andrien v. Southern Ocean County Chamber of Commerce*
  927 F.2d 132 (3d Cir. 1991) .................................................................. 16, 21

10

*BTE v. Bonnecaze*,
  43 F. Supp. 2d 619 (E.D. La. 1999) ...................................................... 21, 22

11

12

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .............................. 16

13

14

*Cornwell v. Electra Central Credit Union*
  (9th Cir. 2006) 439 F3d 1018 ...................................................................... 27

15

16

*Del Madera Properties v. Rhodes and Gardner, Inc.*,
  820 F.2d 973 (9th Cir.1987) ........................................................................ 17

17

18

*Del Rio v. Virgin Am., Inc.*,
  No. CV 18-1063-GW(SKx), 2018 WL 5099720
  (C.D. Cal. June 28, 2018) ...................................................................... 19, 20

19

20

*Desert Palace, Inc. v. Costa*
  (2003) 539 US 90, 123 S.Ct. 2148 .............................................................. 27

21

22

23

*Eagle Rock Entm't Inc. v. Coming Home Prods., Inc.*,
  No. CV 3–571 FMC, 2004 WL 5642002
  (C. D. Cal. Sept. 1, 2004). ........................................................................... 26

24

25

*Eastman Kodak Co. v. Image Technical Services, Inc.*
  (1992) 504 U.S 451, 112 S.Ct. 2072 (1992) ............................................... 17

26

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ..................................................................................... 22

27

28

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*
  771 F3d 1119 (9th Cir. 2014) ...................................................................... 28

4

*Hallmark Builders, Inc. v. Gaylord Broadcasting Co.*
(11th Cir. 1984) 733 F2d 1461 ........................................................................ 28

*McSherry v. City of Long Beach*
(9th Cir. 2009) 584 F.3d 1129 ............................................................... 17, 21

*Reinsdorf v. Skechers U.S.*
A., 922 F. Supp. 2d 866 (C. D. Cal. 2013).................................... 17, 26, 28

*Robertson v. Burdon*,
2019 WL 2141971 (C. D. Cal. Apr. 3, 2019)............................................ 17

*Satava v. Lowry*,
323 F.3d 805 (9th Cir. 2003) ................................................................ 23, 24

*Skidmore v. Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) ............................................................ 22, 23

*Sutton Imp.-Exp. Corp. v. Starcrest of California*,
762 F. Supp. 68 (S.D.N.Y. 1991) ............................................................. 16

**Statutes**

17 U.S.C. § 101........................................................................... 17, 21

Copyright Act ............................................................................. 17, 19

**Other Authorities**

Fed.R.Civ.P. 56(a) .......................................................................... 16

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MEMORANDUM OF LAW**

Plaintiff Tyler Armes ("Armes" or "Plaintiff") hereby opposes the Motion for Summary Judgment by Defendants Austin Richard Post, publicly known as "Post Malone" (hereinafter "Post") and Adam King Feeney, publicly known as "Frank Dukes" (hereinafter "Dukes") (collectively "Defendants") on grounds that there are multiple disputed issues of material fact concerning Armes' co-authorship of the musical composition entitled "Circles" which preclude the entry of summary judgment in this case.

## I.   INTRODUCTION

At the heart of this case is a dispute between Plaintiff and Defendants over the authorship of the musical composition entitled "Circles," one of the most commercially and critically successful songs released by Post[1] to date.  Armes is an award-winning professional songwriter, musician and music producer.[2] In August 2018, Armes was invited by Post's manager, Dre London ("London"), to go to a studio to write music with Defendants.  DMF No. 75. When Post was told that Armes was a talented songwriter and musician who had agreed to work with him, Post responded, "***Awesome, man, let's write a tune***". DMF Nos. 76-77.  On August 8, 2018, Armes, Post and Dukes set to work with just the three (3) of them alone in a studio starting completely from scratch to create new music.  DMF No. 81-83. Over the next approximately six (6) hours, Armes, Post and Dukes collectively composed the music comprising the song "Circles."

Strikingly absent from their Motion is any Declaration by Post or Dukes denying that Armes is a joint author of "Circles."  Thus, the only testimony before the Court as to what occurred when the music for "Circles" was written is that of Armes.  This is because Post and Dukes cannot truthfully state under penalty of

---

[1]  Post is a well-known singer, songwriter, rapper and record producer.

[2]  *See* Plaintiff's accompanying Statement of Genuine Disputes of Material Fact ("DMF") Nos. 119-121.

perjury that Armes did not co-author the music for the song "Circles", and therefore they do not refute that Armes is a joint author of the "Circles" composition.

As discussed herein, the overwhelming evidence supports the conclusion that Armes co-wrote and is a joint author of the "Circles" composition under the three (3) criteria set forth by the Ninth Circuit in *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000) (exercise of control over the work, an objective manifestation of shared intent to be joint authors and the audience appeal of the work turns on the authors' contributions).  Namely, Armes and Defendants jointly exercised control over the creation of the "Circles" composition on August 8, 2018.  DMF Nos. 84-106.  Armes and Defendants manifested a shared intent that their contributions to the "Circles" composition would be merged into inseparable parts of a unitary whole.  DMF Nos.  77-82; 110-113.  Additionally, the audience appeal of "Circles" turns on each of the contributions of Armes and Defendants, including specifically Armes' introduction of the use of live instruments in the composition, as opposed to Post vocalizing over pre-recorded beats, as he had done in his previous work.  DMF Nos. 119-124.

Because Plaintiff has presented more than sufficient evidence showing the existence of genuine issues of material fact concerning Armes' authorship of the "Circles" composition, the Motion for Summary Judgment should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Armes Is A Highly Respected Award-Winning Professional Songwriter, Musician and Producer.

