ALLISON S. HART (BAR NO. 190409)
*ahart@lavelysinger.com*
KELSEY J. LEEKER (BAR NO. 313437)
*kleeker@lavelysinger.com*
LAVELY & SINGER
PROFESSIONAL CORPORATION
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone:   (310) 556-3501
Facsimile:   (310) 556-3615

Attorneys for Plaintiff/Consolidated Defendant
TYLER ARMES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| TYLER ARMES,<br><br>              Plaintiff,<br><br>       v.<br><br>AUSTIN RICHARD POST, publicly known as POST MALONE, an individual; ADAM KING FEENEY, publicly known as FRANK DUKES, an individual; UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; DOES 1 through 10, inclusive,<br><br>              Defendants. | CASE NO. 2:20-cv-03212-ODW(SKx)<br>*Consolidated with 2:20-cv-10205*<br><br>[Hon. Otis D. Wright, II – Crtrm 5D]<br><br>**DECLARATION OF JUDITH FINELL IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        April 4, 2022<br>Time:        1:30 p.m.<br>Ctrm:        5D (First Street Courthouse)<br><br>Filed:        April 7, 2020<br>Trial:        May 17, 2022 |

1

# DECLARATION OF JUDITH FINELL

I, Judith Finell, declare:

1.      I am a musicologist and the President of Judith Finell MusicServices Inc., and I am making this Declaration in support of Plaintiff Tyler Armes' Opposition to the Motion for Summary Judgment filed by Defendants Austin Richard Post.  I have personal and firsthand knowledge of the matters set forth in this Declaration and, if called and sworn as a witness, I could and would testify competently thereto under oath.

2.      I have an M.A. degree in musicology from the University of California at Berkeley, and a B.A. in piano performance from UCLA.  I was recently invited to teach the first course in the United States on forensic musicology at UCLA.  I have also written numerous articles and a book on the subject of contemporary music and copyright infringement, and I have testified in numerous copyright infringement trials over the past 20 years.  I am a trustee of the Copyright Society of the U.S.A., and have appeared as a guest lecturer at the law schools of Harvard University, UCLA, Stanford, Columbia, Vanderbilt, George Washington, NYU, and Fordham, as well as the Beverly Hills Bar Association, LA Copyright Society, and the Association of Independent Music Publishers.  I regularly advise HBO, Lionsgate, Grey Advertising, CBS, Warner Bros., Disney and Sony Pictures on musical works for their commercials, films and television series, and I frequently advise attorneys, advertising agencies, entertainment and recording companies, publishing firms, and musicians concerning music copyright issues.

3.      A true and correct copy of my resume is attached hereto as Exhibit 1.

4.      A true and correct copy of a list of the publications I have authored is attached hereto as Exhibit 2.

5.      A true and correct copy of a list of cases in which I have testified as an expert witness is attached hereto as Exhibit 3.

2

6.      I have been engaged by Mr. Armes as an expert witness in this matter. Among the tasks I performed on behalf of Mr. Armes was to analyze and compare a voice memo recording, that I was informed was recorded on Mr. Armes' phone on August 8, 2018, to the commercially released version of the song "Circles."

7.      A true and correct copy of the voice memo recording I analyzed is attached hereto as Exhibit 4, and a copy of the commercially released version of "Circles" to which I compared the voice memo recording is attached hereto as Exhibit 5.

8.      A true and correct copy of the report I prepared following my analysis and comparison of the voice memo recording (Ex. 4) and the commercially released version of "Circles" (Ex. 5) is attached hereto as Exhibit 6, with my analysis and conclusions regarding the comparison of the bassline and guitar melodies found in both the voice memo recording and the commercially released version of "Circles" found at pages 10-14, paragraphs 24-34 of the Report.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 11th day of March, 2022, at Los Angeles, California.

JUDITH FINELL

3

# EXHIBIT 1

**Judith Greenberg Finell**
Musicologist / Music Consultant / Expert Witness
c/o Judith Finell MusicServices Inc.

4712 Admiralty Way • Suite 918 • Marina Del Rey, CA 90292
Phone: (310) 301-3338 • Website: www.jfmusicservices.com
Email: judi@jfmusicservices.com

## I. Current Positions

**President and Founder**
Judith Finell MusicServices Inc.
New York City, 1980 – Present
Los Angeles, 2018 – Present

Responsibilities include: Leading and managing a diverse team of 6 music experts of doctoral level, some of whom have been with us for 10 – 20 years. Our team includes concert artists and scholars from premier international conservatories (Juilliard, Brussels Conservatory, Eastman, Yale) with the advantage that perfect pitch brings to our analytical work.

Judith Finell is the lead consultant and testifying expert witness for clients in the music, entertainment, technology, media, and legal professions. We consult on diverse musical genres and applications, including differing cultures and styles, from western concert music to popular urban styles to music of indigenous societies.

The firm holds the distinction of being the first organization in the USA to provide its wide range of specialized expertise and services.

Present concentrations include:

- Music copyright infringement issues (expert testimony, disputes, risk prevention)
- Music supervision in film, television, and advertising
- Artist development and support
- Fundraising, membership/audience development for arts education, performance, and intellectual property organizations
- Marketing and programming innovation
- Commissioning new musical works
- Concert, tour, conference, and event production at major venues
- Debut concert production and marketing
- Team and consensus building for medical and arts initiatives, including organizing fundraising events for Columbia University Medical Center (building new children's pulmonary wing), Orchestra of the 20th Century (Carnegie Hall), and Copyright Society of the USA
- Composer/performer representation and management
- Music licensing
- Criteria development for foundation grants

**UCLA (University of California, Los Angeles), Faculty, Musicology, 2018-present**

## II. Selected Clients and Projects

Artist Clients (Consulting)

- Bob Dylan
- Gordon Getty
- Itzhak Perlman, violinist
- Pinchas Zukerman, violinist and conductor
- Tod Machover, composer
- Jonathan Coulton (NPR)
- Kronos Quartet
- Cleveland Quartet

Educational and Performance Institution Clients (Consulting)

