DAVID A. STEINBERG (SBN 130593)
　das@msk.com
GABRIELLA N. ISMAJ (SBN 301594)
　gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

CHRISTINE LEPERA (*pro hac vice*)
　ctl@msk.com
JEFFREY M. MOVIT (*pro hac vice*)
　jmm@msk.com
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendants*
*Austin Richard Post p/k/a Post Malone*
*Adam King Feeney p/k/a Frank Dukes*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| TYLER ARMES,<br><br>　　　　　Plaintiff<br><br>　　v.<br><br>AUSTIN RICHARD POST, publicly known as POST MALONE, an individual; ADAM KING FEENEY publicly known as FRANK DUKES, an individual; UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; DOES 1 through 10, inclusive,<br><br>　　　　　Defendants | Case No. 2:20-cv-03212 ODW (SKx)<br>*Consolidated with 2:20-cv-10205*<br><br>Hon. Otis D. Wright II<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:　　April 4, 2022<br>Time:　　1:30 p.m.<br>Ctrm:　　5D (First Street Courthouse)<br><br>Filed:　　April 7, 2020<br>Trial:　　May 17, 2022 |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........................................................................1

II. ARMES FAILED TO RAISE ANY GENUINE ISSUE OF MATERIAL FACT DEMONSTRATING HE MADE THE REQUISITE "INDEPENDENTLY COPYRIGHTABLE CONTRIBUTION"...................4

    A. Armes Cannot Satisfy The Fixation Requirement...............................4

    B. Armes Fails To Establish That Any Of His Contributions Constitute Protected Expression Subject to Copyright........................7

III. ARMES HAS FAILED TO RAISE A GENIUNE, TRIABLE ISSUE OF MATERIAL FACT AS TO THE *AALMUHAMMED* FACTORS.................9

    A. Control............................................................................................................9

    B. Objective Manifestation Of A Shared Intent To Be Coauthors..........10

    C. No "Audience Appeal" .......................................................................12

IV. CONCLUSION ................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aalmuhammed v. Lee*,
202 F.3d 1227 (9th Cir. 2000) .............................................................. 2, 9, 11

*Andrien v. S. Ocean Cty. Chamber of Com.*,
927 F.2d 132 (3d Cir. 1991) ........................................................................ 5

*Armes v. Post*,
2020 WL 6135068 (C.D. Cal. Oct. 19, 2020) ........................................ 2, 9, 12

*Baker v. Baker*,
2018 WL 3216509 (C.D. Cal. June 27, 2018) ............................................... 4

*BTE v. Bonnecaze*,
43 F. Supp. 2d 619 (E.D. La. 1999) ............................................................. 6

*Del Rio v. Virgin Am., Inc.*,
2018 WL 5099720 (C.D. Cal. June 28, 2018) ............................................... 6

*Eagle Rock Entm't Inc. v. Coming Home Prods., Inc.*,
2004 WL 5642002 (C.D. Cal. Sept. 1, 2004) .............................................. 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) .................................................................................... 7

*Gray v. Hudson*,
2022 WL 711246 (9th Cir. 2022) ......................................................... 1, 7, 9

*Jefferson v. Raisen*,
2021 WL 4732592 (C.D. Cal. Apr. 27, 2021) ......................................... 10, 11

*Johannsongs-Publ'g, Ltd. v. Lovland*,
2021 WL 5564626 (9th Cir. 2021) ............................................................... 8

*Oddo v. Ries*,
743 F.2d 630 (9th Cir. 1984) ....................................................................... 4

*Openwave Sys. Inc. v. Myriad France S.A.S.*,
2011 WL 2580991 (N.D. Cal. June 29, 2011) .............................................. 4

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Reinsdorf v. Skechers U.S.A.*,
   922 F. Supp. 2d 866 (C.D. Cal. 2013) .................................................................. 10

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) ................................................................................... 9

*Siegel v. Warner Bros. Entm't Inc.*,
   581 F. Supp. 2d 1067 (C.D. Cal. 2008) ................................................................... 4

*Skidmore v. Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020) ............................................................................ 1, 8

