1  DAVID A. STEINBERG (SBN 130593)
        das@msk.com
2  GABRIELLA N. ISMAJ (SBN 301594)
        gan@msk.com
3  MITCHELL SILBERBERG & KNUPP LLP
   2049 Century Park East, 18th Floor
4  Los Angeles, CA  90067-3120
   Telephone: (310) 312-2000
5  Facsimile: (310) 312-3100

6  CHRISTINE LEPERA (*pro hac vice*)
        ctl@msk.com
7  JEFFREY M. MOVIT (*pro hac vice*)
        jmm@msk.com
8  437 Madison Avenue, 25th Floor
   New York, New York 10022
9  Telephone: (212) 509-3900
   Facsimile: (212) 509-7239
10

11 *Attorneys for Defendants*
   *Austin Richard Post p/k/a Post Malone*
   *Adam King Feeney p/k/a Frank Dukes*
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

16 TYLER ARMES,                          | Case No. 2:20-cv-03212 ODW (SKx)
                                         | *Consolidated with 2:20-cv-10205*
17                Plaintiff              |
                                         | Hon. Otis D. Wright II
18       v.                              |
                                         | **DEFENDANTS' MEMORANDUM**
19 AUSTIN RICHARD POST, publicly         | **OF CONTENTIONS OF FACT**
   known as POST MALONE, an              | **AND LAW**
20 individual; ADAM KING FEENEY          |
   publicly known as FRANK DUKES, an     | Pre-Trial Conference:
21 individual; UNIVERSAL MUSIC           | April 25, 2022 at 1:30 p.m.
   GROUP, INC., a Delaware corporation;  |
22 DOES 1 through 10, inclusive,         | Trial:  TBD

23                Defendants

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

14162680.1

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTORY STATEMENT ...................................................................1

II. FACTUAL BACKGROUND ........................................................................4

    A. Post, Dukes, And the Non-Party Songwriters ......................................4

    B. The Creation and Commercial Release of "Circles" ............................4

    C. Armes Claims To Be A Co-Author Of The *Circles Composition*, *Not* The Session Material ........................................................................6

    D. Armes's Purported Contributions to the Session Material ..................7

III. PROCEDURAL HISTORY ..........................................................................8

IV. SUMMARY OF THE ELEMENTS OF PLAINTIFF'S CLAIM .................8

V. KEY EVIDENCE IN OPPOSITION TO ARMES'S CLAIMS ....................9

    A. Armes Will Not Be Able To Show That The Session Material Can Be Analyzed As A Putative Joint Work Or That The Circles Composition Is A Derivative Work Of The Session Material..............9

    B. Armes Cannot Prove He Made An "Independently Copyrightable Contribution" To The Session Material ...............................................12

        1. Armes's Purported Contributions To the Session Material Do Not Satisfy The "Fixation" Requirement. .........................13

        2. Armes's Purported Contributions To the Session Material Are Not "Sufficiently Original" To Warrant Protection. .........15

    C. Armes Will Not Be Able to Satisfy *Any* Elements of the *Aalmuhammed* Test of Joint Authorship.............................................16

        1. Armes Did Not Have Control Over The Session Material.......16

        2. Armes Cannot Demonstrate That There Was A "Shared Intent" To Be Co-Authors. ......................................................19

        3. Armes Cannot Prove That The "Audience Appeal" Of The Session Material Turned On His Alleged Contribution. ..........20

i

Mitchell Silberberg & Knupp LLP

14162680.1

# TABLE OF CONTENTS
(continued)

**Page**

VI.   SUMMARY OF DEFENSES, THE ELEMENTS THEREOF, AND DEFENDANTS' SUPPORT FOR EACH DEFENSE. ...............................21

     Defendants plan to pursue the following affirmative defenses:....................21

     A.   Laches ................................................................................21

     B.   Waiver, Estoppel, Acquiescence...........................................22

     C.   Unclean Hands ...................................................................23

VII.  EVIDENTIARY ISSUES...............................................................23

VIII. ISSUES OF LAW .........................................................................23

     A.   Burden of Proof ..................................................................23

IX.   BIFURCATION OF ISSUES..........................................................24

X.    TRIAL ........................................................................................24

     A.   Triable Issues .....................................................................24

     B.   Issues That Have Previously Been Decided by the Court ..................25

XI.   FEES ..........................................................................................25

XII.  ABANDONMENT OF ISSUES .....................................................25

Mitchell
Silberberg &
Knupp LLP

14162680.1

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## CASES

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ..............................................................22

*Aalmuhammed v. Lee*,
   202 F.3d 1227 (9th Cir. 2000) ......................1, 9, 12, 16, 17, 19, 20, 21

*AirWair Int'l Ltd. v. Schultz*,
   84 F. Supp. 3d 943 (N.D. Cal. 2015)....................................................22

*Andrien v. S. Ocean Cnty. Chamber of Commerce*,
   927 F.2d 132 (3d Cir. 1991) ..................................................................14

*Armes v. Post*,
   2020 WL 6135068 ........................................9, 12, 13, 15, 16, 17, 21

*Armes v. Post*,
   2022 WL 1136163 (C.D. Cal. Apr. 18, 2022)................................2, 4, 5, 9

*Ashton-Tate Corp. v. Ross*,
   916 F.2d 516 (9th Cir. 1990) ................................................................15

*Brown v. Flowers*,
   297 F. Supp. 2d 846 (M.D.N.C. 2003),
   *aff'd*, 196 F. App'x 178 (4th Cir. 2006) ..............................................15

*BTE v. Bonnecaze*,
   43 F. Supp. 2d 619 (E.D. La. 1999) ....................................................14

*Cmty. for Creative Non–Violence v. Reid*,
   490 U.S. 730 (1989) ..............................................................................13

*Compaq Computer Corp. v. Ergonome, Inc.*,
   210 F. Supp. 2d 845 (S.D. Tex. 2002)..................................................22

*Delta Forensic Engineering, Inc. v. Delta V. Biomechanics, Inc.*,
   402 F. Supp. 3d 902 (C.D. Cal. 2019)..................................................21

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*,
   890 F.2d 165 (9th Cir. 1989)................................................................23

Mitchell
Silberberg &
Knupp LLP

14162680.1

iii

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Erickson v. Trinity Theater, Inc.*,
  13 F.3d 1061 (7th Cir. 1994) ............................................................... 18

*Ets-Hokin v. Skyy Spirits, Inc.*,
  225 F.3d 1068 (9th Cir. 2000) .............................................................. 15

*Ford v. Ray*,
  130 F. Supp. 3d 1358 (W.D. Wash. 2015) ........................................... 18

*Hadady Corp. v. Dean Witter Reynolds, Inc.*,
  739 F. Supp. 1392 (S.D. Cal. 1990) ..................................................... 22

*Hampton v. Paramount Pictures Corp.*,
  279 F.2d 100 (9th Cir. 1960) ................................................................ 22

*Heger v. Kiki Tree Pictures, Inc.*,
  2017 WL 5714517 (C.D. Cal. July 24, 2017) ...................................... 17

