1      UNITED STATES DISTRICT COURT
       CENTRAL DISTRICT OF CALIFORNIA
2        WESTERN DIVISION

3

4  TYLER ARMES,     )
            )
5      Plaintiff,  )
            )
6     vs.     ) Case No.  CV 20-03212-ODW
            )
7  AUSTIN RICHARD POST, )
  ET AL.,      ) Los Angeles, CA
8          ) April 11, 2022
      Defendants. ) (2:34 p.m. to 3:02 p.m.)
9  _____)

10

11

12

13       SUMMARY JUDGMENT MOTION

14   BEFORE THE HONORABLE OTIS D. WRIGHT, II
15      UNITED STATES DISTRICT JUDGE

16

17

18
  APPEARANCES:     See Next Page
19
  COURT REPORTER:   Recorded, Zoom
20
  COURTROOM DEPUTY:  Sheila English
21
  TRANSCRIBER:    Dorothy Babykin
22            Courthouse Services
            1218 Valebrook Place
23           Glendora, California  91740
            (626) 963-0566

24

25  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
  TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1    APPEARANCES:

2    FOR THE PLAINTIFF TYLER ARMES:

3    LAVELY & SINGER APC
     BY:  ALLISON S. HART
4         ATTORNEY AT LAW
     2049 CENTURY PARK EAST
5    SUITE 2400
     LOS ANGELES, CALIFORNIA  90067
6

7    FOR DEFENDANT AUSTIN RICHARD POST AND ADAM KING FEENEY:

8    MITCHELL SILBERBERG & KNUPP LLC
     BY:  CHRISTINE LEPERA
9         ATTORNEY AT LAW
     437 MADISON AVENUE
10   25TH FLOOR
     NEW YORK, NEW YORK  10022
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              I N D E X

2     CV 20-03212-ODW                            APRIL 11, 2022

3     PROCEEDINGS:

4            HEARING ON MOTION FOR SUMMARY JUDGMENT CONFERENCE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dorothy Babykin Courthouse Services
1218 Valebrook Place   •   Glendora, CA 91740   •   626.963.0566   •   dotnisbet@aol.com

1                    LOS ANGELES, CALIFORNIA; APRIL 11, 2022; 2:34 P.M.

2                    THE CLERK:  CALLING ITEM 6, CV 20-3212, TYLER ARMES VERSUS

3       AUSTIN RICHARD POST, ET AL.

4                    COUNSEL, STARTING WITH THE PLAINTIFFS, MAY I HAVE YOUR

5       APPEARANCE, PLEASE.

6                    MS. HART:  THIS IS ALLISON HART OF LAVELY & SINGER FOR THE

7       PLAINTIFF TYLER ARMES.

8                    MS. LEPERA:  CHRISTINE LEPERA, MITCHELL SILBERBERG &

9       KNUPP, COUNSEL FOR AUSTIN RICHARD POST, PROFESSIONALLY KNOWN

10      AS POST MALONE, AND ADAM KING FEENEY, PROFESSIONALLY KNOWN AS

11      FRANK DUKES, DEFENSE ON THE DECLARATORY JUDGMENT CLAIM.  AND

12      MR. MALONE IS ALSO A COMPLAINANT ON HIS OWN DJ ACTION WHICH WAS

13      CONSOLIDATED WITH MR. ARMES' ACTION.

14                   THE COURT:  ALL RIGHT.  GOOD AFTERNOON, COUNSEL.

15                   MS. LEPERA:  GOOD AFTERNOON, YOUR HONOR.

16                   THE COURT:  ALL RIGHT.

17          `        SO, WE'RE HERE ON THE MOTION FOR SUMMARY JUDGMENT.

