1               UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA

2                   WESTERN DIVISION

3

4    TYLER ARMES,            )

5             Plaintiff,   )

6         vs.       )   Case No.  CV 20-03212-ODW

7    AUSTIN RICHARD POST,   )
    ET AL.,          )   Los Angeles, CA

8                )   April 25, 2022
         Defendants.  )   (1:34 p.m. to 2:12 p.m.)

9    _____)

10

11

12

13                PRETRIAL CONFERENCE

14

       BEFORE THE HONORABLE OTIS D. WRIGHT, II

15          UNITED STATES DISTRICT JUDGE

16

17

18

    APPEARANCES:         See Next Page

19

    COURT REPORTER:      Recorded, Zoom

20

    COURTROOM DEPUTY:    Gabby Garcia

21

    TRANSCRIBER:         Dorothy Babykin

22                     Courthouse Services
                       1218 Valebrook Place

23                     Glendora, California  91740
                     (626) 963-0566

24

25    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1  APPEARANCES:

2  FOR THE PLAINTIFF TYLER ARMES:

3  LAVELY & SINGER APC
   BY:  ALLISON S. HART
4       ATTORNEY AT LAW
   2049 CENTURY PARK EAST
5  SUITE 2400
   LOS ANGELES, CALIFORNIA  90067
6

7  FOR DEFENDANT AUSTIN RICHARD POST AND ADAM KING FEENEY:

8  MITCHELL SILBERBERG & KNUPP LLC
   BY:  CHRISTINE LEPERA
9       JEFFREY MOVIT
        ATTORNEYS AT LAW
10 437 MADISON AVENUE
   25TH FLOOR
11 NEW YORK, NEW YORK  10022

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                                       I N D E X

2      CV 20-03212-ODW                                       APRIL 25, 2022

3      PROCEEDINGS:  PRETRIAL CONFERENCE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dorothy Babykin Courthouse Services
1218 Valebrook Place  •  Glendora, CA 91740  •  626.963.0566  •  dotnisbet@aol.com

1              LOS ANGELES, CALIFORNIA; APRIL 25, 2022; 1:34 P.M.

2              THE CLERK:  COME TO ORDER.

3              THIS COURT IS NOW IN SESSION.

4              THE HONORABLE OTIS D. WRIGHT, II, UNITED STATES

5     DISTRICT JUDGE, PRESIDING.

6              COUNSEL, PLEASE STATE YOUR APPEARANCES.

7              MS. HART:  GOOD AFTERNOON, YOUR HONOR

8              ALLISON HART OF LAVELY & SINGER FOR THE PLAINTIFF

9     TYLER ARMES.

10             THE COURT:  MS. ARMES.

11             MS. LEPERA:  GOOD AFTERNOON, YOUR HONOR.

12             CHRISTINE LEPERA AND JEFF MOVIT ON BEHALF OF THE

13    DEFENDANTS AUSTIN RICHARD POST AND ADAM KING FEENEY.

14             THE COURT:  MS. LEPERA, GOOD AFTERNOON.

15             MS. LEPERA:  GOOD AFTERNOON, YOUR HONOR.

16             THE COURT:  ALL RIGHT.  THIS IS OUR FINAL PRETRIAL.

17             AND YOU GUYS ARE WORKING HARDER THAN YOU NEED TO

18    WORK.

19             (PAUSE IN PROCEEDINGS.)

20             THE COURT:  IN TERMS OF ATTORNEYS FAMILIAR WITH AND

21    WORKING ON THIS – THIS PARTICULAR CASE, ARE THERE TWO ON EACH

22    SIDE?

23             MS. HART:  YOUR HONOR, ON THE PLAINTIFF'S SIDE I HAD AN

24    ASSOCIATE WHO HAD PREVIOUSLY BEEN HELPING ME.  BUT FOR THE

25    TIME BEING IT'S -- IT'S JUST MYSELF.

1        THE COURT:  NO ONE ELSE IS WORKING WITH YOU?

2        MS. HART:  NOT CURRENTLY.

3        THE COURT:  OKAY.  ALL RIGHT.

4        ALL RIGHT.  LISTEN, THIS – THIS EXHIBIT LIST IS A LOT

5   LONGER THAN I WOULD HAVE ANTICIPATED SEEING IN A CASE LIKE

6   THIS.  BUT IT IS WHAT IT IS.

7        AND, OBVIOUSLY, WE'RE NOT GOING TO HAVE TO WORRY

8   ABOUT ANYTHING THAT WE DON'T NEED IN ORDER TO ESTABLISH THE

9   FACT IN DISPUTE DURING THE COURSE OF THIS TRIAL.  SO, I'M NOT

10  GOING TO WORRY ABOUT ALL OF THESE EXHIBITS AND DEALING WITH

11  ALL OF THE VARIOUS OBJECTIONS THAT HAVE BEEN PROPOSED.

12       I'M IMPRESSED WITH THE -- YOUR WORK ON JURY

13  INSTRUCTIONS.  IT IS USUALLY JUST THE OPPOSITE OF WHAT I'M

14  SEEING HERE -- YOU KNOW, THE PARTIES WILL AGREE TO ABOUT

15  THREE.  AND THEN THERE WILL BE 65 IN DISPUTE.

16       YOU ALL HAVE DONE A GOOD JOB IN TERMS OF WORKING

17  TOGETHER.  AND ALL RIGHT.  I'LL CARRY THE WATER FROM HERE ON.

18       UNLESS I'M SEEING IT WRONG OR I'VE MISSED SOMETHING,

19  THERE IS ONLY ONE SPECIAL VERDICT FORM.  AND THAT'S THE ONE

20  THAT'S BEEN PROPOSED BY THE PLAINTIFFS.

21       MS. HART:  THAT'S CORRECT, YOUR HONOR.

22       THE COURT:  OKAY.  IT'S REASONABLE.  ALL RIGHT.

23       THE JOINT STATEMENT OF THE CASE AND PROPOSED VOIR

24  DIRE.

25       ALL RIGHT.  I'M GLAD THAT  -- I'M GLAD YOU ALL CAME TO

1    SOME SORT OF AN AGREEMENT WITH RESPECT TO JURY TRIAL OR

2    BENCH TRIAL.

3            ALL RIGHT.

4            (PAUSE IN PROCEEDINGS.)

5            THE COURT:  OH, HERE IT IS.

6            (PAUSE IN PROCEEDINGS.)

7            THE COURT:  I'M JUST LOOKING OVER THE VOIR DIRE --

8    PROPOSED VOIR DIRE QUESTIONS.

9            LET ME LET YOU KNOW THAT ONE OF THE REASONS -- WELL,

10    THERE'S A COUPLE OF REASONS FOR THE PROPOSED VOIR DIRE

11    QUESTIONS.

12            ONE IS IF THESE ARE GOOD QUESTIONS, I WILL ASK THE

13    PANEL.

14            TWO, IT ALSO GUIDES ME IN TERMS OF WHETHER OR NOT

15    AND HOW MUCH COUNSEL SHOULD BE PERMITTED TO CONDUCT THE

16    VOIR DIRE IN THE CASE.  AND IF I SEE THINGS THAT ARE JUST

17    HEADSCRATCHERS, THEN, IT SAYS TO ME NAH, NOT THIS TIME.

18            AND I DON'T KNOW WHAT, FOR EXAMPLE, ANY PROPOSED

19    MEMBER OF THE JURY HAVING BEEN, SAY, ARRESTED AND CHARGED

20    WITH A CRIME HAS TO DO WITH ANYTHING.

21            OKAY.  BUT WE'LL  -- WE'LL GET THERE.

22            (PAUSE IN PROCEEDINGS.)

