1   DAVID A. STEINBERG (SBN 130593)
        das@msk.com
2   GABRIELLA N. ISMAJ (SBN 301594)
        gan@msk.com
3   MITCHELL SILBERBERG & KNUPP LLP
    2049 Century Park East, 18th Floor
4   Los Angeles, CA 90067-3120
    Telephone: (310) 312-2000
5   Facsimile: (310) 312-3100

6   CHRISTINE LEPERA (*pro hac vice*)
        ctl@msk.com
7   JEFFREY M. MOVIT (*pro hac vice*)
        jmm@msk.com
8   437 Madison Avenue, 25th Floor
    New York, New York 10022
9   Telephone: (212) 509-3900
    Facsimile: (212) 509-7239
10
    *Attorneys for Defendants*
11  *Austin Richard Post p/k/a Post Malone*
    *Adam King Feeney p/k/a Frank Dukes*
12

13                  UNITED STATES DISTRICT COURT

14                  CENTRAL DISTRICT OF CALIFORNIA

15                         WESTERN DIVISION

16  TYLER ARMES,                          Case No. 2:20-cv-03212 ODW (SKx)
                                          *Consolidated with 2:20-cv-10205*
17              Plaintiff
                                          Hon. Otis D. Wright II
18       v.
                                          **DEFENDANTS' SUPPLEMENTAL
19  AUSTIN RICHARD POST, publicly         PRETRIAL MEMORANDUM OF
    known as POST MALONE, an              LAW**
20  individual; ADAM KING FEENEY
    publicly known as FRANK DUKES, an     Hearing:
21  individual; UNIVERSAL MUSIC           July 11, 2022 at 1:30 p.m.
    GROUP, INC., a Delaware corporation;
22  DOES 1 through 10, inclusive,         Filed:      April 7, 2020
                                          Trial:      August 23, 2022
23              Defendants

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

1

## <u>TABLE OF CONTENTS</u>

2                                                                                  <u>**Page**</u>

3    I.    PRELIMINARY STATEMENT ....................................................................1

4    II.   PORTIONS OR DRAFTS OF A WORK IN PROGRESS ARE PART
5          OF THAT SINGLE COPYRIGHTED WORK—THEY ARE NOT
6          STANDALONE SEPARATELY COPYRIGHTED WORKS......................3

7          A.    The Legal Framework ........................................................................3

8          B.    The Admissions In The Record Establish That The Circles
9                Composition Was One Work Under This Legal Framework ..............5

10   III.  JOINT AUTHORSHIP IS DETERMINED AT THE END OF THE
          CREATIVE PROCESS OF A WORK..........................................................8
11

12   IV.   CONSTRUING THE SESSION MATERIAL AS A STANDALONE
          WORK VIOLATES *AALMUHAMMED* ......................................................11
13

     V.    CONCLUSION ........................................................................................12
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aalmuhammed v. Lee*,
   202 F.3d 1227 (9th Cir. 2000) ..................................................................3, 11, 12

*Armes v. Post*,
   2020 WL 6135068 (C.D. Cal. Oct. 19, 2020) ........................................... 11

*Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*,
   2007 WL 1040809 (S.D.N.Y. Apr. 4, 2007),
   *aff'd,* 312 F. App'x 433 (2d Cir. 2009) ................................................. 4

*Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*,
   140 F.2d 266 (2d Cir. 1944) ....................................................................... 8

*Exp. Dev. Canada v. ESE Elecs. Inc.*,
   2017 WL 2558283 (C.D. Cal. June 12, 2017) ....................................... 6

*Ford v. Ray*,
   130 F. Supp. 3d 1358 (W.D. Wash. 2015) ........................................... 12

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ............................................................... 9, 11

*Heger v. Kiki Tree Pictures, Inc.*,
   2017 WL 5714517 (C.D. Cal. July 24, 2017) ..................................... 12

