1   **ALLISON S. HART (BAR NO. 190409)**
2   *ahart@lavelysinger.com*
    **KELSEY J. LEEKER (BAR NO. 313437)**
3   *kleeker@lavelysinger.com*
4   **LAVELY & SINGER**
    **PROFESSIONAL CORPORATION**
5   2049 Century Park East, Suite 2400
6   Los Angeles, California 90067-2906
    Telephone:  (310) 556-3501
7   Facsimile:   (310) 556-3615
8
9   Attorneys for Plaintiff and
    Consolidated Defendant TYLER ARMES
10
11              **UNITED STATES DISTRICT COURT**
12              **CENTRAL DISTRICT OF CALIFORNIA**
13
14   TYLER ARMES,                          CASE NO. 2:20-cv-03212-ODW(PJWx)
                                           *Consolidated with 2:20-cv-10205*
                   Plaintiff,
15                                         [Hon. Otis D. Wright, II – Crtrm 5D]
          v.
16
     AUSTIN RICHARD POST, publicly         **PLAINTIFF'S RESPONSE TO**
17   known as POST MALONE, an              **DEFENDANTS' SUPPLEMENTAL**
     individual; ADAM KING FEENEY,         **PRETRIAL MEMORANDUM OF**
18   publicly known as FRANK DUKES,        **LAW**
     an individual; UNIVERSAL MUSIC
19   GROUP, INC., a Delaware
     corporation; DOES 1 through 10,       Date:       July 11, 2022
20   inclusive,                            Time:       1:30 p.m.
                                           Crtrm:      5D
21
                   Defendants.
22
23
24
25
26
27
28

1

## <u>TABLES OF CONTENTS</u>

2

3

I.   INTRODUCTION ................................................................................................ 1

II.  THE SESSION COMPOSITION CAN BE TREATED AS A
     STANDALONE WORK. ................................................................................... 3

III. CONCLUSION ................................................................................................... 7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*JCW Investments, Inc. v. Novelty, Inc.*,
   289 F.Supp.2d 1023 (N.D. Ill. 2003),
   *aff'd* (7th Cir. 2007) 482 F.3d 910 ................................................................. 4, 5, 6

*Jefferson v. Raisen*,
   2020 WL 6440034 ........................................................................................... 6, 7

*Kona Enterprises, Inc. v. Estate of Bishop*
   (9th Cir. 2000) 229 F.3d 877 ................................................................................ 3

*Maurizio v. Goldsmith*,
   84 F.Supp.2d 455 (S.D.N.Y. 2000),
   *aff'd*, 230 F.3d 518 (2d Cir. 2000) ................................................................ 5, 6, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Tyler Armes's ("Armes" or "Plaintiff") claims in this case have always been clear.  On August 8, 2018, Armes and Defendants Austin Richard Post p/k/a Post Malone ("Post") and Adam King Feeney p/k/a Frank Dukes ("Dukes") (collectively "Dukes") co-wrote the music – minus the lyrics – for the song entitled "Circles" (hereinafter the "Session Composition"):

> Although the lyrics had not yet been completed, other than the main lyric and title of the Song, *i.e.*, "circles", all instrumentation and vocal melodies in the song recorded at Dukes' studio on August 8, 2018 are note for note rhythmically and melodically identical to the Song and have the same main lyric, title and concept, including without limitation the guitar introduction co-written by Armes, the tempo and instrumentation was directed in large part by Armes, and the bassline and chords co-written by Armes.  Everything reflected in the final recording of the Song including the bridge vocal melody was conceived that night.

Dkt. 24 – FAC, ¶ 19.

Thus, Armes has always asserted that, other than the use of the title lyric "circles" in the Session Composition, the commercially released version of the song "Circles" (the "Commercial Release Composition") is different from the Session Composition in that it includes the addition of lyrics which are not present in the Session Composition.   Consistent with this claim, Armes's copyright registration for the "Circles" composition explicitly identifies Armes as a co-author of the music, but not the lyrics.  Dkt. 24 – FAC, Ex. A.

