DAVID A. STEINBERG (SBN 130593)
   das@msk.com
GABRIELLA N. ISMAJ (SBN 301594)
   gan@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA  90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

CHRISTINE LEPERA (*pro hac vice*)
   ctl@msk.com
JEFFREY M. MOVIT (*pro hac vice*)
   jmm@msk.com
437 Madison Avenue, 25th Floor
New York, New York 10022
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendants*
*Austin Richard Post p/k/a Post Malone*
*Adam King Feeney p/k/a Frank Dukes*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TYLER ARMES,<br><br>                    Plaintiff,<br><br>         v.<br><br>AUSTIN RICHARD POST, publicly known as POST MALONE, an individual; ADAM KING FEENEY publicly known as FRANK DUKES, an individual; UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; DOES 1 through 10, inclusive,<br><br>                    Defendants | Case No. 2:20-cv-03212 ODW (SKx)<br>*Consolidated with 2:20-cv-10205*<br><br>Hon. Otis D. Wright II<br><br>**DEFENDANTS' *EX PARTE* APPLICATION FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF**<br><br>[*Declaration of Jeffrey M. Movit and [Proposed] Order Submitted Concurrently Herewith*]<br><br>Filed:          April 7, 2020<br>Trial:          October 11, 2022 |

**NOTICE OF *EX PARTE* APPLICATION**

**PLEASE TAKE NOTICE** that Defendants Austin Richard Post p/k/a Post Malone ("Post") and Adam King Feeney p/k/a Frank Dukes ("Dukes") ("Defendants") hereby apply to the Court *ex parte*, pursuant to Fed. R. Civ. P. 26 and 37 and the Court's inherent authority, for an Order issuing sanctions against Plaintiff Tyler Armes ("Armes" or "Plaintiff"), for his egregious discovery violations that have just been uncovered by Defendants during their preparation of a non-party witness for trial the day before this Court continued trial.

Defendants have located texts that Plaintiff wrote to non-party Dre London ("London"), which Plaintiff intentionally concealed from discovery, that were required to be produced in this case by Plaintiff.  These texts are not just highly relevant statements ***by Plaintiff himself*** from the critical time frame at issue in this case, but are texts which contradict his ***sworn*** statements and are extremely damaging to his claims and potentially dispositive, all as discussed in the accompanying Memorandum of Points and Authorities.  These critical documents speak volumes as to Plaintiff's intent on the night during which he claims to have jointly authored musical material with Defendants, and also refute Plaintiff's narrative that Defendants invited him to work with them to be a co-author.

Plaintiff's misconduct discussed in this motion is so severe that case-terminating sanctions are warranted—because Plaintiff and his counsel were ***warned*** by Magistrate Kim in his decision on Defendants' motion to compel that sanctions could issue in the future if Plaintiff's discovery was not complete as ***Plaintiff and his counsel had judicially represented it was to Magistrate Kim. Plaintiff's counsel actually certified that documents in Plaintiff's possession, custody and control had been diligently searched, and that Plaintiff's document production was comprehensive, complete and included all text communications with London during the relevant time period.  Plaintiff and his counsel further perpetrated this deceit directly on Magistrate Kim via a sworn declaration and in***

1

Mitchell
Silberberg &
Knupp LLP

1   *judicial representations in a Joint Report*.  This representation to Magistrate Kim

2   was false, and Defendants submit that Plaintiff was fully aware that it was

3   intentionally false; this is tantamount to committing a fraud on this Court.

4          While Defendants submit that case-terminating sanctions should be issued,

5   in the alternative, or in addition, Defendants seek: (i) an adverse inference

6   instruction that Plaintiff was not invited to the August 8 Session[1] to write any

7   music with Defendants and was not present for that purpose; (ii) an order for

8   Plaintiff to appear for a second deposition prior to the trial in this action after a

9   forensic exam discussed herein; (iii) an order for a forensic examination of

10  Plaintiff's cell phone(s) and computer devices, the costs of which will be paid for

11  by Plaintiff, to uncover documents that were not produced and/or were spoliated,

12  with leave to submit a further application following the results of that exam; and

13  (iv) monetary sanctions equal to the fees and/or costs incurred by Defendants in

14  connection with this Application.

15         Defendants also request leave to add these newly discovered and highly

16  relevant texts attached to this motion to the Amended Exhibit List.

17         As set forth above and in further detail below, good cause exists for this

18  Application.  The instant action is currently set for trial on October 11, 2022,[2] and

19  the fact discovery cut off was February 28, 2022.  This Application is based on this

20  *Ex Parte* Application, the Declaration of Jeffrey M. Movit dated August 17, 2022

21  ("Movit Decl."), and such other and further oral or documentary evidence and

22  legal memoranda as may be presented at or before any hearing on this Application.

23         Pursuant to Local Rule 7-19.1, Defendants' counsel contacted Plaintiff's

24  counsel on August 16, 2022 regarding the issues presented by this Application.

25

26  [1] Defined terms have the same meaning as in Defendants' Memorandum of Points and
    Authorities herein.  Unless otherwise noted, all emphasis is added and all citations and quotation
27  marks omitted.

28  [2] Defendants are simultaneously filing a separate *ex parte* motion to continue the trial date from
    October 11, 2022 to December 13, 2022, due to insurmountable scheduling conflicts.

