**ALLISON S. HART (BAR NO. 190409)**
*ahart@lavelysinger.com*
**MAX D. FABRICANT (BAR NO. 333859)**
*mfabricant@lavelysinger.com*
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone:  (310) 556-3501
Facsimile:  (310) 556-3615

*Attorneys for Plaintiff,*
TYLER ARMES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TYLER ARMES,<br><br>          Plaintiff,<br><br>   v.<br><br>AUSTIN RICHARD POST, publicly known as POST MALONE, an individual; ADAM KING FEENEY, publicly known as FRANK DUKES, an individual; UNIVERSAL MUSIC GROUP, INC., a Delaware corporation; DOES 1 through 10, inclusive,<br><br>          Defendants. | CASE NO. 2:20-cv-03212-ODW(PJWx)<br>*Consolidated with 2:20-cv-10205*<br><br>[Hon. Otis D. Wright, II – Crtrm 5D]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' *EX PARTE* APPLICATION FOR SANCTIONS**<br><br>*[Declarations of Tyler Armes and Allison S. Hart Submitted Concurrently Herewith]*<br><br>Filed: April 7, 2020<br>Trial: October 11, 2022 |

## I.   **INTRODUCTION**

Defendants' *Ex Parte* Application for Discovery Sanctions Against Plaintiff ("Ex Parte Application") is an improper, unwarranted and transparently desperate attempt by Defendants to avoid a trial on the merits in this action, and it should be denied in its entirety.[1]

There is no truth whatsoever to Defendants' claim that Plaintiff Tyler Armes ("Plaintiff" or "Armes") has intentionally concealed or withheld production of relevant text messages exchanged with Dre London ("London"), who is the long-time personal manager of Defendant Austin R. Post p/k/a Post Malone ("Post"). The reason why messages exchanged between Armes and London in 2018 were not produced by Plaintiff in discovery is that those messages did not exist on Plaintiff's phone at the time Plaintiff searched for written communications with London.[2] The omission of a small portion of a self-serving statement made by London of the text messages exchanged between Plaintiff and London on August 9, 2019, was innocent and purely inadvertent, and has resulted in zero prejudice to Defendants.

So that it is clear, London, the individual whose text messages with Plaintiff are at issue, is Post's longtime personal manager.  Armes Decl., ¶ 5; Hart Decl., ¶¶ 5, 8, Ex. A. As such, ***London is a party-affiliated witness with a financial interest in the outcome of this case***.  Since London is an agent and representative of Post, the text messages have at all times been within Post's possession, custody

---

[1] As the Court will recall, after Defendants were unsuccessful in having this case disposed of by their motion for summary judgment (*see* Dkt. 90), and thereafter unsuccessfully sought reconsideration of the Court's ruling on the motion for summary judgment (Dkt. 119).  Defendants have manufactured a purported dispute over text messages which have been in their possession custody or control at all relevant times – including prior to filing their motion for summary judgment and prior to taking Plaintiff's deposition – in a desperate bid to avoid having this case decided on the merits.

[2] See accompanying Declaration of Tyler Armes ("Armes Decl."), ¶¶ 4-5, Ex. A; Declaration of Allison S. Hart ("Hart Decl."), ¶¶ 3-4.

or control.  Therefore, it is highly disingenuous for Defendants to repeatedly characterize London as a "non-party" since he is clearly a party-affiliated witness and as Post's manager he has a financial interest in this action.  Defendants' claim that they only discovered the missing text messages for the first time during the first week of August 2022 is highly suspect.  London is Post's manager and is the individual who arranged the songwriting session between Plaintiff and Defendants on August 8, 2018.  See First Amended Complaint (Dkt. 24), ¶¶ 3 and 12-14.  Since this case was initially set for trial on May 17, 2022, Defendants' claim that they never requested from London or reviewed copies of London's communications with Plaintiff prior to the week of August 1, 2022 defies credulity.

Plaintiff has demonstrated that he acted with substantial justification. Plaintiff did not produce the August 2018 messages with London because he did not and does not have them, and the omission of a small portion of an August 9, 2019 exchange with London was an innocent, unintentional error that was unknown to both Plaintiff and his counsel until Defendants raised it for the first time on August 16, 2022.  Armes Decl., ¶¶ 3-5; Hart Decl., ¶¶ 3-4.  Thus, Plaintiff respectfully submits that he has acted with substantial justification in this matter. Defendants, on the other hand, have at all times had possession of the text messages since they were admittedly found on the phone of Post's manager, London. Therefore, there is zero prejudice to Defendants.