Armes has worked as a professional songwriter, musician and producer for over 20 years.  DMF Nos. 54-68.  When he was in the 8th grade, he formed a band called Down With Webster, which was signed to Motown in 2009 by Sylvia Rhone, one of the most influential music executives in the industry. DMF No. 55.  Armes acted as the bandleader, writer and producer for Down With Webster, and under Armes's leadership, the band sold multiple platinum albums and over 1,000,000

singles. DMF Nos. 56-57.   Down With Webster was also nominated for a number of Juno Awards, MuchMusic (Canada's version of MTV) Video Awards and Canadian Radio Music Awards. DMF No. 58.   Armes personally wrote and produced five (5) of Down with Webster's top five (5) Canadian singles including, *Rich Girl$*, *Your Man*, *Whoa is Me*, *One in a Million* and *Chills*.  DMF No. 59.

In 2016, Armes formed a new band called Honors, for which he was also the bandleader, songwriter and producer.  DMF Nos. 60-61.   Honors' song *Over* was the Number 1 Global Viral Track on Spotify in January 2017, and it charted on the US Alternative Radio charts. DMF Nos. 62-63.  Honors was courted by multiple major record labels and, after receiving multiple offers, it signed with PRMD, the label helmed by Ash Pournouri, best known for managing the late artist Avicci.

In addition, Armes has a music publishing deal with Warner Chappell Music, and his music has appeared in campaigns for Panasonic, Major League Baseball, TBS, Fox and *The Voice* on NBC.  DMF Nos. 64-65.   As a songwriter and producer, Armes has collaborated with some of the top writers and producers in the music industry, including Murda Beatz, Bonnie Mckee, Jeff Gitty, Justin Tranter, Jesse Saint John and Timbaland. DMF No. 66.   Armes also co-wrote and produced a song on Lil Baby's Number 1 charting album *My Turn*, released on February 28, 2020 which is a 4x Platinum Album. DMF No. 67.

## B.   Armes Is Invited to Co-Write A Song With Defendants.

In approximately 2017, Armes was approached by London, a talent manager in the music industry who is best known for managing Post. DMF Nos. 69-70. London expressed interest in managing Armes both personally and his band Honors.  *Id.*   In addition, on a number of occasions, London suggested that Armes should get in the studio with Post to collaborate with him in writing a song. DMF No. 71.

1    In August 2018, London invited Armes to attend a private concert at which
2  Post was performing for a marijuana company.  DMF No. 72.  Following that
3  concert, London invited Armes to accompany him and Post to a show scheduled the
4  following evening, August 7, 2018, by a band Post admired called Black Label
5  Society at a club in Toronto.  DMF No. 73.   The following evening, August 7,
6  2018, Armes, London and Post watched the show from the side of the stage.  After
7  the show, Armes was invited into the green room backstage with Post and London
8  to meet the band.  DMF No. 74.

9    While backstage with Post and London following the Black Label Society
10  show, London invited Armes to go to a music studio with Post and London to write
11  music with Post and Dukes, and Armes agreed.  DMF No. 75.   London informed
12  Post that Armes was "*an awesome musician*" and that Armes was going back to the
13  studio to work with him.  DMF No. 76.  In response, Post exclaimed to Armes,
14  "*Awesome, man, let's write a tune, awesome, fuck yeah*," and other words to that
15  effect. DMF No. 77.

16    Prior August 7, 2018, Armes had never met Dukes.  DMF No. 78.   Although
17  Armes had been acquainted with Post prior to that date, they did not know one
18  another well and were not friends.  DMF No. 79.   The only reason Armes was
19  invited to the studio and the only reason he stayed in the studio for six (6) to eight
20  (8) hours alone with Post and Dukes was because Armes was a professional
21  songwriter who had been invited to collaborate with Post and Dukes to write a song
22  together, which is exactly what they did.

23    Armes, Post and London left the club following the performance by Black
24  Label Society at approximately 2:00 a.m. in the morning of August 8, 2018, and
25  Armes was driven to the studio with Post, Dukes, and London. When the parties
26  arrived at the studio on August 8, 2018, Post, Dukes and other members of Post's
27  entourage went into the "live room," where Post, Dukes and Armes started
28  jamming, and playing music together. DMF No. 80.  Shortly thereafter, Post,

9

Dukes and Armes got down to the business of songwriting, and the other individuals present who were not involved in the songwriting process excused themselves from the room, leaving Post, Dukes and Armes alone where the three (3) of them worked together until approximately 9:00 a.m. that morning to co-write the musical composition entitled "Circles". DMF No. 81.

Since Armes was a virtual stranger to Post and Dukes at the time he was invited to work in the studio with them on August 8, 2018, the only logical conclusion to be drawn from the fact that Armes remained alone in the studio with Post and Dukes for at least six (6) hours while the music for "Circles" was composed is that Armes was actively co-writing the music with Post and Dukes. Otherwise, Armes would have been asked to leave the live room while the parties worked on co-writing "Circles", along with the rest of Post's entourage.

At 5:13 a.m. on August 8, 2018, Armes sent a text message to his bandmates in Down With Webster and Honors, letting them know that he was in the studio with Post and Dukes co-writing a song with them, since Armes was scheduled to meet with them later that morning to work on music and he wanted to alert them to the fact that he would not be able to meet as scheduled. DMF No. 114.