- M.I.T. Media Lab (Formation and Development)
- Boston Symphony Orchestra
- Carnegie Hall
- Lincoln Center
- Brooklyn Academy of Music
- American Institute of Musical Studies (Graz, Austria) – 5 years
- Orchestra of the 20th Century (Arthur Weisberg, conductor) – 8 years (Board, fundraising, concert production)
- San Francisco Ballet
- Meet the Composer (initiated, and long-term consulting)
- Artists of the Metropolitan Opera
- London Sinfonietta
- Pompidou Center, Paris
- Chamber Music Society of Lincoln Center (initiated and headed commissioning project) – 10 years
- St. Paul Chamber Orchestra (initiated and headed commissioning project) – 6 years

Clients and Participants in Disputes (Expert Testimony and Analyses)

- Marvin Gaye Estate
- Duke Ellington Estate
- Bob Marley Estate
- Igor Stravinsky Estate
- Michael Jackson
- Beyoncé
- Chuck Berry
- Lionel Richie
- National Music Publishers Association (before Copyright Royalty Board)
- 2 Live Crew
- Blues Traveler
- Lady Gaga
- Blue Man Group
- Ludacris
- Cy Coleman
- Christina Aguilera
- The Beastie Boys
- Red Hot Chili Peppers
- Chris Isaak
- Julio Iglesias
- U2
- Jay-Z
- Dr. Dre
- New Kids on the Block
- The Suzuki Method
- ZZ Top

Film, Television Series, and Broadway Theater Clients

- *Barney and Friends* – 8 years
- *Memoirs of a Geisha*
- *On The Basis of Sex* (Focus Features)
- *The Good Wife*
- *Sophisticated Ladies* – Broadway production
- *The Voice*
- *Seymour: An Introduction* (Ethan Hawke)
- *Dora the Explorer* (Disney)
- *Pretty Little Liars*
- *The Lion King* – Broadway production

2

Law Firm Clients

- Mitchell, Silberberg & Knapp
- King & Ballow
- Weil, Gotshal & Manges
- Paul, Weiss, Rifkind, Wharton & Garrison
- Gibson, Dunn & Crutcher
- Pryor Cashman LLP
- Manatt, Phelps & Phillips
- Frankfurt, Kurnit, Klein & Selz
- Greenberg, Glusker, Fields, Claman & Machtinger
- Proskauer, Rose
- Winston & Strawn
- Loeb & Loeb
- Moses & Singer

- Amazon Studios
- Netflix
- Broadcast Music, Inc. (BMI)
- Apple, Inc.
- Grey Advertising
- Young & Rubicam Advertising
- EMI Music Publishing and Recordings
- Def Jam Records
- Boosey & Hawkes
- Music Sales
- Warner Bros. Pictures
- Warner/Chappell Music Publishers
- Playtech (video games, Israel)
- Aruze Corporation, Tokyo

Music Industry/Media Clients

- Sony Pictures Entertainment
- HBO
- Disney/ABC
- Lionsgate Entertainment
- Sony/BMG Records
- NBC Universal
- Sony Music
- Universal Music Group
- American Society of Composers, Authors, and Publishers (ASCAP)

## III. Honors

Commencement Speaker, UCLA Herb Alpert School of Music, 2018

Volunteer of the Year, Copyright Society of the USA, 2011

## IV. Prior Positions

**Founding Director of Composer Manuscript Collection and Publications**
American Music Center's Music Information Center
New York City, 4 years

Identified and created special archive collection for manuscripts by Charles Ives, Aaron Copland, Stephen Sondheim, Virgil Thomson, and developed special collection housed at New York Public Library and Yale School of Music

3

**Founding Director of Directory Project**
American Music Center
New York City, 2 years

Responsibilities included:
- Compiling and supervising research and publication of *The Contemporary Music Performance Directory* – a 200 page resource for composers and performers covering funding, grant application guidance, concert halls, festivals, and other resources—commissioned by the N.Y. State Council on the Arts and National Endowment for the Arts
- Raising $40,000 in order to publish and promote the book, and to perpetuate future editions


**Music Publications, Score Editor, and Music Book Editor**

Publisher Clients included:
- G. Schirmer
- Associated Music Publishers
- Theodore Presser
- Éditions Salabert
- Alexander Broude, Inc.

Edited scores and created arrangements for music in all performance categories: instrumental, vocal, choral, band, orchestral, and electronic

Edited comprehensive treatises on complete Verdi operas and music of Salamone Rossi


**Director of Music Research**
Joseph Boonin Music Publications

Responsibilities included:
- Designing and editing concert music catalogs for professional musicians, conductors, musicologists, and librarians
- Creating access to the college music textbook market, recommending textbooks and new music editions to college professors and music librarians
- Copy editing and rewriting musicology textbooks
- Recommending special editions and works to conductors and performers

4

<u>**V. Education**</u>

M.A., Musicology
University of California, Berkeley
- Specialization: French opera
- Primary studies with Richard Crocker (musicology, early music; graduate advisor), Joseph Kerman, Vincent Duckles (music library science and resources), Alan Curtis (harpsichord)

B.A., Music Performance (Piano)
University of California, Los Angeles
- Primary studies with Aube Tzerko (piano), Henri Lazarof (composition, musicianship, harmony, analysis), Nicholas Slonimsky (musicology), Paul Tanner, Alden Ashforth (jazz), ethnomusicology courses and ensembles

1981 – Present: Attendee and guest speaker at over 150 conferences and events on intellectual property law and music industry throughout the USA and abroad (for which attendees received Continuing Legal Education credit)


<u>**VI. Selected Speaking Engagements (Keynote, Moderator, Panelist)**</u>

**Recent topics: Milestone copyright infringement cases, the "Blurred Lines" case musical analysis, music created by artificial intelligence, forensic musicology, music technology, film and commercial music**

<u>**A. Universities and Conservatories – Moderator/Speaker**</u>

UCLA Herb Alpert School of Music, commencement speaker, May 2018

Harvard University, March 2016

Columbia University Law School, 2016

Fordham Law School International Copyright Law Seminar (annual), New York, 1991 – Present

Stanford University Law School, October 2010

Vanderbilt University, 2000

Frost School of Music, University of Miami, 2016

Drexel University, 2000

College-Conservatory of Music, University of Cincinnati, October 2018

5

**B. Law/Intellectual Property Organizations – Moderator/Speaker**

Practicing Law Institute, New York (Advanced Copyright Seminar), March, 2018 and 2017