*Thomson v. Larson*,
   147 F.3d 195 (2d Cir. 1998) ............................................................................. 9, 11

*Tisi v. Patrick*,
   97 F. Supp. 2d 539 (S.D.N.Y. 2000) ....................................................................... 8

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ................................................................................. 6

**OTHER AUTHORITIES**

Nimmer on Copyright § 2.03(B)(3) (2018) .................................................................. 7

Paul Goldstein, *Copyright: Principles, Law and Practice*,
   § 4.2.1.2 (1989) ........................................................................................................ 1

## I. PRELIMINARY STATEMENT[1]

Armes' Opposition ("Opp.") confirms that: (1) Armes has **no** affirmative evidence that raises a **genuine, triable issue of material fact** sufficient to prove he is a joint author of the Circles Composition; (2) in disregard of this Court's **express admonition that "disputing a material fact without any reasonable basis for doing so" is "grounds for sanctions"** (ECF 49 at 7), Armes creates sham disputes and irrelevancies in blatant contradiction of his own sworn testimony; and (3) Armes misapprehends the governing principles of joint authorship, by attempting to convert what are **only**, at best, non-copyrightable ideas into an **independently copyrightable contribution** to the Circles Composition and misapplying Ninth Circuit law.

As stated by Professor Paul Goldstein in his frequently cited treatise section on joint authorship: *"A collaborative contribution will not produce a joint work, and a contributor will not obtain a co-ownership interest, unless the contribution represents original expression that could stand on its own as the subject matter of copyright."* Paul Goldstein, *Copyright: Principles, Law and Practice*, Section 4.2.1.2, p. 379 (1989). Courts thus require that a contribution of each putative co-author be **independently copyrightable** (and fixed in a tangible medium) to avoid overreaching claims by persons who only made non-copyrightable contributions such as offering directions, suggestions, or ideas.

This Circuit has made it abundantly clear in recent seminal decisions (*Gray v. Hudson*, 2022 WL 711246 (9th Cir. 2022); *Skidmore v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)) that commonplace musical building blocks are **ideas** that are **not** original expression subject to copyright protection. Accordingly, the fundamental gateway into joint authorship is demonstrating one has contributed a standalone (independently copyrightable) contribution, not a commonplace idea.

---

[1] Unless noted, all emphasis is added, and all citations and quotation marks omitted.

Finally, this Circuit requires proof that a purported co-author has **control over the whole work at issue**, along with objective manifestations of shared intent by all other co-authors. Thus, even if Armes's joint authorship claim is not precluded as a matter of law because he made no "independently copyrightable contribution," and it is so precluded, Armes must still satisfy the three *Aalmuhammed* factors. *See* 202 F.3d 1227 (9th Cir. 2000). The "most important" factor is the putative joint author's "control" over the "whole work." *Id.* at 1234; *Armes v. Post*, 2020 WL 6135068, at *6 (C.D. Cal. Oct. 19, 2020) (citing "control" as the "most important" factor). The objective **shared intent** factor includes consideration of: (1) intent **at the time the writing is done**; and (2) **subsequent conduct**, such as the manner in which authors are credited on the work.

Here, Armes's own *sworn and unambiguous admissions* unequivocally demonstrate that he cannot as a matter of law prove he made an independently copyrightable contribution or satisfy **any** of these legal doctrines. First, Armes testified under oath that there **is not a single recording of any performance by him on the night in question whatsoever; he is not included in any sound recording of the Circles Composition.** Notably, there is not a single music authorship case proffered by Armes, or that Defendants could locate, where a putative co-author has zero evidence of any fixation of any **performance** or **writing** by him or her that actually manifests the contribution. *("Q: [Y]ou were playing no instrument in that mix, correct?  A: Correct.") ("Q: There's not any performance, live or recorded, by you, whatsoever, on Exhibit 8, correct?  A: Correct . . . There's no documentation.  None.")* However, in a completely sham denial of this material, undisputed fact, and with no contrary evidence, Armes now purports to "dispute" this, citing to paragraphs of his self-serving declaration that do nothing to contradict his admissions.