*Jefferson v. Raisen*,
  2020 WL 6440034 (C.D. Cal. Aug. 14, 2020) .................. 10, 11, 16, 18, 19, 20

*Johannsongs-Publ'g Ltd. v. Lovland*,
  2020 WL 2315805 (C.D. Cal. Apr. 3, 2020),
  *aff'd*, 2021 WL 5564626 (9th Cir. Nov. 29, 2021) ............................. 16

*Malcomson v. The Topps Co.*,
  2010 WL 383359 (D. Ariz. Jan. 29, 2010) ........................................... 18

*Maurizio v. Goldsmith*,
  84 F. Supp. 2d 455 (S.D.N.Y.),
  *aff'd*, 230 F.3d 518 (2d Cir. 2000) .................................................. 11, 12

*Richlin v. Metro-Goldwyn-Mayer Pictures Inc.*,
  2006 WL 8448673 (C.D. Cal. Jan. 30, 2006) ....................................... 19

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
  531 F.3d 968 (9th Cir. 2008) ............................................................ 17, 21

*S.O.S., Inc. v. Payday, Inc.*,
  886 F.2d 1081 (9th Cir. 1989) .......................................................... 13, 15

Mitchell
Silberberg &
Knupp LLP

14162680.1

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) ............................................................... 15

*Silva v. U.S. Bancorp*,
    2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) ...................................... 24

*Skidmore v. Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ........................................................... 16

*StreamCast Networks, Inc. v. Skype Techs., S.A.*,
    2006 WL 5441237 (C.D. Cal. Sept. 14, 2006) .................................. 24

*Thomson v. Larson*,
    147 F.3d 195 (2d Cir. 1998) .............................................. 12, 18, 20

*Weissmann v. Freeman*,
    868 F.2d 1313 (2d Cir. 1989) ............................................................ 19

*Wise v. Wells Fargo Bank, N.A.*,
    850 F. Supp. 2d 1047 (C.D. Cal. 2012) ............................................ 24

## STATUTES

17 U.S.C. § 101 .................................................................................... 14

## OTHER AUTHORITIES

Nimmer on Copyright § 6.02 ................................................................... 3

Mitchell
Silberberg &
Knupp LLP

14162680.1

Pursuant to Local Rule 16-4, Defendants Austin Richard Post p/k/a Post Malone ("Post") and Adam King Feeney p/k/a Frank Dukes ("Dukes," together, "Defendants") submit this Memorandum of Contentions of Fact and Law.[1]

## I.   INTRODUCTORY STATEMENT[2]

The declaratory judgment claim filed on April 7, 2020 by Plaintiff Tyler Armes ("Plaintiff" or "Armes"), sought joint authorship of and copyright ownership in: "the song *Circles*, which is perhaps Post's biggest hit to date and was named by Billboard as among the top 10 best songs of 2019.  *Circles* was released on August 30, 2019."  FAC ¶ 1.  Armes sought this relief with respect to the sound recording of "Post's popular song *Circles*" (the "Circles Recording"), as well as the underlying composition embodied therein (the "Circles Composition").

This Court properly dismissed Armes's claim for joint authorship in the Circles Recording at the pleading stage, under the criteria of the Ninth Circuit test in *Aalmuhammed*.  ECF 32.  Now, based on undisputed facts and *Aalmuhammed*, in its April Decision, the Court also properly rejected Armes's claim of joint authorship of the Circles Composition embodied in the Circles Recording, ruling that ***Armes has no ownership of or authorship in the Circles Composition.***

Defendants respectfully submit that these findings compel resolution of this matter as a whole in Defendants' favor.  Instead, however, this Court allowed for a construction of Armes's pleading as containing an alternative request for ownership and authorship ***not*** in the Circles Composition, but solely in the materials from the studio session of August 8, 2018 (the "Session Material").

As discussed below, Defendants respectfully submit that there is no such alternative claim presented by Armes, and that in every filing and position taken to

---

[1] Unless noted, all emphasis is added, and all citations and quotation marks omitted.

[2] On April 18, 2022, this Court issued a detailed decision on Defendants' summary judgment motion, which frames and effects the remaining issues in this case (the "April Decision").  Given the brevity of time between that decision and this filing, Defendants anticipate the need and respectfully reserve the ability to file revised and/or supplemental pretrial submissions (including further jury instructions and/or a proposed verdict form) at a subsequent date prior to trial.

date, Armes has made it clear in his admissions, as to which he should be bound, that his intent lay in ownership of the Circles Composition.  There is no evidence in the record, and none can be presented at trial, that the Session Material had any purpose other than as a single work in progress to be combined with lyrics and other materials as a joint work and unitary whole with interdependent and inseparable parts.  The Circles Composition is not a derivative work of the Session Material, but rather the continuation of the creation of a joint work.

Certainly, Dukes's and Post's contributions have no artificial separation, and cannot be artificially separated, between what they began at the August 8 Session and what they continued in subsequent sessions in the evolution of the creative process for *one song* for use on Post's upcoming album.  An evolving creation cannot be derivative of parts of its creation; a final work is not "derivative" of every single draft, outline, or list of rough ideas/notes that precedes it.[3]

Simply stated, the Session Material was never intended to be—including by Armes—a separate finished, joint work from which a derivative work could be created.  It was one step (out of many) in the process of creating the Circles Composition.  That it may comprise copyrightable material does not change this analysis.  Thus, any joint authorship or derivative work analysis fails because the "unitary whole" was the Circles Composition (which was never intended to include Armes), not the Session Material.  This Court already properly held that Armes is not a joint author of the Circles Composition.

Nonetheless, under the Court's April Decision, the following issues must be resolved: (1) whether the Session Material, irrespective of copyrightability, was ever intended by anyone involved to have any purpose other than as an initial step

---

[3] In its April Decision, the Court aptly noted that "[c]opyright vests in fixed original works of expression automatically, regardless of whether the author(s) deem the work to be a draft or final version." *Armes v. Post*, 2022 WL 1136163, at *9 (C.D. Cal. Apr. 18, 2022).  While this is true for the purposes of copyrightability, it does not mean that just because something is fixed, it can serve as a pre-existing joint work upon which a derivative work can be made.

in the creative process of effectuating a common design to make one singular musical composition as a joint work; (2) whether a final musical composition (*i.e.*, the Circles Composition) can ever by characterized as a derivative work of ***the unfinished, beginnings of its very self***, which unfinished materials were never intended to be used separately and had no purpose other than to evolve into a final form.[4]  Defendants submit the answers to these questions is "no."[5]

Finally, even assuming that the Session Material can be independently analyzed as a putative joint work, and it cannot, a straightforward application of joint authorship law establishes that Armes cannot prevail as a matter of law.  To prevail, Armes must prove, by a preponderance of affirmative and admissible evidence, that, with respect to the Session Material, Armes: (1) "**fixed**" his alleged suggestions into a tangible medium of expression; (2) made contributions that are "**protected expression subject to Copyright**"; (3) was the **"inventive" mastermind** who "**superintended the whole work**"; (4) had a contract with Post and Dukes, *or* other objective evidence of intent (for example, subsequent conduct); and (5) the audience appeal of the Session Material turns on each co-author's contributions and the share of each in its success cannot be appraised. Armes cannot carry his burden at trial with respect to *any* of these elements.