18                   DO WE KNOW WHETHER OR NOT THIS IS GOING TO BE A COURT

19      TRIAL OR A JURY TRIAL?

20                   I KNOW THERE'S SOME UNCERTAINTY AROUND HERE.

21                   MS. LEPERA:  YOUR HONOR, IT'S INTERESTING YOU ASKED THAT.

22      WE ACTUALLY HAD BEEN CONFERRING WITH MS. HART ABOUT THAT VERY

23      ISSUE.

24                   IT IS OUR POSITION THAT IT WOULD BE A BENCH TRIAL.  AND WE

25      HAVE ACTUALLY FILED AN ADVANCE LIMINE MOTION AFTER CONFERRING

1   WITH MS. HART ABOUT THAT TO STRIKE ANY JURY DEMAND ON THE

2   GROUNDS THAT THIS IS A -- THESE ARE THE CLAIMS AND THE REMEDIES

3   ARE -- THEY SHOULD BE TRIED BY A BENCH AND NOT BY A JURY.

4           THE COURT:  MS. HART.

5           MS. HART:  YES, YOUR HONOR.

6           WE JUST RECEIVED DEFENDANTS' MOTION ON FRIDAY AND

7   OBVIOUSLY HAVE NOT HAD AN OPPORTUNITY TO FILE ANY RESPONSE.

8           BUT IT IS OUR POSITION THAT THERE SHOULD BE A JURY TRIAL.

9           THE COURT:  WAIT A MINUTE.  FRIDAY LIKE 72 HOURS AGO, THAT

10  FRIDAY?

11          MS. HART:  THAT'S CORRECT, YOUR HONOR.

12          THE COURT:  JUST RECEIVED IT.  OKAY.

13          GO AHEAD.

14          MS. HART:   YES, YOUR HONOR.

15          IT'S OUR POSITION THAT THERE ARE FACTUAL ISSUES RELATING

16  TO THE DETERMINATION OF PLAINTIFF'S STATUS AS A JOINT AUTHOR THAT

17  SHOULD BE DETERMINED BY A JURY.

18          THE COURT:  OKAY.

19          I CAN'T SAY I DISAGREE WITH THAT.

20          BUT WHAT ABOUT THE COMMERCIAL VERSION, THE

21  COMMERCIAL RELEASE.

22          THERE'S NO QUESTION ABOUT THAT ONE, RIGHT?  ABOUT THE

23  PLAINTIFF HAVING HAD SOME INVOLVEMENT IN THAT.

24          ISN'T THAT PRETTY MUCH OUT OF THE CASE?

25          MS. HART:  WE HAVE -- WE HAVE WITHDRAWN THE CLAIM FOR --

1          THE COURT:  YEAH.

2          MS. HART: -- COPYRIGHT OWNERSHIP AS TO THE SOUND

3    RECORDING.  THE CLAIM IS SOLELY WITH RESPECT TO THE MUSICAL

4    COMPOSITION.

5          THE COURT:  COMPOSITION.

6          OKAY.  ALL RIGHT.

7          MS. LEPERA:  YES.  YOUR HONOR ACTUALLY GRANTED THE

8    MOTION TO DISMISS THE SOUND RECORDING CLAIM FROM THE

9    CASE AT INCEPTION.  AND THEY NEVER SOUGHT TO TAKE LEAVE TO

10   AMEND.

11         SO, IT IS GONE WITH RESPECT TO THE ISSUE -- IF YOUR HONOR

12   WOULD LIKE TO HEAR WE COULD TALK ABOUT THE BENCH TRIAL

13   FURTHER.  BUT I'LL LEAVE THAT TO THE COURT'S DISCRETION

14   OBVIOUSLY.

15         THE COURT:  THAT'S  -- I DON'T KNOW.  I JUST  -- IT JUST  -- IT

16   JUST SEEMS THAT THIS REALLY OUGHT TO BE PUT TO A JURY.

17         MS. HART:  WE CERTAINLY DISAGREE, YOUR HONOR, ON BEHALF

18   OF THE PLAINTIFF.

19         (LAUGHTER.)