23            THE COURT:  ALL RIGHT.  SO, WE'RE GOING TO HAVE A JURY

24    TRIAL.  AND THAT JURY TRIAL IS GOING TO TAKE PLACE IN JULY OF

25

1    WHAT IS IT? -- JULY 5TH.

2    MS. LEPERA:  JULY 6TH, YOUR HONOR.

3    THE COURT:  AND IS THAT DATE SATISFACTORY WITH

4    EVERYONE? -- BECAUSE YOU'VE GOT WITNESSES, ET CETERA, YOU'VE

5    GOT TO BE CONCERNED ABOUT THEIR SCHEDULES.

6    MS. LEPERA:  YOUR HONOR, BUT I'M SORRY.  I DIDN'T HEAR.

7    DID YOU SAY JULY 6TH?

8    THE COURT:  FIVE.

9    MS. LEPERA:  FIVE.  WE HAD --

10   THE COURT:  CINCO.

11   MS. LEPERA:  YEAH.  WE HAD LOOKED AT THE DATES THAT

12   YOUR HONOR HAD PROPOSED OR SUGGESTED WOULD BE THE AUGUST

13   23RD OR SEPTEMBER 27.  AND WE CLEARED AUGUST 23RD --

14   THE COURT:  UH-HMM.

15   MS. LEPERA:   -- WITH OUR CLIENTS' SCHEDULES.  IF THAT IS

16   STILL ACCEPTABLE, WE WOULD PREFER THAT OPPORTUNITY BECAUSE

17   WE DID NOT  -- WE WERE NOT  -- WE WERE NOT ABLE TO DISCUSS ANY

18   OTHER DATE WITH THEM.

19   THE COURT:  OKAY.  THAT'S TRUE.  FAIR  -- FAIR IS FAIR.

20   MS. HART.

21   MS. HART:  YEAH.  YOUR HONOR, I  -- I DID THE SAME.  I

22   CLEARED THE PROPOSED AUGUST AND SEPTEMBER DATES WITH MY

23   CLIENT.  BUT I DIDN'T – I DID NOT -- I OBVIOUSLY WASN'T AWARE THAT

24   JULY 5TH WAS A POSSIBILITY.  OTHERWISE, I WOULD HAVE CLEARED

25   THAT AS WELL.

1          THE COURT:  NO.  YOU  -- BOTH OF YOU ARE RIGHT.  THAT'S

2    WHAT WE HAD TALKED ABOUT.  SO, IT'S ONLY  -- IT IS ONLY

3    REASONABLE THAT THOSE ARE THE TWO DATES YOU WOULD RUN BY

4    YOUR CLIENTS AND PROPOSED WITNESSES.

5          SO, THE BOTTOM LINE, AUGUST -- IS THAT THE DATE THAT'S

6    GOOD FOR BOTH OF YOU?

7          MS.  LEPERA:  YES, YOUR HONOR.

8          MS. HART:  WE WERE  -- AUGUST.

9          THE COURT:  OKAY.  AUGUST 23RD IT IS.  9:00.

10          IT WILL PROBABLY  -- LET ME SEE.  HANG ON.  I'M MAKING

11    ASSUMPTIONS HERE.  THAT'S RIGHT.

12          AUGUST 23RD IS A TUESDAY, WHICH IS -- ALL RIGHT.

13          WE'LL TRY TO GET -- WE'LL TRY TO GET A PANEL OF FOLKS UP

14    HERE BY 9:00.  AND I DON'T SEE ANY REASON WE CAN'T HAVE A JURY

15    SELECTED AND SWORN IN A COUPLE OF HOURS.

16          AND THE ONLY NORMAL DAY WE WILL HAVE WILL BE THE

17    FIRST DATE  -- THAT IS THE 23$^{rd.}$   WE WILL GO FROM 9:00 UNTIL AROUND

18    NOONISH.  AND THEN WE'LL TAKE THE HOUR AND A HALF LUNCH BREAK.

19    COME BACK AT 1:30 AND CONTINUE ON.

20          I WOULD LIKE TO  -- WHAT I WOULD LIKE TO DO AND WHAT'S

21    ACTUALLY GOING TO BE POSSIBLE MAY BE TWO DIFFERENT THINGS.

22          I WOULD LIKE TO ACTUALLY GET STARTED WITH WITNESS

23    TESTIMONY BEFORE LUNCH.  THAT MAY OR MAY NOT HAPPEN.

24          AND I'M ALSO AWARE OF THE FACT THAT LAWYERS WOULD

25    LIKE THE  -- WELL, MOST LAWYERS WOULD LIKE TO BE ABLE TO CHANGE

1   GEARS AND HAVE A FEW MOMENTS OF QUIET REFLECTION BEFORE

2   THEY BEGIN THEIR OPENING STATEMENT.  AND THAT'S FINE.  I -- I

3   UNDERSTAND.  AND I'M ALL IN FAVOR OF THAT.

4         SO, IF IT WORKS OUT THAT WE DON'T HAVE MUCH IN THE WAY

5   OF ACTUAL WITNESS TESTIMONY BEFORE – BEFORE THE LUNCH HOUR,

6   THAT'S FINE.  MAYBE I'LL JUST BREAK EARLY SO YOU CAN GO MAKE

7   FINAL TOUCHES ON YOUR RESPECTIVE OPENING STATEMENTS.  AND

8   THEN WE'LL COME BACK AFTER LUNCH AND GET STARTED.

9         I CERTAINLY EXPECT THAT THE PLAINTIFF WILL SHOW UP

10   READY TO GO TO TRIAL, THAT IS, WITH WITNESSES.

11         NOW, YOU ALWAYS HAVE OF COURSE YOUR OWN CLIENT AS A

12   BACK-UP.  AND YOU MAY WANT TO JUST KEEP YOUR CLIENT IN THE  -- IN

13   YOUR POCKET JUST IN CASE A PLAINTIFF'S WITNESS DOES NOT SHOW

14   UP SAY ON WEDNESDAY OR IS RUNNING LATE.

15         EITHER WAY YOU PUT A WITNESS ON THE STAND OR YOU

16   REST.  SO, IF YOU'VE GOT A WITNESS THAT'S RUNNING LATE, YOU

17   ALWAYS WANT TO BE ABLE TO HAVE THAT ACE IN THE HOLE WHICH IS

18   THE PLAINTIFF.

19         I ONLY TELL YOU THAT BECAUSE SERIOUSLY IF HERE WE ARE

20   AT 10:00 IN THE MORNING ON WEDNESDAY, AND THE PLAINTIFF ISN'T

21   ABLE TO PUT ON THEIR NEXT WITNESS, THEN, THE PLAINTIFF RESTS.

22   AND WE'LL MOVE INTO THE DEFENSE CASE.  OKAY.

23         SO, I WANT YOU TO KNOW HAVE PEOPLE READY.  KEEP THE

24   PLAINTIFF IN YOUR BACK POCKET IN CASE OF AN EMERGENCY.  AND

25   TRULY NOT BEING ABLE TO PUT A WITNESS ON IN THE MORNING

1   HOURS, YOU WILL DEFINITELY REST.

2          NOW, AFTER MONDAY WHEN WE'RE GOING TO HAVE NORMAL