*JCW Investments, Inc. v. Novelty, Inc.*,
   289 F. Supp. 2d 1023 (N.D. Ill. 2003),
   *aff'd*, 482 F.3d 910 (7th Cir. 2007) ................................................... 11

*Jefferson v. Raisen*,
   2020 WL 6440034 (C.D. Cal. Aug. 14, 2020) ............................... 9, 10, 12

*Maurizio v. Goldsmith*,
   84 F. Supp. 2d 455 (S.D.N.Y. 2000),
   *aff'd*, 230 F.3d 518 (2d Cir. 2000)....................................................... 8, 9, 11

*Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Co-op. Prods., Inc.*,
   479 F. Supp. 351 (N.D. Ga. 1979)....................................................... 4

**DEFENDANTS' SUPPLEMENTAL PRETRIAL MEMORANDUM OF LAW**

Mitchell
Silberberg &
Knupp LLP

# TABLE OF AUTHORITIES

## (continued)

<b><u>Page(s)</u></b>

*Ohkubo v. Antara Biosciences, Inc.*,
   364 F. App'x 340 (9th Cir. 2010).................................................................5

*Oliver v. Johanson*,
   357 F. Supp. 3d 758 (W.D. Ark. 2018)........................................................8

*Peterson v. Kolodin*,
   2013 WL 5226114 (S.D.N.Y. Sept. 10, 2013)............................................5

*Post v. Armes*,
   Case No. 1:20-CV-02877-ALC (S.D.N.Y. 2020)........................................7

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
   531 F.3d 962 (9th Cir. 2008)......................................................................12

*Rumbaugh v. Harley*,
   2018 WL 4002854 (E.D. Cal. Aug. 22, 2018)............................................6

*Thomson v. Larson*,
   147 F.3d 195 (2d Cir. 1998)......................................................................12

### STATUTES

17 U.S.C. § 101.............................................................................*passim*

### OTHER AUTHORITIES

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE
   PRACTICES (3d ed. 2021) .......................................................................4, 5

1 Melvin B. Nimmer and David Nimmer, NIMMER ON COPYRIGHT
   (Matthew Bender, Rev. Ed.)........................................................................8

2 William F. Patry, PATRY ON COPYRIGHT (2022)
   § 3:47 ......................................................................................................1, 4
   § 3:55 .........................................................................................................4

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' SUPPLEMENTAL PRETRIAL MEMORANDUM OF LAW**

# I.      PRELIMINARY STATEMENT

This Court asked for briefing on the legal implication under copyright law of the Session Material[1] being a draft of the Circles Composition.  The answer to that question is clearly expressed by leading copyright commentator William F. Patry:

> ***The final version of a work is not considered a derivative work of early drafts of the work***, *JCW Investments, Inc. v. Novelty, Inc.*, 289 F. Supp. 2d 1023, 1032-1033 (N.D. Ill. 2003), *aff'd*, 482 F.3d 910 (7th Cir. 2007).  ***Instead the earlier versions are the "work" as well***.  *In order for a work to be a derivative work, there must be different versions treated as such by the copyright owner*.

2 William F. Patry, Patry on Copyright ("Patry"), § 3:47, n.4 ("What is a Derivative Work").

The genesis of this principle is found in Section 101 of the Copyright Act, which provides that **"*where a work is prepared over a period of time, the portion of it that has been fixed at any particular time constitutes the work as of that time...*"** *See* 17 U.S.C. § 101.  This statutory provision establishes that the Session Material, as a "*portion*" (*i.e.* draft) of the Circles Composition, *a single* "*work []* prepared over a period of time*," does not have a copyright separate from that of the Circles Composition.  All of those preexisting materials comprising copyrightable expression (or not) were subsumed into the single final work when it ended its creative journey, which work holds a single copyright.  Here, ***the one work*** is the Circles Composition, the creation of which came to an end when it was

---

[1] Unless noted, defined terms have the same meaning as in Defendants' Memorandum of Contentions of Fact and Law (ECF 105), all emphasis is added, and all citations and quotation marks are omitted.