In sharp contrast, it is Defendants who have advanced ever-shifting factual and legal theories, and who have failed to "pick a horse and ride it." Dkt. 113 – Apr. 25, 2022 Pretrial Conf. Tr. At 30:13.  Defendants previously argued vociferously in their Motion for Summary Judgment that the Session Composition

1

was separate and distinct from the Commercial Release Composition, claiming that in the year following Armes's songwriting session with Defendants on August 8, 2018, "three other writers joined with Dukes to finish the Composition," and that at subsequent songwriting sessions, "***lyrics were written, and other additions to the song were made by Defendants and three non-party songwriters***."  Dkt. 82 at 3:18-23 (emphasis added).  Since these facts do not support Defendants' newly concocted theory that the Session Composition should not be treated as a separate work, but is instead merely an early draft of the Commercial Release Composition, in a head-spinning reversal of their prior position, Defendants now claim that, "[t]here are no two separate versions of the Circles Composition."  Dkt. 115 at 2:19-20, fn. 2.

Recognizing that the inclusion of the lyrics in the Commercial Release Composition makes it a different version of Session Composition, in its ruling granting in part and denying in part Defendants' Motion for Summary Judgment, the Court determined that the Session Composition should be viewed "as its own, separate, standalone, copyrightable intellectual property," with the Commercial Release Composition being a derivative work based on the Session Composition, and, based on the existence of genuine disputed issues of fact concerning Armes's authorship of the Session Composition, the Court found that Armes is entitled to a trial on the merits on this issue. Dkt 90 at 17:14-17 and 28:7-9.

Having failed to dispose of Armes's claims by way of summary judgment, in a transparent effort to seek reconsideration of the Court's summary judgment ruling, Defendants now contend that the Court was wrong in its ruling, based on their newly-manufactured theory that the Session Composition was merely a "draft" of the Commercial Release Composition, which Defendants now contend is the same song as the Session Composition and cannot be considered a derivative work

thereof.[1]  In order to support their specious argument, Defendants have disingenuously cherry-picked language from the cases and statutes to make it appear as if there is substance to their theory, when in fact a closer review of the authorities relied on by Defendants makes clear that the Court's analysis and ruling on the motion for summary judgment was correct and consistent with well-established law.

## II.   THE SESSION COMPOSITION CAN BE TREATED AS A STANDALONE WORK.

Despite their recent claim that the Session Composition was merely a "draft" of the Commercial Release Composition, Defendants concede that the Session Composition is separately entitled to copyright protection.  Dkt. 115 at 3:11-12 ("the work may be protectable as copyrightable at various stages of its development"); 4:8-9 ("each draft '*prepared over a period of time*' has protections under copyright fixation"). The authorities cited by Defendants explain that the reason for not requiring separate copyright registrations of various drafts of the same work is not because the earlier drafts are not entitled to copyright protection, but because as a matter of expediency, "[s]uch a requirement would be wasteful and impractical." Dkt. 115 at 5:9-13, citing *Peterson v. Kolodin*, 2013 WL 5226114, at *6. Indeed, had Armes or some other third party attempted to commercially exploit the Session Material, whether on its own or by adding their own lyrics to create a derivative work, Defendants no doubt would have pursued legal claims for violations of their copyright interest in the Session Composition.

---

[1]  Reconsideration is an "extraordinary remedy, to be used sparingly." Absent highly unusual circumstances, none of which exist here, a motion for reconsideration will not be granted "unless the district court is presented with *newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.*" *Kona Enterprises, Inc. v. Estate of Bishop* (9th Cir. 2000) 229 F.3d 877, 890. Here, there are no newly discovered facts, clear error or change in the controlling law that would justify the Court's reconsideration of its ruling on Defendants' Motion for Summary Judgment.