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' *EX PARTE* APPLICATION FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF**

1    Movit Decl., ¶ 12.  The parties could not reach an agreement to obviate the filing

2    of this Application.  *Id.*  Plaintiff opposes this Application.  *Id.*

3

4    Dated: August 17, 2022                    MITCHELL SILBERBERG & KNUPP LLP
                                                DAVID A. STEINBERG
5                                               CHRISTINE LEPERA
                                                JEFFREY M. MOVIT
6                                               GABRIELLA N. ISMAJ

7

8                                               By:    /s/ Jeffrey M. Movit
                                                       Jeffrey M. Movit (*pro hac vice*)
9                                                      Attorneys for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' *EX PARTE* APPLICATION FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF**

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................1

II.     RELEVANT FACTUAL BACKGROUND ...........................................2

     A.      Plaintiff's Critical Texts From August 6 and 7, 2018 Were
            Intentionally Concealed in This Action ...................................2

     B.      Plaintiff's Texts With London *After* The August 8 Session—In Late-
            August Through December 2018—Were Also Concealed In This
            Action .......................................................................................6

     C.      Plaintiff Doctored The Texts He Produced From 2019 ...........7

     D.      Plaintiff's Failure To Produce The Texts Was Intentional ......9

III.    ARGUMENT .......................................................................................13

     A.      *Ex Parte* Relief Is Appropriate ............................................13

     B.      This Court Should Severely Sanction Plaintiff Under Its Inherent
            Power and the Federal Rules....................................................14

          1.      Terminating Sanctions Against Plaintiff Are Warranted ........16

          2.      In The Alternative, This Court Should Impose Significant
                Evidentiary Sanctions, Order Forensic Imaging Of Plaintiff's
                Cellular Devices, As Well As Monetary Sanctions.................21

IV.     CONCLUSION ...................................................................................22

Mitchell
Silberberg &
Knupp LLP

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4
*Adriana Int'l Corp. v. Thoeren,*
5
    913 F.2d 1406 (9th Cir. 1990) .................................................................. 18, 19

6
*Anheuser-Busch, Inc. v. Nat. Beverage Dist.,*
7
    69 F.3d 337 (9th Cir. 1995) ............................................ 14, 17, 18, 19

8
*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) ............................................................. 17
9

10
*Coleman v. Ryan,*
    2014 WL 3540579 (D. Ariz. July 17, 2014) .............................. 19

11
12
*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills,*
    482 F.3d 1091 (9th Cir. 2007) ........................................... 18

13
14
*Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.,*
    101 F. Supp. 3d 856 (C.D. Cal. 2015) ................................. 18

15
16
*Estakhrian v. Obenstine,*
    2016 WL 6275599 (C.D. Cal. May 17, 2016) ........................ 21

17
18
*Hagan v. Calif. Forensic Medical Grp.,*
    2009 WL 689740 (E.D. Cal. Mar. 5, 2009) ........................... 15

19
20
*Henry v. Gill Indus., Inc.,*
    983 F.2d 943 (9th Cir. 1993) .............................................. 18

21
*In re Phenylpropanolamine (PPA) Prods. Liab. Lit.,*
    460 F.3d 1217 (9th Cir. 2006) ..................................... 17, 19, 20
22
23
*Jorgensen v. Cassiday,*
    320 F.3d 906 (9th Cir. 2003) .............................................. 18

24
25
*Leon v. IDX Sys. Corp.,*
    464 F.3d 951 (9th Cir. 2006) .............................................. 17

26
27
*Malone v. U.S. Postal Service,*
    833 F.2d 128 (9th Cir. 1987) .............................................. 20

28

Mitchell
Silberberg &
Knupp LLP

1

# TABLE OF AUTHORITIES
<u>(continued)</u>

2

3

**Page(s)**

*Michaels v. M/Y No Bad Days*,
   2007 WL 9735013 (C.D. Cal. Aug. 28, 2007) ................................................ 16

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) ................................................................. 13

*R&R Sails Inc. v. Ins. Co. of State of Pa.*,
   251 F.R.D. 520 (S.D. Cal. 2008) ................................................................... 15

*Russo v. Network Sols., Inc.*,
   2008 WL 114908 (N.D. Cal. Jan. 10, 2008) .................................................. 21

*Sanchez v. Rodriguez*,
   298 F.R.D. 460 (C.D. Cal. 2014) ................................................................... 20

*Silva v. TEKsystems, Inc.*,
   2013 WL 3939500 (N.D. Cal. July 25, 2013) ................................................ 16

*Stones v. Boys Republic*,
   2008 WL 11338535 (C.D. Cal. Mar. 11, 2008) ......................................... 16, 20

*TeleVideo Systems, Inc. v. Heidenthal*,
   826 F. 2d 915 (9th Cir. 1987) ........................................................................ 14

*U.S. ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*,
   857 F.2d 600 (9th Cir. 1988) ......................................................................... 17

*Valley Eng'rs Inc. v. Elec. Eng'g Co.*,
   158 F.3d 1051 (9th Cir. 1998) .................................................................. 17, 18

*Wyle v. R.J. Reynolds Indus., Inc.*,
   709 F.2d 585 (9th Cir. 1983) ......................................................................... 14

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) ....................................................................... 15

*Yourish v. Cal. Amplifier*,
   191 F.3d 983 (9th Cir. 1999) ......................................................................... 17

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

iii

# TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

## RULES

Fed. R. Civ. P.

26 ................................................................................................ 1, 14, 15, 21

26(g)................................................................................................ *passim*

37 .................................................................................................... *passim*

37(b)(2)............................................................................................ 14, 15

37(c)................................................................................................. 14, 15

Mitchell
Silberberg &
Knupp LLP

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants Austin Richard Post p/k/a Post Malone ("Post") and Adam King Feeney p/k/a Frank Dukes ("Dukes") (together, "Defendants") hereby submit the following *Ex Parte* Application for Sanctions (the "Application") against Plaintiff Tyler Armes ("Armes" or "Plaintiff"), pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure and this Court's inherent authority, for Plaintiff's egregious discovery violations that have just been uncovered by Defendants during their preparation of a non-party witness for trial the day before this Court continued trial.  Defendants have located texts that Plaintiff wrote to non-party Dre London ("London"), which Plaintiff intentionally concealed from discovery (the "Concealed Texts").  These Concealed Texts are not just highly relevant statements *of Plaintiff* from the critical time frames at issue in this case, but they are potentially dispositive of key issues.  At the very least, they contradict Plaintiff's own sworn statements.