Furthermore, Defendants made no good faith effort to resolve this issue with Plaintiff prior to filing the Ex Parte Application, which constitutes additional grounds for denial of the Ex Parte Application.  Hart Decl., ¶¶ 9-12, Ex. C.

Plaintiff has no objection to adding the recently discovered text messages to the parties' Exhibit List.  However, because Plaintiff has acted with substantial justification and Defendants can demonstrate no prejudice since they have at all times had possession of the text messages at issue, Plaintiff submits that

1    Defendants' request for sanctions is wholly unwarranted and should be denied in its

2    entirety.

3    **II.      ARGUMENT**

4           **A.     Plaintiff Acted with Substantial Justification.**

5           When Plaintiff endeavored to locate copies of his written communications

6    with London in response to Defendants' discovery requests, he searched his phone

7    for text messages and emails with London and took screen shots of what he found.

8    Armes Decl., ¶ 3.  At the time Armes searched for the messages he did not have any

9    messages on his phone prior to November 2018.  *Id.*  Since Defendants first raised

10   the issue of the inadvertently omitted text messages with Plaintiff on August 16,

11   2022, Plaintiff's counsel has attempted to ascertain why the entirety of the

12   exchange between Armes and London was missing from Armes's phone, and

13   Plaintiff is informed that the most likely reason is the fact that certain iPhones

14   automatically purge messages after a period of time and/or when software updates

15   are installed.  Hart Decl., ¶ 4.

16          Defendants' assertion that the fact that Armes produced copies of messages

17   with third parties that were exchanged through the WhatsApp application in August

18   2018 somehow proves messages exchanged with London in August 2018 were

19   deliberately withheld by Plaintiffs is absolutely false.  The WhatsApp messages

20   between referenced by Defendants in the Ex Parte Application were not stored on

21   Plaintiff's phone, but rather were obtained directly from one of the third parties

22   with whom Armes was communicating on WhatsApp.  Armes Decl., ¶ 4

23          On page 8 of the Ex Parte Application (Dkt. 130), Defendants include side-

24   by-side screen shots of messages exchanged between Armes and London on August

25   7 and 9, 2019.  The first time that Plaintiff became aware that any portion of the

26   August 9, 2022 exchange was omitted from Plaintiff's document production was

27   when it was brought to Plaintiff's attention on August 16, 2022.  The message from

28   London to Armes on August 9, 2019 in which he states "Sounds weird but I would

PLAINTIFF'S OPPOSITION TO EX PARTE APPLICATION FOR SANCTIONS

have known Frank ain't a thief u ain't tell me part u played or wrote," was not intentionally withheld or deleted from Plaintiff's document production. This portion of the message was inadvertently not captured by Plaintiff when he took screen shots of his text messages with London. Armes Decl., ¶ 5, Ex. A. The omission of this portion of the exchange was innocent, inadvertent and completely unknown to Plaintiff and his counsel before it was brought to their attention by Defendants on August 16, 2022. Hart Decl., ¶ 3.

### B. Defendants Failed to Demonstrate any Prejudice.

Notwithstanding Defendants' misleading and disingenuous references to London as a "non-party," in this case, so that it is clear, London is Post's longtime personal manager and he has a financial interest in the outcome of this lawsuit. Hart Decl., ¶ 5, Ex. A. As such, the text messages that Defendants claim they only recently discovered and obtained from London have at all times been within Post's possession, custody and control. Documents are in the "possession, custody, or control" of a party if the party has actual possession, custody, or control, or has "the legal right to obtain the documents on demand." *Asberry v. Cate*, No. 2: 11-cv-2462 KJM KJN P, 2014 U.S. Dist. LEXIS 46334 (E.D. Cal. Mar. 31, 2014) (citing *U.S. v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989)); *International Union of Petroleum & Indus. Workers*, 870 F.2d at 1452; *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999). Where, as here, a principal-agent relationship exists between Post and London, London's text messages with Plaintiff are deemed within Post's possession, custody or control. Clearly, Post had the legal right to obtain messages exchanged between his representative and Plaintiff in this case.