## C.   Armes and Defendants Jointly Wrote the "Circles" Composition.

### 1.   Armes Made Independently Copyrightable Contributions to the Composition of "Circles".

Prior to August 8, 2018, none of the "Circles" composition had been written. DMF No. 82.   Armes and Defendants started with a completely blank slate. When "Circles" was composed, the process began with Post playing the drums and Armes playing a bass guitar to create the underlying drumbeat/groove in the song. DMF No. 84.   At first, Post played a faster tempo on the drums, but Armes directed Post, and Post agreed, to slow it down.   DMF No. 85.

Dukes and Armes co-wrote and added to the bassline and chord progression, with Dukes and Armes alternatively working on both a bass guitar and a keyboard

to create the bassline and chord progression in the song. DMF Nos. 87-91.
Armes's contributions to the bassline include the composition and arrangement of a
1-4-5 chord progression using the notes C, F to G on the bass guitar. *Id.*  The
bassline Armes co-wrote was fixed in a voice memo recording on Armes phone,
capturing the playback of the song recorded to a laptop computer at the studio
which was played back at the end of the songwriting session, and is identical to the
bassline in the commercially released version of "Circles.  DMF Nos. 89-91.

There are two guitar parts in the "Circles" composition, both of which were
co-written by Armes.  DMF No. 92.  The first is a distinctive guitar melody that is
played by the lead guitar in the introduction of "Circles," and which repeats
throughout the song.  Post and Armes co-wrote the guitar melody that plays in the
introduction of "Circles", with Post on the guitar and Armes sitting next to him
verbally singing the second half of the melody and cadence out loud, giving Post
direction as to exactly which notes to play. DMF No. 94-98.  The cadence and
turnaround phrasing that concludes the guitar melody which appears in both Armes'
voice memo recording and the commercially released version of "Circles" was a
direct result of Armes's contributions to the authorship of the guitar melody. DMF
No. 95.   Armes also co-wrote the guitar chords, including the parts in the song
where the F major chord changes to an F minor chord.  DMF Nos. 99-102.   The
bassline, guitar melody and chord progression in the song "Circles" which Arms co-
wrote repeat in an 8 bar loop that has elements added and subtracted to them
depending on whether these elements are repeated in the chorus or the verses.

## 2.   Armes's Contributions To the Composition of "Circles" Were Fixed In a Tangible Medium of Expression.

During the process of writing the music for "Circles", various takes of the
song were recorded to a laptop at the studio.  DMF No. 103.   During that process,
Post, Dukes and Armes discussed and mutually agreed on which takes of the song
should be included in the recording.  DMF No. 104.   The parties discussed and

1    agreed that the song sounded better stripped down to just bass, guitar and drums as

2    the prominent sounds, without a lead keyboard in the foreground. DMF No. 105.

3    This helped shape the sound of an organic band - which was derived from the

4    approach of all of Armes and Defendants playing on live instruments together to

5    start the process that night.

6         This was a totally new sound and style for Post, who previously recorded

7    most of his music using pre-recorded beats or "rap tracks" on a computer. DMF No.

8    106.  Armes also directed the bass guitar to be played using a pick as opposed to

9    fingers when the song was recorded. DMF No. 107.  Armes first came up with the

10   idea, and Post and Dukes agreed, that both the vocals and guitar should have a large

11   amount of reverb on them. DMF No. 108.  Armes's contributions to the

12   composition of "Circles" in this regard are reflected both the voice memo recording

13   captured on August 8, 2018, and the commercially released version of "Circles."

14   DMF No. 109.   The music in the voice memo recording is virtually note-for-note

15   identical to the music in the commercially released version of "Circles."  DMF Nos.

16   91, 98 and 102.  The only substantive difference between the voice memo recording

17   and the commercially released version of "Circles" is the addition of the lyrics,

18   which Armes acknowledges he did not write. DMF No. 44.

19        After the composition of the final version of the music for "Circles" had been

20   completed and recorded to the laptop on August 8, 2018, Dukes played back the

21   recording of the final "Circles" composition, and Armes recorded what was played

22   in a voice memo on his phone.  DMF No. 83.   After the song ended, Post, Dukes

23   and Armes discussed "*how awesome the song was*" and "*how much fun it was*" to

24   write the song together.  DMF No. 110.  Armes, Post and Dukes can all be heard

25   celebrating the song they had just created at the end of the voice memo recording.

26   Dukes' voice can be heard in the recording exclaiming, "*It's so fucking good! It's

27   a whole new sound man.*  Post can also be heard saying, "*It's super special," and

28   "that's gonna be the next … we're just gonna, for the next album we're just*

1   ***gonna use a fuck load of reverb.***," Dukes is also heard stating, "***this kind of track***
2   ***would be insane to play live***."  DMF Nos. 111-113. When Armes left the studio on
3   August 8, 2018, he expected that London, who was his point of contact for Post and
4   Dukes as their manager, would contact him regarding the status of "Circles." DMF
5   No. 39.

6       D.   **Post Acknowledges that Armes Co-Wrote "Circles", But**
7            **Defendants Refuse to Give Credit Or Compensation to Armes as a**
8            **Joint Author "Circles".**

9       On August 5, 2019, London posted a snippet of "Circles" on Instagram, and
10  announced that Post would premier the song live that night during his Bud Light
11  Dive Bar Tour show in New York City. DMF No. 117. "Circles" was released
12  commercially on August 30, 2019, and is included on Post's album
13  entitled *Hollywood's Bleeding*, which was released in its entirety on September 6,
14  2019.  The music on the commercially released version of "Circles" is note-for-note
15  virtually identical to the song composed by Post, Dukes and Armes on August 8,
16  2018.  DMF Nos. 91, 98 and 102.