Copyright Society of the USA, Los Angeles Chapter, February, 2018

Copyright Society of the USA, New York chapter, 1987 – 2017
Presentations to an audience of copyright lawyers on:
- Musical comparisons and analysis techniques
- Digital sampling
- Music licensing
- Criteria for drawing conclusions of possible copyright infringement

American Bar Association annual conference, August, 2017, New York

All Ohio Annual Institute on Intellectual Property, October, 2016

New York State Bar Association, September, 2016

American Bar Association, Intellectual Property conference, April, 2016

Los Angeles Copyright Society, Beverly Hills, April, 2008

Entertainment, Arts, and Sports Law Section, New York State Bar Assn., Motion Picture Committee, New York, February, 2006, 2016

Beverly Hills Bar Assn., Beverly Hills, CA, December, 2005

American Intellectual Property Lawyers' Association, Annual Meeting, Washington, D.C., 2001


**C. Music Industry – Moderator/Speaker**

South by Southwest Festival, 2017

Association of Independent Music Publishers (AIMP), September 2018 (New York), September 2016 (Los Angeles), "Anatomy of a Sample"

Association of Independent Music Publishers (AIMP), September 2016 (Los Angeles), June 2017 (New York): "Music Licensing" challenges

National Association of Music Merchants Annual Conference, 2015 – 2017

Cellular/Electronic Technology Conference, San Francisco, 2000

Panelist, National Music Publishers' Assn., New York, 1995, 1987

6

Speaker, American Institute of Musical Studies, Graz, Austria, 1981 – 84
Topics addressed to emerging opera singers included: "Selling Yourself," "Marketing a New Artist," "The Business of Music," and "How to Have a Career in Europe"

Music Library Association (on self-publishing opportunities for composers)

## VII. Publications Written by Judith Finell

"Transcending the Inverse Ratio Rule: Musicological Hierarchies Still Apply," *Your Inside Track*, Winter 2022.

"Tribute to Marybeth Peters," (Register of Copyrights, US Copyright Office), *Copyright Society of the USA Journal*, Fall 2010.

"Scandalous Notes: A Musicologist Discusses New Developments in Music Technology That Challenge Copyright Attorneys and Expert Witnesses," *New York State Bar Association Entertainment, Arts and Sports Law Journal*, Special Edition 2008, Vol. 19, No. 1.

"The Outer Reaches of Copyright Protection: Creative Arts, Style and the Law," written with Judith Beth Prowda, *New York State Bar Association Entertainment, Arts and Sports Law Journal*, Fall/Winter 2002.

"Using an Expert Witness in a Music Copyright Case," *Client Times* (Thomson & Thomson), Volumes 1 and 2, 2001. Lead article.

"Musicologist Takes a Look at Recent Court Rulings," *New York Law Journal*, May, 1992. Published in a 3-part series, this article discusses approaches to digital sampling, sound-alike, and advertising cases.

"Using an Expert Witness in a Music Copyright Case," *Entertainment Law Reporter*, September, 1990. Lead article.

"Using an Expert Witness in a Music Copyright Case," *New York Law Journal*, May, 1990. Published in a 3-part series, this article outlines the ways in which a music expert can assist an attorney through all stages of a lawsuit.

*The Contemporary Music Performance Directory. New* York: American Music Center, 1975. 250 pages.
- Descriptive listing of 550 performing ensembles, 660 sponsoring organizations, 350 performing facilities, and 200 concert series and festivals of contemporary music
- Emphasis is on chamber music, jazz, and experimental music
- Detailed descriptions of the activities of performing ensembles, exact budgetary and grant information on sponsors, and fundraising strategy recommendations
- Funded by the New York State Council on the Arts and the National Endowment for the Arts

*The Works of Lukas Foss: Biography and Catalog.* New York: Éditions Salabert, 1976. 20 pages, including description of unpublished manuscripts.

*The Works of Erik Satie: Biography and Catalog.* New York: Éditions Salabert, 1976. 20 pages, including descriptions of unpublished manuscripts.

*The American Music Center Library Catalog of Choral and Vocal Works.* New York: American Music Center, 1975. 200 pages, including descriptions of many unpublished manuscripts by leading American composers including Charles Ives, Aaron Copland, and Stephen Sondheim.

*The Works of Arthur Honegger: Biography and Catalog.* New York: Éditions Salabert, 1974. 20 pages, including descriptions of unpublished manuscripts.

*Twentieth Century Piano Music by American Composers.* Hackensack, New Jersey: Joseph Boonin, Inc., 1973. 25 pages, including unpublished manuscripts.

## VIII. Selected Publications about Judith Finell

"'Blurred Lines' Lawsuit: Marvin Gaye Family Now Claims Robin Thicke Stole Two Songs (Exclusive)," Eriq Gardner, *The Hollywood Reporter*, October, 2013

"Marvin Gaye's Family Gets Boost from Songwriters, Musicologists in 'Blurred Lines' Appeal," Ashley Cullins, *The Hollywood Reporter*, December, 2016

"Expert: 'Blurred Lines' hook, bass line similar to Marvin Gaye hit," Victoria Kim, *Los Angeles Times*, February, 2016

"Name That Tune, and Prevent a Rip-Off," Donna Greene interview of Judith Finell, *New York Times*, August, 1995

A fuller list of articles and speaking engagements may be found on the Judith Finell MusicServices Inc. website at www.jfmusicservices.com.