*Second*, Armes admitted that his oral contributions were exceedingly commonplace, and thus as a matter of law they cannot be subject to **independent**

**copyright** protection as original expression. Armes testified that his progression and bassline suggestions were "extremely common." *(Q. "[Your purported contribution to the bass line] is one of the most common progressions in the history of music, correct? A: . . . It's one of them.")* He also admitted that it was *Post—not Armes*—who created a four note guitar melody that he now tries to take credit for in his Opposition—by once again trying to sow sham confusion, propping up his purported expert's views that those four notes were "distinctive"— but which he has admitted he did not write!

*Third*, Armes admitted that he did not control what musical material was chosen to be used in the Circles Composition that was recorded—at any time. He cannot demonstrate that he had, as he did not have, any "authority" over Post or Dukes to compel them to play, perform, or fix anything in any tangible medium of expression on the night in question; and he admittedly did not fix any music in any tangible medium. *("Q. You didn't touch the laptop? A. "No, Frank was controlling the laptop. It was his laptop, his session.")* Now, Armes posits another sham "dispute" as to two statements of undisputed fact that ***mirror this exact admission*** (DMF ¶¶ 12 & 14), solely based on his conclusory statement that the session was a "collaboration." Obviously, he cannot erase his testimony and "collaboration" is not synonymous with control.

Armes also conceded that he had no knowledge of, involvement in, or input into the two Subsequent Sessions where, *inter alia*, the vocals and lyrics of the Circles Composition were composed. *("Q. And you don't control any of the [Subsequent Sessions]? A. Certainly Not.") ("Q. [A]fter August 7th or 8th . . . until the song Circles was commercially released . . . other things were done to it . . . that you were not privy to, correct? A. . . . a lot of things were done that I wasn't privy to")* He admittedly had no superintendence over the "whole work" and no decision-making authority about what was included in the work. Any adoption of any of his suggestions does not establish his control under the law.

*Finally*, Armes admitted he has no evidence that any of the Circles Composition writers, *i.e.* Post, Dukes, or any of the Non-Party Songwriters provided an **objective manifestation of a shared intent** for him to be an author.[2] *("Q: [A]ny other communications that you recall transpiring between either of you . . . three regarding any rights or agreement with respect to Circles?  A: Never spoken about it . . . Q: And did you leave with . . . their phone, did they have your phone, anything like that? . . . A: Not that I can remember, no . . . Q: Between August 8, 2018 [and the Circles Composition release], did you have any communications with anyone involved in the writing of Circles . . . A: No.")*

In sum, because Armes has wholly failed to meet his burden of proffering "affirmative, admissible evidence of facts" under applicable law that could defeat the Motion and establish his co-authorship, Defendants' Motion should be granted in its entirety, obviating the need for any bench trial.[3]

## II. ARMES FAILED TO RAISE ANY GENUINE ISSUE OF MATERIAL FACT DEMONSTRATING HE MADE THE REQUISITE "INDEPENDENTLY COPYRIGHTABLE CONTRIBUTION"

### A. Armes Cannot Satisfy The Fixation Requirement

Although he fails to cite (or even address) the legal standard (at 19-22), Armes cannot dispute that "fixation" is what the law requires.  Mot. at 12 ("In

---

[2] Defendants' Motion is based on Armes's own testimony and should be granted based on his admissions.  In an attempt to confuse matters, Armes falsely claims the Motion should be denied because Defendants purportedly have not denied his co-authorship (Opp. at 6).  But Dukes submitted an affidavit and Post has filed a federal claim denying co-authorship.  These denials have been available on ECF for over a year and a half, and on the record before Armes.  All of the Non-Party Songwriters have also denied his co-authorship.  *See* SUF ¶¶ 42-49.