---

[4] Defendants respectfully submit that these issues are indeed resolvable in their favor, without trial, based on the current record.

[5] The undisputed contents of the Session Material establish these points.  It is nothing more than unfinished, unedited, rough material, created at a single session, where Post or Dukes can be heard experimenting with different sounds, chords, and notes, and Post is humming over parts of the song where lyrics were contemplated to be added.  Armes never had access to any of the Session Material after the August 8, 2018 session (the "August 8 Session"), let alone the ability to refine them in the future.  Clearly, Defendants could not have intended to use this material as a joint work on its own—it needed to be fleshed out and developed further.  *See*, *e.g.*, Nimmer on Copyright § 6.02 (a joint work only exists "***[w]here the common design for a joint work is preconcerted prior to either author's creation of his contribution***").

## II.   FACTUAL BACKGROUND

### A.   <u>Post, Dukes, And the Non-Party Songwriters</u>

Post is an internationally acclaimed songwriter, recording artist and performer.  Dukes is a songwriter, record producer and musician.  Armes is a musician.  Along with Post and Dukes, the credited writers of the Circles Composition are Kaan Gunesberk, Louis Bell, and Billy Walsh.

### B.   <u>The Creation and Commercial Release of "Circles"</u>

On the evening of August 7, 2018, Post, Dukes, and Armes were each present at a concert by a third-party rock band in Toronto, Canada.  After the concert, Armes was invited by Post's manager to join Post, Dukes, and others, at Dukes's Toronto music studio ("Dukes's Studio").  Although the other guests left Dukes's Studio earlier in the night, Armes, Post, and Dukes remained in Dukes's Studio from 2:00 a.m. to 9:00 a.m. on August 8, 2018.  During that time period in Dukes' Studio, there was some "jamming," and also the process of Dukes recording Dukes's and Post's performances.  Post played guitar and drums at the August 8 Session, and Dukes played both guitar and bass guitar.

Musical performances were recorded by Dukes during the August 8 Session.  ***None of Armes's performances were recorded or fixed in any tangible medium of expression***.  Dukes solely controlled the laptop that recorded those musical performances.  Duke's laptop also functioned as the "mixing board" which combined various recorded performances (none of Armes's) into a single recording.  Armes admitted he never touched Dukes's laptop; in Armes's words, "*Frank was controlling the laptop.  It was his laptop, his session*."  Although a third-party sound engineer was present at times during portions of the August 8 Session, the engineer was at Dukes's "beck and call" and only came in and out of the room when Dukes asked him to.

***Thus, critically, Armes does not have, and is not aware of, any recording of Armes engaging in any musical performance (whether instrumental or vocal)***

1 ***at the August 8 Session.*** Nor is Armes aware of any recording or notes reflecting

2 that Armes provided any creative contributions during the August 8 Session.

3 There is no performance of Armes in the Session Material.

4 At the end of the August 8 Session, Dukes played back in the studio the

5 Session Material (also known as the "Rough Mix"), which had already been fixed

6 on his laptop. Certain musical compositional elements in the Rough Mix were

7 later incorporated into the final Circles Composition completed a year later. On

8 the Rough Mix, Post is singing a vocal melody (largely without lyrics) and playing

9 the guitar melody, and Dukes is playing both the bass guitar, and the chord

10 progression on the rhythm guitar. ***Armes, on the other hand, is not playing any***

11 ***instruments, singing or otherwise engaging in any performance whatsoever on***

12 ***the Rough Mix.***

13 Armes taped on his iPhone a portion of Dukes's playback of the Session

14 Material. Armes did not obtain Dukes's and Post's permission to do so. Indeed,

15 Armes did not even inform Defendants that he was taping. (Armes's surreptitious

16 taping is hereafter called the "iPhone Recording"). This iPhone Recording

17 provides no evidence of any contributions by Armes to the Session Material.

18 During the August 8 Session, Post and Dukes never agreed that Armes

19 would be a co-author of anything created that night. Indeed, the subject of

20 authorship/ownership was not even discussed with Armes prior to the release of

21 the Circles Recording. And when Armes left the August 8 Session, neither Post

22 nor Dukes asked Armes for his contact information or otherwise indicated that they

23 would be in touch. By Armes's own admission, Armes had no involvement

24 whatsoever in the creation of the Circles Composition following the August 8

25 Session. Moreover, after the August 8 Session, Armes had no communications

26 with any of the writers about the Circles Composition prior to the commercial

27 release of the Circles Recording over a year later on August 30, 2019.

28 Armes did not hear the final Circles Composition until the Circles Recording

was shared on social media on August 5, 2019 (nearly one year after the August 8 Session).  The Circles Recording was commercially released on August 30, 2019 on Post's album "*Hollywood's Bleeding*."  The credits for "Circles" (the "Liner Notes") identify the writers of the Circles Composition as Post, Dukes, Bell, Walsh, and Gunesberk.  Armes is *not* identified in the Liner Notes as a co-writer.

### C.  Armes Claims To Be A Co-Author Of The *Circles Composition*, *Not* The Session Material

After hearing the Circles Recording on social media on August 5, 2019, Armes sent a series of text messages to Post, Dukes, and Post's manager Dre London demanding credit for his purported contribution to the Circles Composition.  In a text message to Dukes, he described the August 8 Session as follows: "we were able to jam the 3 of us *started the process* that night into making this amazing song."  On October 21, 2019, an attorney for Armes sent a cease-and-desist letter to Post, Dukes, and various third parties regarding the Circles Composition and Circles Recording, alleging co-authorship of both based on his attendance at the August 8 Session, and demanding a one-third interest in the works.  Critically, at all times up to the Court's recent summary judgment decision, Armes alleged an interest *only* in the commercially-released *Circles Composition*, and not once did he claim an authorship interest in the unfinished, rough Session Material.   For example:

- Armes's FAC requested a "declaration of rights" that Armes "is a co-writer of the *composition entitled Circles*" (FAC, ¶ 34).

- Armes's Opposition to Defendants' Motion for Summary Judgment refers to his purported "extensive contributions and directions to *the final product* … which were included in the *commercially released version of 'Circles.'*"  ECF 84 at 25.

- Armes's initial draft of the Proposed Pre-Trial Conference Order (provided to Defendants before the issuance of the April Decision)

1  repeatedly refers to the "*musical composition entitled 'Circles*,'" and

2  makes no reference to any authorship claim in the Session Material.