20         MS. LEPERA:  IF YOU AGREE, YOU DON'T DISAGREE.  WE  --

21         MS. HART:  WE DON'T.  I SAID WE DO NOT DISAGREE.

22         THE COURT:  OH, OKAY.

23         MS. HART:  WAS MY STATEMENT.

24         THE COURT:  ALL RIGHT.

25         MS. HART:  WAS THAT WE DO NOT DISAGREE.

1        MS. LEPERA:  AND IF I MAY, YOUR HONOR, I'D BE HAPPY TO

2   ELABORATE ON WHY THAT IS.  AND THE CASES THAT ARE OBVIOUSLY SET

3   FORTH IN OUR SUBMISSION WOULD BE INFORMATIVE OF THAT, THAT WILL

4   BE PRESUMABLY OPPOSED BY MS. HART.

5        BUT THE CASES ARE VERY CLEAR THAT WHEN YOU'RE LOOKING

6   TO QUIET TITLE TO SOMETHING IN CONNECTION WITH AN INTELLECTUAL

7   PROPERTY RIGHT, THE CASES ARE SOUNDLY IN FAVOR OF IT BEING AN

8   EQUITABLE CLAIM AND A DECLARATORY JUDGMENT CLAIM.

9   THERE'S NO MONEY CLAIM HERE WITH RESPECT TO THAT RELIEF TO

10  QUIET TITLE.

11        SIMILARLY, THE REMEDIES HERE TO QUIET TITLE ON

12  OWNERSHIP OF THE COMPOSITIONAL COPYRIGHT ARE STRICTLY IN THE

13  NATURE OF EQUITABLE REMEDIES IN ACCOUNTING AND A CONSTRUCTIVE

14  TRUST AND THE LIKE.

15        SO, THOSE ARE SOUNDLY CONSIDERED TO BE ISSUES THAT ARE

16  TO BE PRESENTED AND TRIED BEFORE THE COURT AND NOT A JURY.

17        AND, AGAIN, THIS IS OBVIOUSLY SUBMITTED IN THE MOTION

18  THAT WE JUST FILED ON  -- AND WE FILED IT EARLY.  IT IS AN IN LIMINE

19  MOTION.

20        BUT – YES.  SO, THAT WOULD BE SOMETHING THAT I THINK WE

21  WOULD LIKE THE OPPORTUNITY TO BE HEARD FURTHER ON TO THE

22  EXTENT THERE'S –

23        THE COURT:  OKAY.

24        MS. LEPERA:  -- GOING TO BE AN ISSUE ON THAT.

25        THE COURT:  BECAUSE UNLIKE THE WAY, YOU KNOW, WE MAY

1   WANT TO TEND TO THINK IN QUITE TITLE IN A DIFFERENT CONTEXT, THIS IS

2   REALLY FACT DEPENDENT.  THEREFORE I DON'T SEE US APPROACHING

3   THIS AS, YOU KNOW, AN ISSUE OF LAW THAT YOU CAN JUST SIMPLY

4   SUBMIT TO THE COURT FOR DETERMINATION.  IN FACT, I DON'T -- MY

5   GUESS IS NEITHER SIDE SEES THIS CASE THAT WAY.

6           THERE ARE DISPUTES  --

7           MS. HART:  IF I MAY, YOUR HONOR.

8           THE COURT:  THERE ARE DISPUTES WITH RESPECT TO WHO

9   SAID WHAT, WHEN IN TERMS OF AN INDUCEMENT OR AN INTRODUCTION

10  OF THE PLAINTIFF TO THE DEFENDANT IN TERMS OF WHAT SERVICES ARE

11  BEING OFFERED BUT WERE ACCEPTED.

12          I DON'T KNOW.  THIS  -- THIS JUST SCREAMS THE NEED FOR A

13  JURY.

14          SO, WE'LL TALK ABOUT IT.  YOU KNOW, WE'LL TALK ABOUT IT.

15  IT'S NOT THAT I DON'T APPRECIATE THE FACT THAT BY INSERTING A JURY

16  INTO THIS EVERYBODY'S WORKLOAD IS GOING TO GO UP.  AND THEN WE

17  CAN BICKER ABOUT JURY INSTRUCTIONS, WHICH IS ALSO YET ANOTHER

18  WEAK LINK, ANOTHER POTENTIAL FOR A PROBLEM DOWN THE ROAD.  I

19  MEAN, YOU GET A CHANCE TO DO A CASE ALL OVER AGAIN FOR A FAULTY

20  JURY INSTRUCTION.

21          SO, I'M NOT ANXIOUS TO INSERT PROBLEMS INTO THE CASE, BUT

22  I JUST -- I  CAN'T SEE THIS ANY OTHER WAY OTHER THAN AS A JURY TRIAL.

23          BUT LIKE I SAID, I'LL KEEP MY MIND OPEN SO THAT WE CAN  -- WE

24  CAN TALK ABOUT THIS A BIT MORE.  AND WHO KNOWS.

25          MS. LEPARA, YOU MAY CHANGE YOUR MIND.

1      MS. LEPARA:  WELL, YOUR HONOR, I THINK I'D LIKE TO SEE IF I

2   CAN CHANGE YOUR MIND AND ALSO LOOK AT THE ISSUES THAT WE'VE

3   RAISED ON THIS CURRENT MOTION --

4      THE COURT:  OKAY.

5      MS. LEPARA:  -- THE SUMMARY JUDGMENT MOTION BECAUSE WE

6   DO NOT THINK THERE ARE ANY ISSUES OF FACT IN DISPUTE.  WE BELIEVE

7   THAT THIS IS A STRAIGHT-UP JOINT AUTHORSHIP CLAIM UNDER THE

8   SEMINAL CASE OF AMUHAMAD IN THE NINTH CIRCUIT WHICH YOUR HONOR

9   QUOTED EXTENSIVELY IN THE INITIAL DECISION INVOLVING THE SOUND

10  RECORDING WHEN THE COURT MADE IT CLEAR THAT THE ONLY WAY

11  ANYONE GETS TO BE A JOINT AUTHOR OF ANY COPYRIGHTABLE WORK IS

12  TO HAVE DEMONSTRATED AND PROVEN AN INDEPENDENT

13  COPYRIGHTABLE CONTRIBUTION TO THAT WORK.  IT DOESN'T MATTER

14  WHAT PEOPLE SAID.  YOU HAVE TO BE ABLE TO PROVE THAT YOU

15  CONTRIBUTED THIS INDEPENDENT COPYRIGHTABLE CONTRIBUTION.  AND

16  YOU HAVE TO PROVE THAT THERE'S A CONTROL, A SUPERVISORY

17  CONTROL OVER THE ENTIRETY OF THE WORK.

18      THERE'S NO DISPUTE.  AND WE CAN GO THROUGH THE FACTS IN

19  OUR STATEMENT OF UNDISPUTED FACT THAT MR. ARMES, WHILE

20  PRESENT IN A STUDIO THE NIGHT WHERE CERTAIN THINGS WERE DONE --

21  AND BY THE WAY, THE COMPOSITION, WHICH IS A SEPARATE

22  COPYRIGHTABLE WORK.  THERE'S NO QUESTION THERE  -- IS MANIFEST BY

23  THE SOUND RECORDING.

24      SO, ALL THE THINGS THE COURT SAID ABOUT CONTROL OVER

25  THE SOUND RECORDING APPLY WITH EQUAL FORCE TO THE CONTROL

1 OVER THE COMPOSITION.

2   MR. ARMES DID NOT PERFORM.  AND HE DID NOT CREATE

3 ANYTHING IN A FIXED, TANGIBLE MEDIUM OF EXPRESSION TO

4 DEMONSTRATE AN INDEPENDENT COPYRIGHTABLE CONTRIBUTION ON