3   HOURS.  AND WE'LL STOP AROUND 4:30 OR SO.  BUT AFTER THAT -- AND

4   WE'RE GOING TO LET THE JURY DICTATE THE HOURS.

5          AND IT CAN'T BE A COINCIDENCE.  BUT THE JURY IS ALWAYS

6   SELECTED STARTING AT 8:00 OR 8:30 AND GOING UNTIL 2:00 OR 2:30  --

7   NO LUNCH.  BUT WITH – WE ARE GOING TO TAKE BREAKS – SHORT

8   BREAKS EVERY 90 MINUTES.

9          I DO WANT THE COURT REPORTER TO BE ABLE TO, YOU

10  KNOW, GET A BIT OF A BREATHER.  SO, EVERY 90 MINUTES WE WILL

11  BREAK.  AND -- BUT WE WILL NOT STOP FOR LUNCH.  WE WON'T HAVE

12  THAT HOUR AND A HALF LUNCH HOUR.

13         SO, I CERTAINLY ENCOURAGE THE ATTORNEYS TO BRING

14  SOMETHING IN TERMS OF SUSTENANCE TO KEEP YOU FROM GOING --

15  KEEP YOU GOING.  UNTIL I DON'T KNOW 2:30 OR SO.

16         NOW, IN TERMS OF THE ENDING TIMES EACH DAY, I WOULD

17  LIKE TO END AS CLOSE TO 2:00 OR 2:30, WHICHEVER IT IS THAT THE

18  JURY WANTS, AS POSSIBLE.  BUT THAT DOESN'T MEAN THAT IF WE'RE

19  EXAMINING A WITNESS AT 2:30, AND WE WOULD NORMALLY BE

20  STOPPING, I'M NOT GOING TO BRING THAT WITNESS BACK THE NEXT

21  DAY TO TESTIFY IF WE CAN KEEP GOING FOR I DON'T KNOW 10 OR 15

22  MINUTES AND GET RID OF THAT WITNESS.

23         LIKEWISE, IF WE FINISH UP WITH A WITNESS AROUND 2:00, I

24  WILL LEAVE IT UP TO YOU AS TO WHETHER OR NOT WE'RE  -- WE WILL

25  PUT ON A BRAND-NEW WITNESS OR JUST BAG IT AND COME BACK THE

1   NEXT DAY. BECAUSE I DO APPRECIATE THE FACT THAT THE WITNESS

2   HAS TRAVELED DOWNTOWN L.A., FOUND A PLACE TO PARK, ET CETERA.

3        SO, A LOT OF IT DEPENDS UPON THE CONVENIENCE OF THESE

4   NON-PARTY WITNESSES.

5        SO, WE WANT TO DO WHAT MAKES SENSE.

6        SO, EVEN AT 2:00 -- YEAH, MAYBE WE WILL START A NEW

7   WITNESS IF WE CAN GET IT DONE, SAY, IN AN HOUR. AND IT WILL BE

8   THE LEAST INCONVENIENT THING FOR THAT WITNESS. BUT THAT'S

9   SOMETHING THAT WE WILL TALK ABOUT.

10       AND CERTAINLY WE WILL BRING THE WITNESS INTO THAT

11  CONVERSATION AND FIND OUT WHAT HIS OR HER LIKES OR DISLIKES

12  ARE. OKAY.

13       I WILL – I WILL HAVE A SIGNED PRETRIAL CONFERENCE

14  ORDER  -- WELL, I'LL SIGN THE  -- I'LL SIGN THE SIGNATURE PAGES.

15       AND, SO, YOU WILL HAVE THE EXECUTED SIGNATURE PAGE

16  OF THE PRETRIAL CONFERENCE ORDER SO THAT YOU WILL-- YOUR

17  FILES WILL BE COMPLETE.

18       I  -- JUST GLANCING AT THIS MOTION IN LIMINE I JUST GOT IN

19  TODAY, I DON'T EVEN UNDERSTAND THIS.

20       I'M EITHER REQUESTED TO OR GIVEN PERMISSION TO KEEP

21  OUT IRRELEVANT EVIDENCE. THANK YOU.

22       I DON'T KNOW WHY THIS IS  -- IT'S NECESSARY TO HAVE A

23  MOTION IN LIMINE TO ASK ME TO KEEP OUT IRRELEVANT EVIDENCE AND

24  TO KEEP OUT SETTLEMENT DISCUSSIONS. ALL KINDS OF STUFF THAT

25  JUST --

1       MS. LEPERA:   DIDN'T WANT TO WAIVE IT, YOUR HONOR.

2    YEAH.  WE JUST DIDN'T WANT TO WAIVE THAT ISSUE.

3       THE COURT:  WAIVE IT?  HOW DO YOU WAIVE THAT?

4       MS. LEPERA:  THAT WAS A MOTION IN LIMINE DUE TODAY.  AND

5    ULTIMATELY IT CAN BE DEFINITELY RULED ON IN THE OBJECTIONS OF

6    COURSE  -- OF COURSE.

7       THE COURT:  OKAY.  BUT I JUST CONSIDER THAT WITHIN MY

8    JOB DESCRIPTION TO KEEP OUT IRRELEVANT HAPPENING --

9       BUT ANYWAY, OKAY.  ALL RIGHT.  I --

10      MS. LEPERA:  YES.

11      THE COURT:  ANYWAY, I WILL DO MY BEST TO KEEP OUT

12   IRRELEVANT STUFF.

13      PREJUDICIAL STUFF, WELL, THAT'S -- THAT'S GOING TO BE

14   SOMETHING ELSE.  NOW, IF IT'S NEEDLESSLY INFLAMMATORY -- BUT IN

15   EVERY CASE THERE'S GOING TO BE EVIDENCE THAT ONE SIDE PUTS ON

16   THAT'S GOING TO BE PREJUDICIAL TO THE OTHER SIDE.  IT'S KIND OF

17   THE NATURE OF, YOU KNOW, WHAT HAPPENS HERE.

18      BUT WHAT ALL YOU DO IS THIS.  IF YOU ARE AWARE OF -- AND

19   THIS GOES FOR BOTH OF YOU  -- IF YOU'RE AWARE OF SOMETHING, AND

20   YOU KNOW DOGGONE GOOD AND WELL I'M NOT GOING TO BE AWARE

21   OF IT, ALL RIGHT  -- EVEN AFTER THE TRIAL IS OVER I'M NOT GOING TO

22   KNOW HALF OF WHAT YOU TWO KNOW ABOUT THIS CASE.  IT'S KIND OF

23   BY DESIGN, ISN'T IT?  WE TRY TO KEEP AS MUCH STUFF FROM THE JURY

24   AS POSSIBLE.  OKAY.  FINE.

25      YOU NEED TO LET ME KNOW THAT THERE IS SOMETHING OUT

1    THERE.  AND IT MAY BE COMING.  OKAY.

2            I WAS A LITTLE SURPRISED HERE WHEN WE STARTED

3    TALKING ABOUT, YOU KNOW, SOME OF THE PLAYERS WITH CRIMINAL

4    RECORDS AND ALL THAT SORT OF THING.

5            I NEED TO KNOW WHAT IT IS THAT YOU'RE WORRIED ABOUT

6    SO I KNOW WHAT IT IS I NEED TO BE ALERT TO.