1

finalized for commercial release on the Circles Recording.[2]

There is of course no dispute that the Session Material *was* a "***portion***" or draft of the Circles Composition.  There is also no dispute that the Circles Composition is a work "*prepared over a period of time*."  There is also no dispute that the Session Material had no intended purpose by anyone other than to be developed with lyrics and other materials into the final Circles Composition embodied in the Circles Recording.  The undisputed *intent* of all parties, at all times, was the creation of one single work.[3]  This case has been litigated for two years based on Armes's (and Post's) singular declaratory relief claim related to joint copyright ownership *in a single work holding one legal copyright*: the Circles Composition.[4]  Even Armes's purported copyright registration was made solely for copyright ownership in the Circles Composition.[5]

Thus, based on these undisputed facts, and under applicable law, the Session Material cannot be considered a separately-owned, standalone copyrighted work of which the Circles Composition was derivative.  The Session Material is a "*portion*" of the ***single unitary work*** *embodied in the* ***single copyright*** *of the Circles Composition made as a work prepared over time.*

---

[2] Section 101 also makes clear that it is only when a work is prepared in different ***versions*** that each version is a separate work.  There are no two separate versions of the Circles Composition.

[3] As previously stated, Defendants dispute that Armes made any copyrightable contributions to the Circles Composition at the August 8 Session.  *See, e.g.*, ECF 28-1, Ex. 5, at 22, ¶ 14 (Post: "Although Armes was present for the August 8, 2018 Session, he did not write any music or lyrics that were used in the Circles Composition at the August 8, 2018 Session, or at any time thereafter."); *id.*, Ex. 4, at 16, ¶ 5 (Dukes: "Tyler Armes was present for the August 8, 2018 session, but did not write any music or lyrics that were used in the Circles Composition"). Armes's purported contributions were accepted as uncontroverted by Defendants **solely** for purposes of their Motion for Summary Judgment to show that, even assuming *arguendo* Armes's version of events, he could not be a co-author of the Circles Composition under governing law. ECF 82-1 at 3, n.3.

[4] In his portion of the Pretrial Conference Order (ECF 106-1, at 6 n.2; "PTC"), Armes conceded that the "[FAC] ***does not distinguish*** between the Session Composition and the Commercial Release Composition … If necessary, Plaintiff is prepared to amend the pleading to conform to the evidence and the Court's Order."

[5] In other words, Armes did "pick a horse and ride it." Apr. 25, 2022 Pretrial Conf. Tr. at 30:13.

Accordingly, Armes's joint authorship claim in that *single copyright* has already been adjudicated to be deficient as a matter of law under the test set forth in *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000), and that decision requires that the case be dismissed in its entirety, as there is nothing left to resolve at trial.

## II. PORTIONS OR DRAFTS OF A WORK IN PROGRESS ARE PART OF THAT SINGLE COPYRIGHTED WORK—THEY ARE NOT STANDALONE SEPARATELY COPYRIGHTED WORKS

### A. <u>The Legal Framework</u>

Section 101 of the Copyright Act provides the statutory framework establishing that a draft, or "portion" of a work prepared over time is part of the final single work into which it is incorporated.  While the work may be protectable as copyrightable at various stages of its development, the statute unambiguously refers to it as a *single work*; thus, there can be only one copyright for ownership purposes, as it is only one work.  The statute expressly distinguishes in its dual framework the creation of different versions of a work, which clearly is not the case at hand:

> **[1]** *where a work is <u>prepared over a period of time</u>, the <u>portion of it</u> that has been fixed at any particular time constitutes <u>the work as of that time</u>, and*
>
> **[2]** *where the work has been <u>prepared in different versions</u>, each version constitutes <u>a separate work</u>.*

17 U.S.C. § 101 (numerics in parentheticals added for clarity).  This statute firmly establishes as a fundamental principle of copyright law that a single work cannot be deemed derivative of its earlier drafts in progress.