3

None of the authorities cited by Defendants support their assertion that the Commercial Release Composition should not be treated as a derivative work based on the Session Composition.  To the contrary, the authorities cited by Defendants support the conclusion that the Commercial Release Composition should be treated as a derivative work.  The U.S. Copyright Office, Compendium of U.S. Copyright Practices, § 802.6 (3d ed. 2021) cited by Defendants specifically provides:

> The applicant should identify any preexisting work or works that the derivative work is based on or incorporates, and should provide a brief general statement identifying the additional material covered by the copyright claim being registered. Descriptions of new material might include: ***New or revised lyrics*** [or] New or revised arrangements.

Dkt. 115 at 4:16-5:1 (emphasis added).

There were no lyrics in the Session Composition.  The addition of lyrics to the Commercial Release Composition which were not present in the Session Composition is exactly the type of "new material" added to a pre-existing work that the Copyright Office considers for registration of a derivative work. Therefore, based on the Compendium, the Commercial Release Composition qualifies as new copyrighted work derived from the Session Composition.

Cases addressing derivative work claims tend to focus on whether in addition to using the prior work, the alleged derivative work contains additional, new and original material.  By way of example, in *JCW Investments, Inc. v. Novelty, Inc.*, cited by Defendants for the proposition that a final work is not considered a derivative work of early drafts of the same work, the court rejected claims by a toy manufacturer that the creation of a three dimensional doll sculpture based on specific design plans authored by the plaintiffs was a work derivative of the plaintiff's plans where one of the developers supervised the manufacturer's work, the manufacturer simply converted a two-dimensional design into a three-

4

dimensional object, without sufficient original artistic contribution, and the manufacturer's prototype was a faithful translation of the other developer's drawing. *JCW Investments, Inc. v. Novelty, Inc.*, 289 F.Supp.2d 1023 (N.D. Ill. 2003), *aff'd* (7th Cir. 2007) 482 F.3d 910. This case is easily distinguishable on its facts since, unlike the doll sculpture which was specifically created based on the plaintiffs' original two-dimensional design plans and contained no new original material, all parties no doubt agree that addition of lyrics to the Commercial Release Composition constitutes a new and original artistic contribution which is distinct from the Session Composition.

There is no legal support whatsoever for the notion advanced by Defendants that in order for Armes to claim joint authorship and copyright ownership in the Session Composition, that the parties must have intended that the Session Composition constitute an "end in and of itself". Dkt. 115 at 9:12. Defendants misleadingly quote an excerpt from *Maurizio v. Goldsmith*, in which the court observes that the plaintiff's contributions to the outline and draft chapters of the novel First Wives Club were not intended to be ends in themselves to suggest that because plaintiff did not co-write the final chapters included in the published novel precludes any claims by plaintiff as a joint author of the work. Dkt. 115 at 8:20 – 9:13, *quoting Maurizio v. Goldsmith*, 84 F.Supp.2d 455, 467 (S.D.N.Y. 2000), aff'd, 230 F.3d 518 (2d Cir. 2000). However, Defendants have conveniently omitted the rest of that quote in which the court held:

> Further, even if no reasonable trier of fact could find Maurizio to be a joint author of FWC (considering it as distinct from the underlying works, as Goldsmith's derivative work argument does), summary judgment would be improper because a joint author must account to his co-author for use of their joint work in a derivative work. See *Weissmann v. Freeman*, 868 F.2d 1313, 1318; see also *Ashton–Tate*, 916 F.2d at 522. Thus, Goldsmith would have to account to Maurizio for Goldsmith's use of the outline and draft chapters in constructing FWC.
>
> *Id*.

5

Thus, like this Court recognized in ruling on Defendants' Motion for Summary Judgment, the court in *Maurizio v. Goldsmith* recognized that, assuming the plaintiff is the joint author of the outline and draft chapters of the final novel, to the extent that material was included in the final published novel, it should be treated as a derivative work and Goldsmith would have an obligation to account to the plaintiff for the use of the jointly authored material in the derivative published novel.