There can be no question that Plaintiff made a conscious, highly improper decision not to produce the Concealed Texts:

- *First*, they come from *the same phone* and are from the *same chain of texts* Plaintiff *did* produce during discovery.  *In other words, Plaintiff "cherry-picked" what he wanted to reveal and what he wanted to conceal.*

- *Second,* Plaintiff "cherry-picked" his production because the Concealed Texts are damaging to his claim.

- *Third*, on Defendants' motion to compel discovery from Plaintiff, which asserted that his production did not appear complete, *Plaintiff and his counsel represented via Rule 26(g)(1) certifications <u>and directly to Magistrate Kim</u> that all responsive documents had been produced.*  That representation was false.  Plaintiff and his counsel were expressly on notice and warned by Magistrate Kim in his decision that if those representations

Mitchell
Silberberg &
Knupp LLP

were false they would be deserving of sanctions under Rule 26(g)(3), which include case-terminating sanctions.  Clearly, that warning fell on hollow ears.

- *Fourth*, Plaintiff swore under oath in his deposition that he had produced all of his relevant texts with London.  That testimony also was false.

Because of these points, there can be only one conclusion:  Plaintiff intentionally misled the Court for his own tactical advantage, making a mockery of the judicial process.  The only appropriate consequence for such behavior is the issuance of severe sanctions.[3]

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Plaintiff's Critical Texts From August 6 and 7, 2018 Were Intentionally Concealed in This Action

Plaintiff alleges that he was a co-author with Post and Dukes of music created in the early morning hours of August 8, 2018 (the "August 8 Session").  According to Plaintiff, the August 8 Session immediately followed Plaintiff's attendance at concert events the prior two nights—**on August 6 and 7, 2018**—which concerts he claims he attended *because he was invited* by Post's manager London, and for the purpose of getting together thereafter with Post to co-write a song (the "Session Material").  Plaintiff claims he and Defendants had a "shared intent" to be co-authors of the Session Material (an element that Plaintiff has to prove under *Aalmuhammed*), and that such an intent was allegedly conveyed to

---

[3] Defendants submit that case-terminating sanctions should be issued.  Alternatively and/or additionally, Defendants seek: (i) an adverse inference instruction that Plaintiff was not invited to the August 8 Session to write any music with Defendants and was not present for that purpose; (ii) an order for Plaintiff to appear for a second deposition prior to the trial in this action after a forensic exam discussed herein; (iii) an order for a forensic examination of Plaintiff's cell phone(s) and computer devices, the costs of which will be paid for by Plaintiff, to uncover documents that were not produced and/or were spoliated, with leave to submit a further application following the results of that exam; and (iv) monetary sanctions equal to the fees and/or costs incurred by Defendants in connection with this Application.  Defendants also request leave to add these newly discovered and highly relevant texts to the Amended Exhibit List.

Mitchell Silberberg & Knupp LLP

2

him by London by inviting Plaintiff to the two events **on the nights of August 6 and 7**:

- London, Post's longtime manager, "*invited Armes to join Post and Dukes and Dukes' studio to jam together*."  ECF 24 ("FAC"), ¶ 3.

- "In early August 2018, *at Dre's invitation*, Armes attended a private concert at which Post was performing in Toronto, Canada.  The following evening *Dre again invited Armes to get into the studio with Post to write music together*. *The following evening*, Armes, Dre, Post and Dukes went to see a band that Post was a fan of play at a club in Toronto.  After the show, *Dre again invited Armes to go to Duke's Toronto studio with Post and Dukes to write music together*." *Id.*, ¶¶ 13-14.

Shockingly, *Plaintiff wrote text messages to London on those exact critical dates—August 6 and 7—which he concealed from the Court and which Defendants have now found in preparing for trial the day before this Court continued the trial date.*  Those highly relevant text messages speak for themselves, reflecting absolutely nothing about any invitation for songwriting, or frankly any invitation to come to any shows.  To the contrary, they reveal:

- *London did not invite Plaintiff to anything, but rather Plaintiff tried to insert himself into the situation.*  In text messages from Plaintiff to London on August 6 and 7 (Plaintiff is grey; London is blue), Plaintiff desperately is trying to secure invitations to the two concerts he speaks of in his complaint for him and/or his brother, offering to bring **"bitches lined up for after, a whole bunch"** and **"lots of girls for later."**  Declaration of Jeffrey M. Movit dated August 17, 2022 ("Movit Decl."), Ex. F, at 118, 120.  The first two screen shots below are from the night of August 6, and the next two are from August 7.

Mitchell
Silberberg &
Knupp LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Mitchell Silberberg & Knupp LLP

**DEFENDANTS' *EX PARTE* APPLICATION FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20




21
22
23
24
25
26
27
28

- In addition to demonstrating that Plaintiff was trying to insert himself into these events, these texts are glaringly devoid of any mention of any songwriting with Post, no less a songwriting session.

None of these text messages were produced by Plaintiff in discovery, ***even though Plaintiff produced other messages from this very same time period***, specifically messages dated August 8, 2018 that Plaintiff sent and received via mobile messaging platform WhatsApp.  Movit Decl., ¶ 4 & Ex. C.

B.   **Plaintiff's Texts With London *After* The August 8 Session—In Late-August Through December 2018—Were Also Concealed In This Action**

*In addition to concealing the highly relevant August 6 and 7 texts, Plaintiff also concealed a number of texts that he wrote to London following the August 8 Session.* **In these texts, Plaintiff says *NOTHING ABOUT ANY SONGWRITING SESSION*** during which he allegedly co-authored a song, his first alleged songwriting session with a huge star like Post, even though the session was allegedly orchestrated by London. Rather, Plaintiff instead seeks to "pitch" himself to London, sending him music from his band "Honors" and generally initiating communications. Movit Decl., Ex. F. By way of example:



**DEFENDANTS' *EX PARTE* APPLICATION FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF**

Mitchell
Silberberg &
Knupp LLP

Movit Decl., Ex. F at 126, 128.  Many of these Concealed Texts were sent ***less than a month*** after the August 8 Session; and the glaring absence of any discussion in them of the August 8 Session speaks volumes as to the intent and conduct of that evening.  These Concealed Texts demonstrate that London was not pursuing Plaintiff as a client, as Plaintiff contends, but that Plaintiff was repeatedly reaching out to and soliciting involvement with London which involvement did not transpire.