Indeed, where a party has a principal-agent relationship with a nonparty that possesses the documents, that relationship is sufficient to establish that the party has control over the documents. *See Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 465 (D. Ariz. 2020), aff'd, WL 259937 (9th Cir. Jan. 27, 2022); *McKesson Corp. v.*

1   *Islamic Republic of Iran*, 185 F.R.D. 70, 77-78 (D.D.C. 1999).  Since London is

2   Post's manager and representative, he clearly has had control over the text

3   messages exchanged between Plaintiff and London.

4          Defendants cannot claim that they have been prejudiced in any way by the

5   fact that the entirety of the messages exchanged between Armes and London were

6   not produced by Plaintiff.  Since London is Post's manager, these messages have at

7   all times been in Post possession, custody or control, including prior to the time

8   Defendants took Armes's deposition on February 2, 2022 and before they brought

9   their motion for summary judgment. Notwithstanding the foregoing, Defendants

10  never identified these communications in their initial disclosures or on the Exhibit

11  List, which belies any claim that the messages are in any way relevant or

12  dispositive of any issue in the case.

13         **C.     The Imposition of Any Sanctions Against Plaintiff is Wholly**

14             **Unwarranted.**

15         Having demonstrated that Plaintiff acted with substantial justification since

16  he did not intentionally omit any messages with London from his document

17  production or otherwise violate any court order, and the absence of any prejudice to

18  Defendants, there is no basis to impose any sanctions against Plaintiff.  In the

19  seminal case of *Societe Internationale Pour Participations Industrielles et*

20  *Commerciales*, *S. A. v Rogers*, the district court dismissed a complaint because the

21  plaintiff did not produce certain documents specified in a discovery order. *See* 357

22  U.S. 197 (1958).  The United States Supreme Court found the dismissal improper

23  under Federal Rule of Civil Procedure 37 because the plaintiff's "failure to comply

24  [with the discovery order] has been due to inability, and not to willfulness, bad

25  faith, or any fault of [plaintiff]." *Id.*  While *Societe Internationale* did not elaborate

26  on the "fault" required to support dismissal or a default judgment in specific cases,

27  the requisite "fault" exists where the responding party has shown a flagrant, bad

28  faith disregard of discovery duties, materially affecting the substantial rights of the

discovering party and prejudicial to its presentation of its case. *Porter v. Martinez*, 941 F.2d 732 (9th Cir. 1991). Here, there is no evidence that Plaintiff intentionally failed to produce relevant evidence in this case, and no prejudice to Defendants since the inadvertently omitted documents were in their possession all along.

Rather, terminating sanctions are only warranted where falsification, concealment or, in some cases, destruction of evidence occurs. *See Hester v. Vision Airlines, Inc.*, 687 F.3d 1162 (9th Cir. 2012) (holding that the district court did not abuse its discretion in striking the corporation's answer under Fed. R. Civ. P. 37(b)(2)(A)(iii) because the corporation concededly violated a discovery order willfully and in bad faith and did not argue); *Dreith v. Nu Image, Inc.*, 648 F.3d 779 (9th Cir. 2011) (default order was properly entered against companies for discovery misconduct in an action by musicians for violations of a collective bargaining agreement because the companies' failures to comply with court orders interfered with the court's management of its docket and made it impossible for the musicians to adequately prepare for trial). Plaintiff has clearly established that there was no intentional omission of communications exchanged with London, and that the only reason certain messages found on London's phone were not produced by Plaintiff was due to the data storage constraints on his phone with respect to messages dating prior to November 2018, and the inadvertent and innocent omission of a small portion of an exchange with London that is in no way material or dispositive of any issue in this case, since it consists solely of a self-serving statement by London to the effect that Defendant Frank Dukes "ain't a thief."

Public policy favors disposition of cases *on their merits*. *Malone v. United States Postal Service*, 833 F.2d 128 (9th Cir. 1987). Defendants are clearly motivated to avoid a trial on the merits in this case, however, there is no basis for the imposition of the sanctions requested by Defendants.

**D.     Defendants Violated the Local Rules, this Court's Standing Order, and Magistrate Kim's Standing Order by Filing the Ex Parte Application Without Meeting and Conferring with Plaintiff's Counsel.**

Local Rule 37-1 plainly provides that "before filing any motion relating to discovery under [Federal Rules of Civil Procedure] 26-37, counsel for the parties must confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible.  It is the responsibility of counsel for the moving party to arrange for this conference."