17      When London posted the snippet of "Circles" and announced that it would be
18  premiered live by Post on August 5, 2019, Armes immediately contacted London
19  and sent him the following text message:

20      ***Dre, I need you to ask Post about this please….***

21
22      ***Post asked me to write with them and jam and we did for well over an hour***
        ***in the live recording room coming up with the jam that lead into the***
23      ***recording of circles.***

24      ***I was there until long after the sun came up with them in the main room***
25      ***working on the song and playing different instruments and contributing to***
        ***ideas from start to finish.***
26
27      ***Specifically the bass and guitar parts, post ended up tracking them after I***
        ***was playing. I was beside him giving input on both of them. I was not just***
28

---

13

*someone hanging out in the room, I'm a writer/producer in the room with two other writer/producers working on a song.*

*I have never asked for anything I don't deserve. I've been in 100 studio sessions with Lou while he was working at EF with different artists, I know when I am just hanging out.  This was much different.*
*I was part of the writing process. The entire song (minus the lyrics other than "circles") was laid down that night with the 3 of us in the room together, working together.*

*… Please speak to post. I'll have Cory my manager hit up frank's manager. Thanks brother, excited for the song.*

DMF No. 116.

On August 9, 2019, London responded to Armes's text message: "***Just showed Posty the message*** [¶] ***He said he remembers*** [¶] ***U played a tune on the bass then he played more of it after***".  DMF No. 117.   Since London is Post's representative and manager, Armes understood London's message to be an acknowledgment on behalf of Post that Armes co-wrote the song. DMF No. 39. Notwithstanding the foregoing, to date, Defendants have refused to credit Armes as a co-writer of "Circles" and have refused to pay Armes any share of the publishing royalties for the song.

    **E.**    **The Audience Appeal of "Circles" Clearly Turned On Armes' Contributions.**

After "Circles" was commercially released in August 2019, it debuted at Number 7, reached Number 1 on the US Billboard Hot 100 for the week of November 30, 2019, where it remained for three (3) non-consecutive weeks, and it remained in the top 5 songs on Billboard for months thereafter, broke records for the most consecutive weeks in Billboard's top 10 and remained on Billboard's Hot 100 charts for 60 consecutive weeks.  DMF No. 119.   The song received critical praise, with Billboard naming it the seventh (7th) best song of 2019, and describing it as consisting of a "bouncy, melancholy" melody alongside a "gentle acoustic

groove," and as being "backed by sunny acoustic guitars, swirling percussion and infectious melodies" with a "funky feel".  DMF No. 120.   "Circles" is by far one of the most commercially successful songs released by Post to date. DMF No. 121.

Indeed, "Circles" is a dramatic departure from the music previously released commercially by Post.  Prior to "Circles," Post's music was comprised mainly of him rapping or singing over pre-recorded beats or "rap track" on a computer.  In contrast, the music for "Circles" is performed with live instruments (*i.e*., guitar, bass and live drums). DMF No. 122.   "Circles" is the first major release by Post not to appear on any hip-hop charts.  DMF No. 123. A review published by Slate December 5, 2019 entitled, "Post Malone Might Finally Be Getting His Wish to Escape Hip Hop," observes that unlike Post's prior music, "***the melody is sparkling, with prominent guitar arpeggios and a wistful sigh of a chorus that, dare I say it, soars. Post Malone has never been about the soar.***"   DMF No. 124.

It was the formation as a live band by Armes, Post and Dukes on August 8, 2018, playing together in the live studio room that directly led to the joint creation of the composition "Circles." The choices Armes, Post and Dukes jointly made together over the course of their session resulted in a new sound that stood out as a very special recording for Post. They began with a blank canvas and through their mutual collaboration over many hours, they created the music heard note for note on both the voice memo recording made by Armes on August 8, 2018,  and the commercially released version of "Circles". Without the direct creative involvement and contributions by Armes on August 8, 2018, that "Circles" would not exist.

### F.   <u>Procedural History</u>

As a result of Defendants' refusal to acknowledge Armes as a joint author of "Circles", Armes filed this action on April 7, 2020, seeking a declaratory judgment that he is the co-author and co-owner of the copyright to the composition "Circles",

as well as an accounting and imposition of a constructive trust with respect to the profits received from the exploitation of the "Circles" composition.[3]

*After* this action was filed, in a transparent case of forum shopping, Post filed a parallel action in the Southern District of New York seeking a declaration that Armes is not the co-owner of the copyright to the "Circles" composition. Defendants' efforts to have this case dismissed and/or transferred to the Southern District of New York were rejected by this Court.  Dkt. 32 at 4-10.  Instead, Post conceded that the proper venue to determine the entire dispute was the Central District of California, and the parties stipulated to transfer the Complaint filed by Post in the Southern District of New York to this Court where it was consolidated with this action.  Dkts. 35, 43 and 45.

## III.   <u>STANDARD ON SUMMARY JUDGMENT</u>

Summary judgment may be granted only if the court finds that "that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As the parties seeking summary judgment, Defendants bear the initial burden setting forth the basis for their motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This is a burden Defendants have not met, and cannot meet.

At the crux of this dispute is Armes's claim that he is a co-author of the composition "Circles".  "Authorship is, however, an issue of fact precluding summary judgement." *Sutton Imp.-Exp. Corp. v. Starcrest of California*, 762 F. Supp. 68, 70 (S.D.N.Y. 1991) (denying summary judgment on joint authorship claim under copyright law on those grounds); *citing Morita v. Omni Publications Int'l, Ltd.*, 760 F.Supp. 45 (S.D.N.Y.1991); see also *Andrien v. Southern Ocean*

---

[3] Although Armes initially sought a declaratory judgment that he is also a co-author and co-owner of the copyright to the master sound recording of "Circles", that claim was dismissed and is not the subject of Defendants' Motion for Summary Judgment. Dkt 32 at 11-14.