## IX. Selected Media Interviews of Judith Finell

"The Universality of Music" – Judith Finell will appear in an interview in this documentary produced by NBC/Universal in 2018

"Inspiration Or Appropriation? Behind Music Copyright Lawsuits," interview hosted by Allyson McCabe on *Weekend Edition*, NPR, September, 2015

"Blurring the Copyright Lines," The Brian Lehrer Show, NPR, March, 2015

Further appearances include:
- Court TV, regarding music copyright lawsuits

- Featured in a television documentary hosted by Maria Shriver discussing musical education for children
- Interviewed on television's *Celebrity Justice* regarding a music copyright lawsuit between Madonna and Mary J. Blige

Interviewed by, and/or subject of broadcasts and articles by organizations including:
- NPR
- BBC
- CBS
- *New York Times*
- *Hollywood Reporter*
- *Billboard Magazine*
- *New Yorker Magazine*
- *Los Angeles Times*

## X. Memberships, Boards of Directors

Copyright Society of the USA (25 years)
  Board of Directors (Officer), 2014 – 2016
  Trustee, 2016 – Present
  Chairman, 2005, 1993 Annual Conferences
  Founding Chairman, 2009 – 2014, New Member Initiative
  Co-chair, 13 chapters, 2019-20

American Music Center, New York

Association of Independent Music Publishers (20 years)
  Member of nominating committee for Board of Directors, 1993

New York Women in Film and Television

Association of Media and Entertainment Counsel -  New York Steering Committee, 2010

American Musicological Society, 2018

California Copyright Conference, 2018

Judith Finell MusicServices Inc.  March 11, 2022

## <u>QUALIFICATIONS of Judith Finell, Expert Witness in Music</u>

I am a musicologist and the president of Judith Finell MusicServices Inc., a consulting firm in New York and Los Angeles. I am also a professor of musicology at UCLA (University of California, Los Angeles).

For over 25 years, I have served as an expert witness and consultant in various disputes regarding intellectual property, including copyright litigation involving Marvin Gaye, the Beastie Boys, Julio Iglesias, Sony/CBS, Igor Stravinsky, and many others.  Recently, I was the musicologist testifying on behalf of the Marvin Gaye estate in the case involving the songs "Blurred Lines" and "Got to Give it Up" before Federal Judge Kronstadt in Los Angeles (Pharrell Williams, Robin Thicke, and Clifford Harris, Plaintiffs v. Bridgeport Music Inc., Frankie Christian Gaye, Marvin Gaye III, et al, Defendants, USDC, Central District of California, Western Division, Case No. CV 13-0604-JAK). I have also testified regarding music technology, including before the Copyright Royalty Board in Washington, D.C. in a dispute between the recording and music publishing industries involving the royalty rates for ring tones.

I regularly advise film and television companies; advertising agencies; entertainment and copyright attorneys; media, publishing, and recording companies; and musicians on music copyright considerations. My firm also provides music supervision and consulting services for film, television, video games, and commercials. In this regard, we have been engaged as music consultants by Sony Pictures for *Memoirs of a Geisha*, and have consulted often with Disney, Netflix, Amazon Studios, Apple, CBS, HBO, Lionsgate, DreamWorks, Lucasfilm, and others on the original and licensed music selected for their productions.

In my capacity as a forensic musicologist, I have been interviewed internationally by print and broadcast media, and have appeared in documentaries, pod casts, radio, television, and print on the topic. This includes BBC Television, *New York Times*, CBS, NBC News, *The New Yorker*, *Rolling Stone Magazine*, *Hollywood Reporter*, *Variety*, *Billboard*, *Washington Post*, and others. I also appeared as a guest on television's *Celebrity Justice*, discussing a copyright case involving the recording artist Madonna. I often present seminars and lectures to law schools, bar associations, intellectual property and creative departments of various law firms and advertising agencies throughout the country, including frequent appearances in New York, Chicago, San Francisco, L.A., and Nashville.

I was the commencement speaker at the Herb Alpert School of Music (UCLA) in 2018, and a guest and keynote speaker at the law schools of Harvard, Stanford, Columbia, NYU, and Vanderbilt Universities, as well as before the American Bar Association, the Copyright Society of the USA, the New York State Bar Association, the Los Angeles Copyright Society, and the Beverly Hills Bar Association, among others. The attorneys attending my presentations often receive CLE credit. I have also been a guest speaker before graduate film composing seminars at UCLA, NYU, and other universities.

Judith Finell MusicServices Inc.  March 11, 2022

I have been a trustee and an officer of the board of the Copyright Society of the U.S.A., having also co-chaired its New Member Initiative committee for 5 years. I presently serve as the co-chair of the 14 chapters of the Copyright Society of the USA.

I graduated from The University of California, Berkeley (M.A., musicology), and from University of California, Los Angeles (UCLA) (B.A., music performance).

## TEACHING AND CURRENT WRITING

I have been invited to co-author a textbook on the topic of music copyright protection and forensic musicology. I presently teach the only course in forensic musicology in the U.S.A. (at UCLA).

I have authored the following publications in the past ten (10) years. A full list of my publications, including a book, is on my firm's website at www.jfmusicservices.com.:

"Transcending the Inverse Ratio Rule: Musicological Hierarchies Still Apply," *Your Inside Track*, Winter 2022.

"Tribute to Marybeth Peters," *Copyright Society of the USA Journal*, Fall 2010.

"Scandalous Notes: A Musicologist Discusses New Developments in Music Technology That Challenge Copyright Attorneys and Expert Witnesses," *New York State Bar Association Entertainment, Arts and Sports Law Journal*, Special Edition 2008, Vol. 19, No. 1.

"The Outer Reaches of Copyright Protection: Creative Arts, Style and the Law," written with Judith Beth Prowda, *New York State Bar Association Entertainment, Arts and Sports Law Journal*, Fall/Winter 2002.

## COMPENSATION

My compensation is $350 per hour for non-testimonial purposes and $4,500 per day for testimonial purposes. My fee is $450 per hour for litigation support, including preparation for testimony. If testifying outside of the Los Angeles area, I am paid a minimum of one 8-hour day, plus travel time. If testifying within the Los Angeles area, minimum testimony time charge is $2,500 for a half day of 4 hours, beyond which is billed at a $450 hourly fee, plus travel time and expenses.