[3] Armes's insistence on a jury trial is misplaced, since the rights of purported co-authors are equitable in nature.  *E.g.*, *Baker v. Baker*, 2018 WL 3216509, at *5 (C.D. Cal. June 27, 2018), *aff'd in part, vacated in part on other grounds*, *remanded*, 860 F. App'x 502 (9th Cir. 2021) (no jury trial for declaration "that splits for writer credits … were appropriately reported"); *Oddo v. Ries*, 743 F.2d 630, 633 (9th Cir. 1984) (accounting claim stemmed from "equitable doctrines relating to … general principles of law governing the rights of co-owners" of copyright); *Openwave Sys. Inc. v. Myriad France S.A.S.*, 2011 WL 2580991, at *2 (N.D. Cal. June 29, 2011) (no jury trial for declaration "essentially seek[ing] to quiet title to … intellectual property"); *Siegel v. Warner Bros. Entm't Inc.*, 581 F. Supp. 2d 1067, 1073-74 (C.D. Cal. 2008) (same).

order to be copyrightable, a work must be an original work[ ] of authorship fixed—'by or under the authority of the author'—in any tangible medium of expression."). Armes does not dispute that he did not personally "fix" any of his oral suggestions in any tangible medium in the Circles Composition. Opp. at 19-22. Armes testified that he offered oral or verbal directions, ideas, and suggestions to Post and Dukes (there is no recorded or other evidence of him having done so), which Post and Dukes then had the discretion to accept or reject. *E.g.*, SUF ¶¶ 16, 18, 19-22.

Armes instead argues that his oral suggestions were fixed "under his authority" by Defendants. This argument is wholly unavailing under the undisputed facts of this case. Fixation "under the authority" of an author is a doctrine applicable to situations involving rote, mechanical transcriptions or dictations performed by stenographers, secretaries, printing presses, and the like, under the direction of an author, which do not require intellectual modification.

*Andrien v. S. Ocean Cty. Chamber of Com.*, relied upon by Armes, has no bearing here whatsoever. There, the plaintiff real estate agent assembled a series of maps and brought them to a printing press to be assembled; he was found to be an author and the fixation (printing) was done under his authority. 927 F.2d 132, 135 (3d Cir. 1991) ("expressly directed the copy's preparation in specific detail[,] [which] needed only simple transcription to achieve final tangible form"); Mot. at 14, n.6. Here, analogizing Post and Dukes as "rote transcribers," is nonsensical. There is no evidence that Armes was in any position to exert authority over them; to the contrary, undisputedly, Post and Dukes were the artist and producer controlling the studio, the equipment, and the recording selection and process. Indeed, Armes' argument is negated by his description of a "mutual collaboration," whereby he made "creative contributions" "accepted and mutually agreed to by Post and Dukes," who actually fixed the music. Opp. at 20.[4]

---

[4] Armes's inconsistent use of the conclusory word "directing" to describe his conduct at the August 8 Session does not raise a genuine issue of material fact, but is instead yet another

1 *Del Rio v. Virgin Am., Inc.*, 2018 WL 5099720 (C.D. Cal. June 28, 2018) (Opp. at 19-20) similarly has no application here. There, the plaintiff's rap vocal performance was admittedly actually fixed and recorded, and used in the final work. The issue, **at the pleading stage**, was whether the court could determine whether the performance was fixed under the plaintiff's authority or the defendant's authority who claimed she was a rote transcriber. In all events, there is no correlation with this case whatsoever, as Post and Dukes are not remotely "rote transcribers" of Armes's claimed contributions.

*BTE v. Bonnecaze*, 43 F. Supp. 2d 619 (E.D. La. 1999) is actually on point and defeats Armes's argument that "collaboration" by the contribution of "ideas and insights" (with no evidence that the author "fixed" those contributions) is sufficient. There, a drummer, whose performance of a composition was actually recorded, also claimed to have participated in authoring the underlying music (*i.e.* the composition) recorded by the band by providing ideas and insights during band sessions. The Court found that, regardless of his recorded performance, he had no evidence that any contribution he made to the underlying composition was fixed by him or under his authority. *Id.* at 627. Armes's attempt to distinguish *BTE* (Opp. at 21-22) is unavailing. While, for purposes of this Motion only, Defendants do not dispute that Armes offered suggestions to certain commonplace musical ideas, Armes is **not** a joint author of the Circles Composition under the law and based on Armes' own admissions. *BTE* applies with even greater force here, as Armes does not even have evidence of any fixed performance.