3  • Armes's counsel filed a (invalid) copyright application to register the

4  Circles Composition and Circles Recording in Armes's name.

5  *Notably, Armes did not register the Session Material.*

6  Similarly, Armes did not assert in any pleading or other filing that the

7  Circles Composition was a derivative work of the Session Material in any way,

8  shape or form. Armes cannot now distance himself from these binding admissions

9  and conduct to get a second bite at a joint authorship claim.[6]

10  **D.   Armes's Purported Contributions to the Session Material**

11  Armes claims to have made three (3) contributions to the Session Material.

12  • First, Armes claims to have co-written, with Dukes, the chord

13  progression for Session Material. Armes claims to have "sang," rather than played,

14  this alleged contribution. This chord progression is I-IV-V (or C-F-G), which

15  Armes admits is an "extremely" common chord progression, and "one of the most

16  common progressions in the history of music."

17  • Second, Armes claims to have had "significant input" into the writing

18  of the bass guitar line in the Session Material. Armes's claimed contribution to the

19  bass guitar line is the exact same admittedly commonplace I-IV-V (or C-F-G)

20  sequence as the chord progression.

21  • Third, Armes claims to have contributed to the writing of the guitar

22  melody in the Session Material. Armes admits Post wrote the "initial melody" for

23  the guitar. Armes claims he then "sang" additional notes which Post added to the

24  guitar melody.

25

26

27

---

[6] Defendants reserve the right to assert any further arguments, objections and/or to submitt further briefing relating to Armes's prior admissions and any further attempts by Armes to make arguments that do not reconcile with his earlier admissions or arguments in this case.

28

### III.    PROCEDURAL HISTORY

On April 7, 2020, Armes filed his Complaint in this Court.  ECF 1.  His Complaint sought a declaratory judgment that Armes was an author and copyright owner of the Circles Recording and the Circles Composition.  He did not assert any ownership or authorship claim as to the Session Material.  Armes further sought an accounting and constructive trust of profits earned by the Circles Recording and the Circles Composition.  *Id.*  That same day, Post filed an action in the United States District Court for the Southern District of New York, entitled *Post v. Armes*, Case No. 1:20-CV-02877-ALC (the "NY Action").  *See* Consolidated Complaint; ECF 28-1, Ex. 5.  Post sought a declaration that Armes is neither an author nor a copyright owner of the Circles Composition.  *Id.*  Armes filed a First Amended Complaint on May 13, 2020.  ECF 24 ("FAC").  Ultimately, the two actions were consolidated in this Court.  ECF 45.

On April 18, 2022, this Court granted in part and denied in part Defendants' motion for summary judgment (the "April Decision," ECF 90).  This Court granted Post judgment in favor of his Consolidated Complaint and held that, as a matter of law, Armes has no claim to authorship or ownership in the commercially-released Circles Composition.  This Court also granted Defendants judgment in their favor as against Plaintiff's FAC to the extent Plaintiff claims joint authorship in the Circles Composition.  Accordingly, pursuant to this Court's decision, the only issue remaining to be tried under the operative pleadings is whether Armes has or can have any claim in the Session Material.

### IV.    SUMMARY OF THE ELEMENTS OF PLAINTIFF'S CLAIM

In the FAC, Armes seeks a "declaration of rights" that he is (i) a co-writer of the Circles Composition, (ii) entitled to a co-writer credit on the copyright to the Circles Composition, and (iii) entitled to royalties and other money owed.  FAC, ¶ 34 & Prayer for Relief, ¶ 1.   In the April Decision, this Court construed Armes's FAC to also include a claim for joint authorship of the Session Material.

Before there can be any assessment of Armes's joint authorship claim in the Session Material, ***Armes*** must establish the following: *first*, that the Session Material, which was unfinished, rough material that had no purpose unto itself other than to be further worked on, and which no party intended to be final and which no party ever meant to be exploited on its own, can be analyzed as a putative joint work; and *second*, that the Session Material could serve as a pre-existing work upon which the Circles Composition is a derivative.

Assuming that the Session Material can be analyzed on its own as a putative joint work, and it cannot, Armes must still establish by a preponderance of the evidence all of the following elements:  (1) Armes made an independently copyrightable contribution to the Session Material fixed in a tangible medium of expression at the August 8 Session; (2) Armes exercised control over the creation of the entire Session Material created at the August 8 Session; (3) Post, Dukes and Armes made objective manifestations of a shared intent to be co-authors at the time the Session Material was done or through subsequent conduct; (4) The audience appeal of the Session Material turns on each co-author's contributions and the share of each in its success cannot be appraised. *Aalmuhammed v. Lee*, 202 F.3d 1227, 1231, 1234 (9th Cir. 2000); *Armes v. Post*, 2020 WL 6135068, at *6-7.

## V.   KEY EVIDENCE IN OPPOSITION TO ARMES'S CLAIMS

### A.   <u>Armes Will Not Be Able To Show That The Session Material Can Be Analyzed As A Putative Joint Work Or That The Circles Composition Is A Derivative Work Of The Session Material</u>

As a matter of law, Armes will not be able to establish that the Session Material can be analyzed as a putative joint work or that that the Circles Composition is a derivative of the Session Material.  At trial, Defendants will present evidence demonstrating that the Session Material captures nothing more than an unusable, rough, and unfinished work in progress that had no purpose unto itself other than to be further worked on, and which no party intended to be

exploited on its own.  Thus, the Session Material cannot be analyzed as a putative "joint work" or a pre-existing work upon which a derivative work was be created because it was not a "integrated, unified work" that the parties "set out to create."

Recent decisions by the Honorable Judge Dolly M. Gee in *Jefferson v. Raisen*, 2020 WL 6440034 (C.D. Cal. Aug. 14, 2020), are instructive.  The plaintiffs sought to claim first that they owned "Truth Hurts," a song by Lizzo, on the ground that it was a derivative work based on earlier sessions they had with Lizzo.  That Court dismissed, under clear Ninth Circuit law, their claim of ownership of the derivative work.  Then, the plaintiffs (inconsistently) claimed that "Truth Hurts" was a joint work and that they were joint authors.  Plaintiffs, who like Armes had no control over the creation of "Truth Hurts," had argued earlier that their joint work with Lizzo in studio sessions to create earlier musical materials—tentatively titled "Healthy," which were not released but which contained overlapping content with "Truth Hurts"—established joint authorship.

On that issue, the *Jefferson* court made the following salient point, applicable in reverse here:

> But the Counterclaims . . .  do not frame the parties' work in creating Healthy as ***merely the first step of the creative journey*** that led to Truth Hurts. To the contrary, Counterclaimants allege in plain terms that the ***parties created and finished Healthy as a standalone song*** before Lizzo and Reed purportedly copied elements of Healthy to make Truth Hurts. Indeed, Counterclaimants allege that, ***after Lizzo recorded Healthy, Justin Raisen "stayed up all night" polishing the song before soliciting feedback on it from the group.*** Counterclaims at ¶ 27. ***Raisen and Lizzo also held a second recording session to further fine-tune the song before suggesting***

Mitchell
Silberberg &
Knupp LLP

14162680.1

1  *__that her management team include it on her upcoming__*

2  *__EP.__* Id. at ¶¶ 29-30.  A representative from Reed's

3  company stated that, at the time, Healthy "h[ad] a shot"

4  of being included on Lizzo's upcoming EP.  These

5  allegations suggest that Healthy was, and was intended to

6  be, a final product like the original spreadsheet program

7  in *Ashton-Tate*, rather than one chapter of a novel like in

8  *Maurizio*.