5 THE MUSIC SIDE.

6   SO, THERE WAS NOTHING FIXED BY HIM.  EVERYTHING THAT

7 CAME OUT OF THAT STUDIO WAS PERFORMANCES BY OTHER PEOPLE.

8 NOT HIM.

9   SO, THERE'S NEVER BEEN A CASE THAT I'VE BEEN ABLE TO

10 LOCATE OR MS. HART'S BEEN ABLE TO PROVIDE TO THE COURT WHERE

11 SOMEONE CLAIMS JOINT AUTHORSHIP WHEN THEY'RE NOT EVEN ON THE

12 WORK, NUMBER ONE.

13   NUMBER TWO, EVERYTHING HE CLAIMS HE CONTRIBUTED, AND

14 WE'VE ACCEPTED IT FOR PURPOSES SOLELY OF THE MOTION, IS AN

15 UNPROTECTABLE EXPRESSION BY HIS OWN ADMISSION.  HE CONCEDED

16 THAT ALL HE TALKED ABOUT WAS DOING WHAT'S CALLED A ONE, FOUR,

17 FIVE PROGRESSION.  AND UNDER THE SEMINAL RECENT CASES OF <u>GRAY</u>

18 <u>VERSUS PERRY</u> AND <u>LED ZEPPELIN</u> YOU DON'T GET TO HAVE COPYRIGHT

19 INTEREST IN COMMONPLACE, UNPROTECTIBLE EXPRESSION.

20   HE SAID THIS WAS EXCEEDINGLY COMMON.  AND IT IS.  A ONE,

21 FOUR, FIVE CORE PROGRESSION OR BASE NOTES OF A ONE, FOUR, FIVE

22 ARE NOT PROTECTIBLE EXPRESSION BY HIS OWN ADMISSION.

23   AND UNDER THE CASE LAW THAT I JUST MENTIONED THESE TWO

24 FACTORS  -- NO FIXATION OF ANYTHING, AND ULTIMATELY NOTHING

25 PROTECTIBLE THAT HE CAN DEMONSTRATE THAT HE DID ESTABLISHED

1    THAT HE'S GOT NO COPYRIGHTABLE CONTRIBUTION.

2           THEN, EVEN IF HE DID, AND HE DOESN'T BY HIS OWN ADMISSION,

3    HE'S ALSO ADMITTED THAT HE HAD NO CONTROL OVER WHAT WAS

4    ULTIMATELY EMBODIED IN THE SOUND RECORDING, I.E., THAT

5    COMPOSITION.

6           HE ADMITTED, AND TRIES TO DISPUTE IT  -- WHICH I TAKE

7    UMBRAGE WITH BECAUSE YOUR HONOR'S RULES ARE CLEAR.  DON'T SAY

8    THAT SOMETHING IS A DISPUTED ISSUE OF FACT IF IT'S NOT.  HE

9    TESTIFIED UNDER OATH THAT THE CONTROL OF THE ENTIRE SESSION

10   WAS DONE BY MR. DUKES.  HE CONTROLLED THE LAPTOP.  IT WAS HIS

11   SESSION.  AND HE ULTIMATELY HAD NO AUTHORITY OR DICTATES OVER

12   MR. DUKES.

13          AND HE DISPUTED THAT IN PARAGRAPH 12.  AND WE QUOTED

14   HIM DIRECTLY FROM HIS TESTIMONY AND YET HE DISPUTES THAT.

15          BUT THAT'S NOT AVAILING BECAUSE HE'S TESTIFIED UNDER

16   OATH THAT HE HAD NO CONTROL, NUMBER ONE.

17          SO, THE SESSION ITSELF HE'S ADMITTED HE HAD NO CONTROL.

18          THE WORK WAS FINISHED OVER THE NEXT YEAR.  HE WAS

19   COMPLETELY UNINVOLVED, NOT IN – NOT – NOT REMOTELY ABLE TO BE A

20   MASTERMIND OF WHAT THE ULTIMATE COMPOSITION WAS, WHICH IS

21   WHAT AALMUHAMMED REQUIRES.

22          HE WAS ESSENTIALLY AT A LOOP.  SO, A LOT OF THINGS WERE

23   DONE DURING – DURING THAT SUBSEQUENT PERIOD OF TIME BY THE

24   PEOPLE WHO CONTROLLED THE WORK AND THE COPYRIGHTABLE WORK.

25   AND HE IS NOT ONE OF THEM.

1          AALMUHAMMED IS VERY CLEAR THAT EVEN IF YOU MAKE

2     SOMETHING THAT'S A COPYRIGHTABLE CONTRIBUTION  -- AND HERE MR.

3     ARMES ADMITTEDLY DID NOT  -- YOU HAVE TO HAVE SUPERVISORIAL

4     CONTROL OVER THE ENTIRE COPYRIGHTED WORK.

5          AND I WOULD SUBMIT TO YOUR HONOR THAT IF YOU GO

6     THROUGH OUR PAPERS AND YOU LOOK AT THESE ISSUES, THESE LEGAL

7     ISSUES, WHICH ARE UNDISPUTED PRINCIPLES OF LAW AND MATCH IT TO

8     THE FACTS THAT ARE UNDISPUTED, THERE'S ONLY ONE RESULT HERE.

9     THERE'S NOTHING TO TRY.  THERE'S NO FACT ISSUE IN DISPUTE.

10          ANYTHING THAT "COME TO THE STUDIO.  HEY, MAYBE WE'LL

11     WRITE A SONG.  YOU KNOW, LET'S HANG OUT."  ALL THAT MATTERS IS

12     WHAT WAS REALLY CREATED, WHAT WAS REALLY TRANS-  -- WHAT

13     REALLY TRANSPIRED.  AND POST-CONDUCT, THE SUBSEQUENT CONDUCT

14     OF THE OTHER AUTHORS IS CLEARLY NO INTENTION TO MERGE ANYTHING

15     WITH HIM.

16          SO  -- BUT THE MOST IMPORTANT THING HERE  -- AND THE

17     ABSENCE OF MR. ARMES ON ANY PERFORMANCE, THE ABSENCE OF HIM

18     RECORDING ANY EVIDENTIARY PROOF OF ANYTHING THAT IT

19     CONTRIBUTED, IT'S JUST IPSE DIXIT.

20          THE COURT:  OKAY.  TELL  --

21          MS. LEPERA:  AND  --

22          THE COURT:  TELL ME  -- TELL ME SOMETHING.

23          MS. LEPERA:  YES.

24          THE COURT:  TELL ME SOMETHING.

25          MS. LEPERA:  SURE.  SURE, YOUR HONOR.

1          THE COURT:  THE COMMERCIAL RELEASE  --

2          MS. LEPERA:  YES.

3          THE COURT:   -- CAN IT FAIRLY BE SAID THAT THAT WAS A

4    DERIVATIVE OF THE STUDIO SESSION COMPOSITION, THAT WORK THAT

5    WAS CAPTURED ON THE LAPTOP.

6          MS. LEPERA:  SO THE -- THE SOUND RECORDING EMBODIED THE

7    COMPOSITION CREATED IN PART AT THE SESSION AND SUBSEQUENT TO

8    THE SESSION.  IT'S NOT A DERIVATIVE WORK.  BECAUSE WHEN YOU HAVE

9    ONE – ONE COMPOSITION  -- UNLESS YOU'RE DEALING WITH A COPYRIGHT

10   INFRINGEMENT CLAIM OR A SAMPLE, IT HAS TO MERGE COMPLETELY

11   TOGETHER.  SO, IT'S NOT DERIVATIVE.  IT IS ONE WORK.  A UNITY -- A