7            AND IT MIGHT ALSO WARRANT US HAVING A CONVERSATION

8    SO THAT EVERYONE IS ON NOTICE.  AND WE DON'T HAVE TO WORRY

9    ABOUT THESE THINGS.  IT -- YOU TWO WILL TELL YOUR WITNESSES

10   STAY AWAY FROM CERTAIN AREAS OR DON'T SAY CERTAIN THINGS OR

11   DON'T USE CERTAIN LANGUAGE OR WHATEVER.

12           SO -- BUT SOME OF THESE THINGS, YEAH, WE DO NEED TO

13   TALK ABOUT.  AND NOT CRYPTICALLY.  YOU NEED TO LET ME KNOW

14   WHAT IT IS THAT YOU'RE REALLY CONCERNED ABOUT.  AND WE'LL DEAL

15   WITH IT UPFRONT SO THAT WE DON'T HAVE PROBLEMS DOWN THE

16   ROAD.

17           LIKE I SAID, YOU'VE GOT A LOT OF EXHIBITS HERE.  AND I'M

18   NOT GOING TO DEAL WITH THOSE HERE.  I WILL DEAL WITH THOSE --

19   THESE EXHIBITS, AT THE TIME.

20           I DON'T UNDERSTAND WHY SOME OF THEM ARE EVEN LISTED

21   HERE, BUT IT'S NOT AN AWFUL LOT OF EXHIBITS.  SO, WE'LL BE ABLE TO

22   DEAL WITH IT.

23           ARE WE GOING TO HAVE -- ARE WE GOING TO HAVE VIDEO

24   PLAYED HERE OR AUDIO PLAYED DURING THE COURSE OF THE TRIAL?

25           OR HOW IS IT THAT THE JURY IS GOING TO BE ASKED TO

1    MAKE COMPARISONS, FOR EXAMPLE, OF THE COMMERCIAL RELEASE

2    OR THE  -- WHICH BRINGS UP A  --

3            MS. HART:  YOUR HONOR, WE  -- WE ANTICIPATE HAVING

4    AUDIO.  I DON'T  --

5            THE COURT:  OKAY.

6            MS. HART:  -- ANTICIPATE FOR ANY VIDEO.

7            THE COURT:  OKAY.  NO.  THAT'S -- THAT'S FINE.  AS LONG AS

8    IT'S AUDIO.

9            AND I WAS JUST ABOUT TO REFER TO THE AUGUST 8 SESSION

10   -- I DON'T KNOW WHAT I WAS GOING TO REFER TO IT AS  -- BUT IT DID

11   REMIND ME THAT WE WERE GOING TO TALK ABOUT DRAFTS.

12           NEVER HEARD OF THAT.

13           I DO KNOW THAT AFTER THAT SESSION WAS OVER IT WAS

14   CONTEMPLATED BY EVERYONE THAT THERE WAS GOING TO BE LYRICS

15   AFFIXED TO THIS LITTLE DIDDY.  SO, I SUPPOSE FROM THAT

16   STANDPOINT I GUESS IT WAS AN UNFINISHED PRODUCT.

17           BUT I AM CURIOUS AS TO HOW THIS  -- WHATEVER THE

18   PRODUCT WAS OF THE AUGUST 8TH SESSION WAS  -- WHATEVER THAT

19   WAS, I'M CURIOUS AS TO WHETHER OR NOT THAT IS COPYRIGHTABLE

20   AND WHETHER OR NOT IT'S DEPENDENT UPON WHETHER OR NOT IT

21   WAS A DRAFT.  IT WAS NEVER INTENDED  -- I DON'T BELIEVE IT WAS

22   EVER INTENDED TO BE A FINAL PRODUCT.  I THINK IT WAS ALWAYS

23   INTENDED THAT THERE WOULD BE LYRICS.

24           BUT IS THERE SOMETHING MAGICAL ABOUT USE OF THE

25   WORD  "DRAFT" AS APPLIED TO THE AUGUST 8TH COMPOSITION?

1        PUT IT IN WRITING.

2        MS. LEPERA:  YOUR HONOR  --

3        THE COURT:  YES.

4        MS. LEPERA:  -- THAT  -- I DON'T MEAN TO INTERRUPT YOU.

5   BUT I WAS ACTUALLY HOPING THAT YOU WOULD ASK SOMETHING

6   ALONG THESE LINES BECAUSE AS YOUR HONOR MADE THE DECISION

7   ON THE SUMMARY JUDGMENT MOTION ROUGHLY A WEEK AGO, THAT

8   DECISION CHANGED THE COMPLEXION CERTAINLY OF THE PLEADINGS

9   IN THIS CASE.

10        AS MS. HART HAS ACKNOWLEDGED IN THE PRETRIAL ORDER,

11   THERE IS NOTHING IN HER PLEADING THAT REFERS TO A CLAIM IN

12   CONNECTION WITH WHAT SHE CALLED IN THE ORDER  "THE SESSION

13   COMPOSITION."

14        AND WE THINK IT WOULD BE HELPFUL IF WE – WE WOULD BE

15   ABLE TO ACTUALLY DO SOME SUPPLEMENTAL BRIEFING WITH RESPECT

16   TO THAT VERY SPECIFIC ISSUE. BECAUSE JUST BRIEFLY WHEN

17   SOMETHING IS COPYRIGHTABLE, IT'S NOT THE END OF THE INQUIRY.

18   ANYTHING CAN BE COPYRIGHTABLE.  I CAN SIT HERE AND I COULD

19   WRITE A LYRIC ON A PIECE OF PAPER OR  -- OR ANYTHING MAKES IT A

20   TANGIBLE MEDIUM MAY  -- IT MAY SUFFICE FOR BEING COPYRIGHTABLE.

21        BUT THE NATURE OF A WORK, WHETHER IT'S INTENDED TO BE

22   SUBSUMED IN A JOINT WORK OR A STAND-ALONE THAT COULD BE THEN

23   LATER INCORPORATED TO BE DERIVATIVE REALLY RELATES TO THE

24   INTENT AGAIN OF ALL OF THE AUTHORS.

25        AND, SO, THERE IS A MAGICAL, IF YOU WOULD, CONNECTION

1     WITH SOMETHING THAT IS IF I START A SONG ON DAY ONE, AND THEN I

2     FINISH IT ON DAY EIGHT, AND I HAVE SEVEN SESSIONS, EACH OF THOSE

3     SESSIONS IS NOT ENCOMPASSED IN A FINAL THAT'S DERIVATIVE OF MY

4     SEVEN SESSIONS.  THAT'S ONE WORK, ONE SONG.  THAT'S EXACTLY

5     HOW THE PLAINTIFF HAS EXPRESSED HIS INTENT FROM DAY ONE IN

6     THIS CASE WHICH WE BELIEVE IS AND SHOULD BE DISPOSITIVE,

7     FRANKLY.

8           SO, I'M HAPPY TO PROVIDE THAT BRIEFING.  COULD WE HAVE

9     A COUPLE OF WEEKS TO DO THAT?

10          (LAUGHTER.)