As discussed above, Patry explains exactly how the framework is applied:

- Under the first part, as here, where a single work is prepared over time, "*[t]he final version of a work is not considered a derivative work of early drafts of the work . . . Instead the earlier versions are the 'work'*

1    ___as well___.”

2    • By contrast, under the second part, which is inapplicable here, “[i]n order

3    for a work to be a ___derivative work___, there must be ___different versions___

4    ___treated as such by the copyright owner___.”[6] PATRY, § 3:47.

5    It is ___undisputed___ that the Circles Composition was a work “prepared over a period

6    of time” during continuous, successive sessions, under the first part of Section 101,

7    not a different version “treated as such by the copyright owner” constituting a

8    derivative work under the second part.  Even though each draft “*prepared over a*

9    *period of time*” has protections under copyright upon fixation, it does not alter the

10   fact that the last iteration is the only “work” that exists at the end—here, the

11   Circles Composition.

12       The Copyright Office has set forth guidelines prescribing how to apply to

13   register derivative works, including the requirement that any preexisting works be

14   expressly disclaimed.  *See, e.g.*, U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.

15   COPYRIGHT OFFICE PRACTICES (“COMPENDIUM”), § 802.6 (3d ed. 2021)

16   (“Derivative Musical Works”) (“The applicant should identify any preexisting

17   work or works that the derivative work is based on or incorporates, and should

18   provide a brief general statement identifying the additional material covered by the

19   copyright claim being registered.  Descriptions of new material might include:

20
21  _____

[6] Section 101 also defines a derivative work as “a work based upon one or more preexisting
works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture

22   version, sound recording, art reproduction, abridgment, condensation, or any other form in which
a work may be recast, transformed, or adapted.  A work consisting of editorial revisions,
annotations, elaborations, or other modifications, which, as a whole, represent an original work

23   of authorship, is a ‘derivative work.’”  The first sentence of this definition relates to works that
transform or recast preexisting works, such as a novel made into a film (*see, e.g., Briarpatch*

24   *Ltd., L.P. v. Geisler Roberdeau, Inc*., 2007 WL 1040809, at *16 (S.D.N.Y. Apr. 4, 2007), *aff’d*
sub nom. *Briarpatch Ltd. LP v. Phoenix Pictures, Inc*., 312 F. App’ x 433 (2d Cir. 2009) (“A

25   motion picture based upon a preexisting literary work, whether a novel or a screenplay, is a
derivative work…”); *Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Co-op. Prods., Inc.*, 479

26   F. Supp. 351, 355, 363 (N.D. Ga. 1979) (musical “Scarlett Fever” was unauthorized derivative of
film and novel *Gone With the Wind*)); whereas the final sentence relates to works such as text

27   books, which move from edition to edition, each of which constitutes a separate version.  *See*,
*e.g.*, PATRY, § 3:55.10 (examples include updated American edition of U.K. novel, new volume

28   of previously published novel) (citing COMPENDIUM, § 709.4).

Mitchell
Silberberg &
Knupp LLP

DEFENDANTS’ SUPPLEMENTAL PRETRIAL MEMORANDUM OF LAW

New or revised lyrics [or] New or revised arrangements.").

Precisely because *a draft of a work in progress is not a separately copyrighted work,* a draft does not fall within this registration requirement. The Copyright Office specifically instructs that "*if the author prepare[s] multiple drafts for an unpublished [work], a registration for the most recent version will cover all of the copyrightable material that appears in the deposit copy, including any unpublished expression that has been incorporated from prior versions of the same work*." COMPENDIUM, § 512.1 ("Unpublished Versions of the Same Work"). Case law further establishes this principle. *See*, *e.g.*, *Peterson v. Kolodin*, 2013 WL 5226114, at *6 (S.D.N.Y. Sept. 10, 2013) (courts have consistently rejected "the notion that a copyright owner is required to separately register every draft or version of an evolving work," noting that "[s]uch a requirement would be wasteful and impractical").