*Jefferson v. Raisen*, also quoted extensively by Defendants for the proposition that the Commercial Release Composition should not be treated as a separate work derivative of the Session Composition, is also distinguishable and inapposite. In that case, the recording artist Lizzo (Jefferson) sought declaratory relief that Raisen "had no ownership rights in her song … Truth Hurts." Raisen counterclaimed that Lizzo used substantial elements of a song titled "Healthy," a full and complete song that Lizzo and Raisen made together, in "Truth Hurts" so as to make Raisen a co-author of "Truth Hurts."  The court granted Lizzo's motion to dismiss on grounds that "a joint author of one copyrightable work does not automatically gain ownership of a derivative work in which the joint author had no hand in creating," and there were no facts pleaded to establish that Raisen was a joint author of "Truth Hurts."  *Jefferson v. Raisen*, 2020 WL 6440034 at *3. The court never reached the issue of whether "Truth Hurts" could be considered a derivative work of "Healthy" because Raisen continued to claim that their co-authorship of "Healthy" made them co-author of "Truth Hurts." *Id*. at 5. There is absolutely no analysis of what would have happened in this case had Raisen properly alleged that their co-authorship of "Healthy" was a first step in the creation of "Truth Hurts" and that "Truth Hurts" is a derivative work based on "Healthy."

In contrast here, Armes has at all times been clear that his claim is that he is a joint author of the musical composition created on August 8, 2018, and that he had

PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL
PRETRIAL MEMORANDUM OF LAW

1  no involvement in the addition of the lyrics to the composition which are present in

2  the Commercial Release Composition.

3      Defendants' theory that the Commercial Release version of the song

4  "Circles" cannot be considered a derivative work of the Session Composition solely

5  because Defendants contend that it was simply an early draft of the Commercial

6  Release version of the song is non-sensical and entirely inconsistent with the law.

7  Both *Maurizio* and *Jefferson* recognize that to the extent the early versions of the

8  works at issue in those cases (outline and draft chapters in *Maurizio* and the song

9  "Healthy" in *Jefferson*) were incorporated into later versions of those works (the

10  novel First Wives Club and the song "Truth Hurts") that to the extent the parties in

11  those cases established joint authorship of the early versions of the works, claims

12  for accounting for use of that material in the subsequent derivative works might lie.

13  The same is true here.

14      The court has already determined that genuine issues of material fact exist

15  entitling Armes to a trial on the merits on his claim that he is a joint author of the

16  Session Composition. If Armes prevails, he is entitled to an accounting and

17  compensation for the use of the Session Composition in the subsequent derivative

18  work, the Commercial Release Composition.

19

20  **III.   CONCLUSION**

21      The Court got it right in its ruling partially granting and partially denying

22  Defendants' Motion for Summary Judgment (Dkt. 90).  It is undisputed that the

23  music accompanying the lyrics to the Commercial Release Composition is virtually

24  identical to the music co-written by Armes during the August 8, 2018 writing

25  session with Defendants.  None of the authorities cited by Defendants support the

26  notion that a creative work must be "an end of and to itself" or that it be intended

27  for commercial exploitation in order to qualify for copyright protection under the

28  law.  Therefore, the Court should reject Defendants' claim that the Commercial

1  Release Composition cannot be a derivative work based on the Session

2  Composition, and the Court's ruling on the Motion for Summary Judgment should

3  stand.

4  DATED:  May 31, 2022                    ALLISON S. HART
                                           KELSEY J. LEEKER
5                                          LAVELY & SINGER
                                           PROFESSIONAL CORPORATION
6

7                                          By:  _/s/ Allison S. Hart_____
                                               ALLISON S. HART
8

9                                          Attorneys for Plaintiff and Consolidated
                                           Defendant TYLER ARMES
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL
PRETRIAL MEMORANDUM OF LAW