### C.   <u>Plaintiff Doctored The Texts He Produced From 2019</u>

As the above Concealed Texts demonstrate, Plaintiff did not mention any songwriting session when he wrote to London in the weeks and months after the August 8 Session; that is clearly why these Concealed Texts were withheld.  Undoubtedly, if—as Plaintiff claims—there was an open and transparent "shared intent" by Post to co-author a song that night with Plaintiff, wouldn't Plaintiff have been happy to report that back to London—the alleged catalyst for it?  Defendants submit that Plaintiff said nothing because there was ***no*** such co-writing and he knew it.

Further evidencing that point, when Plaintiff, ***a year later*** in 2019, raised his claim of purported authorship of "Circles" with London, he had some further texts with London.  Critical to this motion, Plaintiff produced certain text messages in discovery, but ***intentionally deleted from production a comment that London made about Plaintiff's claim.***  London wrote to Plaintiff saying his authorship claim "***<u>Sound[ed] weird</u>***," because London "***<u>would have known</u>***" if Plaintiff had co-written anything and defended Dukes, claiming "***<u>Frank ain't a thief</u>***."  Movit Decl., Ex. G at 132.  London also points out that Plaintiff had not told him anything that Plaintiff contributed either, which further demonstrates the speciousness of Plaintiff's belated assertions.  Below is a side-by-side comparison

Mitchell Silberberg & Knupp LLP

**DEFENDANTS' *EX PARTE* APPLICATION FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF**

of the version of this exchange that Plaintiff selectively produced in discovery with the actual text exchange provided to Defendants by London[4]:

**Plaintiff's Production**     **Actual Text Exchange**

In addition to the above texts, Plaintiff also selectively produced a number of other texts with London from August 2019.  Movit Decl., ¶ 10 & Ex. G at 131, 133-136.

---

[4] The red boxes have been added to identify the missing text message from Plaintiff's production.

**D.    <u>Plaintiff's Failure To Produce The Texts Was Intentional</u>**

Following is a timeline which demonstrates that Plaintiff's failure to produce the Concealed Texts must have been intentional:

- **March 5, 2021**: Defendants' Requests for Production Nos. 4-8 sought, *inter alia*, all communications between Plaintiff and London from January 1, 2015 to the present, including all communications that supported, substantiated, refuted, or otherwise pertained or related to Plaintiff's allegation that London "repeatedly encouraged" him to write music with Post.  Movit Decl., ¶ 3 & Ex. A. Plaintiff only produced a few, largely undated text messages between himself and London.  *Id.*, ¶ 4.

- **December 22, 2021**:  Defendants filed a motion to compel discovery from Plaintiff (the "Motion to Compel"), which mentioned that Plaintiff's production of text messages appeared incomplete.  ECF 59-1 at 2 ("[R]esponsive text messages have been produced in excerpted form; these excerpts contain indicia of prior and subsequent messages that were not produced in full.").

- **January 5, 2022**:  After failing to file an opposition to the Motion to Compel, Plaintiff's counsel filed an untimely "Declaration" alleging that: (1) everything sought by the Motion to Compel would be served "well in advance of the ***January 19, 2022*** hearing on the [Motion to Compel]"; (2) "no responsive documents have been withheld from production based on any objections asserted thereto"; and (3) it was Plaintiff's counsel's "understanding that all documents which Plaintiff had agreed to produce in this case had been produced, ***but that [she] would make further inquiries of [her] client and his representatives to confirm that was the case, and if not, Plaintiff will produce any responsive documents that have not been produced.***" ECF 63, ¶¶ 5, 10, 17.

- **January 14, 2022**:  Assuming that Plaintiff had complied with the representations in his counsel's declaration—*i.e.*, that Plaintiff would supplement his discovery deficiencies (which he had not done)—Magistrate Kim ordered the

Mitchell
Silberberg &
Knupp LLP

9

parties to file a Joint Report advising if a hearing was still necessary.  ECF 65 (the "January 14, 2022 Order").  Later that night, likely in anticipation of having to come clean to the Court about the misrepresentations in his counsel's declaration, Plaintiff served supplemental responses (the "Supplemental Responses") and a supplemental document production containing, *inter alia*, a number of social media posts and further text messages between Plaintiff and London, which Defendants now know were cherry-picked.  *See* Movit Decl., ¶ 5 & Ex. D. Crucial to this Application, Plaintiff's counsel signed the Supplemental Responses (***thus certifying that Plaintiff's production of documents was complete pursuant to Fed. R. Civ. P. 26(g)(1)***).  *Id.*

Despite being on notice by Defendants' Motion to Compel that he had to produce all relevant texts, and despite Plaintiff's counsel's representations to Magistrate Kim regarding due diligence and compliance, ***Plaintiff still held back the Concealed Texts, which were on the same phone and in the same chain as the later produced texts so Plaintiff cannot claim to have lost or deleted them.***  *Id.*, ¶¶ 4, 9, 10 & Exs. C, F, G.

- **January 16, 2022**:  In the parties' Joint Report, Plaintiff ***made affirmative judicial representations regarding his purported diligence*** in responding to discovery, including, in pertinent part: "***Plaintiff has now provided Supplemental Responses confirming that he has engaged in a diligent search and reasonable inquiry to locate responsive documents, and that all responsive documents in his possession, custody and control have been produced and that no documents have been withheld based on any objection***."[5]  ECF 66 at 7.