The Ex Parte Application clearly involves a discovery dispute subject to Local Rule 37-1.  There is no exception to this Rule 37-1 by which Defendants were not required to make a good faith effort to meet and confer. Defendants' counsel did not swear under penalty of perjury that they did not violate this Rule 37-1 because they cannot. Furthermore, Local Rule 37-2 provides that "[i]f counsel are unable to settle their differences, they *must* formulate a written stipulation unless otherwise ordered by the Court.  The stipulation must be filed and served with the notice of motion."  (Emphasis added).  Defendants' failure to meet and confer and/or form a joint stipulation with Plaintiff regarding this issue warrants the Court's rejection of Defendants' Ex Parte Application and sanctions pursuant to Local Rule 37-4 ("The failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions.").

Moreover, Defendants also plainly violated this Court's 2022 Standing Order (the "Court's Standing Order") by filing this Ex Parte Application. Section VII.C of this Court's Standing Order provides, "[e]x parte applications are solely for extraordinary relief and should be used with discretion" and "[s]anctions may be imposed for misuse of ex parte applications." Defendants' counsel *never* even attempted to meaningfully discuss the grounds for the Ex Parte Application or make any good faith effort to resolve this dispute.  Hart Decl., ¶ 2. Instead,

1   Defendants' counsel sternly told Plaintiff's counsel that they had the text messages
2   and that they would be filing an Ex Parte Application on this issue before filing *the*
3   *following day.*  Hart Decl., ¶¶ 9-12, Ex. C.

4           Additionally, this discovery dispute should have been raised with Hon.
5   Magistrate Steven Kim. See Court's Standing Order, Section VI.D ("All non-
6   patent discovery matters have been referred to a United States Magistrate Judge.").
7   Accordingly, Defendants should have adhered to Hon. Magistrate Steven Kim's
8   Standing Order ("Magistrate Kim's Standing Order") in involving the Court in this
9   discovery dispute. Magistrate Kim's Standing Order plainly provides that "unless
10  otherwise ordered, parties must raise discovery motions in accordance with Local
11  Rules 37-1 to 37-3.  Before filing a discovery motion, counsel must meet-and-
12  confer in person if they are located within the same county.  L.R. 37-1.  Failure to
13  comply with this rule may lead to summary dismissal of the motion without further
14  notice. Disputed discovery requests involving the same issue(s) should be logically
15  grouped under one section in the parties' Joint Stipulation with a consolidated
16  position statement by each side. L.R. 37-2.1."  Magistrate Kim's Standing Order,
17  Section 1 (Discovery Motions).  Thus, Defendants have violated their meet and
18  confer and joint stipulation requirements in Hon. Magistrate Kim's Court.
19  Furthermore, Magistrate Kim instructs that "ex parte applications are not an
20  allowed method of bringing a discovery dispute to the attention of the Court."

21          In sum, Defendants have violated the Local Rules, the Court's Standing
22  Order, and Magistrate Kim's Standing Order regarding this discovery dispute.
23  Therefore, the Court should reject Defendants' Ex Parte Application in its entirety.
24  Additionally, while the Court has been asked to sanction Plaintiff, it should instead
25  sanction Defendant on the grounds set forth above.  In the case that the Court
26  proceeds to the merits of this discovery dispute, Plaintiff humbly yet earnestly
27  takes the opportunity to respond to Defendants' allegations that he failed to
28  produce the Discovered Text Messages in bad faith.

PLAINTIFF'S OPPOSITION TO EX PARTE APPLICATION FOR SANCTIONS

1    **III.    <u>CONCLUSION</u>**

2          For the foregoing reasons, Plaintiff respectfully requests that the Court deny

3    the Defendants' Ex Parte Application in its entirety.

4

5    DATED:  August 18, 2022          ALLISON S. HART
                                       MAX D. FABRICANT
6                                      LAVELY & SINGER
                                       PROFESSIONAL CORPORATION
7

8                                      By:   /s/ Allison S. Hart
                                             ALLISON S. HART
9
                                       *Attorneys for Plaintiff*,
10                                     TYLER ARMES

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO EX PARTE APPLICATION FOR SANCTIONS