*County Chamber of Commerce* 927 F.2d 132, 134 (3d Cir. 1991) ("Generally authorship is a factual question for the jury."), citing *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1086 (9th Cir.1989); *Del Madera Properties v. Rhodes and Gardner, Inc.,* 820 F.2d 973, 980 (9th Cir.1987).

At the summary judgment stage, Plaintiff's version of any disputed issue of fact is presumed correct. *Eastman Kodak Co. v. Image Technical Services, Inc.* (1992) 504 U.S 451, 112 S.Ct. 2072 (1992); *McSherry v. City of Long Beach* (9th Cir. 2009) 584 F.3d 1129, 1135. Thus, the court must view the evidence presented on the motion in the light most favorable to Armes: "The evidence of the non-movant **is to be believed**, and **all justifiable inferences are to be drawn in his favor.**" *Id.*, 477 U.S. at 255, 106 S.Ct. at 2513 (emphasis added). Because the evidence in the record establishes the existence of numerous genuine issues of material fact concerning Armes' authorship of the "Circles" composition, Defendants' Motion should be denied.

## IV.   THE OVERWHELMING EVIDENCE ESTABLISHES THAT ARMES IS THE JOINT AUTHOR OF "CIRCLES".

A joint work is defined by the Copyright Act as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "The Ninth Circuit has explained that under these principles, 'for a work to be a 'joint work' there must be (1) a copyrightable work, (2) two or more 'authors,' and (3) the authors must intend their contributions be merged into inseparable or interdependent parts of a unitary whole.'" *Robertson v. Burdon*, 2019 WL 2141971, at *7 (C. D. Cal. Apr. 3, 2019) (citing *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231 (9th Cir. 2000); *see also Reinsdorf v. Skechers U.S.*A., 922 F. Supp. 2d 866, 871 (C. D. Cal. 2013). Armes has presented evidence of each of the foregoing criteria establishing that multiple genuine issues of material fact exist preventing summary judgment.

Defendants' Motion for Summary Judgment relies heavily on the Court's decision dismissing Armes's claim for declaratory relief with respect to the master sound recording of the "Circles" composition.  Dkt. 32 at 11-14.  However, the Court's analysis of Armes' claim that he was a co-author of the sound recording of the song "Circles" was based on the application of a completely different set of facts from the facts and evidence in the record supporting Armes's right to a declaratory judgment that he is a co-author of the composition of the music to "Circles".  The Court's decision to dismiss Armes' declaratory relief claim as to the sound recording of "Circles" turned on the fact that Defendants cut Armes out of the process after the underlying musical composition for "Circles" was written on August 8, 2018.  In applying the three (3) criteria for joint authorship articulated by the Ninth Circuit in *Aalmuhammed v. Lee*, *supra*, 202 F.3d at 1234 (exercise of control over the work, an objective manifestation of shared intent to be joint authors and the audience appeal of the work turns on the authors' contributions),  the Court found that Armes lacked the requisite control over the sound recording and that any contributions by Armes to the sound recording were not fixed in any tangible medium of expression since he was not physically present when the sound recording of "Circles" was created.  Dkt. 32 at 12-13.  The same cannot be said with respect to Armes's claim that he is a co-author of the "Circles" composition.

Applying the criteria articulated in *Aalmuhammed*, there is ample evidence in the record establishing that Armes is a co-author of the "Circles" composition. Indeed, as the Court previously noted when it ruled on Defendants' Motion to Dismiss, "***Armes appears to have sufficiently pleaded a shared intent to be co-authors and that the audience appeal of the Recording turns on his contributions thereto.***"  Dkt. 32, 12:11-13 (emphasis added). At a minimum, the Court should find that triable issues of material fact exist which preclude entry of summary judgment in this case.

A.   **Armes Made Multiple Independently Copyrightable Contributions to the Composition of "Circles".**

1.   **Armes Has Presented Evidence Establishing that His Contributions to the Composition of "Circles" Were Fixed in a Tangible Medium of Expression.**

In their Motion, Defendants incorrectly suggest that in order to satisfy the requirement that an author entitled to copyright protection must "fix" the original copyrightable material into a tangible medium of expression with the notion that the author of a musical composition must be the individual physically transcribing the notes of the composition, or manipulating the record button on the device recording the composition.  However, that is not the law.  In *Del Rio v. Virgin Am., Inc.*, No. CV 18-1063-GW(SKx), 2018 WL 5099720 (C.D. Cal. June 28, 2018), the court explained:

> Nimmer provides more guidance on what it means for fixation to have occurred under the authority of an author:
>
> In addition to the foregoing requirements, a work is not "fixed" under the Copyright Act unless its embodiment in tangible form takes place "by or under the authority of the author." Thus, to the extent that someone bootlegs a live musical performance by taping it, the result is not to create copyrightable subject matter.
>
> Given the statutory reference to fixation taking place under the author's "authority," ***it is not necessary for a singer to personally set up the microphone, an actor to operate the camera, or the like.*** To the extent that a band member voluntarily participates in a recording session, or an actor voluntarily participates in a film shoot, the resulting product may be considered pursuant to the requisite authority. These issues seldom rise to the fore.

*Del Rio v. Virgin America, Inc.*, No. CV 18-1063-GW(SKX)) 2018 WL 5099720, at *5, (C.D. Cal., June 28, 2018) (emphasis added).