2

# EXHIBIT 2

**Click on the article title to view.**

New York State Bar Association Entertainment, Arts and Sports Law Section Journal, "Scandalous Notes: A Musicologist Discusses New Developments in Music Technology That Challenge Copyright Attorneys and Expert Witnesses," Special Edition 2008, Vol.19, No.1. [1]

New York State Bar Association Entertainment, Arts and Sports Law Section Journal, "The Outer Reaches of Copyright Protection: Creative Arts, Style and the Law," Fall/Winter 2002, Vol. 13, No. 3. [2]

Thomson & Thomson's Client Times, "Using an Expert Witness in a Music Copyright Case," Volumes.1 and 2, 2001. [3]

The New York Times, "Westchester Q&A: Judith Greenberg Finell. Name That Tune, and Prevent a Rip-Off," August 27, 1995. [4]

New York Law Journal, "Musicologist Takes Look At Recent Court Rulings," Part One of Three, May 15, 1992. [5]

New York Law Journal, "How A Musicologist Views Digital Sampling Issues," Part Two of Three, May 22, 1992. [6]

New York Law Journal, "A Musicologist Discusses Disguised Infringement," Part Three of Three, May 29, 1992. [7]

New York Law Journal, "Using an Expert Witness in a Music Copyright Case," May 4, 11 and 18, 1990. [8]

# EXHIBIT 3

Judith Finell MusicServices Inc.  March 11, 2022

## __Judith Finell Prior Testimony as Expert Witness – Music Copyright Infringement__

I have testified as an expert witness at trial or by deposition in the following cases from 2008-2022:

1. SA Music LLC, et al. v. Apple LLC, et al. USDC, Northern District of California, Case No. 20-cv-2146-JSC. Depositions on November 4, 2021, and November 11, 2021. I was retained by attorneys for the defendant, Apple LLC (Gibson, Dunn & Crutcher).

2. Richard Morrill v. Gwen Stefani, Pharrell Williams, UMG Recordings, et al. USDC, Central District of California, Western Division, Case No. CV-07301-DMG-SK. Deposition on May 17, 2018. I was retained by attorneys for the plaintiff, Richard Morrill (Polaris Law Group).

3. Ian Pai v. Blue Man Group Publishing LLC et al, Supreme Court of the State of New York, Judge Ostrager. Deposition on November 9, 2017. I was retained by attorneys for the defendant, Blue Man Group Publishing (Frankfurt, Kurnit, Klein & Selz).

4. Bowen v. Paisley, et al, Case No. 3:13-0414, pending in the United States District Court for the Middle District of Tennessee, Nashville Division. Depositions on October 29, 2015, and March 15, 2016. I was retained by the attorneys for the plaintiff (Connor and Connor).

5. Osama Ahmed Fahmy, Plaintiff v. Jay-Z (AKA Shawn Carter), Timothy Mosely et al, Defendants, USDC, Central District of California, Western Division, Case No. CV 07-05715 (CAS), deposition on July 30, 2015. I was retained by the attorneys for the plaintiff (Browne, George, Ross).

6. Pharrell Williams, Robin Thicke, and Clifford Harris, Plaintiffs v. Bridgeport Music Inc., Frankie Christian Gaye, Marvin Gaye III, et al, Defendants, USDC, Central District of California, Western Division, Case No. CV 13-0604-JAK, trial testimony on February 26-27, 2015, and depositions on April 18, 2014 and December 5, 2014. I was retained by the attorneys for the defendants (King & Ballow), the family of Marvin Gaye.

7. Calvin Gaines, Plaintiff v. Rob Fusari, Rob Fusari Productions, LLC, and Stefani Germanotta aka Lady Gaga, Civil Action No. 11-CV-4433( WJM/MF), deposition on July 2, 2014. I was retained by attorneys for the defendant (James C. Dezao).

8. Chris Lester, Plaintiff v. U2 Limited, et al., Defendants. U.S. District Court, Central District of California, Case No. CV 07-06612-SJO, deposition on February 29, 2009. I was retained by attorneys for the plaintiff (Lavely & Singer – John Lavely, Attorney).

9. Serendip LLC & Wendy Carlos, Plaintiffs v. Warner Bros. Entertainment Inc., Defendant. U.S. District Court, Central District of California, Case No. CV08-07739 RGK, deposition on December 8, 2009.  I was retained by attorney for the plaintiffs. The case involved the electronic musical score for the film *A Clockwork Orange*.

10. Testified as expert rebuttal witness before the Copyright Royalty Judges of the Library of Congress in the matter of Mechanical and Digital Phonorecord Delivery Rate Adjustment Proceeding on behalf of National Music Publishers' Association, Inc., the Songwriters Guild of America, and the Nashville Songwriters Association International, Docket No. 2006-3 CRB DPRA. The proceeding took place on May 21, 2008, and I was retained as a rebuttal witness for the National Music Publishers' Association.

1

# EXHIBIT 4

Finell Declaration Exhibit 4 –

August 8, 2018 Voice Memo Recording with Armes, Post and Dukes


(Audio File on Flash Drive)

# EXHIBIT 5

Finell Declaration Exhibit 5 –

Commercially Released Version of "Circles"


(Audio File on Flash Drive)

# EXHIBIT 6

# JUDITH FINELL MUSICSERVICES INC.
### CONSULTING · RESEARCH · MUSIC COPYRIGHT MATTERS · MUSIC INDUSTRY SUPPORT

January 21, 2022

## <u>Preliminary Evaluation and Rebuttal of Lawrence Ferrara Musicology Report on "Circles"</u>

## <u>Materials Reviewed</u>

1.      We reviewed the following materials received from Lavely & Singer:

   a.      "DEFS Expert Ferrara Report(13859284.1).pdf" – Musicology report of Lawrence Ferrara, dated January 3, 2022 [referred to below as "Ferrara Report"]

   b.      "Audio Exhibit 1 - Track 1.m4a" – commercial release of "Circles" recording [referred to below as "Circles"]

   c.      "Audio Exhibit 1 - Track 2.aif" – recorded audio stem [referred to below as "Stem 1"], duration 1:08

   d.      "Audio Exhibit 1 - Track 3.aif" – recorded audio stem [referred to below as "Stem 2"], duration 0:14

   e.      "Audio Exhibit 1 - Track 4.aif" – recorded audio stem [referred to below as "Stem 3"], duration 1:36

   f.      "P000001.m4a" – audio recording from recording session made by Tyler Armes with a cell phone [referred to below as "Phone Recording"], duration 8:57

4712 ADMIRALTY WAY, SUITE 918, MARINA DEL REY, CALIFORNIA 90292    TEL: (310) 301 3338
EMAIL: JUDI@JFMUSICSERVICES.COM    WEBSITE: HTTP://WWW.JFMUSICSERVICES.COM

January 21, 2022  Judith Finell

> g.      "Circles - C Major - MN0200477.pdf" – published sheet music of
> "Circles."