The fallaciousness of Armes' distorted argument that fixation is based on his surreptitious iPhone Recording (which is an unauthorized **copy** of Post's and

---

example of an improper effort to raise a sham fact contradicted by his sworn testimony. *E.g.*, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (no "genuine issue" of fact if only evidence presented is "uncorroborated and self-serving" testimony of party).

Dukes's fixation of their recorded performances)[5] is best demonstrated by Nimmer's comment that *"to the extent that someone bootlegs a [] musical performance by taping it, the result is not to create copyrightable subject matter."* NIMMER ON COPYRIGHT § 2.03(B)(3) (2018). Armes attempts to prop this bootleg iPhone Recording up to some level of false evidentiary significance by using Judith Finell to compare the recording to what is in the final Circles Recording (Opp. at 25). But, this is a meaningless exercise because, as Finell admits in her report, she has no idea as to who wrote what in the Circles Composition. Armes's sham effort to use the iPhone Recording to raise baseless disputes violates this Court's Rules.

### B. Armes Fails To Establish That Any Of His Contributions Constitute Protected Expression Subject to Copyright

As discussed above, each co-author's contribution must stand alone as independently copyrightable. In their Motion, Defendants made a *prima facie* showing that, not only has Armes failed to prove he made any such copyrightable contribution, but he has **admitted he did not, as his contributions constitute nothing more than oral suggestions as to "extremely common" guitar chords and bass notes**, and a guitar melody (that Armes later admitted was written in prominent part by Post). Mot. at 16. Armes cannot evade these admissions. Desperately trying to conjure up originality where there is none, Armes relies on *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991), claiming the threshold for creativity is "extremely low," while failing to properly apply clear Ninth Circuit law requiring commonplace chords and musical ideas to be filtered out of any analysis as to what has copyright protection. *Gray*, 2022 WL 711246, at

---

[5] At the August 8 Session, Armes used his iPhone to surreptitiously copy (without authorization) a rough mix of the Circles Composition, which Dukes had recorded and played from his laptop. The iPhone Recording admittedly only contains Dukes's and Post's performances, and no performance by Armes. This is simply a bootleg copy of someone else's work (analogous to **copying** any artist's recording, for example *The Beatles*) and provides no evidentiary support.

*6 ("ideas, concepts, and common elements are excluded"); *Zeppelin*, 952 F.3d at 1070 (certain chords "used in music for quite a long time" are known as "musical building blocks[,]" and such "musical building blocks [] [are] something that no one can possibly own"); *Id.* ("We have never extended copyright protection to just a few notes … a four-note sequence common in the music field is not the copyrightable expression …."); *Johannsongs-Publ'g, Ltd. v. Lovland*, 2021 WL 5564626, at *1 (9th Cir. 2021) (barring Finell report for failing to filter out unprotectible expression); *Tisi v. Patrick*, 97 F. Supp. 2d 539, 548 (S.D.N.Y. 2000) (tempo is "non-protectible").  Defendants' arguments regarding originality are not based on "incomplete excerpts of Armes's deposition testimony."  They are based on Armes's own admissions as to the relevant facts about his contributions.

In addition to testifying that the chord and bass notes suggestions he offered were very common musical ideas, the "guitar melody" that Armes now appears to claim he created he testified was created in prominent part by Post.  *Compare* DMF ¶ 94, *with* Armes Tr. at 115:1-116:1.  Now, in another bad faith attempt, Armes cites to Judith Finell's Rebuttal Report (which, as previously explained and not rebutted, is moot), written **before his deposition,** for the proposition that the four notes in the introduction of the guitar melody are "distinctive."  However, **Armes purposefully fails to advise the Court that he testified that he did not create those notes, Post did.**  *See* Armes Tr. 115:1-116:1 *("Post wrote the initial melody of the intro melody, 1, 2, 3, 4.")*.  Thus, Armes' argument that his expert "rejected the notion that the elements of the guitar melody were commonplace," is an effort to mislead and confuse this Court, because **Armes conceded in his deposition that Post created the portion of the guitar melody referred to by Finell.**[6]  Defendants established that Armes has **zero evidence** that the portion of the guitar melody to which he claims to have contributed is protectible.  Armes

---

[6] Armes's citation to Finell's report for the alleged distinctiveness and protectibility of notes he did not write is thus yet another example of bad faith conduct warranting sanctions here.

ignores this in his Opposition, thereby conceding it.