9  2020 WL 6440034, at *3.  While the putative co-author in *Jefferson* was arguing

10  the inverse of what is at issue here—namely, that his standalone, pre-existing work

11  should be considered an unfinished part of the creative process toward the "unified

12  whole" song, *i.e.*, "Truth Hurts"—this decision demonstrates that an unfinished set

13  of materials that moves forward in evolution *is one work*.  This is the Session

14  Material; it becomes interwoven into a unitary whole with the final product, the

15  Circles Composition.  It is not something to be separately owned as an insertion

16  into the final product as a derivative work.

17  *Maurizio v. Goldsmith* is similarly instructive.  In *Maurizio*, a novelist,

18  Goldsmith, wrote the first portion of the "First Wives Club" manuscript ("FWC")

19  before seeking help writing the rest from a friend, Maurizio.  *Maurizio v.*

20  *Goldsmith*, 84 F. Supp. 2d 455, 457 (S.D.N.Y.), *aff'd*, 230 F.3d 518 (2d Cir. 2000).

21  Goldsmith eventually proposed that the pair co-write the entire novel.  *Id.* at 459.

22  Despite Maurizio's considerable contribution to the novel, including creating an

23  outline, and writing several chapters, Goldsmith ultimately refused to give her co-

24  author credit.  *Id.* at 460-61.

25  In the ensuing lawsuit, the Court held that it would be improper to consider

26  Maurizio's outline and draft chapters to be "a prior joint work" upon which a

27  "second, standalone final [derivative] product" was made because:

28

Mitchell
Silberberg &
Knupp LLP

14162680.1

11

1       [A]t the time Maurizio made her contributions to the

2       outline and draft chapters, both parties intended that these

3       contributions were being made as part of the

4       development of FWC itself . . . ***In other words, the***

5       ***parties did not necessarily intend that the outline and***

6       ***draft chapters were simply ends in themselves.*** Rather,

7       they may have been intended to be a part of the process

8       of completing the final product—FWC.

9 *Id.* at 467.  Similarly, the Session Material is not a separate joint work, but rather

10 part of the unified whole that is the Circles Composition.

11       Again, Defendants submit that these issues are dispositive, and that any

12 purported joint authorship claim with respect to the Session Material should have

13 been decided in their favor as a matter of law already, as there is no distinction

14 (and it is contrary to the analysis of joint works as enunciated by the courts) to

15 extricate the Session Material from the Circles Composition.  However, even

16 assuming that the Session Material can be analyzed on its own as a joint work,

17 Armes cannot meet his burden of proving, by a preponderance of the evidence, that

18 he can satisfy the *Aalmuhammed* factors with respect to the Session Material.

19     **B.**    <u>**Armes Cannot Prove He Made An "Independently Copyrightable**</u>

20         <u>**Contribution" To The Session Material**</u>

21       Armes will not be able to meet his burden of proving that he made an

22 independently copyrightable contribution to the Session Material fixed in a

23 tangible medium of expression at the August 8 Session.  In the Ninth Circuit, a

24 joint work "requires each author to make an ***independently copyrightable***

25 ***contribution*** to the disputed work."  *Armes v. Post*, 2020 WL 6135068, at \*7;

26 *Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998) ("[C]ollaboration alone is

27 not sufficient to establish joint authorship.  Rather, the contribution of each joint

28 author must be independently copyrightable.").  Armes will not be able to satisfy

his burden at trial because: (1) Armes admitted that he did not fix any of his alleged contributions in a tangible medium of expression; and (2) Armes's admissions establish that his alleged contributions to the Session Material lack sufficient originality to be copyrightable.

### 1.   Armes's Purported Contributions To the Session Material Do Not Satisfy The "Fixation" Requirement.

To be an author, one must supply more than mere direction or ideas: ___one must translate an idea into a fixed, tangible expression___ entitled to copyright protection . . . In other words, ___the author is the party who actually creates___ the work.  *Armes v. Post*, 2020 WL 6135068, at *7.  To demonstrate he is a co-author of the Session Material, it is Armes's burden to prove that he "is the party who actually create[d] the work, that is, the person who translate[d] an idea into a *fixed, tangible expression* entitled to copyright protection."  *Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 737 (1989); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989) ("To be an author, one must supply more than mere direction or ideas: one must 'translate an idea into a *fixed, tangible expression*'").

Defendants will present evidence, via Armes's own testimony, that Armes did not fix any musical material into a tangible medium of expression during the August 8 Session.  Armes conceded that he has no recordings or any documentary materials evidencing he made any contributions to the Session Material, and no instrumental or vocal performances of Armes (which he claims he did) is fixed in a tangible medium of expression, and none appears in the Session Material.

At best, Armes claims to have made contributions in the form of *non-recorded* directions, ideas, and suggestions to Defendants (for which there is no independent evidence), which Defendants then, in turn, had the discretion to *accept or reject*.  This is utterly insufficient to constitute an independently copyrightable contribution.  *Armes v. Post*, 2020 WL 6135068, at *7 (Armes's allegations of having supplied "direction and ideas," while others actually fixed the work into a

Mitchell
Silberberg &
Knupp LLP

14162680.1

13

tangible medium of expression, does not constitute an "independently copyrightable contribution").  The identical analysis once again applies, this time with respect to the Session Material.  *BTE v. Bonnecaze*, 43 F. Supp. 2d 619, 628 (E.D. La. 1999) (contribution of "ideas and helpful insights[,]" with no evidence that a purported co-author has himself "fixed those contributions into a tangible form of expression" is insufficient).  Armes admitted in his deposition that his most significant purported contribution "had **_my ideas_** in it, but not me playing."  Under *Bonnecaze* and its antecedents, the contribution of such "ideas" is legally insufficient to constitute an "independently copyrightable contribution."  Furthermore, here, unlike in *Bonnecaze*, Armes did not even perform in the Circles Recording or any earlier mix, including the Session Material taped on the iPhone Recording.  This analysis thus applies with even greater force here.

Armes will likely claim that his alleged contributions were fixed in the Session Material "under his authority" pursuant to 17 U.S.C. § 101.  This argument is unavailing, as courts have narrowly interpreted the statutory phrase, "by or under the authority of the author," recognizing that "[w]hen one authorizes embodiment, that process must be rote or mechanical transcription that does not require intellectual modification or highly technical enhancement."  *Andrien v. S. Ocean Cnty. Chamber of Commerce*, 927 F.2d 132, 135 (3d Cir. 1991).  Even assuming the truth of his testimony, Armes cannot meet this test.  Armes claims to have given verbal suggestions of certain chords or notes to Post or Dukes, who then performed their instruments independently without any authority over them as to what they played exercised by Armes.  By his own testimony that the "three of us [were] collaborating," Armes admits he had no authority over Defendants.  This is not the situation of a "mechanical transcription that does not require intellectual modification."  *Andrien*, 927 F.2d at 13.