12   UNITARY WORK.  THE COMPOSITION – WHICH IS ACTUALLY WHAT MR.

13   ARMES CLAIMS.

14          HE DOESN'T CLAIM IT'S A DERIVATIVE WORK.  HE CLAIMS IT'S A

15   UNITARY WORK, AND THAT HE IS ENTITLED TO RIGHTS OF IT.

16          BUT UNDER AALMUHAMMED AND ALL OF THE PROGENY IN THE

17   NINTH CIRCUIT, YOU'RE -- YOU DON'T BECOME A JOINT AUTHOR UNLESS

18   YOU CONTROL A SUPERVISION OF THE ENTIRE WORK.

19          THAT'S IF YOU GET TO THE POINT YOU EVEN MADE IN THE

20   DEPENDENT COPYRIGHTABLE CONTRIBUTION  -- WHICH HE DID NOT.

21          THE COURT:  I DON'T UNDERSTAND  --

22          MS. LEPERA:  -- CANNOT PROVE  --

23          THE COURT:   -- THAT.  I DON'T UNDERSTAND THAT CONCEPT

24   THEN.

25          YOU AND I ARE GOING TO COLLABORATE ON WRITING A SONG.

1    OKAY.  AND I MEAN WE SIMPLY AGREE TO DO THAT.  AND LET'S -- LET'S --

2    LET'S FURTHER SUPPOSE THAT WE DO SOMETHING UNTHINKABLE -- WE

3    LIKE PUT OUR AGREEMENT IN WRITING THAT WE ARE JOINTLY GOING TO

4    WRITE A SONG.

5          MS. LEPERA:  RIGHT.

6          THE COURT:  NOW, HOW CAN BOTH OF US BE IN CONTROL?

7          MS. LEPERA:  WELL, THIS IS VERY INTERESTING YOU SAY THIS,

8    YOUR HONOR, BECAUSE THE WHOLE CONCEPT OF THE SUPERVISORY

9    CONTROL ISSUE IS WHEN THERE IS NO CONTRACT.

10         ALL OF THESE DOCTRINES THAT WE'RE TALKING ABOUT HERE

11    APPLY ONLY WHEN THERE'S NO CONTRACT.  AND THE CASES ARE CLEAR

12    IF YOU MAKE A NON-COPYRIGHTABLE CONTRIBUTION, SUGGESTIONS,

13    IDEAS, COLLABORATION  -- BUT IT DOESN'T RISE TO THE LEVEL OF A

14    COPYRIGHTABLE CONTRIBUTION UNDER JOINT AUTHORSHIP LAW, YOUR

15    BEST ADVISED TO GET A CONTRACT.

16         THERE'S NO AGREEMENT HERE.  IT IS UNDISPUTED THAT THERE

17    IS NO AGREEMENT HERE.

18         MR. ARMES HAS TESTIFIED HE HAD NO AGREEMENT WITH MR.

19    POST OR MR. DUKES TO BE CO-AUTHORS.

20         HE SIMPLY TALKS ABOUT THEY WERE THERE TOGETHER.  THEY

21    JAMMED  -- PLAYED SOME INSTRUMENTS TOGETHER.  SUBSEQUENT TO

22    THAT MR. DUKES AND MR. POKES  -- POST, ALL THEY DID IS RECORD THEIR

23    INSTRUMENTATIONS.  AND MAYBE MR. ARMES MADE SUGGESTIONS.  WE

24    HAVE NOT DISPUTED FOR PURPOSE OF THE MOTION HE MIGHT HAVE

25    MADE SUGGESTIONS.  BUT YOU DON'T GET JOINT AUTHORSHIP UNDER

1    THOSE CRITERIA.

2           IF HE HAD A CONTRACT, HE'D BE SUING FOR BREACH OF

3    CONTRACT.  HE DID NOT HAVE AN AGREEMENT.  AND ULTIMATELY THERE

4    IS NO AGREEMENT HERE.

5           SO, THE POINT OF THE AALMOHAMMED CASE LAW AND

6    PROGENY IS YOU – WHAT DO YOU LOOK AT WHEN THERE'S NO

7    AGREEMENT.

8           AND THE CASES SAY YOU HAVE TO FIRST PROVE THERE'S A

9    COPYRIGHTABLE CONTRIBUTION.  THAT'S STEP ONE.

10          IF YOU CAN GET PAST THAT – WHICH HE CAN'T  -- THEN YOU

11   LOOK TO THE ISSUE OF THE CONTROL OVER THE ENTIRE WORK.

12          AND BY HIS OWN ADMISSION, HE HAD NO SUCH CONTROL.  HE

13   HAD NO SUCH CONTROL AT THE SESSION.  HE HAD NO SUCH CONTROL

14   WHEN IT CAME TO THE ULTIMATE WHAT'S IN THAT SOUND RECORDING

15   WHICH BECAME THE COMPOSITION.

16          LYRICS WERE WRITTEN.  MUSIC WAS ARRANGED.  THINGS WERE

17   CHANGED.  HE ADMITTED A LOT WAS DONE.  SOME WAS THE SAME.

18   MAYBE MOST WAS THE SAME.  BUT IT WAS CHANGED.  AND NOT UNDER

19   HIS SUPERVISION OR CONTROL.  SO, THAT IS WHY HE IS NOT A JOINT

20   AUTHOR UNDER CLEAR CASE LAW AND THE UNDISPUTED FACTS OF THIS

21   CASE.

22          SO, THERE'S NO FACT TO TRY UNDER THAT DOCTRINE.  IF

23   THERE WAS A QUESTION OF AN AGREEMENT -- BUT THERE ISN'T --

24   BECAUSE HE ADMITTED THERE WAS NO AGREEMENT.  THAT'S IN THEIR

25   STATEMENT OF UNDISPUTED FACTS.

1          OKAY.  HE ULTIMATELY – SPEAK TO THE INITIAL WHY DON'T YOU

2     COME TO THE STUDIO.  LET'S WRITE A TUNE.  THAT IS NOT AN AGREEMENT

3     TO BE A JOINT AUTHOR.  THESE FOLKS HADN'T EVEN HEARD HIM PLAY

4     YET.  SO, THERE WAS NOTHING IN TERMS OF AN AGREEMENT TO BE A

5     JOINT AUTHOR.

6          AND I THINK THE DISTINCTION IS  -- AS THE CASES MAKE CLEAR

7     -- YOU HAVE TO LOOK TO SEE WHAT THE COPYRIGHTABLE CONTRIBUTION

8     IS AND WHAT IS THE NATURE OF THAT PARTY'S RIGHTS WITH RESPECT TO

9     THE SUPERVISORY POWER.

10         LIKE IN THE  -- JUST TO BE VERY SIMPLE ABOUT IT  -- IN THE

11    SPIKE LEE MALCOLM X CASE, THE AALMUHAMMED CASE, THERE WAS A

12    GENTLEMAN WHO WAS A CONSULTANT ON THE FILM SIDE WHO DID

13    REVISIONS TO THE SCRIPT.  AND THE COURT IN THE NINTH CIRCUIT SAID

14    THE GUY HAD A COPYRIGHTABLE CONTRIBUTION.  HE REVISED SCRIPTS.

15    HE MADE SIGNIFICANT CONTRIBUTIONS.  THEY WERE EVEN

16    COPYRIGHTABLE.  BUT HE WAS NOT A JOINT AUTHOR OF THE FILM

17    BECAUSE HE COULDN'T DICTATE WHAT WAS ULTIMATELY CONCLUDED IN

18    THE RELEASE NOR COULD MR. ARMES.  IT'S ANALOGOUS.

19         THE ONLY DIFFERENCE HERE IS MR. ARMES DOESN'T EVEN