11          MS. LAPERA:  YOU LAUGH, YOUR HONOR.  WE ALL NEED A

12    LAUGH.

13          (LAUGHTER.)

14          THE COURT:  IS THIS DIFFERENT FROM WHAT I WAS ASKING --

15    ABOUT TO ASK YOU ALL TO DO?

16          GO AHEAD.  GOOD.

17          MS. LAPERA:  WELL --

18          THE COURT:  GREAT.  TWO WEEKS, IS THAT -- NO.  I DO WANT

19    TO --

20          YES.  I WANT YOU TO HAVE ENOUGH TIME NOT ONLY TO, YOU

21    KNOW, THOROUGHLY RESEARCH IT AND DRAFT IT IN ENGLISH BUT ALSO

22    SPEND THAT EXTRA TIME TO CUT IT DOWN TO THE BARE ESSENTIALS.

23          MS. LAPERA:  COULD WE HAVE THREE THEN JUST TO -- JUST

24    TO BE ON THE SAFE SIDE?

25          THE COURT:  SURE.  YES.  BECAUSE THE – THE TRIAL DATE

1    GIVE US A GREAT DEAL OF FLEXIBILITY.

2            MS. LAPERA:  THANK YOU.  THANK YOU VERY MUCH, YOUR

3    HONOR.

4            THE COURT:  ALL RIGHT.

5            MS. HART, YOU'RE QUIET OVER THERE.

6            MS. HART:  WELL, I -- I --

7            THE COURT:  THAT'S NOT A SIN, BY THE WAY.

8            I'M NOT TRYING TO DISCOURAGE THAT.

9            (LAUGHTER.)