In clear recognition that the Session Material is subsumed within the copyright of the Circles Composition, Armes's (improper) copyright application to register the Circles Composition, including its lyrics, did not identify it as a *derivative work*, and did not disclaim the Session Material as preexisting material. Similarly, Armes never attempted to register the Session Material.

### B.   The Admissions In The Record Establish That The Circles Composition Was One Work Under This Legal Framework

While the factual record is known to the Court, set forth below are dispositive admissions of Armes in the context of the above legal principles.[7] These undisputed facts require a further finding as a matter of law that the Circles Composition is not derivative of the Session Material, but that its one copyright is the only copyright at issue in this case, and it encompasses the Session Material

---

[7] In Section III below, additional legal authorities are discussed, which apply the core legal principles set forth in Section I in the context of certain joint authorship disputes.

under Section 101.[8]

Armes's admissions led this Court to describe the Circles Composition as a ***work prepared over time***: the "several months following the August 8 Session" were a period where "Post and others continued to fix aspects of the Circles Composition," and the Session Material is "some form" of the Circles Composition, with the "results of that studio session ***le[ading]*** to the release of *Circles* about a year later [*i.e.*, Circles Composition]."  April Decision, at *1, 2, 5, 8, 14.  At his deposition, Armes discussed the evolution of the creation of the Circles Composition from beginning to end, claiming to have been "cut [] out of the ***process***" after the August 8 Session.  ECF 82-2, Ex. B (Armes Depo.), p. 58:8-13.  In Opposition to Defendants' Motion, Armes refers to only one work: "extensive [] contributions and directions to ***the final product*** … which were included in the ***commercially released version of 'Circles.'***"  ECF 84 at 25.

Even in his own publishing agreement with Warner-Tamerlane (incorporated by reference into the FAC at ¶ 2, and from Armes's deposition testimony), Armes claimed a purported copyright interest in ***the composition entitled "Circles" as recorded and released by Post Malone***.  Again*,* Armes's purported copyright registration is only in and to the *final* Circles Composition; he made no reference to any preexisting copyrighted work or any attempt to register the Session Material.

Armes repeatedly refers to one single song, one work, in which he sought authorship.  *See*, *e.g.*, FAC, ¶ 28 (allegations regarding one "***commercially***

---

[8] Armes's admissions are critical and should be deemed judicial admissions, and he should be estopped from making arguments contradicting those prior, binding admissions.  *See*, *e.g.*, *Ohkubo v. Antara Biosciences, Inc*., 364 F. App'x 340, 341 (9th Cir. 2010) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."); *Rumbaugh v. Harley*, 2018 WL 4002854, at *3 (E.D. Cal. Aug. 22, 2018) ("[S]tatements of fact contained in a brief may be considered admissions of the party in the discretion of the district court."); *Exp. Dev. Canada v. ESE Elecs. Inc.*, 2017 WL 2558283, at *2 (C.D. Cal. June 12, 2017) ("A judicial admission *withdraws* a fact from being at issue at trial.") (emphasis in original).

1  *successful and critically-acclaimed song*").  In a declaration, he again speaks to

2  one work: a **_"commercially successful song[]_**."  ECF 84-2, ¶ 23.  In a text to

3  Dukes, Armes stated that the parties had merely "**_started the process that night_**

4  **_into making this amazing song_**."  Armes Depo., Ex. 9.  Armes sought to be

5  declared a "co-writer of the **_composition entitled Circles_** . . . perhaps Post's biggest

6  hit to date . . . named by Billboard as among the top 10 best songs of 2019."

7  FAC, ¶¶ 1, 34.  Armes claims to have "been prevented from sharing in any of the

8  'massive commercial success' or other benefits that would follow from someone

9  who has **_co-written a commercially successful and critically praised hit song_**."