- **January 18, 2022**: Magistrate Kim declared the portion of the Motion to Compel seeking document supplementation to be moot, relying wholly on

---

[5] In the Joint Report, Defendants specifically made a reservation of rights to seek additional relief from the Court based on the motion should it be revealed that counsel did not, in fact, perform a diligent search for responsive documents.  ECF 66 at 4.

Plaintiff's and his counsel's representations that Plaintiff diligently searched for and produced all responsive discovery, but warning Plaintiff:

> Any production of documents (or privilege log disclosure) by Plaintiff after this order ***will be presumptively deemed a violation of Rule 26(g)(1) subject to sanctions under Rule 26(g)(3)***; and … Rule 26(e)(1) provides no protection against sanctions if Plaintiff produces documents (or privilege log) after this order that could or should have been disclosed before the order with the reasonable inquiry mandated by Rule 26(g)(1) … [FN1] For this reason, any response that purports to escape this condition—e.g., "Discovery is continuing, and Responding Party reserves the right to amend and/or supplement his response to this request to include documents or information that may hereafter be discovered"—is an illegitimate response that fundamentally misunderstands Rule 26(e)(1). That rule—combined with Rule 26(g)—imposes an obligation to supplement productions when documents that could not have been found sooner with due diligence are discovered; it does not provide a license to supplement productions with impunity up until the fact discovery cutoff.

ECF 68 (the "January 18, 2022 Order").

- **February 2, 2022**:  Defendants took the sworn deposition of Plaintiff wherein he falsely testified that he had produced all correspondence between him and London.  Movit Decl., ¶ 6, Ex. E, at 144:3-16.

- **February 28, 2022**:  Discovery closed.

- **April 18, 2022**:  After briefing on the issue, the Court issued a decision on Defendants' Motion for Summary Judgment (ECF 90), holding that, as a matter of law, Plaintiff has no ownership or authorship in the underlying composition of the commercially-released version of the song "Circles" (the "Circles Composition") but that Plaintiff's purported claim to authorship in the Session Material could be tried by a jury (the "April 2022 Decision").  In its April 2022 Decision, the Court repeatedly relied on purported communications between London and Plaintiff as evidence of "genuinely disputed factual issue[s]."  *See, e.g.*, *Armes*, 2022 WL 1136163, at *13 (specifically referencing London's purported conduct the night before the August 8, 2018 Session as evidence supporting Plaintiff's position that "Post[] and Dukes had a shared intent to jointly create the Session Composition").[6]

- **Week of August 1, 2022**:  In connection with Defendants' preparation for trial, Defendants' counsel reached out to non-party London, who had retained texts in connection with this action.  Movit Decl., ¶¶ 8-10.  On August 3, 2022, London provided his text messages with Plaintiff to Defendants' counsel.  *Id.* & Exs. F, G.   Defendants' counsel was ***shocked to discover that Plaintiff failed to provide numerous critical text messages from the night of (and the night before) the August 8 Session, as well as other messages, and that Plaintiff also doctored a critical text.  It became clear then why Plaintiff produced texts out of order and without visible dates in certain circumstances—to conceal from the Court and Defendants*** these documents in his possession,

---

[6] Defendants maintain their positions that: (1) Plaintiff's First Amended Complaint does not allege co-ownership in the Session Material, (2) that Plaintiff has, at all times, solely sought a declaration of co-ownership with respect to the Circles Composition, which this Court ruled adverse to Plaintiff on summary judgment, and (3) given that the only joint work at issue is the Circles Composition, Plaintiff's only legal cognizable claim has already been dismissed by this Court. *Id.* Defendants also maintain that they had no intent to write anything with Plaintiff, he did not contribute any copyrightable expression to the Sessions Material which was a draft of and became part of the one work "Circles," and that Plaintiff had no control over the August 8 Session or Session Material, just as he had no control over "Circles" as has already been held.

1  custody and control, in violation of his obligations and thumbing his nose at

2  Magistrate Kim's Order.  In bad faith, Plaintiff chose only to produce text

3  messages that he thought could support his position in this case.

## III.  ARGUMENT

### A.  *Ex Parte* Relief Is Appropriate

6  *Ex parte* applications are solely for extraordinary relief and should be used

7  with discretion.  *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp.

8  488 (C.D. Cal. 1995).  Evidence must show that the moving party's cause "will be

9  irreparably prejudiced if the underlying motion is heard according to regular

10 noticed motion procedures." *Id.* at 492.  Moreover, the moving party must

11 establish that it is "without fault in creating the crisis that requires *ex parte* relief,

12 or that the crisis occurred as a result of excusable neglect."  *Id.*

13 Defendants clearly meet the standard for *ex parte* relief.  The trial was

14 previously set to begin on August 23, 2022,[7] and Defendants only became aware

15 of this critical evidence from a non-party in preparation therewith the day before

16 this Court continued the trial date.  Movit Decl., ¶ 8.  Defendants filed this *Ex*

17 *Parte* Application as soon as possible thereafter.  *Id.*, ¶ 11.  In light of the gravity

18 of this issue, it must be considered by the Court before the parties can

19 meaningfully continue their trial preparation.

20 Defendants are not responsible for this crisis and they would be prejudiced

21 if the matter were not heard.[8]  Notably, Defendants filed the Motion to Compel

22

---

23 [7] Although Defendants are moving *ex parte* to continue the trial date to December 13, 2022, that
date is still in close proximity, and the sanctions requested herein (other than case-terminating
24 sanctions) will require considerable time to effectuate.