In *Del Rio*, the court declined to dismiss the plaintiff's claim that she was a joint author of the copyright to a sound recording of Plaintiff's voice "rapping" a

distinctive melody, rhythm and pitch while imitating the voice of a little girl based on her allegations that a number of decisions in the recording booth came from her creative direction, and that she alone created the voice, melody and rhythm for the rap embodied in the sound recording used in defendant's safety video. *Del Rio*, 2018 WL 5099720, at *6-7.

Here, Armes has presented evidence establishing that his contributions to the authorship of "Circles" on August 8, 2018, were fixed into a tangible medium of expression that day. During the writing process, Armes' co-wrote the bassline and guitar chords using a bass guitar and keyboard. DMF Nos. 87-91. Armes co-wrote the guitar melody for "Circles" using his voice to direct Post which notes to play on the guitar. DMF Nos. 92-102. Throughout the writing process, various takes of the song were recorded to a laptop in the studio, and Armes, Post and Dukes discussed and mutually agreed on which takes should be included in the final recording captured in Armes's voice memo at the end of the session. DMF No. 83. As Armes testified at his deposition, "***It was a collaboration***," and Armes gave creative direction as to which takes he believed should be included in the final recording. DMF Nos. 104-105. It was Armes' idea, and Post and Dukes agreed with his idea, that the final recording of "Circles" should include a lot of reverb on the guitar and the vocals. DMF No. 108. The addition of the reverb can be heard in the voice memo recording made by Armes on August 8, 2018, and in the commercially released version of "Circles." 98. Armes, Post and Dukes also discussed and agreed that the song sounded better stripped down to just bass, guitar and drums as the prominent sounds, without a lead keyboard in the foreground. DMF No. 105. Armes also directed the bass to be played using a pick as opposed to fingers when the song was recorded. DMF No. 107. All of these creative contributions by Armes, which were accepted and mutually agreed to by Post and Dukes, helped shape the sound of an organic band - which was derived from the approach of

playing live instruments, as opposed to pre-recorded rap tracks which were usually used by Post.

Defendants' argument that the foregoing evidence does not meet the test under *Andrien v. Southern Ocean Cnty. Chamber of Commerce*, 927 F.2d 132, 135 (3d Cir. 1991) for establishing that his creative contributions to the "Circles" composition were fixed "under his authority" is unavailing.  To the contrary, the uncontroverted testimony and evidence presented by Armes shows that Defendants acted at Armes' direction and under his authority when they played the bassline, guitar chords and melody exactly as composed by Armes on the voice memo recording embodying the composition of "Circles", and when they included reverb on the guitar and vocals and agreed that the sound should include only the bass, guitar and drums as the prominent sounds in the music.  The fact that Armes did not physically touch the laptop on which the parties' various takes of the song were recorded, or that he was not physically playing the bass, guitar or drums on the recording made at the end of the session on August 8, 2019 – as opposed to Dukes and Post playing the notes and melody composed by Armes during the songwriting session – is not dispositive.

As the court recognized in *Andrien*, "a rote or mechanical transcription that does not require intellectual modification or highly technical enhancement" may satisfy the requirement that Armes's contributions to the "Circles" composition were fixed "by or under" his authority under 17 U.S.C. § 101.  Indeed, there is no evidence in the record that Defendants made any modifications whatsoever to Armes's creative contributions to the "Circles" composition which are embodied in the voice recording.  Therefore, the Court should accept the evidence presented by Armes and true.  *McSherry*, 584 F.3d at 1135.

The facts in *BTE v. Bonnecaze*, 43 F. Supp. 2d 619, 627 (E.D. La. 1999), cited by Defendants for the proposition that Armes purportedly has not shown that his contributions to the "Circles" composition are fixed in a tangible medium of

expression, are inapposite to the facts in this case.  In *Bonnecaze*, the Court found that the putative co-author could point to no contributions to the compositions of the "underlying songs," although as a musician in the band he clearly contributed to the sound recordings, in which a separate copyright vests. *BTE v. Bonnecaze*, 43 F. Supp. 2d 619, 627 (E.D. La. 1999). In contrast here, it is undisputed that Armes co-wrote the underlying bassline, guitar chords and guitar melody in the "Circles" composition, and that his creative contributions to the "Circles" composition are embodied in the sound recording captured on Armes's phone on August 8, 2018, whether or not Armes was the one physically playing the notes he composed on the recording.

## 2.   Armes's Contributions to the Composition of "Circles" Were Original.

"Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citations omitted). Armes has more than met his burden of showing a triable issue of material fact.

In this case, it is undisputed that the music created by Armes, Post and Dukes on August 8, 2018 is original.  The parties entered the studio on August 8, 2018, with a completely blank slate and emerged with a brand new song, minus the lyrics (other than the word "circles" which became the song's title).  DMF Nos. 82-83. No portion of the "Circles" composition existed prior to August 8, 2018, and the music in the commercially released version of "Circles" is note-for-note identical to the voice memo recorded to Armes's phone at the end of the parties' writing session on August 8, 2018. DMF Nos. 91, 98 and 102.

Defendants' reliance on *Skidmore v. Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020) for the proposition that the bassline and guitar chord progressions co-written

by Armes are allegedly "commonplace" and not entitled to copyright protection is thoroughly misplaced.  In *Skidmore*, the plaintiff appealed a ***jury verdict*** in favor of defendants on grounds (among others) that the court's instruction to the jury copyright "does not protect ideas, themes or common musical elements, such as descending chromatic scales, arpeggios or short sequences of three notes," was prejudicial.  Therefore, unlike this case where Defendants are seeking summary judgment based on incomplete excerpts of Armes's deposition testimony taken out of context, the question of originality was submitted to the jury.  Likewise here, the question of the originality of Armes's contributions to the "Circles" composition should be decided by the jury.