2.      As the materials and information received were incomplete at the time of this review and report, we reserve the right to examine and discuss future findings if further materials and information are received.

## **Preliminary Conclusions**

3.      Lawrence Ferrara omits a crucial component of the comparison process, namely the "Phone Recording" considered here. A musicological conclusion requires examination and evaluation of all significant musical materials at issue.

4.      A preliminary examination of the 9-minute (8:57) "Phone Recording" has revealed additional melodic and harmonic information demonstrating a connection between the "Phone Recording"—omitted by Lawrence Ferrara—and "Stems 1 and 3." "Stems 1, 2, and 3" were the only materials discussed by Lawrence Ferrara in comparison with the final release of "Circles." Our detailed note-for-note comparison here includes that of the bass guitar and guitar lines in the "Phone Recording," as well as the harmonic framework and phrase structure contained in the final release of "Circles."

5.      The bass line in the final release is substantially similar to the melodic line embodied in the "Phone Recording," as well as to "Stem 1" and "Stem 3." The primary

2

January 21, 2022  Judith Finell

target notes[1] in the released "Circles" bass line are present in "Stem 1" and "Stem 3" as well as in the "Phone Recording."

6.      While Ferrara does accurately find that the additional pitches shown in "Stem 3" are parallel to the final version in the "Circles" release, the primary target pitches in "Stem 1" do remain fully intact in the final release of "Circles." See Exhibit A and Musical Example 1 below.

7.      Since a major piece of the musical evidence—the "Phone Recording"—has been omitted, Ferrara's conclusions are unreliable and incomplete.

8.      The 4-bar structure established in the "Phone Recording" remains consistent in "Stem 1," "Stem 3," and the final "Circles" release.

9.      Ferrara has provided no substantiation for the source or legitimacy of the stems he compares to the final "Circles" release, other than the information he received and accepted from his attorney employers. On a musical and recording identification basis, there is no forensic evidence provided here that identifies the chronological order or even the performer on the stems Lawrence Ferrara compares to the "Circles" release.

---

[1] A target note is a structurally important note, such as an arrival point, often indicated through register, duration, or rhythmic emphasis such as syncopation. A series of target notes define much of a melody's identity and distinctiveness. Two melodies containing a similar series of target notes are often found to be substantially similar.

3

January 21, 2022  Judith Finell

10.     Further, musicologist Lawrence Ferrara is unqualified to opine on legal doctrine in his statements such as that one cannot "monopolize" the similar materials that he has acknowledged exists between "Stem 1," "Stem 3," and the final "Circles" release. To challenge the copyright protection standards and eligibility requirements of the U.S. Copyright Act is beyond a musicologist's education or terminology.

11.     Lawrence Ferrara refers to a "fragmentary" similarity between the work of Tyler Armes and the final "Circles" release. This characterization misleads. Brevity itself in musical expression does not deny originality. Beethoven, musical genius of his generation and beyond, wrote his most acclaimed melody with the 4-note sequence G-G-G-E-flat of his *Fifth Symphony*. I challenge any musicologist or attorney to describe this work as unoriginal or undeserving of robust copyright protection in its day. In my decades of musical study, I am not aware of a more distinctive or enduring melody. In addition, this iconic theme by Beethoven is the musical seed with which he builds an entire symphonic movement occupying a full duration of 8 minutes. It is a leading example of using the target notes to develop a full-scale work, much as is the case with "Circles" and the "Stem 1" bass line.

## **Limitations of Materials Provided**

12.     The premises upon which Lawrence Ferrara states his findings and conclusions are built on unfounded and incomplete information. The musical evidence from the materials discussed and studied fails to substantiate the following:

4

January 21, 2022  Judith Finell

a.      The identity of the individual instrumentalists who are playing the guitar, bass, and so on;

b.      The chronological order of the added simultaneous material, such as a bass guitar line coupled with a supporting chord series, which co-exist and influence one another;

c.      The influence and initiation of specific musical elements attributed without musical foundation to specific individuals in the Ferrara Report, such as instrumental lines that are blended to co-exist in the release;

d.      The musical collaborative process to create the final release, and the interpersonal relationships and power dynamics between the individual co-creators during the compositional session. The final release is a result of this blended creative process, and no video or audio evidence of it has been discussed or provided in the Ferrara Report;

e.      The author and performer of a musical work can be the same or differing individuals. None of the musical evidence in the stems or final release discussed by Ferrara provides substantiation as to the identity of the initiator or even the performer on any individual musical element.

13.    Because of the missing information and musical evidence, the only valid way to determine the initiation and evolution of the bass line, as well as the guitar melody in the introduction, is to compare the final release melodic/harmonic material to the versions that preceded it. The scope of our study has maintained these boundaries, resulting in a finding of a strong melodic, structural, and harmonic link between the final release bass

5

January 21, 2022  Judith Finell

line and the materials contained in the "Phone Recording" and "Stem 1" of the collaborative recording session.

14.     Lawrence Ferrara's conclusions are based on incomplete study and conjecture of the specific collaborative process in this particular group of creators. While the transcriptions in the Ferrara Report of "Stem 1," "Stem 2," and "Stem 3" are accurate, the selection criteria and sources of those stems have not been established. "Stem 2" appears to be a musician warming up and is not musically connected to this comparison.

15.     The stems analyzed by Lawrence Ferrara total excerpts 3 minutes in duration from an all-night writing and recording session. Neither the full materials from which these excerpts were chosen, nor their criteria for selection, have been provided. 3 minutes amount to less than 1% of a 7-hour collaborative period. Of the 3 minutes, Lawrence Ferrara attributes fewer than 90 seconds to Tyler Armes—yet Lawrence Ferrara attempts to limit the entire extent of Armes' creative contributions while overlooking more than 99% of the duration of the writing session from which the music evolved to its final form.