Finally, Armes has no evidence that he was involved in any copyrightable "selection and arrangement" of any contributions (Opp. at 23). *E.g.*, *Gray*, 2022 WL 711246, at *6; *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).

### III. ARMES HAS FAILED TO RAISE A GENIUNE, TRIABLE ISSUE OF MATERIAL FACT AS TO THE *AALMUHAMMED* FACTORS

#### A. Control

Armes does not dispute that even if it is found that a putative co-author contributed "independently copyrightable material to a work"—which is not the case here—that alone "will not suffice to establish authorship of a joint work." *Aalmuhammed*, 202 F.3d at 1233. Courts must still apply the *Aalmuhammed* factors: control over the work, manifestation of a shared intent to be co-authors, and audience appeal. *Id.* Armes does not dispute, and therefore admits, that "control" is the "most important factor," and must extend to the "whole work." *Aalmuhammed*, 202 F.3d at 1234; *Armes*, 2020 WL 6135068, at *6; Opp. at 26.

Armes testified that the August 8 Session took place at Dukes's studio, it was Dukes's "session," and Dukes controlled the laptop that recorded all musical performances. SUF ¶¶ 12-15. Armes does not provide any evidence, and none exists, of any decision-making authority on his part over that session, or that Post or Dukes were "bound to accept" what, at best, amounts to "helpful suggestions." Even if Armes's suggestions were "accepted and adopted," that is insufficient to establish co-authorship. Opp. at 25-26; *Aalmuhammed*, 202 F.3d at 1235 (no "control" where Spike Lee not "bound to accept" plaintiff's "valuable contributions"); *Thomson v. Larson*, 147 F.3d 195, 202–03 (2d Cir. 1998) (no control without "decision-making authority over what changes are made and what is included in a work"). Armes thus cannot demonstrate any control over what was created during the August 8 Session and admits he had no involvement, input, or knowledge of the Subsequent Sessions, where Post and Dukes—along with the

Non-Party Songwriters—continued to work on writing the Circles Composition. Again, Armes' reliance on the bootleg iPhone Recording for his post-hoc argument that the "whole work" was created at the August 8 Session is not only presented in bad faith, it is also contradicted by his admission that **"a lot"** of changes were made to the Circles Composition after the August 8 Session, including to the arrangement.  Opp. at 26.[7]  Armes admittedly did not hear the final Circles Composition until it was commercially released **a year later.  He never heard from Defendants following the session, and never reached out to them either.**

Armes alternatively and inconsistently argues (at 26) that it does not matter that he had no involvement with the Subsequent Sessions because he controlled his "separate and indispensable element of the completed product," *i.e.*, the portion of the Circles Composition created at the August 8 Session.  Again, this circular argument brings it right back to the fact that Armes **did not control the August 8 Session.**  Further, the cases cited for this proposition—*Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866 (C.D. Cal. 2013); *Eagle Rock Entm't Inc. v. Coming Home Prods., Inc.*, 2004 WL 5642002 (C.D. Cal. Sept. 1, 2004)—are distinguishable.  In *Skechers* (where plaintiff created photographs later used as modified by Skechers as part of an ad campaign) or *Eagle Rock* (where plaintiff musician gave a live performance, which was later used as part of a produced program), "each party had ***exclusive, or near-exclusive***, power over the distinct constituent parts of the unitary whole."  *Id.* at 872; *Jefferson v. Raisen*, 2021 WL 4732592, at *4 (C.D. Cal. Apr. 27, 2021) (distinguishing *Skechers* in this context). It is undisputed that Armes never had any control, no less exclusive or near-exclusive control, over the August 8 Session, making these cases inapplicable.