## 2.     Armes's Purported Contributions To the Session Material Are Not "Sufficiently Original" To Warrant Protection.

A joint work requires each author to make an independently ***copyrightable contribution*** to the disputed work . . . [and] requires ***more than a minimal creative or original contribution*** to the work.  *Armes v. Post*, 2020 WL 6135068, at *6.  At trial, Armes will also be unable to demonstrate that he made "some original contribution" to the Session Material.  *Brown v. Flowers*, 297 F. Supp. 2d 846, 852 (M.D.N.C. 2003), *aff'd*, 196 F. App'x 178 (4th Cir. 2006); *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("[C]opyrighted expression must be 'original.'"); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1073 (9th Cir. 2000) ("[E]ssence of copyrightability is originality of artistic, creative expression."); *S.O.S.*, 886 F.2d at 1086-87 (contribution insufficiently original to raise material issue of fact about whether contributor was joint author); *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 521 (9th Cir. 1990) ("[C]ollaborator's contribution will not produce a joint work" and "will not obtain a co-ownership interest" unless "contribution represents *original expression* that could stand on its own as the subject matter of copyright").

In the April Decision, this Court held that "whether Armes in fact contributed musical material to the Session Composition, and whether those contributions were sufficiently original, are genuinely disputed issues of material fact."  At trial, Defendants will present evidence establishing that the three aspects of the Session Material that Armes claims to have contributed to—(1) the chord sequence I-IV-V on the guitar; (2) the same I-IV-V sequence as a bass pattern; and (3) a series of pitches which Armes claims to have sang to Post for use in the guitar melody—are not sufficiently original to warrant copyright protection.

With respect to the I-IV-V sequence on the guitar and bass, Armes admitted at this deposition that it is "extremely" common.  Copyright protection does not "extend to 'common or trite' musical elements … or 'commonplace elements that are firmly rooted in the genre's tradition,' ... These building blocks belong in the

Mitchell
Silberberg &
Knupp LLP
14162680.1

1   public domain and cannot be exclusively appropriated by any particular author."

2   *Skidmore v. Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020).

3       Similarly, Armes does not have a shred of affirmative evidence that his

4   alleged contribution to the guitar melody is original.  Thus, he cannot meet that

5   burden.  *Johannsongs-Publ'g Ltd. v. Lovland*, 2020 WL 2315805, at *7 (C.D. Cal.

6   Apr. 3, 2020), *aff'd*, 2021 WL 5564626 (9th Cir. Nov. 29, 2021) (plaintiff could

7   not establish ownership in protectible expression where no affirmative evidence

8   that expression was original as opposed to trite and commonplace).

9       Armes has no musicological expert who can testify as to these matters, as

10  this Court has already held that "Armes's expert musicologist … is of no

11  relevance" to the issues of joint authorship.  ECF 90 at 28 n.6.

12      **C.**   **Armes Will Not Be Able to Satisfy *Any* Elements of the**

13           ***Aalmuhammed* Test of Joint Authorship**

14      The Ninth Circuit has instructed courts to look for three criteria of joint

15  authorship: (1) whether an alleged co-author exercised ***control*** over creation of the

16  work, (2) whether all co-authors made ***objective manifestations of a shared intent***

17  ***to be coauthors***, ***and*** (3) whether the ***audience appeal of the work turns on each***

18  ***co-author's contributions*** and the share of each in its success cannot be appraised.

19  *Armes v. Post*, 2020 WL 6135068, at *6.

20      Armes cannot establish that he made a copyrightable contribution to the

21  Session Material—which is fatal to his claim.  However, even "contribution of

22  independently copyrightable material to a work…will not suffice to establish

23  authorship of a joint work."  *Aalmuhammed*, 202 F.3d at 1233; *Jefferson*, 2021 WL

24  4732592, at *4 ("individual can make a 'copyrightable contribution' and yet not

25  become a joint author").  Rather, the plaintiff ***also*** must satisfy the three-part

26  *Aalmuhammed* test.  Armes will be unable to meet his burden.

27      **1.**   **Armes Did Not Have Control Over The Session Material.**

28  This Court previously held with respect to the Circles Recording that:

> ***Control in many cases will be the most important factor***
>
> . . . the Court finds that Armes fails to allege his co-authorship of the Recording because he does not plead facts showing "the most important factor": that he superintended control over its creation. Armes alleges that ***he made several creative recommendations*** while Dukes created a recording of Dukes and Post performing the co-written musical composition. These allegations ***do not establish that Armes exercised control*** over the creation of the Recording.

*Armes v. Post*, 2020 WL 6135068, at *6 (collecting cases). Moreover, in the April Decision, the Court held Armes did not have control over the Circles Composition. At trial, Armes will not be able to prove that he exercised control over the Session Material. Armes bears the burden of proving that he exercised control of the Session Material as "the inventive or master mind who creates or gives effect to the idea." *Aalmuhammed*, 202 F.3d at 1234. Armes will be unable to meet his burden on this point at trial. *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 968 (9th Cir. 2008); *Aalmuhammed*, 202 F.3d at 1235 ("absence of control is strong evidence of the absence of co-authorship").

The Ninth Circuit is clear that a putative author's control over his own contributions is *not* tantamount to "control" for authorship purposes, which must extend to the "***whole work***." *Aalmuhammed*, 202 F.3d at 1234. Absent proof that a putative author had "supervisory powers" over the work *as a whole*, authorship cannot be established. *E.g., Richlin*, 531 F.3d at 970 (no "control" where plaintiff wrote screenplay and "may have had control over [it] as originally written, [but] had no control over how [it was] incorporated into [the film]"); *Heger v. Kiki Tree Pictures, Inc.*, 2017 WL 5714517, at *5 (C.D. Cal. July 24, 2017) (no "control" where plaintiff alleged "creative control over separate and indispensable elements

1   of the completed [film]" but no "supervisory powers over the [whole film]"); *Ford*

2   *v. Ray*, 130 F. Supp. 3d 1358, 1363 (W.D. Wash. 2015) (no "control" where

3   plaintiff had "control over his contribution to [the song]," but "decision as to how

4   or whether to incorporate [his] creations was left to defendant").

5        Defendants will demonstrate at trial that Dukes and Post had decision-

6   making authority during the August 8 Session, and that Dukes controlled the

7   session.  Armes had none.  This is fatal to Armes's argument that he had any

8   "control" over the Session Material, because "[a]n important indicator of

9   authorship is a contributor's decision-making authority over what changes are

10  made and what is included in a work." *Thomson*, 147 F.3d at 202-03; *Erickson v.*

11  *Trinity Theater, Inc.*, 13 F.3d 1061, 1071-72 (7th Cir. 1994) (an actor's suggestion

12  of text does not support a claim of co-authorship where the sole author determined

13  whether and where such contributions were included in the work); *Malcomson v.*

14  *The Topps Co.*, 2010 WL 383359, at *5 (D. Ariz. Jan. 29, 2010) (no control where

15  party had "unrestricted right to reject" putative co-author's work, and "unilateral

16  right to reject" what putative co-author submitted); *Jefferson*, 2021 WL 4732592,

17  at *3 (alleged contributions insufficient where the putative author cannot establish

18  "control over the creation of [the work] independent from their contributions[.]'").