20    HAVE A COPYRIGHTABLE CONTRIBUTION BECAUSE HE CAN'T

21    DEMONSTRATE A FIXATION OF ANYTHING PROTECTABLE  -- MELODICALLY,

22    RHYTHMICALLY, STRUCTURALLY, HARMONICALLY  -- THAT HE PUT INTO

23    THE SONG.

24         HE TESTIFIED UNDER OATH -- AND I CAN WALK YOUR HONOR

25    THROUGH THE ADMISSIONS WHERE HE BASICALLY SAID WHAT HE

1    OFFERED WAS EXCEEDINGLY COMMONPLACE.  YOU CAN'T COPYRIGHT

2    EXCEEDINGLY COMMONPLACE.  IT'S NOT PERMITTED, PARTICULARLY AS

3    THE NINTH CIRCUIT HAS BEEN MAKING CLEARER AND CLEARER THAT

4    MUSIC BUILDING BLOCKS ARE  -- ARE IDEAS  -- NOT THE EXPRESSION OF

5    IDEAS.

6          SO, ONE, FOUR, FIVE CORE PROGRESSION  IS THE MOST BASIC

7    CORE PROGRESSION ON THE PLANET.   AND THAT'S WHY MR. ARMES

8    CONCEDED IT WAS EXCEEDINGLY COMMON BECAUSE, YOU KNOW, THAT IS

9    THE CASE.

10          SO, I THINK IF YOUR HONOR WERE TO ACTUALLY MATCH THE

11   LEGAL DOCTRINES OF JOINT AUTHORSHIP IN THE ABSENCE OF CONTRACT

12   -- NO CONTRACT HERE  -- WITH THE UNDISPUTED FACTS  -- THERE'S ONLY

13   ONE CONCLUSION THAT CAN OBTAIN.  JOINT AUTHORSHIP HAS TO BE

14   RESOLVED ADVERSE TO MR. ARMES AS A MATTER OF LAW.

15          THE COURT:  YOU KNOW, 15 MINUTES AGO I JUST THREW THAT

16   OUT BASICALLY AS A PREMISE FOR A QUESTION.  BUT YOU BEAT ME

17   DOWN.

18          MS. LEPERA:  YOUR HONOR  --

19          THE COURT:  THOUGH I NEVER GOT  -- I NEVER GOT TO THE

20   QUESTION.  AND I NO LONGER FEEL THAT IT'S WORTH IT.  I JUST GIVE UP.

21          ALL RIGHT.  I'LL TELL YOU WHAT.

22          MS. HART.

23          MS. HART:  YES, YOUR HONOR.

24          SUFFICE IT TO SAY WE DISAGREE  --

25          THE COURT:  NAH, LEAVE THAT  -- LEAVE THAT ALONE.  LEAVE

1    THAT ALONE.

2             MS. HART:  SURE.

3             YES, YOUR HONOR.

4             THE COURT:  I WANT TO KNOW  -- WELL, YOU HAVEN'T SEEN THE

5    MOTION IN LIMINE, I TAKE IT.

6             MS. HART:  I SAW IT AT THE END OF THE DAY FRIDAY  --

7             THE COURT:  OKAY.

8             MS. HART:  -- I'LL CONFESS.  BUT I HAVE NOT THOROUGHLY

9    REVIEWED IT AND ANALYZED IT.

10            THE COURT:  OKAY.  FINE.  I JUST WANTED TO MAKE SURE THAT

11   YOU HAVE IT.  YOU CAN GET IT.  IT'S IN YOUR  --

12            MS. HART:  I DO HAVE IT.  YES, YOUR HONOR.

13            THE COURT:  GOOD.

14            CONSTRUCTIVE POSSESSION OR WHATEVER.

15            I UNDERSTAND IF THIS IS HOLY WEEK, BY NEXT MONDAY, CAN

16   YOU HAVE SOME SORT OF AN OPPOSITION.  IT DOESN'T HAVE TO BE A LAW

17   --

18            MS. HART:  THE 18TH?

19            THE COURT:  IT DOES NOT HAVE TO BE LAW REVIEW.

20            BY THE 18TH.  BECAUSE I  -- I APPRECIATE  --

21            MS. HART:   NO PROBLEM, YOUR HONOR.

22            THE COURT:  I APPRECIATE THE FACT THAT I'M PUTTING YOU

23   UNDER THE GUN.

24            SO, IT CAN HAVE MISSPELLINGS AND GRAMMATICAL ERRORS

25   AND ALL KINDS OF CRAP.  ALL RIGHT.

1          MS. HART:  YES, YOUR HONOR.

2          THE COURT:  I JUST WANT YOUR  --

3          MS. HART:  VERY WELL.

4          THE COURT:  I JUST WANT YOUR THOUGHTS.  I JUST WANT YOUR

5   THOUGHTS AS TO WHY THIS SHOULD GO TO THE JURY.

6          MS. HART:  YES, YOUR HONOR.

7          THE COURT:  OH, OKAY.  IF -- OKAY.  YOU'RE RIGHT.

8          I'M GETTING COUNSEL HERE.

9          I HAVE ALWAYS ASSUMED THAT IF I SAY OKAY.  LISTEN, I NEED

10  YOUR PAPERS IN 30 MINUTES.  I FEEL THAT WHEN I PUT YOU UNDER THE

11  GUN LIKE THAT, I DON'T HAVE TO ALSO GIVE YOU A PAGE LIMIT, RIGHT?

12         AND THIS IS THE  -- WHAT I WAS OPERATING ON NOW  -- BUT MY

13  BOSS TELLS ME  -- NO.  YOU BETTER INCLUDE A PAGE LIMIT.

14         I SAID BUT SHE DOESN'T HAVE TIME TO WRITE 50 PAGES.  IF SHE

15  CAN GET 5 PAGES THIS WEEK, THAT WOULD BE GOOD.  FIVE GOOD SOLID

16  PAGES ADDRESSING THE ISSUE.  THAT WOULD BE GOOD.

17         BUT I'M NOT  --

18         MS. HART:  BUT THAT IS A PAGE LIMIT, YOUR HONOR?

19         THE COURT:  NO.  I'M NOT  --

20         MS. HART:  JUST A  --

21         THE COURT:  I'M NOT DOING IT.

22         YOU DO WHAT YOU NEED TO DO.  ALL RIGHT.

23         MS. HART:  OKAY.

24         THE COURT:  BUT I HAVE ATTENTION DEFICIT DISORDER.  SO,

25  UNLESS YOU WANT ME TO FALL ASLEEP IN THE MIDDLE OF READING YOUR

1    PAPERS, YOU KNOW, KEEP IT SHORT AND TO THE POINT.  OKAY.

2              MS. HART:  UNDERSTOOD.

3              THE COURT:  ALL RIGHT.

4              ALL RIGHT.  LET ME SEE.

5              (PAUSE IN PROCEEDINGS.)

6              (THE COURT AND CLERK CONFERRING.)

7              THE COURT:  I KNOW WE HAVE A TRIAL DATE.  WHEN IS IT?

8              MS. LEPERA:  MAY 18TH.

9              MS. HART:  MAY 17TH, YOUR HONOR.

10             THE COURT:  GOD.

11             (PAUSE IN PROCEEDINGS.)