10           MS. HART:  NO.  I'M HAPPY TO PROVIDE THE BRIEFING.  IT'S

11   JUST -- YOU KNOW, INSOFAR AS YOUR QUESTION ABOUT, YOU KNOW,

12   WHETHER THERE IS SOME MAGIC WORD, YOU KNOW, RELATING  -- YOU

13   KNOW, FOR IT TO BE A DRAFT OR NOT A DRAFT OF A COPYRIGHTABLE

14   WORK, WE'VE ALWAYS BEEN CLEAR.

15            MY CLIENT HAS NEVER CLAIMED THAT HE HAD ANY

16   INVOLVEMENT IN THE LYRICS.  AND OUR POSITION HAS ALWAYS BEEN

17   THAT HE CO-WROTE THE UNDERLYING MUSICAL COMPOSITION AND

18   THAT LYRICS WERE SUBSEQUENTLY ADDED.

19            AND, SO, WHETHER YOU WANT TO CALL THAT THE, YOU

20   KNOW, SESSION COMPOSITION VERSUS THE COMMERCIALLY RELEASED

21   COMPOSITION, YOU KNOW, THE END RESULT IS THE SAME.   WE'VE

22   ALWAYS ONLY EVER CLAIMED THAT MY CLIENT CO-AUTHORED THE

23   UNDERLYING MUSIC.

24            THE COURT:  ALL RIGHT.  THE  --

25            MS. HART:  AS I SEE IT, IT'S REALLY A MATTER OF SEMANTICS.

1    BUT WE'RE HAPPY TO BRIEF THAT ISSUE.

2          THE COURT:  IF THAT'S ALL IT IS, GREAT.  BUT SUDDENLY THE

3    -- THIS WORD "DRAFT" HAS SHOWN UP AND HOW -- THE ASSERTION OR

4    THE ARGUMENT APPARENTLY IS THAT EVERYTHING NOW CHANGES IF

5    EVERYONE AGREES THAT WHAT WAS PRODUCED ON AUGUST THE 8TH

6    WAS THE FIRST DRAFT.

7          WELL, THAT'S INTERESTING.

8          I'M NOT REALLY SURE WHETHER OR NOT IT'S NECESSARILY

9    LEGALLY DISPOSITIVE OF ANYTHING.  BUT I'D LIKE TO KNOW BECAUSE I

10   HAVEN'T -- I HAVEN'T LOOKED.

11         I WOULD LIKE TO KNOW BECAUSE THIS ISN'T SOMETHING

12   THAT I HAVE SEEN BEFORE IN THIS CASE.  IT SEEMS LIKE A RECENT --

13   I'M GOING TO CALL IT IMAGINATION -- OR ANYWAY.  IT'S SOMETHING

14   THAT'S COME UP JUST RECENTLY. AND IT'S SOMETHING WORTH

15   EXPLORING.

16         AND I'D LIKE TO KNOW WHETHER OR NOT IT MAKES A

17   DIFFERENCE.  LIKE I SAID, IT WAS UNDERSTOOD THAT THIS THING WAS

18   NOT COMPLETE ON AUGUST 8TH WHEN PEOPLE FINALLY DECIDED TO GO

19   GET SOME SLEEP.

20         BUT DID ANYONE EVER USE THE WORD "DRAFT"?

21         MS. HART:   NOT UNTIL --

22         THE COURT:  OR IS THIS A LAWYER INVENTION?

23         MS. HART:   -- THE RULING WAS ISSUED LAST WEEK, YOUR

24   HONOR, THAT I'M AWARE OF.

25         THE COURT:  UH-HUH.

1      MS. LEPERA:  AND NO -- NO ONE HAS EVER USED THE WORD

2   "COMPOSITION" EITHER INCLUDING MR. ARMES.  IT'S NOT A

3   COMPOSITION ON AUGUST 8TH.

4      THE COURT:  DO YOU THINK THAT THAT WAS -- THAT IT

5   INVOLVED AN ORIGINAL MUSICAL WORK?

6      MS. LEPERA:  SO, IF I MIGHT, YOUR HONOR  -- AND I DON'T -- I

7   DON'T MEAN TO TALK TOO MUCH ABOUT THIS.  AND WE WILL DEAL WITH

8   THIS IN THE BRIEFING.

9      BUT YOU HAVE A SITUATION WHEREAS WITH EVERY --

10     THE COURT:  YOU'RE GOING TO  -- YOU'RE GOING TO  --

11  YOU'RE NOT GOING TO ANSWER ME DIRECTLY, ARE YOU?

12     MS. LEPERA:  I  -- I  -- ORIGINAL COPYRIGHTABILITY DOES NOT

13  MORPH IT INTO A JOINT WORK THAT THEN IS LATER SUBSUMED IN

14  ANOTHER JOINT WORK SO THAT THE SECOND JOINT WORK BECOMES A

15  DERIVATIVE OF THIS JOINT WORK.

16     THE COURT:  I'LL JUST -- YOU KNOW WHAT --

17     MS. LEPERA:  ONGOING PROCESS.

18     THE COURT:  I'M NOT GOING TO ASK YOU ANY MORE

19  QUESTIONS.  REALLY.  BECAUSE I CANNOT GET A DIRECT ANSWER TO A

20  SIMPLE QUESTION.

21     YOU -- YOU -- YOU – YOU HAVE AN AGENDA – THERE ARE

22  THINGS THAT YOU WANT TO HAVE SAID.  AND YOU'RE GOING TO USE

23  ANY OPENING IN ORDER TO GET ALL OF THESE THINGS SAID.  SO, I'M

24  NOT GOING TO ASK YOU QUESTIONS ANYMORE.

25     MS. LEPERA:  ORIGINAL IS THE QUESTION YOU ASKED ME,

1   YOUR HONOR.  AN ORIGINAL MEANS COPYRIGHTABILITY.  AND

2   COPYRIGHTABILITY --

3          THE COURT:  ALL RIGHT.  ALL I ASKED YOU IS WHETHER OR

4   NOT THAT --

5          MS. LEPERA:   -- THERE  --

6          THE COURT:   -- THAT LITTLE DITTY, THAT LITTLE TUNE WAS

7   ORIGINAL.

8          AND NEXT I WAS GOING TO ASK YOU WHETHER --

9          MS. LEPERA:  THERE'S PORTIONS OF IT THAT ARE AND THERE

10  --

11         THE COURT:  PARDON ME?

12         MS. LEPERA:  PORTIONS OF IT THAT ARE.  AND THERE IS

13  PORTIONS THAT ARE NOT.

14         THE COURT:  OKAY.  AND I ASSUME YOU'RE TALKING ABOUT

15  THE CORE PROGRESSION.

16         MS. LEPERA:  YES.  AMONG --

17         THE COURT:  ALL RIGHT.  AND I JUST -- I JUST WANT TO KNOW

18  ALSO WAS IT MEMORIALIZED ANY WAY IN SOME FIXED MEDIUM OF

19  EXPRESSION?

20         MS. LEPERA:  THE ONLY FIXED MEDIUM OF EXPRESSION --

21         THE COURT:  YOU'RE NOT GOING TO TELL ME YES OR NO, ARE

22  YOU?

23         MS. LEPERA:  YES, IT IS.  MR. --

24         THE COURT:  OKAY.

25         MS. LEPERA:   -- ARMES' IPHONE  --

1          THE COURT:  ALL RIGHT.  GOOD.

2          THANK YOU.

3          MS. LEPERA:  -- THE PART --

4          OKAY.

5          THE COURT: ALL RIGHT.  THREE WEEKS.  THREE WEEKS.

6          MS. HART:  YOUR HONOR, I --

7          THE COURT:  YEAH.

8          MS. HART:  ONE QUESTION, GOING BACK TO THE – THE

9    MOTION IN LIMINE.

10         DO WE NEED TO – IS THAT SOMETHING WE NEED TO OPPOSE?

11   WE AGREE THAT YOUR HONOR HAS  --

12         THE COURT:  AH, DON'T.

13         MS. HART:  -- TO RULE ON ISSUES  --

14         THE COURT:  DON'T  -- BUT THAT  -- WAIT, WAIT, WAIT, WAIT.

15         THAT ONE ABOUT  -- I NEED TO KEEP OUT IRRELEVANT

16   EVIDENCE.  THAT ONE YOU WOULD LIKE TO OPPOSE -- SERIOUSLY?

17         MS. HART:  NO.  I'M  -- I'M ASKING DO WE NEED TO?  BECAUSE I

18   AGREE WITH YOUR HONOR'S ANALYSIS.

19         MS. LEPERA:  AND THEY ALSO AGREE WITH THE ISSUES.

20         MS. HART:  BECAUSE THERE'S NOT A SPECIFIC, YOU KNOW,

21   UNDULY PREJUDICIAL ITEM OF EVIDENCE THAT'S BEEN RAISED.  IT'S

22   JUST A GENERIC MOTION.

23         I'M HAPPY TO DO SO IF WE NEED TO.

24         MS. LEPERA:  NO.  THERE ARE SOME SPECIFIC THINGS IN

25   THERE.  BUT WE CAN PROBABLY DISCUSS IT AND HOPEFULLY AGREE

1   ON IT, TOO, AND MOOT SOME OF THESE ISSUES FOR THE COURT.  I'M

2   HOPEFUL.

3           THE COURT:  LIKE I SAID, IF YOU ALL HAVE THINGS IN MIND

4   THAT YOU THINK YOU'RE GOING TO COME UP -- AND WHAT WE'RE

5   REALLY WORRIED ABOUT IS HAVING THINGS BLURTED OUT IN FRONT OF

6   THE JURY.  SO, YOU KNOW, LIMITING INSTRUCTIONS FOLLOWING THAT

7   DON'T REALLY UNRING THE BELL.

8           SO, LET'S KEEP THESE THINGS FROM HAPPENING.

9           YOU KNOW WHAT THEY ARE.

10          MS. LEPERA:  -- THE  --

11          THE COURT:  AND PLAYING THESE LITTLE, YOU KNOW, GAMES

12   WITH ME NOW AS I TRY TO FIGURE OUT WHAT IT IS THAT'S REALLY OUT

13   THERE THAT YOU'RE CONCERNED ABOUT IS KIND OF DUMB.  LET'S NOT

14   DO THAT.

15          TELL ME WHAT YOU ARE WORRIED ABOUT COMING OUT.  AND

16   WE'LL TALK ABOUT IT.  AND I WILL MAKE A RULING.

17          AND THEN SOMEONE IS GOING TO BE INSTRUCTED TO STAY

18   AWAY FROM THIS.  OKAY.  THAT'S WHAT I'M INTERESTED IN.

19          I'M NOT INTERESTED IN ANY MORE PAPER.  OKAY.

20          MS. LAPERA:  OKAY.

21          THE COURT:  SO, WE WILL HAVE A CONVERSATION.  AND I'LL

22   TELL YOU WHAT.

23          THREE WEEKS FOR YOU TO GET -- GET THE DRAFT MEMO --

24   NOT THAT  -- NO.

25          MS. LAPERA:  OKAY.

1          THE COURT:  THE MEMO REGARDING THE LEGAL

2    IMPLICATIONS OF CALLING IT A DRAFT.  THREE WEEKS FOR THAT.

3          WHICH WILL TAKE US  --

4          (PAUSE IN PROCEEDINGS.)