10  *Post v. Armes*, No. 1:20-CV-02877-ALC; ECF 16, ¶ 13.  There is **_no_** evidence that

11  the Session Material was anything other than a portion of an uncompleted single

12  song, evidenced by Post "humming" where lyrics were to be added.[9]

13     Further, Armes admittedly has no claim of a separate copyright in the

14  Session Material, and he should not able to present one in conflict with his judicial

15  admissions and the foregoing legal principles.  In his initial draft of the PTC Order

16  before the April Decision, he referred only to the copyright in the Circles

17  Composition.  *After* the April Decision, in the filed PTC Order, Armes admitted

18  that his FAC "does not distinguish between the [Session Material] and the [Circles

19  Composition]," and stated Armes would "amend the pleading" to do so.  ECF 106-

20  1, p. 6, n.2.  Armes should not be permitted to do so, as it is futile.  The law applied

21  to these undisputed facts establishes that, under copyright law, the Circles

22  Composition cannot be deemed a derivative work of the Session Material.

23

24

25  [9] Armes had no permission to make the iPhone Recording of the Session Material—including of
Post humming.  His admittedly surreptitiously-recorded bootleg recording of the private Session

26  Material demonstrates further there could never be a finding of any intent by authors and owners
Post and Dukes to allow that bootleg iPhone Recording to stand as a "separate version" of their

27  song.  As Patry states, "[i]n order for a work to be a **_derivative work_**, there must be **_different_**
**_versions treated as such by the copyright owner_**."  There is no way this bootleg could be found

28  to be a different version of the Circles Composition.

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' SUPPLEMENTAL PRETRIAL MEMORANDUM OF LAW**

## III.   JOINT AUTHORSHIP IS DETERMINED AT THE END OF THE CREATIVE PROCESS OF A WORK

In addition to the mandatory copyright statutory framework discussed above, case law supports the conclusion that the Session Material cannot be deemed a separate, standalone work, because it was undisputedly ***not*** an "end unto itself."  In analyzing whether successive iterations of works are "separate" or "prepared over a period of time" as a singular work, courts look to the intended common design for the final product at the time the work is created.  *See*, *e.g.*, *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 266, 267-68 (2d Cir. 1944) (parties were equally aware that their individual authorship efforts would have to be combined in order to create the final integrated product—a commercially viable song); *Oliver v. Johanson*, 357 F. Supp. 3d 758, 774 (W.D. Ark. 2018) ("The classic example of a joint work under the Copyright Act is a lyricist who creates the words to a song intending that some individual composer will later create the score incorporating those words.") (citing *Brownstein v. Lindsay*, 742 F.3d 55, 65 (3d Cir. 2014)); 1 Melvin B. Nimmer and David Nimmer, NIMMER ON COPYRIGHT, § 6.02 at 6-5 (explaining the "Rationale Underlying the Theory of Joint Authorship": "A composer of the music for a popular song will not undertake its creation if he thinks that his ownership will be limited to the music alone.").

In *Maurizio v. Goldsmith*, 84 F. Supp. 2d 455 (S.D.N.Y. 2000), *aff'd*, 230 F.3d 518 (2d Cir. 2000), defendant novelist, Goldsmith, wrote the first portion of a "First Wives Club" manuscript ("FWC"), then asked plaintiff Maurizio to co-write the entire novel.  *Id*. at 458-59.  Maurizio's contributions to the novel included creating an outline, and writing several chapters; Goldsmith ultimately refused to give her co-author credit.  *Id*. at 459-61.  In the ensuing lawsuit, the Court declined to find that Maurizio's outline and draft chapters were "a prior joint work" upon

which a "second, standalone final [derivative] product"[10] (*i.e.* the FWC novel) was made because:

> **[A]t the time Maurizio made her contributions to the outline and draft chapters, both parties intended that these contributions were being made as part of the development of FWC itself . . . <u>In other words, the parties did not necessarily intend that the outline and draft chapters were simply ends in themselves</u>**. Rather, they may have been intended to be a part of the process of completing the final product—FWC.