25 [8] In an attempt to distract the Court from its own willful violations, Plaintiff may argue that he
purportedly attempted to serve subpoenas on London on the eve of the discovery deadline, or
26 may otherwise try to shift the blame to Defendants.  But Plaintiff did not even effect service of
the subpoenas on London.  *Id.*, ¶ 7.  Because London was never properly served and is a non-
party, he was under no discovery obligation.  In addition, in denying Plaintiff's *ex parte*
27 application to continue the trial and related pretrial dates due to his failure to pursue discovery
during the two-year long discovery period, this Court already held that "Plaintiff did not act
28 diligently during the discovery period." ECF 81.  Accordingly, Defendants were also under no

eight months ago, seeking to obtain these very documents, but relied on Plaintiff's and his counsel's representations made under oath—as did Magistrate Kim—that Plaintiff had complied with his discovery obligations and all texts had been produced. *Ex parte* relief is warranted under these circumstances.

## B. This Court Should Severely Sanction Plaintiff Under Its Inherent Power and the Federal Rules

The Court should severely sanction Plaintiff pursuant to its inherent authority and the Federal Rules. Plaintiff's intentional unlawful discovery practices misled the Court and Defendants into believing that Plaintiff produced all relevant documents. The record shows Plaintiff knew that was false, and that he went so far as to falsely certify compliance, make inaccurate representations regarding compliance to the Court, and falsely testify under oath at his deposition as to compliance. Rather than forthrightly responding to Defendants' discovery demands, Plaintiff engaged in obfuscation and concealment, which combined with his fraudulent misrepresentations to the Court, evidence a bad-faith intention to prevent the fair resolution of this litigation.

*First*, it is well established that district courts have broad authority to sanction parties for discovery misconduct pursuant to their inherent authority. *See, e.g., Anheuser-Busch, Inc. v. Nat. Beverage Dist.*, 69 F.3d 337, 348 (9th Cir. 1995); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F. 2d 915, 918 (9th Cir. 1987); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

*Second*, severe sanctions are plainly warranted under the Federal Rules. Rule 37 provides that a court may sanction a party who, *inter alia*, fails to disclose information as required by Rule 26(a) or (e) or violates a court order, by, among other things, precluding the party from supporting designated claims, striking the pleadings, or dismissing the action. Fed. R. Civ. P. 37(b)(2)(A), 37(c)(1)(C).

---

discovery obligations, as they had complied with their obligations prior to that date and produced the documents in their possession they intended to use for trial.

Mitchell Silberberg & Knupp LLP

Plaintiff's failure to actually provide completed responses and document productions following a diligent search, as he and his counsel certified to Magistrate Kim, violates the January 18, 2022 Order (ECF 68) and subjects him to sanctions under Rule 37(b)(2).  By his January 14, 2022 Order on Defendants' Motion to Compel, Magistrate Kim, relying on Plaintiff's counsel's representations in her untimely-filed Declaration, ordered the parties to "file a short joint report … detailing what discovery disputes remain outstanding."  ECF 65.  Plaintiff and his counsel represented to the Court and Defendants—in both Plaintiff's counsel's Declaration and in the Joint Report itself—that they had undertaken a diligent search for all responsive documents and produced all responsive documents.  ECF 63, 66.  These documents misled Magistrate Kim and thwarted the clear intent and spirit of his orders—which were issued to make sure all responsive documents were produced.  That was made clear by Magistrate Kim's statements regarding sanctions in his warning to Plaintiff and his counsel.  ECF 68.

In turn, Rule 37(c)(1) subjects a party to sanctions if the party "fails to provide information . . . as required by Rule 26(a) or (e), . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Here, Plaintiff chose to cherry-pick his production and conceal and doctor highly-relevant texts that did not help his case.  *See supra* Section II.  The documents concealed and doctored were directly responsive to Defendants' discovery demands.  *Id.*  Plaintiff was on notice when Defendants specifically pointed out that Plaintiff's production of texts had indicia that certain texts were erroneously excluded (ECF 59-1 at 2).  By intentionally withholding the Concealed Texts, Plaintiff could fabricate his story that he had been invited to events to write with Post by London.[9]

---

[9] In seeking to avoid sanctions under Rule 37(c), it is Plaintiff's burden to show that the abuses are "substantially justified" or "harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).  Plaintiff cannot meet this burden.  Courts have found that a party's failure to disclose is substantially justified where the non-moving party has a reasonable

Moreover, Rule 26(g)(1) requires that every discovery response be signed by an attorney, and specifies that the attorney's signature "certifies that to the best of the [person's] knowledge, information, and belief formed after a reasonable inquiry that the response is complete and correct." *Silva v. TEKsystems, Inc.*, 2013 WL 3939500, at *3 (N.D. Cal. July 25, 2013) (quoting Fed. R. Civ. P. 26(g)).  "If a certification violates this rule without substantial justification," then under Rule 26(g)(3), "the court . . . ***must*** impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  Fed. R. Civ. P. 26(g)(3).

Here, Plaintiff's Supplemental Responses were made in violation of Rule 26(g)(1), and thus mandate sanctions against Plaintiff and his counsel under Rule 26(g)(3).  Not only did Plaintiff fail to conduct a diligent search for relevant documents in his possession, custody, and control, but he and his counsel falsely certified that they had done so, after repeated notice that Plaintiff's production was deficient.  *See*, *e.g.*, ECF 59-1 at 2.  Again, Magistrate Kim expressly warned Plaintiff he would be sanctioned under Rule 26(g) in the event of such a false certification.  ECF 68.

## 1.    Terminating Sanctions Against Plaintiff Are Warranted

Federal district courts are vested with the authority—pursuant to the Federal Rules and under their inherent power—to impose the sanction of dismissal for a party's failure to comply with discovery requirements.  *See*, *e.g.*, *Michaels v. M/Y No Bad Days*, 2007 WL 9735013, at *4 (C.D. Cal. Aug. 28, 2007) (Wright, J.),

---

basis in law and fact, and where there exists a genuine dispute concerning compliance.  *See, e.g., Hagan v. Calif. Forensic Medical Grp.*, 2009 WL 689740, at *2 (E.D. Cal. Mar. 5, 2009).  Here, this was not a clerical error, and there can be no question that the correspondence was required.  *See R&R Sails Inc. v. Ins. Co. of State of Pa.*, 251 F.R.D. 520, 525 (S.D. Cal. 2008) (where a party who receives a discovery request fails to make a "reasonable inquiry . . . into whether Defendant possessed discovery responsive to Plaintiff's requests," that party is not "substantially justified").