Moreover, Defendants' assertion that the bassline, chord progressions and guitar melody co-authored by Armes lack originality because aspects of those contributions include commonplace musical elements ignores the fact that the ***selection and arrangement*** of Armes' contributions to the composition are original. *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) ("a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship").  Here, the evidence is that the bassline, guitar melody and chord progression in the song "Circles" which Armes' co-wrote repeat in an original 8 bar loop that has elements added and subtracted to them depending on whether these elements are repeated in the chorus or the verses of the song.  Furthermore, Armes' testimony establishes that his contributions to the composition of "Circles" were far greater than the addition of "common or trite" musical elements not entitled to protection.  Plaintiff's expert witness further rejected the notion that the elements of the guitar melody were commonplace, instead concluding that the meter and rhythm were unique and distinctive from prior works.  DMF No. 30.

3.      **Armes Has Presented Expert Testimony Establishing that
the Composition of "Circles" Embodied in the August 8,
2018 Voice Recording Is Virtually Identical to the
Commercially Released Version of "Circles".**

Defendants' assertion that the expert report prepared by Judith Finell is
somehow moot now because she successfully rebutted the opinions offered by
Defendants' expert is absolutely false.  As noted by Plaintiff's expert, Defendants'
expert merely transcribed a small select number of musical stems excerpting only
three (3) minutes of an all-night writing and recording session which took place
over approximately six (6) hours which without knowing who was playing what on
the recordings or explaining how those small excerpts were selected for analysis.

In contrast, Plaintiff's expert compared the bassline, guitar chords and guitar
melody embodied in Armes's voice memo recording to the commercially released
version of "Circles".  With respect to the bassline, Plaintiff's expert determined that
"the primary target notes" and "a distinctive melodic feature of the 'Circles'
bassline" are the same in the voice memo recording taken on August 8, 2018, and in
the commercially released version of Circles.  DMF Nos. 91, 98 and 102. Plaintiff's
expert further concluded that the guitar melody in the phone recording and the
commercially released version of "Circles" are identical, and that "[t]his melody is
a significant identifying element in 'Circles,' first occurring in the song's
introduction and functioning as a recurring instrumental theme throughout the
song." *Id*.  She further found that "[t]he guitar melody in the final 'Circles' release
is found identically with its rhythmic idiosyncrasies already in place in … [the
phone recording]."  She further concluded that the phone recording and
commercially released version of "Circles" "contain the same guitar them," and that
the "similarities are specific and substantial … [and] show continuity of musical
expression in … [the phone recording] and 'Circles' release." DMF Nos. 91, 98 and
102.

Importantly, Plaintiff's expert rejected the statement by Defendants' expert that the musical pitches in the guitar melody are commonplace and found in prior materials such as the song "Silent Night," as misleading since the meter and rhythm found in "Circles" is easily distinguishable from that in prior works such as "Silent Night."  DMF No. 30.

While it is true that Plaintiff's expert (as with Defendants' expert) has no personal knowledge of who created what in the "Circles" composition, Armes has provided detailed testimony specifically identifying his contributions to the "Circles" composition, specifically including his contributions to the creation of the bassline, guitar chords and melody, all of which were addressed and fully analyzed in Plaintiff's expert's report comparing the phone recording with the commercially released version of "Circles".

### B.    Armes Has Demonstrated That He Is a Joint Author of the "Circles" Composition.

#### 1.    The Evidence Establishes that Armes and Defendants Exercised Joint Control Over the Creation of "Circles".

Defendants' reliance on *Aalmuhammed* for the proposition that Armes lacked the requisite control over the composition of "Circles" ignores the wealth of evidence establishing Armes's extensive creative contributions and directions to the final product which were accepted and adopted by Defendants during songwriting session on August 8, 2018, and which were included in the commercially released version of "Circles." Indeed, *Aamuhammed* is easily distinguishable on its facts from this case.  In *Aamuhammed*, the plaintiff was an Islamic consultant hired by Denzel Washington to advise him regarding his portrayal of Malcom X in the motion picture of the same name in which Washington played the title character. *Aamuhammed*, 202 F.3d at 1230.  The plaintiff claimed that he had written two scenes for the movie in order to provide historical authenticity and that he translated dialog from Arabic to English and selected prayers to be used for certain characters

in certain scenes.  *Id*. Notwithstanding the fact that the court determined that there were triable issues of material fact on the issue of whether plaintiff made independently copyrightable contributions to the script, the court determined that there was no evidence that he had any control over the motion picture, which was superintended by the film's director, Spike Lee, and the motion picture studio that distributed the film.  *Id*. at 1235.

In contrast here, the composition of "Circles", excluding the lyrics, was completed on August 8, 2018, and Armes has submitted substantial evidence raising triable issues of material fact concerning his control over the composition ultimately embodied in the voice recording captured on Armes' phone.  DMF Nos. 11-12, 19 and 103-108.

"Courts in this district have found the joint control criterion satisfied where 'both parties had creative control over separate and indispensable elements of the completed product.'" *Skechers*, 922 F. Supp. 2d at 872; *see also Eagle Rock Entm't Inc. v. Coming Home Prods., Inc*., No. CV 3–571 FMC, 2004 WL 5642002 *13 (C. D. Cal. Sept. 1, 2004). The court in *Skechers*, in which a photographer whose photographs for Skechers' advertising campaigns had allegedly been enhanced sued for copyright infringement, found that the "control" factor weighed in favor of joint authorship even where "Skechers controlled the latter half of the creative process," but "had minimal involvement in [the photographer's] authorship of his photographs." 922 F. Supp. 2d at 872. Similarly, the court found that "parties exercised creative control over separate and indispensable elements" of a pay-per-view program depicting a live performance by a music artist where the joint authors were the musical performer and the company that recorded and produced the program. *Eagle Rock Entm't*, 2004 WL 5642002, at *13.   Thus, the fact that Armes was excluded from the process of adding the lyrics and creating the sound recording embodying the commercially released version of "Circles" is irrelevant since the

composition of the underlying music co-written by Armes was completed on August 8, 2018.