## __Context of Musical Works Arising from a Collaborative Creative Process__

16.     "Circles" presents as a work utilizing musical expression from multiple creators. This shared authorship is common among bands and musician colleagues. Musicians greatly vary in their collaborative process, but most group writing becomes a blend of multiple contributors during a recording session. The distinction between participants is not evident to a listener or even a musicologist. A study of a post-session recording alone

6

January 21, 2022  Judith Finell

does not allow for concrete evidence of which collaborator has led the creative choices, nor the individual contributions and influences that result in the final release.

17.     Lawrence Ferrara's speculations on the creative process, chronology of musical elements,[2] and contributor roles during the all-night writing and recording session are unsupported by the materials reviewed.

18.     For example, Lawrence Ferrara cites background audio of a musician saying the note or chord name "F" to indicate that Armes was being directed by another musician. This occurs in "Stem 2," which appears to be a musician warming up and is not musically connected to this comparison. It is just as likely that Armes himself, who had already played an "F" less than a second prior to this statement, as evidenced on the recording provided, was the one who led here, instead of receiving direction from another artist.

19.     Musicians collaborate in the studio through various means. These include verbal instructions, conversations, shared musical references, improvisation, overdubbing, and enhancing through recording technology. Lawrence Ferrara's analysis of 3 minutes of excerpted audio—none of which include a full mix or recording of the room or

---

[2] It is also impossible to determine from the materials received, for example, whether the bass guitar and guitar were being played simultaneously or in sequence. Lawrence Ferrara's conjecture that the guitar chronologically preceded the bass guitar recording is not supported by the stems or industry practice, wherein it is more likely that bass guitar and drums are recorded *before* guitar when producing a multitrack recording.

7

January 21, 2022  Judith Finell

communications between co-authors, but rather isolated stems[3] from his employer—provide insufficient basis for conclusions on this particular collaboration.

# **Preliminary Findings on Ferrara Report**

20.     Lawrence Ferrara describes "Stem 1" as containing commonplace, unprotectable elements, yet "Stem 3" and "Circles" are direct outgrowths of it, sharing most of the same notes, pulse, and direction from "Stem 1." Further, the most distinctive melodic features of "Stem 3" and "Circles" are present in "Stem 1" as transcribed by Lawrence Ferrara.[4]

21.     Additionally, Lawrence Ferrara fails to compare material directly related between "Circles" and "Stem 1" as found in his own transcriptions, leading to faulty conclusions. For example, his MUSICAL EXAMPLE 3, "Variation of the Secondary Bass Guitar Line at 3:12" in "Circles," shows distinctive similarity to his transcription of the bass line in "Stem 1," in his MUSICAL EXAMPLE 4, but he omits this. See below for a comparison.

---

[3] Lawrence Ferrara's conjecture that the guitar chords are audible in the bass guitar stems because of "headphone bleed" is undermined by the sonic characteristics of the stems. It is unlikely that headphone bleed would be audible if the bass guitar amplifier were recorded with a microphone, and impossible for headphone bleed to be recorded if the bass guitar were recorded through a direct input (line-in).
[4] Lawrence Ferrara erroneously describes "Stem 3" as "played in a higher register for most of the first 30 bars (approximately an octave higher than the previous bass guitar performances)" in paragraph 23 of his report. Rather, "Stem 3" begins in the same octave as "Stem 1."

8

January 21, 2022  Judith Finell

**Ferrara Musical Example 3 [“Circles”]**



**Ferrara Musical Example 4 [“Stem 1”]**



**[Ferrara Musical Example 4, “Stem 1” – transposed[5] to same register as “Circles” for reference]**



22.    As shown above, the musical elements Ferrara finds in “Stem 1” are retained in those he finds in “Circles,” including shared pitches, harmonies, and target notes, bar for bar, as well as a distinctive rebounding octave on the pitch F in Bars 3 and 4, in both “Circles” and “Stem 1.”

23.    Ferrara reports several times on finding a guitar melody in common between “Circles” and “Stem 1.” However, he does not transcribe or compare this material. See Musical Example 2 for a comparison and analysis of the guitar melody.

---

[5] Transposition is a process whereby a musical work is changed from one key or octave to another for the purposes of comparison (or for performance reasons), but all of the musical properties, such as melody, harmony, and structure, remain intact. Transposition is a standard accepted musical analysis method for comparison. Lawrence Ferrara’s transcriptions of “Stems 1 and 3” are notated an octave higher than those pitches sound.

9

January 21, 2022  Judith Finell

# **Comparison of Stems, "Phone Recording," and "Circles"**

24.     Musical Examples 1 and 2 below include comparison of the final release of

"Circles" to the "Phone Recording" and the applicable stems, as shown in Ferrara's own

transcriptions. Scale degree[6] numbers are written above each note.

**Musical Example 1: Bass Line Comparison, 4-Bar Phrase: "Circles," "Phone Recording," "Stem 3," "Stem 1"[7]**



---

[6] A scale degree describes the position within a musical scale of a particular tone. In a traditional seven-note C major scale, for example, the first tone, C, is scale degree 1, D is scale degree 2, E is scale degree 3, and so on. If two melodies contain a significant series of the same or similar scale degrees, as well as rhythms, they usually sound similar.

[7] Musical Example 1 is notated at sounding pitch in the register of the recordings.

10

January 21, 2022  Judith Finell

## **<u>Summary of the Above Bass Line Comparison</u>**

25.     Musical Example 1, above, reveals the musical connections between "Stem 1,"

"Stem 3," "Phone Recording," and "Circles" based on pitch and structure. Identical scale

degrees are shown in red.

26.     Not only are the primary target notes the same between the four works compared,

but a distinctive melodic feature of the "Circles" bass line—scale degrees 2-1-1-7 in bar

1, which repeat in varied form in bar 2—is a variant of the 2-1-7-1 melody in bar 4 of

"Stem 1." See bracketed notes in bar 1 of "Circles" and bar 4 of "Stem 1." This bass

guitar melody appears throughout "Circles," as described by Lawrence Ferrara, within a

4-bar loop structure.

27.     Musical Example 1 above reveals that all but two of the pitches in "Stem 1" are

found in "Stem 3," "Phone Recording," and "Circles" (two of the pitches are in inverted

order). See Table 1 in Exhibit A attached for a comparison of all scale degrees.