### B. Objective Manifestation Of A Shared Intent To Be Coauthors

Armes does not dispute that the second factor considers whether "each and

---

[7] Armes's expert's opinions on this point are irrelevant as pointedly she has no knowledge of who authored anything and cannot be used to contradict Armes's own admissions.

every" putative author made "objective manifestations of a shared intent to be coauthors," and that strong indicia of how authors regard themselves vis-à-vis authorship can be gleaned by objective manifestations of intent *"at the time the writing is done," or "subsequent conduct," such as credit decisions, which "is normally probative of a prior state of mind."* *Jefferson*, 2021 WL 4732592, at *5. Armes has set forth no affirmative, admissible evidence that Post or Dukes—let alone the Non-Party Songwriters who had no idea Armes was even involved— intended to be co-authors. His admissions prove the exact opposite. He testified that the subject of authorship was never discussed during or after the August 8 Session (SUF ¶¶ 37, 38), and neither Defendant asked for his contact information or otherwise indicated they would be in touch about the song. SUF ¶ 39.

Armes also admits that Defendants' subsequent conduct indicates no intent to be joint authors, as the Liner Notes credit Dukes, Post, and the Non-Party Songwriters, not Armes. DMF ¶ 52; *Thomson*, 147 F.3d at 203 ("manner in which [Defendants] listed credits on the [work]" is "strongly" indicative of how they regard themselves vis-à-vis authorship); *Aalmuhammed*, 202 F.3d at 1234 ("putative coauthors make objective manifestations of a shared intent to be coauthors, as by denoting the authorship of The Pirates of Penzance as 'Gilbert and Sullivan.'"); *Jefferson*, 2021 WL 4732592, at *5 ("[the counterclaim defendant's] choice to credit some co-authors, but not the [counterclaim plaintiffs], at the time of releasing [the work at issue] is relevant").

Instead, with no authority that statements made *prior* to any creation (in the absence of a contract) are probative of intent, Armes hangs his hat on Post saying "Let's write a tune,"[8] casually, without regard to any specific song, **before** ever even hearing Armes perform or making any suggestions. DMF ¶ 8. Armes's reliance is wholly misguided. It is irrelevant as to **what actually transpired**,

---

[8] This is uncontroverted solely for the Motion. And Defendants have not found, and Armes cites to no case law, providing that purported intent *before creation* is relevant under *Aalmuhammed*.

which are the only facts (undisputed) that count.  This statement is entirely divorced from and has nothing to do with the actual session, or what was actually contributed by Armes.  Because Armes is bereft of evidence under applicable law that could demonstrate "objective manifestations of intent," Armes posits (at 27-28) meaningless rhetorical questions (about why Post and Dukes would "stay[] in the studio for six [] to eight [] hours alone with [him]" if they did not intend to be co-authors) and relies on irrelevant chatter on the iPhone Recording (nothing about an intent to co-author) and an irrelevant text from **Dre London**, Post's manager (Mot. at 4, 20; DMF ¶ 5), simply acknowledging that "Post remembers" Armes playing the guitar that night (which again is not in dispute but has no bearing on and is not an admission of any intent to be a co-author).  Armes's reliance on the invitation from **London** to go to Dukes's studio in the first place is similarly irrelevant.  These matters do not remotely raise a genuine issue of material fact from which **shared intent** of co-authorship can be established.

### C. No "Audience Appeal"

When as here, the plaintiff's showing of "control" and "shared intent" are insufficient, courts routinely dismiss joint authorship claims without even considering "audience appeal."  *Armes*, 2020 WL 6135068, at *7 (dismissing joint authorship claim in Circles Recording after construing "audience appeal" allegations in Armes's favor, since allegations of "control" were insufficient).

### IV. CONCLUSION

For the reasons stated in Defendants' Motion papers and on reply, declaratory judgment should be issued in Defendants' favor on the Consolidated Complaints, adjudicating that Armes is not a joint author of the Circles Composition, and judgment should be issued in their favor as well on Armes's claims for an accounting and constructive trust, which he entirely fails to address in his Opposition.

| | |
|---|---|
| Dated: March 21, 2022 | MITCHELL SILBERBERG & KNUPP LLP<br>DAVID A. STEINBERG<br>CHRISTINE LEPERA<br>JEFFREY M. MOVIT<br>GABRIELLA N. ISMAJ<br><br>By: /s/ David A. Steinberg<br>　　　David A. Steinberg (SBN 130593)<br>　　　Attorneys for Defendants |