19       Plaintiff will likely introduce self-serving testimony from Armes that he

20  "directed" Post and Dukes at the August 8 Session, or that Armes purportedly had

21  input into what was included in the Session Material.  This is contradicted by

22  Armes's own deposition testimony, and evidence that Defendants will introduce at

23  trial.  Defendants will also show, via Armes's admissions, that he had nothing

24  whatsoever to do with the creation of the Circles Composition *after* the August 8

25  Session, which is still relevant to his authorship claim in the Session Material.

26  Armes had no awareness of, was not invited to, and was not present for the

27  multiple subsequent sessions where the Circles Composition was composed.  *Id.*

28  All of the lyrics to the Circles Composition were written after the August 8

Mitchell
Silberberg &
Knupp LLP

14162680.1

18

Session, and Armes admittedly had no control over any of them.  Thus, the Circles Composition, not the Session Material, was the "whole work," which Armes indisputably did not have control over.  *Jefferson*, 2021 WL 4732592, at *3 (dismissing joint authorship claim when party seeking credit "appear not to have even known of the existence of [final version of song] until after it was released").

### 2. Armes Cannot Demonstrate That There Was A "Shared Intent" To Be Co-Authors.

As a court in this District recently explained, "courts often look to **_contemporaneous credit decisions_** as indicia of whether there were objective manifestations of a shared intent to be joint authors.  The Ninth Circuit did so in *Aalmuhammed*, stating putative coauthors **_make objective manifestations of a shared intent to be coauthors_**, as by denoting the authorship of The Pirates of Penzance as 'Gilbert and Sullivan.'"  *Jefferson*, 2021 WL 4732592, at *5.

Armes will also be unable to show "objective manifestations of a shared intent to be coauthors" by any of the putative authors of the Session Material. **_Each_** and **_every_** putative author "must intend to contribute to a joint work at the time his or her alleged contribution is made."  *Weissmann v. Freeman*, 868 F.2d 1313, 1318 (2d Cir. 1989); *Richlin v. Metro-Goldwyn-Mayer Pictures Inc.*, 2006 WL 8448673, at *3 (C.D. Cal. Jan. 30, 2006) ("this must be the intent **_of all the putative co-authors_**, not just the person claiming co-authorship").  Armes's entire claim of "shared intent" hinges on his self-serving, uncorroborated, allegation that Post casually said "Let's write a tune" after Post's manager introduced him to Armes following a concert that the two attended.  Even assuming that those words were said in any context—which Defendants deny—it does not remotely carry Armes's burden to show a "shared intent."

Defendants will establish that neither the Defendants nor the Non-Party Songwriters made any acknowledgement whatsoever that they intended for Armes

Mitchell
Silberberg &
Knupp LLP

14162680.1

to be a co-author of the Session Material.  Indeed, as this Court has already held, the actual songwriters of the Circles Composition had no intention to be co-authors with Armes.  Moreover, during the August 8 Session, Post and Dukes never indicated—let alone agreed—that Armes would be a co-author of the Session Material.  Indeed, the subject of authorship/ownership was not even discussed prior to the release of the Circles Recording.  And after the August 8 Session, Armes had no communications with any of the writers about the Session Material or the Circles Composition prior to the commercial release of the Circles Composition.

Defendants will also introduce evidence to show that, in the Liner Notes for Post's "*Hollywood's Bleeding*" album on which the Circles Recording is contained, Defendants and the Non-Party Songwriters are the only individuals credited as the songwriters of the Circles Composition.  Armes has no credit whatsoever in the Liner Notes.  It is well-recognized that "the manner in which [Defendants] listed credits on the [work]" is "strongly" indicative of how they regard themselves vis-à-vis authorship. *Thomson*, 147 F.3d at 203; *see also Aalmuhammed*, 202 F.3d at 1234; *Jefferson*, 2021 WL 4732592, at *5 ("[the counterclaim defendant's] choice to credit some co-authors, but not the [counterclaim plaintiffs], at the time of releasing [the work at issue] is relevant."). Here the liner notes provide objective evidence that Armes, Post and the Non-Party Writers had zero intent for Armes to be a joint author.

### 3.  Armes Cannot Prove That The "Audience Appeal" Of The Session Material Turned On His Alleged Contribution.

Armes has no evidence with which he could establish the audience appeal of the Session Material (which was never exploited or commercially released on its own) turns on his alleged contributions.  And, when as here, the plaintiff's showing of "control" and "shared intent" are insufficient to meet his burden, the courts routinely dismiss joint authorship claims without even considering the "audience appeal" factor. *Aalmuhammed*, 202 F.3d at 1234-35 (finding no joint authorship

without considering "audience appeal"); *Armes v. Post*, 2020 WL 6135068, at *7 (dismissing Armes's claim for joint authorship of the Circles Recording after construing "audience appeal" allegations in his favor, given that Armes's allegations of "control" were insufficient to state a viable claim); *Richlin*, 531 F.3d at 970 (9th Cir. 2008) (dismissing co-authorship claim where "two primary *Aalmuhammed* factors weigh[ed] most heavily in favor of" the moving party).

Armes will try to demonstrate at trial that his purported contributions made the Session Material appealing because it was an alleged departure for Post. At trial, Defendants will establish that Post's musical style is very versatile and eclectic, and that Armes did not introduce him to a new "style and sound."

## VI.   SUMMARY OF DEFENSES, THE ELEMENTS THEREOF, AND DEFENDANTS' SUPPORT FOR EACH DEFENSE.

Defendants plan to pursue the following affirmative defenses:

### A.   <u>Laches</u>

<u>Elements</u>:  The elements of laches are: (1) the failure to assert a right, (2) for some appreciable period so as to amount to unreasonable delay, (3) which results in prejudice to the adverse party.  *See Delta Forensic Engineering, Inc. v. Delta V. Biomechanics, Inc.*, 402 F. Supp. 3d 902, 911 (C.D. Cal. 2019) ("Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights.").

<u>Key Evidence</u>:  As for elements (1)-(2), Defendants intend to introduce documentary evidence/testimony demonstrating (i) Plaintiff's knowledge and delay in commencing suit and/or asserting any rights with respect to the Session Material and/or the Circles Composition and (ii) Defendants' lack of knowledge of Plaintiff's claim and reliance thereon.  As for element (3), Defendants intend to introduce documentary evidence and/or testimony demonstrating the various forms of prejudice suffered by Defendants as a result, including but not limited to, by

entering agreements with non-party songwriters and publishers committing rights and undertaking obligations in connection with the Circles Composition.