12             THE COURT:  OKAY.  ALL RIGHT.  I REALLY DO LOOK FORWARD

13   TO SEEING THIS.

14             MS. LEPERA.

15             MS. LEPERA:  YES, YOUR HONOR.

16             THE COURT:  IS IT POSSIBLE FOR TWO PEOPLE TO SHARE JOINT

17   CONTROL -- CONTROL?

18             MS. LEPERA:  YES, IT IS  -- IT IS POSSIBLE.  NOT IN THIS CASE,

19   BUT IT IS POSSIBLE.  OF COURSE.

20             THE COURT:  AND WHAT DOES CONTROL MEAN TO YOU?

21             FOR EXAMPLE, I RUN A PRETTY COLLABORATIVE EFFORT HERE.

22   BUT AT THE END OF THE DAY THERE'S ONLY ONE PERSON THAT CALLS

23   THE SHOTS.

24             YOU UNDERSTAND WHAT I'M SAYING?

25             MS. LEPERA:  YES.

1          THE COURT:  WE DON'T HAVE JOINT CONTROL.

2          MS. LEPERA:  RIGHT.

3          THE COURT:  SO HOW IS IT POSSIBLE TO HAVE JOINT

4    AUTHORSHIP GIVEN THE FACT THAT AUTHORSHIP IMPLIES AS ONE OF THE

5    ELEMENTS CONTROL?

6          MS. LEPERA:  HOW IS IT POSSIBLE TO HAVE JOINT AUTHORSHIP

7    WHEN ONE OF THE  -- THIS IS THE  -- THIS IS THE LAW OF THE CIRCUIT.

8    OKAY.

9          ULTIMATELY, WHEN THE ANALYSIS IS DONE AS TO WHAT DOES

10   CONTROL MEAN, IT IS WHO THE MASTERMIND AND WHO ULTIMATELY HAS

11   THE ABILITY TO MAKE THE DECISION AS TO WHAT'S CONTAINED  -- OR NOT

12   CONTAINED.

13         THE COURT:  AND WHO HAS VETO  -- AND WHO HAS VETO

14   POWER ULTIMATELY?

15         MS. LEPERA:  IT  -- IT DEPENDS ON THE CIRCUMSTANCE.

16         IN THE SPIKE LEE CASE, IT WAS SPIKE LEE AND HIS FILM

17   COMPANY.  OKAY.

18         IN THIS CASE IT'S FRANK DUKES WHO IS THE PRODUCER WHO

19   CONTROLS THE PRODUCTION OF THE SOUND RECORDING EMBODYING

20   THE COMPOSITION AND THE OTHER CO-AUTHOR WHO IS THE ARTIST ON

21   UNIVERSAL, POST-MALONE, WHO DECIDES WHAT HE WANTS TO PUT ON

22   HIS  -- ON HIS ALBUM.

23         THE COURT:  DID DUKES  --

24         MS. LEPERA:  THOSE TWO  --

25         THE COURT:  DID DUKES  --

1        MS. LEPERA:  -- WILL CONTROL IT.

2        THE COURT:  DID DUKES CONTROL ANYTHING OTHER THAN THE

3   MANIPULATION AND OPERATION OF THE LAPTOP?

4        MS. LEPERA:  YES.  HE CONTROLLED EVERYTHING THAT WAS

5   DECIDED TO BE RECORDED BY MR. MALONE AND THE OTHER WRITERS

6   AND FINISHED THE SESSION IN COLLABORATION AND CONTROL WITH MR.

7   MALONE.

8        THE COURT:  SO, HE COULD HAVE --

9        MS. LEPERA:  AND THEY AGREED --

10       THE COURT:  HE -- HE THEN HAD THE ABILITY TO SIMPLY SAY

11  THAT NONE OF THIS IS GOING TO BE RECORDED.

12       MS. LEPERA:  WELL, YES.  WITH MR. MALONE'S CONSENT, RIGHT.

13       THE COURT:  WELL, THEN -- THEN HE'S NOT IN CONTROL THEN.

14  DUKES IS NOT IN CONTROL.

15       MS. LEPERA:  I SAID THEY'RE JOINTLY.

16       THE COURT:  I DON'T KNOW HOW THAT WORKS.

17       MS. LEPERA:  WELL, BECAUSE IF YOU HAVE AN ARTIST WHO IS

18  DECIDING WHAT TO PUT ON THEIR ALBUM AND WRITING MATERIAL WITH

19  HIS PRODUCER --

20       THE COURT:  UH-HMM.

21       MS. LEPERA:  -- THEY ARE DECIDING WHAT THEY ULTIMATELY

22  WANT TO PRESENT TO THE  WORLD.

23       THE COURT:  THEY ARE JOINTLY --

24       MS. LEPERA:  MR. MALONE -- YES, THEY ARE JOINTLY, YOUR

25  HONOR.

1        THE COURT:  EHH, SEE, THAT DOESN'T WORK FOR ME.

2        IF YOU'RE IN CONTROL YOU'VE GOT VETO POWER.

3        MS. LEPERA;  WELL, YOU CAN HAVE MORE THAN ONE PERSON

4   HAVE VETO POWER.  JUST LIKE IN THE  -- IN THE <u>AALMUHAMMED</u> CASE --

5   SPIKE LEE AND THE FILM COMPANY BOTH HAD CONTROL -- DIFFERENT

6   ASPECTS, DIFFERENT RIGHTS.  BUT THE POINT IS WHO DOESN'T HAVE

7   CONTROL.

8        THE QUESTION HERE ISN'T WHETHER OR NOT X PERSON HAS

9   CONTROL.  IT'S WHETHER MR. ARMES COULD CONTROL WHAT THE

10  COMPOSITION BECAME AND WHAT WAS RELEASED ON MR. MALONE'S

11  ALBUM AND WHAT WAS ULTIMATELY INCLUDED.

12       AND HE ADMITTEDLY DID NOT.  HE HAD NO CONTROL.  HE MADE

13  SUGGESTIONS.  HE MADE IDEAS.  HE TRIED TO BE COLLABORATIVE.  HE

14  WAS IN THE ROOM.  HE PLAYED SOME INSTRUMENTS.  BUT HE DID NOT

15  HAVE ANY DECISION-MAKING AUTHORITY WITH RESPECT TO WHAT

16  BECAME CIRCLES -- NOT JUST THE RECORDING BUT THE COMPOSITION.

17       AND WHEN YOUR HONOR FOUND THAT HE HAD NO RIGHTS WITH

18  RESPECT TO THE RECORDING, ULTIMATELY IT'S THE SAME CONCLUSION

19  HERE.  WE'VE JUST GONE THROUGH THE STEPS OF CONFIRMING WITH MR.