5          THE COURT:  THE 16TH OR SO OF MAY.

6          OH, WE HAVE PLENTY OF TIME.

7          I'D LIKE TO HAVE IT, MASSAGE IT FOR AT LEAST A WEEK.

8          ANY TIME AFTER MAY 31ST WE NEED TO GET TOGETHER AND

9    TALK ABOUT WHAT WE'VE ALL JUST LEARNED ABOUT THE IMPLICATIONS

10   OF CALLING THIS THING A DRAFT.

11         IT MAY NOT HAVE ANY IMPLICATIONS, BUT I WOULD LIKE TO

12   TALK ABOUT THAT.  LIKE I SAY, ANY TIME AFTER MAY 31ST.

13         YOU KNOW, WHAT THE BEST THING TO DO.  LET ME WAIT

14   UNTIL TOMORROW WHEN SHEILA COMES BACK.

15         THE CALENDAR IS HER DOMAIN.  AND SHE WILL – SHE WILL

16   POST IT ON ECF WHAT THE HEARING DATE IS GOING TO BE.

17         IF EITHER OF YOU HAVE A DIFFICULTY WITH THE DATE THAT'S

18   SELECTED, CONTACT US.  TELEPHONE OR EMAIL.  AND WE'LL WORK IT

19   OUT.  WE'LL FIND SOMETHING THAT'S GOOD FOR EVERYONE.

20         OKAY.

21         ALL RIGHT.  DO WE HAVE ANY ISSUES THAT HAVE TO BE

22   ADDRESSED?

23         I'M CONCERNED ABOUT, FOR EXAMPLE, WHETHER OR NOT

24   ALL OF THEN RULE 26 DISCLOSURES HAVE BEEN MADE.

25         I'M WORRIED ABOUT WHETHER OR NOT WE'RE GOING TO

1    HAVE ANY EXPERT ISSUES.

2            DO WE HAVE EVERYTHING WE NEED FROM THE EXPERTS?

3            ANY OTHER DISCOVERY OR DISCLOSURE-TYPE ISSUES THAT I

4    HAVE TO INTERCEDE.

5            MS. LEPERA:  YOUR HONOR, IF I MAY.

6            THE COURT:  YEAH.

7            MS. LEPERA:  AS I READ  -- AS I READ YOUR DECISION, YOU

8    HAVE ALREADY RULED AS I SEE IT IN THAT DECISION THAT THE

9    EXPERTS FOR THIS PHASE OF THE TRIAL ARE NOT APPROPRIATE, AND

10   THAT IT WOULD BE ONLY IN THE EVENT THERE IS A SUCCESSFUL

11   RESOLUTION IN PLAINTIFF'S FAVOR THAT, FOR EXAMPLE, MS. FANELLE

12   MIGHT BE RELEVANT AT THAT JUNCTURE TO DETERMINE  --

13           THE COURT:  DERIVATIVE?

14           MS. LEPERA:   -- RELATIONSHIP  --

15           THE COURT:  YEAH.

16           MS. LEPERA:  THAT'S HOW I READ YOUR RULING, YOUR

17   HONOR.

18           THE COURT:  AND THAT'S   -- THAT'S KIND OF WHAT  -- I DON'T

19   SEE ANY REASON TO CHANGE NOW.  BUT IF THINGS DEVELOP IN A

20   DIFFERENT WAY THAN I ANTICIPATE, THAT'S SOMETHING WE CAN TALK

21   ABOUT.

22           OKAY.

23           BECAUSE THE ONLY THING I'M  -- I'M PRETTY SURE OF IS THAT

24   WHATEVER IT IS THAT WE HAVE PLANNED FOR IN A TRIAL, IT'S NOT

25   GOING TO GO DOWN THAT WAY.

1          MS. HART:  YOUR HONOR, I -- YOU KNOW, HERE'S THE

2     QUESTION ABOUT PLAINTIFF'S EXPERTS.

3          THE COURT:  UH-HUH.

4          MS. HART:  IN HER REPORT SHE HAS DONE A COMPARISON OF

5     THE COMMERCIAL RELEASE COMPOSITION --

6          THE COURT:  SURE.

7          MS. HART:  -- VERSUS THE  -- THE COMPOSITION THAT WAS

8     RECORDED TO MY CLIENT'S IPHONE AND ESSENTIALLY DETERMINED

9     THAT, YOU KNOW, THE  -- THE UNDERLYING MUSIC IS VIRTUALLY NOTE

10    FOR NOTE, THE SAME AS THE COMMERCIALLY-RELEASED VERSION.

11         SO, FOLLOWING THE COURT'S RULING ON DEFENDANT'S

12    SUMMARY JUDGMENT, I WAS SURPRISED THAT IT NOW SEEMS THAT

13    DEFENDANTS ARE TAKING THE POSITION THAT THE, YOU KNOW,

14    AUGUST 8 SESSION COMPOSITION CANNOT BE  -- YOU KNOW, THE BASIS

15    FOR A DERIVATIVE WORK IN THE COMMERCIAL RECORDING.

16         AND, SO, THAT'S  -- I GUESS MY QUESTION IS THE PURPOSE

17    FOR HAVING OUR EXPERT WOULD SIMPLY BE TO ESTABLISH THAT --

18    YOU KNOW, THAT IT IS DERIVATIVE  -- YOU KNOW, WHICH THEY NOW

19    SEEM TO BE CONTESTING.

20         AND I THINK --

21         THE COURT:  RIGHT.

22         MS. HART:  -- THAT'S A SEPARATE ISSUE FROM WHETHER OR

23    NOT A  -- YOU KNOW, THERE'S SOME LEGAL DISTINCTION BETWEEN

24    CALLING A COMPOSITION A DRAFT.

25         MS. LAPERA:  YOUR HONOR, IF I MAY.

1        THE COURT:  YEAH.

2        MS. LAPERA:   S0  -- SO WITH RESPECT TO THE ISSUE OF

3   WHETHER OR NOT MR. ARMES IS UNDER THE CURRENT DECISION

4   POTENTIAL JOINT AUTHOR OF THE SESSION'S COMPOSITION -- IF THAT'S

5   THE PHRASE WHICH WE DON'T AGREE WITH  -- BUT THAT'S THE PHRASE

6   -- THAT HAS TO BE DETERMINED FIRST BEFORE THERE'S ANY

7   DETERMINATION AS TO WHETHER OR NOT THERE  -- WHAT THE

8   CONNECTION IS BETWEEN THE FINAL COMPOSITION AND THAT

9   SESSION.

10       SO, IT'S A  -- AS YOUR HONOR CORRECTLY SAID, THAT HAS  --

11  THAT'S STEP A.

12       STEP B WOULD BE TO DETERMINE WHETHER OR NOT -- WHAT

13  IS THE CORRELATION BETWEEN THOSE TWO.  WHAT IS THE EXTENT OF

14  THE AUGUST 8 SESSION IN CIRCLE'S COMPOSITION.

15       AND BY THE WAY, TO THE EXTENT OF THE RULE 26

16  DISCLOSURES  -- AND BY THE WAY, PLAINTIFF'S EXPERT HAS

17  ABSOLUTELY NO IDEA WHO CONTRIBUTED WHAT.  AND SHE SAID THAT

18  VERY CLEARLY.   SHE JUST SUBMITTED A REBUTTAL REPORT TO OUR

19  EXPERT.

20       THE COURT:  UH-HUH.

21       MS. LAPERA:  AND, SO, THAT IS PREMATURE AS I THINK YOUR

22  HONOR HAS CLEARLY STATED.

23       AND WE DON'T THINK THAT  -- AND WHETHER OR NOT WORK

24  IS DERIVATIVE OR A JOINT WORK IS NOT UP TO MS. FANELLE OR ANY

25  EXPERT TO SAY.  IT'S UP TO THE AUTHORS AND THEIR INTENT – NOT

1    WHAT'S ACTUALLY CONTAINED.

2            THE COURT:  ALL RIGHT.

3            THAT'S TWO DIFFERENT THINGS -- WHETHER OR NOT IT'S