84 F. Supp. 2d at 467.  Here, the Session Material similarly and undisputedly had no "end in and of itself," but rather was part of the unified whole of the Circles Composition "prepared over a period of time."  As Section 101 makes clear, that the Session Material may have comprised *copyrightable material* fixed *during the process* is irrelevant.  The outline and draft chapters in *Maurizio* were *fixed original works of expression* entitled to copyright protection, but they were not separately copyrightable joint works because they were **part of the process of creating a final work**.  *See also Garcia v. Google, Inc.*, 786 F.3d 733, 742-43 (9th Cir. 2015) (while individual scenes from motion picture are protected by copyright when filmed, motion picture itself is single "work" for joint authorship purposes).

In *Jefferson*, the court analyzed the difference between the creation of a single unitary work over a period of time versus the creation of "separate" or derivative works.  *See* 2020 WL 6440034, at *2-5.  *Jefferson* involved a joint authorship claim with respect to Lizzo's song "Truth Hurts" based on the putative co-author's contributions to a work entitled "Healthy" which he claimed led to "Truth Hurts."  *Id*. at *1-2.  Although applicable in reverse here, the court made the

---

[10] *Jefferson v. Raisen*, 2020 WL 6440034, at *3 (C.D. Cal. Aug. 14, 2020) (discussing *Maurizio*).

Mitchell Silberberg & Knupp LLP

following salient points to distinguish two separate works from one continuous, successive work made "over a period of time":

> But the Counterclaims . . . do not frame the parties' work in creating Healthy as ***merely the first step of the creative journey*** that led to Truth Hurts. To the contrary, Counterclaimants allege in plain terms that the ***parties created and finished Healthy as a standalone song*** before Lizzo and Reed purportedly copied elements of Healthy to make Truth Hurts. Indeed, Counterclaimants allege that, ***after Lizzo recorded Healthy, Justin Raisen "stayed up all night" polishing the song before soliciting feedback on it from the group. Raisen and Lizzo also held a second recording session to further fine-tune the song before suggesting that her management team include it on her upcoming EP.*** A representative from Reed's company stated that, at the time, Healthy "h[ad] a shot" of being included on Lizzo's upcoming EP. ***These allegations suggest that Healthy was, and was intended to be, a final product*** like the original spreadsheet program in *Ashton-Tate*, ***rather than one chapter of a novel like in Maurizio***.

*Id*. at *3.

***No one involved in this action*** had any intent for the Session Material to be a standalone work "intended to be [] a final product." *Id*. The only purpose of the August 8 Session was to begin a work in progress for a single, final, commercially-viable song to be performed and released by Post. The Session Material is not remotely like the complete, standalone, polished, fine-tuned song "Healthy" (which was ready to be featured on Lizzo's upcoming EP). The Session Material

1   was in no way ready for public consumption and not an end unto itself.  Rather, it
2   was "intended to be a part of the process of completing the final product—[the
3   Circles Composition]."  *Maurizio*, 84 F. Supp. 2d at 467.

4   **IV.    CONSTRUING THE SESSION MATERIAL AS A STANDALONE**
5   **        WORK VIOLATES *AALMUHAMMED***

6       Splintering a single, final integrated work into many different "works" at its
7   various stages of creation would—as articulated by the Ninth Circuit—
8   impermissibly "make[] Swiss cheese of copyrights."  *Garcia*, 786 F.3d at 742.

9       Similarly, characterizing a single musical composition as derivative of its
10  successive writing sessions preceding its final form raises the specter of an endless
11  series of derivative works within ***one song***.  This would reset the clock on
12  authorship or joint authorship ***every single time*** a substantive change is made—an
13  implausible construct that is contrary to the Copyright Act.  *See JCW Investments,*
14  *Inc. v. Novelty, Inc.*, 289 F. Supp. 2d 1023, 1033 (N.D. Ill. 2003), *aff'd*, 482 F.3d
15  910 (7th Cir. 2007) (rejecting the defendant's "faulty reasoning" that a three-
16  dimensional doll was a derivative of two-dimensional sketches of the same doll,
17  which "would create an endless series of 'derivative works' in the form of
18  sketches, patterns, mock-ups, etc., as one moved through the process of creating a
19  final work").