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' *EX PARTE* APPLICATION FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF**

1    *aff'd sub nom.*, 303 F. App'x 563 (9th Cir. 2008) (imposing terminating sanctions

2    pursuant to its inherent powers due to discovery abuses); *Stones v. Boys Republic*,

3    2008 WL 11338535, at *2 (C.D. Cal. Mar. 11, 2008) (Wright, J.) (dismissing case

4    for violations under Rule 37); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43

5    (1991) (holding courts have inherent authority to manage cases, including

6    dismissal for abusive practices).  Here, the sanction of dismissal should be

7    imposed both under the Federal Rules, and the Court's inherent authority.  Indeed,

8    the Ninth Circuit has affirmed dismissal as a discovery sanction in many cases,

9    such as this one, involving pervasive discovery violations.  *See, e.g., In re*

10   *Phenylpropanolamine (PPA) Prods. Liab. Lit.,* 460 F.3d 1217, 1243 (9th Cir.

11   2006) (affirming dismissal order entered under the court's inherent authority and

12   Rule 37).   Such dismissal orders are reviewed by the Ninth Circuit pursuant to the

13   deferential abuse of discretion standard.  *Id.*

14          The courts within the Ninth Circuit weigh five factors before imposing

15   dismissal as a sanction, whether under the Federal Rules, the Court's inherent

16   authority, or both: (1) the public's interest in expeditious resolution of litigation;

17   (2) the court's need to manage its dockets; (3) the risk of prejudice to the party

18   seeking sanctions; (4) the public policy favoring disposition of cases on their

19   merits; and (5) the availability of less drastic sanctions."  *See, e.g., Leon v. IDX*

20   *Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

21          While the district court need not make explicit findings regarding each of

22   these factors, *U.S. ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600,

23   603 (9th Cir. 1988), a finding of "willfulness, fault, or bad faith" (discussed *infra*

24   at 18) is required for dismissal to be proper.  *Anheuser–Busch*, 69 F.3d at 348;

25   *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (these

26   factors are "not a series of conditions precedent before the judge can do anything"

27   but a "way for a district judge to think about what to do"); *Yourish v. Cal.*

28   *Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (court may order dismissal where

Mitchell
Silberberg &
Knupp LLP

DEFENDANTS' *EX PARTE* APPLICATION FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF

1   either four factors of the five factor sanctions test support dismissal or three factors

2   strongly support dismissal).

3         This willfulness requirement does not, however, require a finding of

4   wrongful intent or any particular mental state; rather, "[d]isobedient conduct not

5   shown to be outside the control of the litigant is sufficient to demonstrate

6   willfulness, bad faith, or fault." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir.

7   2003).  Further, dismissal is appropriate where a "pattern of deception and

8   discovery abuse made it impossible for the district court to conduct a trial 'with

9   any reasonable assurance that the truth would be available.'"  *Valley Eng'rs*, 158

10   F.3d at 1057-58 (quoting *Anheuser-Busch*, 69 F.3d at 352).  Even a single willful

11   violation may suffice depending on the circumstances.  *Id.* at 1056; *Henry v. Gill*

12   *Indus., Inc.*, 983 F.2d 943, 949 (9th Cir. 1993) ("Henry offers various explanations

13   for his discovery misconduct, but all are either legally irrelevant or factually

14   implausible, and none persuades that circumstances outside his control caused his

15   transgressions.").   In evaluating the propriety of dismissal, courts consider all

16   incidents of alleged misconduct.  *Anheuser-Busch*, 69 F.3d at 348.

17         While Plaintiff's willful discovery abuses alone warrant case-terminating

18   sanctions,[10] in addition, all five of factors which the Court is to consider strongly

19   favor terminating sanctions here.

20         Notably, "[w]here [as here] a court order is violated, the first two factors

21   support sanctions and the fourth factor cuts against a default. Therefore, it is the

22   third and fifth factors that are decisive." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d

23

24   [10] Indeed, Plaintiff's affirmative manipulation of evidence alone is the type of willful
     misconduct warranting terminating sanctions.  *See*, *e.g.*, *Conn. Gen. Life Ins. Co. v. New Images*
25   *of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (finding willfulness where defendants
     manipulated photo copies submitted into evidence and refused to produce critical, potentially
26   dispositive documents); *Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc.*, 101 F. Supp. 3d
     856, 869 (C.D. Cal. 2015) (sanction of default judgment appropriate where party "acted willfully
27   and in bad faith by falsifying evidence"); *Connecticut Gen. Life Ins. Co. v. New Images of*
     *Beverly Hills*, 482 F.3d 1091, 1094 (9th Cir. 2007) (willful misconduct that generally results in
28   terminating sanctions includes "knowingly deceiv[ing] the court" with "fabricated evidence").

Mitchell
Silberberg &
Knupp LLP

18

1406, 1412 (9th Cir. 1990).  Nevertheless, the first and second factors—the public's interest in expeditious resolution of litigation and the Court's need to manage its docket—clearly support this Court's entry of terminating sanctions. *Coleman v. Ryan*, 2014 WL 3540579, at *4 (D. Ariz. July 17, 2014) ("Plaintiff's refusal to provide disclosures, even after repeatedly being provided notice from the Court of the need to do so has 'greatly impeded resolution of the case and prevented the district court from adhering to its trial schedule.' Thus, the public's interest in an expeditious resolution of cases and the Court's need to manage its docket call for dismissal.").