## 2. **The Parties Expressed An Objective Manifestation of a Shared Intent to be Co-Authors of "Circles".**

It is undisputed that Armes was invited by Post's manager to co-write a song with Post and Dukes.  DMF No. 5.  Defendants concede that, when told that Armes would be returning to the studio to write a song with him, Post responded enthusiastically, "Awesome man, let's write a tune!"  DMF Nos. 8, 77.  Armes, who is a professional songwriter, musician and producer, and who had never previously met Dukes and had only a passing acquaintance with Post spent at least six (6) hours alone in the studio with Post and Dukes creating the "Circles" composition out of whole cloth, less the lyrics which Armes does not dispute were added subsequently.  It is reasonable to assume that if Defendants did not intend for Armes to be a co-writer of the "Circles" composition, Armes would have been asked to leave the live room in the studio when the rest of Post's entourage left the room, when the parties got serious about writing new music.  Armes was never asked to leave.  Instead, Defendants accepted Armes' contributions and creative directions with respect to the final composition of the music for "Circles" which is embodied in both the voice recording and the commercially released version of "Circles."  Such circumstantial evidence is sufficient to create a genuine issue of material fact, sufficient to defeat a motion for summary judgment. *Cornwell v. Electra Central Credit Union* (9th Cir. 2006) 439 F3d 1018, 1029-1030; and see *Desert Palace, Inc. v. Costa* (2003) 539 US 90, 100, 123 S.Ct. 2148, 215 (in civil litigation generally, circumstantial evidence "may be more certain, satisfying and persuasive than direct evidence").

At the conclusion of the writing session, Armes and Defendants celebrated their creation and discussed how much fun they had co-writing the music for "Circles," with both Post and Dukes exclaiming their excitement over how special

and original the song was and how they could not wait to perform it live.  DMF Nos. 110-113.

Perhaps most importantly, after the song "Circles" was released commercially, Post admitted that Armes co-wrote the "Circles" composition.  In response to a text message from Armes setting forth in specific detail each of his contributions to the composition of "Circles," through his manager London, Post admitted that "he remembers" and acknowledged Armes's work on the bass guitar during the composition of "Circles."  DMF Nos. 116-117.  The record is devoid of any evidence to the contrary. Although Post might belatedly argue that London's text message on his behalf was not intended to be an admission that Armes co-authored the "Circles" composition, all inferences as to the intended meaning should be drawn in favor of Armes.  *Adickes v. S.H. Kress & Co.* (1970) 398 US 144, 157, 90 S.Ct. 1598, 1608 (1970) (even when the basic facts are undisputed, *if reasonable minds could differ* on the inferences to be drawn from those facts, summary judgment should be denied); *Fresno Motors, LLC v. Mercedes Benz USA, LLC* 771 F3d 1119, 1125 (9th Cir. 2014) (summary judgment improper "where divergent ultimate inferences may reasonably be drawn from the undisputed facts") (internal quotes omitted). *Hallmark Builders, Inc. v. Gaylord Broadcasting Co.* (11th Cir. 1984) 733 F2d 1461, 1463 (in defamation case, summary judgment is improper if the words published are capable of more than one meaning).

Taken together, all of the foregoing evidence more than demonstrates an objective manifestation of the parties' mutual intent to be joint authors of the "Circles" composition.

### 3. <u>Audience Appeal for "Circles" Turns on Armes' Contributions.</u>

The third prong under the joint-authorship inquiry is met where "the audience appeal turns on both contributions and the share of each in its success cannot be appraised." *Skechers,* 922 F. Supp. 2d at 872. Here, there is significant evidence

1  that the audience appeal of the "Circles" composition turns on Armes's

2  contributions.  DMF Nos. 119-121. And this sentiment was shared by the

3  "audience," as evidenced by the "article for Slate entitled, 'Post Malone Might

4  Finally Be Getting His Wish to Escape Hip Hop,'" in which the author observed

5  that unlike Post's prior music, "the melody is sparkling, with prominent guitar

6  arpeggios and a wistful sign of a chorus that, dare I say it, soars. Post Malone has

7  never been about the soar."  DMF No. 124.

8      Billboard named "Circles" the seventh (7th) best song of 2019, described "it

9  as consisting of a 'bouncy, melancholy' melody alongside a 'gentle acoustic

10  groove,' and as being 'backed by sunny acoustic guitars, swirling percussion and

11  infectious melodies' with a 'funky feel.'" DMF Nos. 119-120. These "audience"

12  perceptions of the guitar sounds are especially telling, given Armes' authorship of

13  the guitar melody, which is played in the introduction of *Circles* and which repeats

14  throughout.

## V.    <u>CONCLUSION</u>

16      For all of the foregoing reasons, Armes requests that Defendants' Motion for

17  Summary Judgment be denied in its entirety.

19  DATE:  March 14, 2022          ALLISON S. HART
20                                KELSEY J. LEEKER
                                  LAVELY & SINGER
21                                PROFESSIONAL CORPORATION

22                                By: */s/*      *Allison S. Hart*
23                                    ALLISON S. HART
                                  Attorneys for Plaintiff and Consolidated
24                                Defendant TYLER ARMES