28.     The similar traits include the target notes C (Bar 1), B (Bar 2), F (Bar 3), and F

(Bar 4), as well as the series D-C-B-C in eighth note rhythms (inverted as D-C-C-B in

"Circles").

29.     Lawrence Ferrara also addresses the guitar melody in the background of "Stem

1." See below for a comparison.

11

January 21, 2022  Judith Finell

**Musical Example 2: Guitar Melody Comparison: "Circles," "Phone Recording," "Stem 1"**



30.    Musical Example 2, above, reveals the presence of the G-A-G-E melody described by Ferrara in "Stem 1" and "Circles." It is also present in the "Phone Recording."[8] This melody is a significant identifying element in "Circles," first occurring in the song's introduction and functioning as a recurring instrumental theme throughout the song. The guitar melody in the final "Circles" release is found identically with its rhythmic idiosyncrasies already in place in both "Stem 1" and "Phone Recording."

---

[8] Due to the recording quality, it is unclear whether the E is played in "Stem 1." Improved audibility would enable confirmation here.

12

January 21, 2022  Judith Finell

31.      "Stem 1," "Phone Recording" and "Circles" all contain the same guitar theme. Specifically, in all three recordings:

        a.      the pitches in all are G-A-G-E;

        b.      the rhythms in all are three quarter notes – eighth note – eighth note tied to whole note;

        c.      the metric placement in all maintains its distinctive starting position on the unlikely second beat;

        d.      the E, when audible,[9] is syncopated and held over the bar line;

        e.      the compositional design choice of restarting the melody every other bar, on the second and fourth bar in the first six bars, is shared.

32.      The above similarities are specific and substantial. They show continuity of musical expression in "Stem 1," "Phone Recording," and "Circles" release.

33.      Lawrence Ferrara's statement that the similar pitches are found in the prior literature, citing "Silent Night" as proof, is misleading. While the pitches in question are definitely within the key phrase of "Silent Night," their significant rhythmic distinction from the musical works discussed here is important. This distinction is in meter and rhythm: "Silent Night" is in triple meter,[10] while the "Circles" theme is in duple meter—as are "Stem 1" and "Phone Recording." The theme in "Circles" is also distinctive in its positioning, beginning on the unlikely weak second beat, and tying over the next bar line.

---

[9] See above footnote.
[10] 3/4 time is a type of triple meter, distinctive, and sometimes referred to as "waltz time." It is distinctly different from music in duple meter, such as here in 4/4 meter.

13

January 21, 2022  Judith Finell

No such musical traits are present in "Silent Night."

34.     Lawrence Ferrara identifies the G-A-G-E melody in the background of "Stem 1" played on guitar, but provides no further evidence of its use or development at the all-night writing and recording session. Our examination of the more complete materials demonstrates that this melody reached its final form at the all-night writing and recording session, as evidenced by a comparison of the "Phone Recording" to the final release of "Circles." Ferrara's omission of the "Phone Recording" in his analysis results in unreliable conclusions.

## Summary

35.     The report by Lawrence Ferrara is unreliable as it is based on an incomplete review, and built on unsubstantiated materials and findings.

36.     He also contradicts himself and his own findings, drawing inferences from a collaborative process that he did not witness nor document with video or audio evidence.

37.     No individual including a musicologist can know the source of jointly-written individual musical features based on a recording of only those features after the session has occurred. Rather, "Circles" is the result of several collaborators blending their creative expression into a final musical work.

14

January 21, 2022  Judith Finell

38.    The seeds of that final work definitely include the bass line that Ferrara cites as a

performance by Armes in "Stem 1."

39.    A more complete picture is apparent with the inclusion of the "Phone Recording,"

but there may be more musical evidence that comes to light in the future.

40.    The Ferrara Report fails to demonstrate that the "Circles" final release lacks the

Armes bass line and the guitar melody discussed here. Rather, based on the materials

provided and our own detailed study of the 9-minute "Phone Recording," the Armes bass

line is found intact in the final release.

Report submitted on January 21, 2022 by:

Judith Finell, Musicologist and President
Judith Finell MusicServices Inc.

15

**Finell Exhibit A  –  January 21, 2022**

## TABLE 1: Scale Degree Comparison*

| | Bar 1, Beat 1 | Bar 1, Beat 2 | Bar 1, Beat 3 | Bar 1, Beat 4 | Bar 2, Beat 1 | Bar 2, Beat 2 | Bar 2, Beat 3 | Bar 2, Beat 4 |
|---|---|---|---|---|---|---|---|---|
| "Circles" 0:16 | 1 | 1 | 2 – 1 | 1 – 7 | 7 | 7 | 2 – 1 | 1 |
| "Phone Recording" 0:05 | 1 | 1 | 2 – 1 | 1 – 7 | 7 | 7 | 2 – 1 | 1 |
| "Stem 3" 015539 (Dukes) 0:00 | 1 | 1 | 2 – 1 | 7 | 7 | 7 | 2 – 1 | 1 |
| "Stem 1" 013750 (Armes) 0:35 | 1 | 1 | (See Bar 4, Beat 3) | (See Bar 4, Beat 4) | 7 | 7 | 4 | 7 |

| | Bar 3, Beat 1 | Bar 3, Beat 2 | Bar 3, Beat 3 | Bar 3, Beat 4 | Bar 4, Beat 1 | Bar 4, Beat 2 | Bar 4, Beat 3 | Bar 4, Beat 4 |
|---|---|---|---|---|---|---|---|---|
| "Circles" 0:16 | 4 | 4 | 4 – 4 | 4 – 4 | 4 | 4 | 5 | 5 |
| "Phone Recording" 0:05 | 4 | 4 | 4 – 4 | 4 – 4 | 4 | 4 | 5 | 5 |
| "Stem 3" 015539 (Dukes) 0:00 | 4 | 4 | 4 – 4 | 4 – 4 | 4 | 4 | 5 | 5 |
| "Stem 1" 013750 (Armes) 0:35 | 4 | 4 | | 4 | 4 | 4 | 2 – 1 (See Bar 1) | 7 – 1 (See Bar 1) |

*Red notes (scale degrees) are shared with "Circles" release