### B. Waiver, Estoppel, Acquiescence

Elements: "Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).  An implied waiver may arise though "conduct inconsistent with an intent to enforce" the rights asserted. *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 958 (N.D. Cal. 2015).   The elements of estoppel are: (1) plaintiff's knowledge of the alleged conduct; (2) plaintiff either intended reliance on his acts or omissions or created a right to believe he so intended; (3) defendant was ignorant of the true facts; and (4) defendant relied to his detriment.  *E.g.*, *AirWair*, 84 F. Supp. 3d at 958; *Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1399 (S.D. Cal. 1990). "Equitable estoppel "focuses on what the [defendant] has been led to reasonably believe from the [plaintiff's] conduct." *Compaq Computer Corp. v. Ergonome, Inc.*, 210 F. Supp. 2d 845, 849 (S.D. Tex. 2002).  For estoppel purposes, "[a] holding out may be accomplished by silence and inaction." *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960).

Key Evidence:  The key evidence in support of this defense is the same as those set forth in connection with Defendants' laches defense.   In addition, the entire year following the August 8 Session, Defendants never heard from Armes or his representatives about his purported authorship of the Session Material.   On the basis of Armes's silence and lack of involvement there was no reason to believe Armes would come forth with baseless allegations of joint authorship.  Defendants engaged in substantial work, in connection with the Circles Composition and Recording, and entered into various agreements between themselves, the Non-Party Songwriters, and their various representatives, publishing companies, and record companies.  Armes's conduct has caused Defendants prejudice and he

1  should bear the consequences of this conduct after August 2018. Defendants and

2  the Non-Party Songwriters relied on the rights obtained in such various agreements

3  (and the various representations and warranties made based thereupon) in

4  exploiting the Circles Composition and Circles Recording. Defendants and the

5  Non-Party Songwriters would be greatly prejudiced if Armes was able to assert

6  purported rights at this belated stage.

7      **C.    Unclean Hands**

8      Elements: A plaintiff has unclean hands if he violated conscience, good

9  faith or other equitable principles in prior conduct, or dirtied his hands in acquiring

10 the right presently asserted, and the alleged misconduct by the plaintiff relates

11 directly to the transaction concerning which the complaint is made. *See Dollar*

12 *Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989).

13     Key Evidence: The key evidence in support of this defense is the same as

14 those set forth for Defendants' other defenses.[7]

15 **VII.  EVIDENTIARY ISSUES**

16     The parties have exchanged objections to exhibits and will meet and confer

17 regarding same in an effort to streamline trial. Defendants will be filing motions *in*

18 *limine* seeking to exclude certain evidence, testimony and argument.[8]

19 **VIII. ISSUES OF LAW**

20     **A.    Burden of Proof**

21     The elements of Plaintiff's *prima facie* case are set forth *supra*. It is

22 Plaintiff's burden to prove those elements by a preponderance of evidence.

23

24 [7] Defendants previously moved to dismiss the FAC because, *inter alia*, Armes failed to join
   "necessary" and "indispensable" Non-Party Songwriters as parties. ECF 28. Defendants submit
25 that the Non-Party Songwriters remain necessary and indispensable parties, even after the April
   Decision, and reserve the right to renew their motion.

26 [8] Defendants intend to file motions *in limine* on April 25, 2022. Defendants are aware that L.R.
27 7-3 requires a meet and confer seven days prior to filing a motion; however, the April Decision
   made this impracticable. While Plaintiff's counsel initially agreed to meet and confer this week,
   she subsequently reneged. Defendants are now unable to obtain Plaintiff's position. Defendants
28 intend to request additional time to file their motions at Monday's Conference.

## IX.   BIFURCATION OF ISSUES

No bifurcation of trial has been ordered.  However, in Defendants' Motion *In Limine* #1, Defendants requested that, in the alternative, the Court bifurcate any legal and equitable issues at trial.  In addition, as this Court held in connection with its disposition of Defendants' motion for summary judgment, Plaintiff's accounting and constructive trust "claims"[9] "will be relevant only if Armes establishes joint authorship in the [Session Material]."  ECF 90 at 28 n.6.

## X.   TRIAL

### A.   <u>Triable Issues</u>

Defendants submit that the following issues shall be presented at trial:

- Can unfinished, rough material that had no purpose other than to be further worked on, and which no party intended to be final or ever meant to be exploited on its own (i.e. the Session Material) be analyzed as a joint work?

- Is a final musical composition (i.e. the Circles Composition) a derivative work of unfinished, rough material (i.e. the Session Material) that had no purpose other than to be further worked on and incorporated into that final musical composition?

- Is Plaintiff unable to sustain his burden of proving that he made an "independently copyrightable contribution" to the Session Material?

- Is Plaintiff unable to sustain his burden of proving that he fixed any of his alleged authorship contributions to the Session Material in a tangible medium of expression?

---

[9] These "claims" are equitable remedies, not causes of action.  *Wise v. Wells Fargo Bank, N.A.*, 850 F. Supp. 2d 1047, 1055 (C.D. Cal. 2012); *StreamCast Networks, Inc. v. Skype Techs., S.A.*, 2006 WL 5441237, at *11 (C.D. Cal. Sept. 14, 2006).  Plaintiff also conceded those "claims" lack merit by failing to address them in opposition to Defendants' summary judgment motion. *E.g., Silva v. U.S. Bancorp*, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011).

- Is Plaintiff unable to sustain his burden of proving that his alleged contributions to the Session Material have sufficient originality to be copyrightable?

- Is Plaintiff unable to sustain his burden of proving that he is a joint author of the Session Material?

- Is Plaintiff unable to sustain his burden of proving that he exercised control over the entirety of the Session Material?

- Is Plaintiff unable to sustain his burden of proving that there was a shared intent to be co-authors between Plaintiff, Defendants, and/or the Non-Party Songwriters?

- Is Plaintiff unable to sustain his burden of proving that the audience appeal of the Session Material turns his alleged contribution?

- Is Plaintiff's claim barred as a result of his unreasonable delay in asserting his rights and the prejudice to Defendants caused by same?

- Is Plaintiff equitably estopped from asserting his claim and/or did Plaintiff waive his claimed rights in the Session Material?

- Is Plaintiff's claim barred as a result of his unclean hands?

**B.**   **<u>Issues That Have Previously Been Decided by the Court</u>**

Plaintiff's joint authorship claims in the Circles Recording and Circles Composition (and corresponding accounting/constructive trust claims) have been dismissed by this Court (ECF 32 & 90), as discussed *supra*, and Defendant Universal Music Group, Inc. was dismissed from this action (ECF 34).

**XI.   FEES**

Defendants intend to seek fees on any applicable ground provided by law.

**XII.   ABANDONMENT OF ISSUES**

Defendants do not intend to pursue the affirmative defenses stated in their Answers but not identified above or in the Proposed Pre-Trial Conference Order.

Mitchell
Silberberg &
Knupp LLP

14162680.1

**DEFENDANTS' MEMO OF CONTENTIONS OF FACT AND LAW**

1    Dated: April 20, 2022          MITCHELL SILBERBERG & KNUPP LLP

2                                     DAVID A. STEINBERG
                                    CHRISTINE LEPERA

3                                     JEFFREY M. MOVIT
                                    GABRIELLA N. ISMAJ

4

5                       By:    /s/ David A. Steinberg

6                               David A. Steinberg (SBN 130593)
                              Attorneys for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

14162680.1

26