20  ARMES AT HIS DEPOSITION THAT WE'RE NOT MISSING ANYTHING.

21       WHEN YOUR HONOR RULED IN 2020 THAT MR. ARMES DID NOT

22  CONTROL THE RECORDING, ESSENTIALLY IT'S THE SAME THING.  BECAUSE

23  THE COMPOSITION WAS EMBODIED IN IT.  AND IT WAS CHANGED AFTER

24  THAT FIRST SESSION. AND EVEN AT THAT FIRST SESSION HE COULD NOT

25  DICTATE TO POST AND TO DUKES WHAT TO PLAY.  THEY ARE

1   PERFORMERS.  THEY'RE  -- THEY ARE – THIS WAS THEIR SESSION.  HE

2   WAS THERE AS A GUEST.

3            THE COURT:  A GUEST?

4            MS. LEPERA:  A GUEST.  THAT'S CORRECT.

5            HE HAD NO RIGHT TO BE THERE.  HE HAD NO LEGAL RIGHT –

6            THE COURT:  YOU MEAN  --

7            MS. LEPERA:  -- TO BE THERE.

8            THE COURT:  WAIT, WAIT, WAIT.

9            MS. LEPERA:  HE WAS INVITED.

10           THE COURT:  DIDN'T HE MAKE MUSICAL  -- A MUSICAL

11   CONTRIBUTION TO THAT EFFORT?

12           MS. LEPERA:  NO, YOUR HONOR.  HE DID NOT.

13           THE COURT:  OH, OKAY.  ALL RIGHT.

14           MS. LEPERA:  HE GAVE A MUSICAL SUGGESTION  --

15           THE COURT:  THEN  -- WHOA, WHOA, WHOA  --

16           OKAY.

17           MS. LEPERA;  HE MADE SUGGESTIONS.

18           THE COURT:  I HAVE A  -- WE HAVE A FUNDAMENTAL DIFFERENCE

19   IN WHAT THE FACTS ARE.

20           AND I – BELIEVE ME, I WAS  -- I WAS NOWHERE NEAR THE PLACE.

21   I AM NOT CLOSE TO IT AT ALL.  YOU PROBABLY KNOW FAR MORE ABOUT IT

22   THAN I DO.  AND YOU'VE TALKED TO THE PRINCIPALS.  I HAVE NOT.

23           BUT I HAVE A DIFFERENT UNDERSTANDING.

24           ALL RIGHT.  TELL YOU WHAT.  UNLESS EITHER ONE OF YOU HAVE

25   SOMETHING ELSE YOU WOULD LIKE TO ADD TO YOUR PAPERS OR TO THIS

1    DISCUSSION, THEN, THE MOTION STANDS SUBMITTED.

2             MS. HART:  YOUR HONOR, I JUST WANT TO STATE  --

3             THE COURT:  YES.

4             MS. HART:  -- FOR THE RECORD  --

5             THE COURT:  YES.

6             MS. HART:  -- THAT  -- THAT WE DISAGREE.

7             YOU HAVE OUR PAPERS.  AND WE DISAGREE WITH COUNSEL'S

8    CHARACTERIZATION OF THE EVIDENCE INSOFAR AS OUR CLIENT'S

9    CREATIVE CONTRIBUTIONS AND JOINT CONTROL OVER WHAT WAS

10   EMBODIED IN THE FINAL COMPOSITION.

11            AND, SO, I -- UNLESS YOU HAVE ANY FURTHER QUESTIONS

12   FROM ME, I WILL LET THE MATTER STAND SUBMITTED.

13            THE COURT:  ALL RIGHT.  THANK YOU, MS. HART.

14            ALL RIGHT.  THE MATTER STANDS  --

15            MS. LEPERA:  YOUR HONOR  -- I APOLOGIZE, YOUR HONOR.

16            WOULD YOU LIKE TO ASK ME ANY RESPONSE WITH RESPECT TO

17   THE BENCH MEMO OR AFTER MS. HART SUBMITS ON MONDAY, THAT'S IT?

18            THE COURT:  AHH.

19            MS. LEPERA:  IN OTHER WORDS, COULD WE HAVE AN

20   OPPORTUNITY TO RESPOND.

21            BRIEFLY – IN A DAY OR TWO THEREAFTER.

22            THE COURT:  THAT WOULD BE GOOD.  YES.

23            MS. LEPERA:  THANK YOU, YOUR HONOR.  THANK YOU.

24            THE COURT:  THAT WOULD BE EXCELLENT.

25            THANK YOU.

1          MS. LEPERA:  EXCELLENT.

2          THE COURT:  I WOULD APPRECIATE THAT.

3          MS. LEPERA:  AND 5 PAGES SHOULD BE MORE THAN ENOUGH.

4          THE COURT:  JUST, YOU KNOW, WHEN IT'S  -- IT IS NO LONGER

5     INTERESTING AND CAPTIVATING THEN IT'S TIME TO STOP.

6          MAKE IT INTERESTING AND INFORMATIVE.  AND THEN NOTHING

7     ELSE.  OKAY.

8          APPRECIATE THAT.

9          MS. LEPERA:  OKAY, YOUR HONOR.

10          THE COURT:  THANK YOU.

11          THANK YOU, BOTH.

12          ALL RIGHT.

13          MS. LEPERA:  THANK YOU, YOUR HONOR.

14          MS. HART:  THANK YOU, YOUR HONOR.

15          THANK YOU.

16          THE CLERK:   THANK YOU.

17          THIS COURT IS ADJOURNED.

18          (PROCEEDINGS ADJOURNED AT 3:02 P.M.)

19

20

21

22

23

24

25

1

2  TRANSCRIBER'S CERTIFICATE

3  DISCLAIMER

4  THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

5  DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

6

7

8  I, Dorothy Babykin, attest that the foregoing proceedings provided to me

9  el ectronically were transcribed by me to the best of my ability.

10

11  /s/  *Dorothy Babykin*

12

13  Dorothy Babykin

14

15  Date:  5/1/22

16

17

18

19

20

21

22

23

24

25

Dorothy Babykin Courthouse Services
1218 Valebrook Place   •   Glendora, CA 91740   •   626.963.0566   •   dotnisbet@aol.com