4    JOINT AND WHETHER OR NOT IT'S THE FINAL COMMERCIAL RELEASE OF

5    CIRCLES IS DERIVATIVE OF THAT AUGUST 8TH SESSION.

6            NOW, THAT I HAD SIMPLY THOUGHT THAT A JURY LISTENING

7    TO MUSICAL SAMPLES OF THE TWO WORKS COULD MAKE THAT CALL.

8            MS. HART:  YOUR HONOR, AND I DON'T DISAGREE.

9            HOWEVER, TO THE EXTENT THAT DEFENDANTS ARE

10   CONTESTING THAT IT'S A DERIVATIVE WORK, I THINK THAT -- YOU

11   KNOW, IF THEY'RE CONTESTING THAT THE MUSIC IS IDENTICAL TO THE

12   MUSIC THAT WAS CREATED DURING THE SESSION WITH MY CLIENT,

13   THEN, WE NEED TO HAVE AN EXPERT TO TESTIFY ON THAT ISSUE.

14           AND THAT'S NOT CLEAR TO ME.

15           MS. LEPERA:  THAT'S A TOTALLY DIFFERENT QUESTION.

16           THE COURT:  IT IS.  THAT'S -- THAT'S -- I DIDN'T REALIZE THAT

17   THAT'S THE -- I DIDN'T REALIZE THAT IT WAS IN DISPUTE THAT YOUR

18   CLIENT WAS AT THAT ALL-NIGHT SESSION.

19           I DIDN'T REALIZE IT WAS IN DISPUTE THAT YOUR CLIENT MADE

20   A CONTRIBUTION TO WHATEVER WAS PRODUCED AT THAT ALL-NIGHT

21   SESSION.

22           I THOUGHT THAT THAT HAD PRETTY MUCH BEEN CONCEDED.

23           MS. LEPERA:  NO --

24           THE COURT:  I CAN'T -- IT WASN'T?  YOU MEAN THEY LET --

25   THEY LET --

1          MS. LEPERA:  FOR PURPOSES OF SUMMARY JUDGMENT

2    MOTION ONLY IT WAS BECAUSE WE MOVED ON THE ADMISSIONS OF MR.

3    ARMES.

4          BUT IT IS ABSOLUTELY NOT CONCEDED.

5          AND YOU HAVE TO REMEMBER THE RECORD HERE --

6          THE COURT:  COMPLETE SENTENCE.  WHAT IS NOT

7    CONCEDED?

8          MS. LAPERA:  NOT CONCEDED THAT HE CONTRIBUTED

9    ANYTHING.

10         THE COURT:  OH MY GOD.  SERIOUSLY?

11         MS. LAPERA:  SERIOUSLY.

12         THE COURT:  NOW, WAIT A MINUTE.  WAIT, WAIT, WAIT.

13         SO  -- SO, THE OTHER TWO ALLOWED ARMES TO JUST STICK

14   AROUND IN THE STUDIO ALL NIGHT LONG MAKING NO CONTRIBUTION?

15         MS. LAPERA:  I THINK I JUST LOST THE COURT.

16         THE COURT:  WELL, YOU'RE HELPING THE COURT TO LOSE ITS

17   MIND.

18         MS. LAPERA:  THERE WE GO.

19         AS  -- AS THE  -- AS THE SUMMARY JUDGMENT MOTION MADE

20   CLEAR, THE ONLY THING THAT WE AGREED FOR PURPOSES OF THE

21   SUMMARY JUDGMENT MOTION WAS HOW MR. ARMES HAD PRESENTED

22   CERTAIN FACTS.

23         MY CLIENTS WILL TESTIFY UNAMBIGUOUSLY THAT HE WAS

24   THERE.

25         THE COURT:  YEAH.

1          MR. LAPERA:  HE JAMMED A LITTLE BIT WITH HIS

2    INSTRUMENTS.  HE OFFERED NOTHING THAT THEY DIDN'T ALREADY

3    HAVE.

4          THE COURT:  UH-HUH.

5          MS. LAPERA:  AND HE WAS NOT ABLE TO ACTUALLY

6    CONTRIBUTE ANYTHING THAT THEY DIDN'T ALREADY HAVE.  AND THAT

7    ULTIMATELY HE WAS THERE AS A GUEST ALONG WITH OTHER PEOPLE

8    WHO HAD COME.  HE STAYED LONGER.  HE DID PLAY AN INSTRUMENT.

9          THE REASON HE'S NOT ON ANYTHING IS BECAUSE HE DIDN'T

10   OFFER ANYTHING.

11          MOST PEOPLE WHO ARE CO-WRITERS ACTUALLY PERFORM

12   AN INSTRUMENT.  HE WAS SAYING HE WAS PERFORMING AN

13   INSTRUMENT ALL NIGHT.

14          MY CLIENTS ARE GOING TO CONTEST ALL OF THESE FACTS AT

15   TRIAL.

16          THE SUMMARY JUDGMENT MOTION WAS BASED ON HIS  -- HIS

17   ADMISSIONS.

18          THE COURT:  ALL RIGHT.

19          I THINK THAT IS SOMETHING THAT IS APPROPRIATE TO PUT IN

20   FRONT OF A JURY AS TO WHETHER OR NOT THESE PROFESSIONAL

21   MUSICIANS JOINED TO COMPOSE A NEW PIECE WOULD HAVE

22   PERMITTED SOME  -- I DON'T KNOW -- GUY TO HANG AROUND THE

23   STUDIO ALL NIGHT LONG MAKING NO CONTRIBUTION TO THE CREATIVE

24   ENDEAVOR AT ALL.  I THINK THE JURY NEEDS TO HEAR THIS STORY.

25          SO  --

1        MS. LAPERA:  THE  --

2        THE COURT:   -- WE'RE GOING TO -- NO.  WE'RE GOING TO ALL

3   GET TOGETHER APPARENTLY ONE MORE TIME SOMETIME AFTER -- LIKE

4   I SAID, SOMETIME AFTER MAY 31ST.

5        AND WE WILL HAVE OTHER THINGS TO TALK ABOUT BECAUSE

6   THIS APPEARS TO BE SHIFTING.  THINGS KEEP CHANGING  -- WHICH IS

7   FINE.  BUT IT COULD ALSO BE UNFAIR IN TERMS OF PROVIDING THE

8   OPPOSITION WITH -- WITH THIS EVER-MOVING TARGET.  AND IT MAY

9   AFFECT THE TRIAL DATE.

10        SO  -- BUT ANYWAY, WE WILL TALK ABOUT THIS NEXT WE

11   MEET AFTER -- WHENEVER SHEiLA SAYS WE'VE GOT A DATE AFTER MAY

12   31ST.  OKAY.

13        GOD, PICK A HORSE AND RIDE IT, PLEASE.

14        ALL RIGHT.  WE'LL TALK TO YOU ALL LATER.

15        GOOD-BYE.

16        MS. HART:  THANK YOU, YOUR HONOR.

17        MS. LAPERA:  THANK YOU, YOUR HONOR.

18        (PROCEEDINGS ADJOURNED 2:12 P.M.)

19

20

21

22

23

24

25

1

2                   TRANSCRIBER'S CERTIFICATE

3

4                         DISCLAIMER

5    THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

6       DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

7

8        I, Dorothy Babykin, attest that the foregoing proceedings provided to

9 me electronically were transcribed by me to the best of my ability.

10        I further attest that I am not a relative or employee to any attorney or

11 party nor financially interested in this action.

12

13                  /s/ *Dorothy Babykin*

14                   Dorothy Babykin

15

16

17 Date: 5/1/22

18

19

20

21

22

23

24

25