20      Further, as this Court expressly recognized in its April Decision (at *14),
21  *Aalmuhammed* is the governing law in the Ninth Circuit on joint authorship.  It
22  would be violated in principle if a single work prepared over time, comprised of
23  various drafts and revisions, is separately analyzed to contain different joint works
24  and separate copyrights within the whole.  Critically here, the "most important
25  factor" under *Aalmuhammed* is "control" over the whole work.  *Armes v. Post*,
26  2020 WL 6135068, at *6 (C.D. Cal. Oct. 19, 2020) (collecting cases).  A putative
27  author's control over his own contributions is ***not*** tantamount to "control" for
28  authorship purposes, which must extend to the "***whole work***."  *Aalmuhammed*, 202

1  F.3d at 1233-35.  Absent proof that a putative author had "supervisory powers"

2  over the work *as a whole*, authorship cannot be established.  *See, e.g.*, *id.*; *Richlin*

3  *v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 970 (9th Cir. 2008) (no

4  "control" where plaintiff wrote screenplay and "may have had control over [it] as

5  originally written, [but] had no control over how [it was] incorporated into [the

6  film]"); *Heger v. Kiki Tree Pictures, Inc.*, 2017 WL 5714517, at *5 (C.D. Cal. July

7  24, 2017) (no "control" where plaintiff alleged "creative control over separate and

8  indispensable elements of the completed [film]" but no "supervisory powers over

9  the [whole film]"); *Ford v. Ray*, 130 F. Supp. 3d 1358, 1363 (W.D. Wash. 2015)

10  (no "control" where plaintiff had "control over his contribution to [the song]," but

11  "decision as to how or whether to incorporate [his] creations was left to

12  defendant").

13      In sum, if works are sliced and diced into separate works, *by draft*, the

14  binding doctrine of control over the "whole work" under *Aalmuhammed* becomes

15  eviscerated.[11]  This violates both the Copyright Act and the principles of

16  *Aalmuhammed.*

17  **V.   CONCLUSION**

18      The Circles Composition is not derivative of its own earlier draft (the

19  Session Material) and the copyright in the Circles Composition is the only one at

20  issue in this case.  Because this Court has already determined that Armes is not a

21  joint author of the Circles Composition, this action should be dismissed in its

22  entirety.

23  _____

24  [11] Credit decisions have also consistently been held to be a significant indicator of intent to be
co-authors under the second *Aalmuhammed* factor.  *See, e.g.*, *Thomson v. Larson*, 147 F.3d 195,

25  204 (2d Cir. 1998) ("the manner in which [Defendants] listed credits on the [work]" is "strongly"
indicative of how they regard themselves vis-à-vis authorship); *Jefferson*, 2021 WL 4732592, at

26  *5 ("the choice to credit some co-authors, but not the [counterclaim plaintiffs], at the time of
releasing [the work at issue] is relevant").  Allowing a final work to be a derivative of a prior

27  draft of the same work, and allowing separate joint authorship claims in and to prior drafts,
renders this reliable indicator moot and cannot be reconciled with the law of this Circuit.

28

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' SUPPLEMENTAL PRETRIAL MEMORANDUM OF LAW**

1   Dated: May 16, 2022                 MITCHELL SILBERBERG & KNUPP LLP

2                                      DAVID A. STEINBERG
CHRISTINE LEPERA

3                                      JEFFREY M. MOVIT
GABRIELLA N. ISMAJ

4

5                                   By:  /s/ David A. Steinberg

6                                         David A. Steinberg (SBN 130593)
Attorneys for Defendants

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' SUPPLEMENTAL PRETRIAL MEMORANDUM OF LAW**