The third factor—the risk of prejudice to Defendants—also weighs heavily in favor of terminating sanctions.  Prejudice arises when the ability to go to trial of the party seeking sanctions is impaired.  *Adriana*, 913 F.2d at 1412 (citing *Malone v. U.S. Postal Service*, 833 F.2d 128, 131 (9th Cir. 1987)).  **Failure to produce documents as ordered "is considered sufficient prejudice."**  *Id.* (citing *Secs. & Exch. Comm'n v. Seaboard Corp.*, 666 F.2d 414, 417 (9th Cir. 1982)).  "**Late tender is no excuse.**"  *Phenylpropanolamine,* 460 F.3d at 1227.  A "continuing refusal to comply with court-ordered production of documents constitutes interference with the rightful decision of the case." *Adriana*, 913 F.2d at 1412.  In *Anheuser–Busch*, for example, the Ninth Circuit found prejudice when a party's refusal to provide certain documents "forced Anheuser to rely on incomplete and spotty evidence" at trial.  *Anheuser–Busch*, 69 F.3d at 354.

Such is the case here, where Defendants relied on Plaintiff's self-serving, spotty production throughout the entirety of discovery to their detriment.  Additionally, Plaintiff's willful obfuscation of critical evidence prejudiced Defendants by changing the trajectory of the case, forcing Defendants to expend substantial resources in seeking to obtain the information Plaintiff swore did not exist, and likely impacted Defendants' efforts at summary dismissal.  Perhaps most egregious is Plaintiff's intentional doctoring of the evidence he did produce to

remove texts that were extremely damaging to his claims; namely the text where London expressly disputes Plaintiff's co-authorship claims. *See supra* at 8. Plaintiff's spotty production of largely undated, out-of-order texts was not just sloppy; it was intentionally produced in such a manner as to remove texts that bear on dispositive issues in this case.

While public policy typically favors disposition of cases on their merits, relevant to the fourth factor, "the public policy favoring the disposition of cases on their merits is not furthered by litigants who repeatedly ignore court orders and who refuse to provide the defense with critical discovery, thereby hindering the preparation of a defense on the merits." *Sanchez v. Rodriguez*, 298 F.R.D. 460, 472 (C.D. Cal. 2014); *see also Phenylpropanolamine*, 460 F.3d at 1228 (the fourth factor "lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction"). Plaintiff's egregious discovery abuses should be deterred. And this factor, standing alone, "is not sufficient to outweigh the other four factors." *Malone*, 833 F.2d at 133 n.2.

Finally, the fifth factor, whether lesser sanctions are appropriate, weighs in favor of dismissal because of the egregious circumstances here. Denying Defendants' request for terminating sanctions in favor of a less drastic sanction would be inadequate, given that Plaintiff has already "shown a willful disregard for court orders and the rules of discovery," *Stones*, 2008 WL 11338535, at *3 (Wright, J.), and that Plaintiff has already been warned that his misconduct could result in sanctions. *See* ECF 68 (Magistrate Kim's warning that Plaintiff's false certification would subject him to sanctions under Rule 26(g)(3)); Fed. R. Civ. P. 26(g)(3) (allowing for any "appropriate sanction").

In sum, terminating sanctions are not only warranted, but necessary.

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' *EX PARTE* APPLICATION FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF**

**2.     In The Alternative, This Court Should Impose Significant Evidentiary Sanctions, Order Forensic Imaging Of Plaintiff's Cellular Devices, As Well As Monetary Sanctions**

As explained above, Defendants submit that, given the extreme misconduct in this case, terminating sanctions are the appropriate remedy.  In the alternative, or in addition, Defendants provide the Court with the following specific sanctions that should be awarded pursuant to Rules 26 and 37, as well as the Court's inherent power:

- An order allowing Defendants to forensically image Plaintiff's cellular telephone via third-party forensics specialists in order to: (a) ascertain the scope of discoverable but withheld information, (b) obtain clear and reviewable copies of relevant text messages, and (c) recover deleted but relevant text message correspondence.  Defendants fully expect that, in response to this Application, there will be more denials from Plaintiff and his counsel, lack of accountability, and false testimony under oath, all to the end of continuing to perpetrate their ongoing fraud.  This sanction is necessary because such falsehoods cannot be taken at face value and need to be tested with forensics.

- An adverse inference instruction that Plaintiff was not invited to the August 8 Session to write any music with Defendants and was not present for that purpose.  *See*, *e.g.*, *Estakhrian v. Obenstine*, 2016 WL 6275599, at *5 (C.D. Cal. May 17, 2016) (granting request for adverse inference jury instruction for plaintiff's failure to disclose to plaintiffs relevant documents he had in his possession, custody or control).

- An order compelling Plaintiff to appear for a second deposition regarding the new evidence prior to the trial in this action after the forensic examination results; and

- Monetary sanctions equal to the fees and/or costs incurred by Defendants in connection with this Application.  *See*, *e.g., Russo v. Network Sols.,*

Mitchell Silberberg & Knupp LLP

**DEFENDANTS' *EX PARTE* APPLICATION FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF**

1   *Inc.*, 2008 WL 114908, at *1 (N.D. Cal. Jan. 10, 2008) (granting monetary

2   sanctions for party's failure to produce discovery).

3        Defendants also request leave to add these newly discovered and highly

4   relevant texts attached to this Application to the Amended Exhibit List.

5   **IV.   CONCLUSION**

6        For the foregoing reasons, Defendants respectfully request that the Court

7   grant the relief requested in this *Ex Parte* Application.

8

9   Dated: August 17, 2022          MITCHELL SILBERBERG & KNUPP LLP
                                     DAVID A. STEINBERG
10                                   CHRISTINE LEPERA
                                     JEFFREY M. MOVIT
11                                   GABRIELLA N. ISMAJ

12

13                                   By:   /s/ Jeffrey M. Movit
                                           Jeffrey M. Movit (*pro hac vice*)
14                                         Attorneys for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

**DEFENDANTS' *EX PARTE* APPLICATION FOR DISCOVERY SANCTIONS AGAINST PLAINTIFF**